

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NOS. WR-85,051-02 AND WR-85,051-03[1]

### EX PARTE OBEL CRUZ-GARCIA, Applicant

### ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS FROM CAUSE NO. 1384794 IN THE 337TH DISTRICT COURT HARRIS COUNTY

*Per curiam.*

### O R D E R

These are post conviction applications for writs of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure article 11.071.[2]

On September 30, 1992, applicant and Rogelio Aviles-Barroso (a.k.a. "Roger"),

---

[1] WR-85,051-01 was a petition for writ of mandamus which we denied leave to file. *Ex parte Cruz-Garcia*, WR-85,051-01 (Tex. Crim. App. July 27, 2016)(not designated for publication).

[2] Unless otherwise indicated, all future references to Articles refer to the Code of Criminal Procedure.

EXHIBIT 5 Page 001

donned masks and broke into the apartment of Diana Garcia and Arturo Rodriguez. Garcia and Rodriguez had recently informed applicant that they no longer wished to sell drugs for him. Applicant and Roger assaulted Rodriguez and sexually assaulted Garcia. Garcia's six-year-old son Angelo witnessed the assaults. Applicant grabbed Angelo and took him to his car where Carmelo Martinez Santana (a.k.a. "Rudy") was awaiting applicant's and Roger's return.

Applicant drove Roger, Rudy, and Angelo to a remote area in Baytown. Applicant then ordered Roger to kill Angelo. Roger and Rudy then hid Angelo's body in a nearby waterway while applicant looked on.

The next day, on October 1, 1992, applicant cleaned out the interior of his car and then sold it to purchase an airline ticket to Puerto Rico. Applicant's wife Angelita said that this trip was sudden and unplanned. Rudy drove applicant to the airport on October 2, 1992. Applicant was scheduled to appear in a Harris County District Court on October 8, 1992 on a pending case. Applicant failed to return for his court date and forfeited his bond. Applicant had never missed a court date before this time. The next time Angelita saw applicant was in the Dominican Republic when he confessed to her that he had killed Angelo. Angelo's body was recovered in November 1992.

In June 2013, a jury found applicant guilty of the offense of capital murder committed in the course of committing or attempting to commit kidnapping. At punishment, the jury answered the special issues submitted pursuant to Article 37.071, and the trial court,

EXHIBIT 5 Page 002

Cruz-Garcia - 3

accordingly, set applicant's punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Cruz-Garcia v. State*, No. AP-77,025 (Tex. Crim. App. Oct. 28, 2015)(not designated for publication). On August 28, 2015, applicant timely filed his initial writ in the convicting court.

Applicant presents fourteen allegations in his application in which he challenges the validity of his conviction and resulting sentence. The trial court did not hold an evidentiary hearing, and it entered findings of fact and conclusions of law and recommended that the relief sought be denied.

This Court has reviewed the record with respect to the allegations made by applicant. Claims 5 and 7 are procedurally barred because habeas is not a substitute for matters which should have been raised at trial or on direct appeal. *Ex parte De La Cruz*, 466 S.W.3d 855, 864 (Tex. Crim. App. 2015); *see also Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004) (holding that even a constitutional claim is forfeited if the applicant had an opportunity to raise the issue on appeal). Claim 9 is procedurally barred as it was raised and rejected on direct appeal. *See Cruz-Garcia*, slip op. at 53-58. *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984).

In the following claims, applicant contends that his trial counsel were ineffective for: (claim 1) failing to present evidence from a DNA expert to challenge the DNA evidence presented at trial; (claim 2) failing to investigate and present reasonable doubt at the guilt/innocence phase of trial regarding a consensual sexual relationship between applicant

EXHIBIT 5 Page 003

Cruz-Garcia - 4

and Garcia, and whether Garcia and Rodriguez continued to sell drugs for applicant; (claim 3) failing to investigate and present evidence that applicant would not be a future danger; (claim 4) failing to investigate and present mitigation evidence; (claim 6) failing to recognize the significance of applicant's foreign nationality and seek the help of the Dominican Republic consulate in defending applicant's case; and (claim 8) failing to investigate juror misconduct. In claim 7, as the underlying issue was procedurally barred, applicant contends that his appellate counsel was ineffective for failing to assert that his due process rights were violated by constitutional errors relating to the trial court's ex parte discussion with a single juror. Applicant fails to meet his burden under *Strickland v. Washington*, 466 U.S. 668 (1984). He fails to show by a preponderance of the evidence that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* at 689. In claim 10, applicant contends that trial counsels' cumulative deficient performance over the course of the trial prejudiced him. We have found no errors on the part of counsel. *Rayford v. State*, 125 S.W.3d 521, 534 (Tex. Crim. App. 2003)(holding non-errors may not in cumulative effect cause errors).

In claims 11 through 14, applicant challenges the constitutionality of various aspects of Article 37.071: that the punishment phase jury instructions restricted the evidence the jury could determine as mitigating, that the "10-12" rule is unconstitutional, that the first special issue is unconstitutionally vague, and that Texas's capital punishment scheme is arbitrarily imposed. These claims have been repeatedly rejected by this Court and applicant raises

EXHIBIT 5 Page 004

nothing new to persuade us to reconsider those holdings. *See Davis v. State*, 313 S.W.3d 317, 354-55 (Tex. Crim. App. 2010)("10-12" rule, arbitrarily imposed capital punishment scheme); *Coble v.State*, 330 S.W.3d 253, 297 (Tex. Crim. App. 2010)(vague first special issue, restriction of evidence that can be considered mitigating).

Based upon the trial court's findings and conclusions and our own review, we deny relief.

Applicant's May 2, 2016 filing is a subsequent application that must be reviewed under Article 11.071, § 5(a). In his first claim, applicant argues that he is entitled to relief under Article 11.073 because the now-revised DNA results were not previously available to him. Article 11.073 §(b) provides (1) that applicant must show that (A) the relevant scientific evidence was not previously available, and (B) the evidence would be admissible at trial, and (2) had the evidence been presented at trial, on the preponderance of the evidence the person would not have been convicted. We have reviewed the claim. Applicant fails to meet the dictates of Article 11.073 §(b)(2).

In his second claim, applicant contends that he is entitled to a new trial because his conviction was based on false, misleading, and scientifically invalid testimony. Under "Article 11.071, an original or subsequent application for a writ of habeas corpus must state specific, particularized facts which, if proven true, would entitle him to habeas relief." *Ex parte Staley*, 160 S.W.3d 56, 63 (Tex. Crim. App. 2005). Here, to be entitled to due process relief on the basis of false evidence, applicant must show that the new evidence is material—

EXHIBIT 5 Page 005

Cruz-Garcia - 6

that there is a "reasonable likelihood that the false testimony affected the applicant's conviction or sentence." *Ex parte Chavez*, 371 S.W.3d 200, 207 (Tex. Crim. App. 2012). Applicant fails to make a *prima facie* showing that the new evidence is material to the outcome of his case.

Accordingly, we dismiss applicant's subsequent application as an abuse of the writ under Article 11.071 §5(a)(1) without reviewing the merits of the claims raised.

IT IS SO ORDERED THIS THE 1st DAY OF NOVEMBER, 2017.

Do Not Publish

EXHIBIT 5 Page 006