## AFFIDAVIT OF LORENZO VILLALBA-ROLÓN

I, Lorenzo Villalba-Rolón, state and declare as follows:



1. My name is Lorenzo Villalba-Rolón.  Since 1998, I have worked as an independent consultant on issues related to the correctional system in Puerto Rico.  My work includes serving as an advisor to the Secretary of the Puerto Rico Department of Corrections and Rehabilitation on matters relating to prison and community correctional programs for both adults and juveniles.  I also have served as a legislative consultant in the Senate of Puerto Rico on legislative matters relating to public security, criminal justice, adult and juvenile correctional institutions, and community programs.  From 2007 to 2013, I was a professor of Criminal Justice at the Inter-American University of Puerto Rico, Metro and Bayamón campuses, the Colegio Universitario de San Juan, and the University of Phoenix in San Juan, Puerto Rico, where I taught both undergraduate and graduate-level courses.  From 2007 to 2008, I was Executive Director of the Puerto Rico Civil Rights Commission.  From 1994 to 2002, I was a professor of Civil and Criminal Justice Systems at the Universidad del Sagrado Corazón in Santurce, Puerto Rico and at John Dewey College in Hato Rey, Puerto Rico, teaching Juvenile System courses. I also worked as a trainer for Wackenhut Corrections Corporation in Bayamón, Puerto Rico at the Bayamón 501 Correctional Institution during that time.  In 1992, I was appointed by the Governor of Puerto Rico as Administrator of the Corrections Administration of the Commonwealth of Puerto Rico, where I served for one year.  I also served as the Chairman of the Parole Board of Puerto Rico from 1987 to 1991.  Before that, from 1979 to 1981, I served as the Corrections Ombudsman of the Office of the Ombudsman of the Commonwealth of Puerto Rico.  I received a Bachelor's degree in Foreign Service from Georgetown University in 1974.  I received a

1

EXHIBIT 40  Page001

Juris Doctor from Georgetown University Law Center in 1977. And I received a Master's degree in Public Administration from the University of Puerto Rico's Graduate School of Public Administration in 1989.

2. A complete copy of my CV can be found below (Attachment A).

**Involvement in Obel Cruz-Garcia's Case**

3. I was asked by the Office of Capital and Forensic Writs ("OCFW"), current counsel for Obel Cruz-Garcia, to conduct a review of the disciplinary records of Mr. Cruz-Garcia's incarceration in the Puerto Rico Department of Corrections and Rehabilitation from 2002 to 2010. Specifically, I was asked to provide a summary of these records and to provide an opinion as to Mr. Cruz-Garcia's conduct as an inmate during the time he was incarcerated in Puerto Rico.



4. As part of my assessment, I reviewed Mr. Cruz-Garcia's disciplinary records from his incarceration in the Puerto Rico Department of Corrections and Rehabilitation from 2002 to 2010. I also reviewed affidavits of prison chaplains and a prison psychologist who knew Mr. Cruz-Garcia during the time he was incarcerated in Puerto Rico: Irma Iglesias Cruz, Luis Gonzales Martinez, Ivan Negron Vera, Jimmy Osorio, and Dr. Alejandro Lebron. Finally, I also reviewed the trial testimony of Efrain Esmurria Hernandez, a correctional officer with the Puerto Rico Department of Corrections and Rehabilitation, who testified that a window in Mr. Cruz-Garcia's cell was found broken in October 2003.

**Summary of Findings**

5. My review of the records indicates that Mr. Cruz-Garcia had exemplary conduct during the nearly eight years he was incarcerated in Puerto Rico. There was nothing in the records to indicate that Mr. Cruz-Garcia was a dangerous or violent inmate; in fact, just the opposite—Mr. Cruz-Garcia was

2

EXHIBIT 40  Page002

a model inmate who was trusted and highly regarded by prison staff. If the only evidence the jurors at Mr. Cruz-Garcia's capital trial heard with respect to his incarceration in Puerto Rico was the testimony of Mr. Esmurria-Hernandez, they were left with an inaccurate and incomplete portrayal of Mr. Cruz-Garcia's conduct as an inmate.

**Analysis**



6. Mr. Cruz-Garcia entered the Puerto Rico prison system in June 2002 as a pretrial detainee on kidnapping and weapons charges. Puerto Rico does not have a system of county jails like states do; instead, pretrial detainees are housed in regional detention centers that are part of the Puerto Rico prison system. The time spent in prison awaiting trial is then credited to an inmate's sentence. The reports of Mr. Cruz-Garcia's conduct during pretrial detention were excellent; he did not have any disciplinary infractions.

7. In September 2002, Mr. Cruz-Garcia was sentenced to sixteen years in prison for kidnapping. The Puerto Rico prison system has three custody levels: minimum, medium, and maximum. Mr. Cruz-Garcia began his prison sentence at the medium custody level, as would be expected given the level of offense and other criteria based on the classification assessment instrument.

8. The records indicate that in October 2003, during a routine cell search, a window in Mr. Cruz-Garcia's cell was discovered to be broken, and a rope made of bed sheets and a map of Puerto Rico were found in the cell. After the incident, Mr. Cruz-Garcia was submitted to a body search, where the correctional officers found a cellphone on his body. Following this incident, a disciplinary report was written, and Mr. Cruz-Garcia was reclassified to the maximum custody level. Mr. Esmurria-Hernandez testified at Mr. Cruz-Garcia's capital trial about this incident and stated that the window went to

3

EXHIBIT 40  Page003

the outside and that a person could fit through the opening in the window, suggesting that the incident constituted a planned escape.

9. Mr. Esmurria-Hernandez's trial testimony was misleading in several different respects: Mr. Esmurria-Hernandez testified that Mr. Cruz-Garcia was "arrested" following this incident; in truth, Mr. Cruz-Garcia was put in the segregation unit pending a review of the case. There is no record of any charges filed against Mr. Cruz-Garcia for this incident, nor was his sentence increased. Instead, the matter was dealt with administratively. There is no record that prison officials further pursued the matter in the Puerto Rico court system. Moreover, Mr. Cruz-Garcia shared his cell with another inmate, and there was no indication that it was Mr. Cruz-Garcia, rather than his cellmate, who had broken the window or possessed the contraband that was found in the cell. In Puerto Rico, when an inmate is reclassified to  maximum custody for a disciplinary infraction, he will typically be required to serve at least one year in maximum custody. Mr. Cruz-Garcia, however, was reclassified back to medium custody after only nine months in maximum custody, which further indicates that Mr. Cruz-Garcia's conduct during his time in maximum security was exemplary. In fact, after two years in medium custody, Mr. Cruz-Garcia was reclassified to minimum custody. The fact that Mr. Cruz-Garcia went from maximum custody to minimum custody within less than three years is remarkable; most inmates would take much longer than that.

10. During his time in medium and minimum custody, Mr. Cruz-Garcia's behavior was likewise remarkable for both the absence of any disciplinary infractions and the awarding of special privileges to Mr. Cruz-Garcia for good behavior. During this time, Mr. Cruz-Garcia worked as a carpenter building furniture for the prison corporation. Mr. Cruz-Garcia was

4

EXHIBIT 40  Page004

permitted to leave the prison grounds to work at this job. In the furniture shop, Mr. Cruz-Garcia would have had access to tools that he could have used to execute an escape. Mr. Cruz-Garcia was also permitted outside the perimeter of the prison for cleaning duties. Mr. Cruz-Garcia also worked maintenance jobs and in the kitchen, which would have entailed working in the outside perimeters of the institution. The fact that Mr. Cruz-Garcia was given these privileges indicates that his conduct was excellent and that he was not seen by the prison authorities as a security threat. Mr. Cruz-Garcia did not receive a single disciplinary infraction during this time.



11. Inmates in Puerto Rico can accrue good time credit by working at a job, taking coursework, and going to psychological therapy. During his time in prison, Mr. Cruz-Garcia received a total of 485 days of good time credit, which is an extraordinarily high number. Sixty-five of these days were for "extraordinary performance," which indicates that Mr. Cruz-Garcia far exceeded what was expected of an inmate in terms of work ethic and behavior. In Puerto Rico, the law provides extraordinary good time credit for inmates that perform heroic acts, working above and beyond the average performance, and completing university or other vocational courses. Mr. Cruz-Garcia received twelve reports of job performance during this time; all of them described him as a "good" or "excellent" worker. Mr. Cruz-Garcia also took several Bible school courses by correspondence during this time and also completed a course titled "Learning to Live without Violence."

12. Mr. Cruz-Garcia had a U.S. immigration detainer filed against him by the U.S. Department of Immigration and Naturalization since the beginning of his prison term. This detainer was reissued on March 19, 2007. In 2008, Mr. Cruz-Garcia was referred by the prison authorities, based on his record of good conduct, to the Correctional Community Programs, which include

5

EXHIBIT 40  Page005

house detention with electronic monitoring, faith-based residential units, and halfway houses, among other programs. However, he did not qualify for these programs because he was under a U.S. immigration detainer at the time.

13. After one and a half years in minimum custody, a warrant notification was issued by the State of Texas on Mr. Cruz-Garcia due to the capital charges pending against him in that state, and thus, he was reclassified to maximum custody pending extradition to Texas as per prison policy. The reclassification to maximum custody was based solely on the warrant notification and not related in any way to Mr. Cruz-Garcia's conduct as an inmate. Mr. Cruz-Garcia remained in maximum custody for seventeen months until he was extradited to Texas in early 2010. The records indicate that Mr. Cruz-Garcia did not receive a single disciplinary infraction during the time he was awaiting extradition.



14. The affidavits of Ms. Iglesias Cruz, Mr. Gonzales Martinez, Mr. Negron Vera, Mr. Osorio, and Dr. Lebron indicate that Mr. Cruz-Garcia was well-respected and trusted by the prison staff and the prison population. Their opinions are supported by Mr. Cruz-Garcia's record of good conduct and the privileges that were bestowed upon him during his incarceration.

15. The records of Mr. Cruz-Garcia's nearly eight years in the Puerto Rico prison system did not contain a single record of violence against staff or other inmates. Puerto Rico's correctional system has a long history of violence between inmates and between inmates and prison staff, including riots, disturbances, and deaths between prison gangs. These problems have been reported by historians, criminologists, news outlets, and other human and civil rights organizations, like the Puerto Rico Chapter of the ACLU, Puerto Rico Civil Rights Commission, the US District Court and other state

6

EXHIBIT 40  Page006

and legislative agencies.  The fact that Mr. Cruz-Garcia was able to avoid engaging in prison violence speaks well of his attitude towards prison staff and other inmates.  Drug contraband is also a serious security problem in Puerto Rico's prison system.  Because of this, drug testing often reflects high levels of drug use by inmates. Mr. Cruz-Garcia underwent one drug test during the time he was incarcerated; the results were negative.  It is my opinion that Mr. Cruz-Garcia was not a violent or dangerous inmate; to the contrary, his behavior in prison was excellent.  If all that the jury heard of Mr. Cruz-Garcia's conduct as a prisoner in Puerto Rico was the testimony of Mr. Esmurria-Hernandez, they were left with an incomplete and inaccurate portrayal of his conduct as an inmate over the course of nearly eight years.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct to the best of my knowledge and that this affidavit was executed on February 25th, 2016 in San Juan, Puerto Rico.

Lorenzo Villalba-Rolón

Affidavit No.  1339

Subscribed and sworn  before me by Lorenzo Villalba-Rolón, of legal age, married, Consultant and resident of Bayamón, Puerto Rico, personally known to me. On San Juan, Puerto Rico, this February 25th, 2016.

Notary Public



7

EXHIBIT 40  Page007

# Attachment A

EXHIBIT 40  Page008

# Lorenzo Villalba-Rolón

Jardines de Caparra BB-I  Calle 45
Bayamón, PR  00959
(787) 319-6620 • lorenzovillalba@gmail.com

## Executive Summary

Successful, highly ethical and altruistic professional with over thirty (30) years of business experience in the development, restructuring, and negotiation of governmental and nongovernmental ventures.  Fifteen (15) of these years have been in the legislature with proven success in policy development, solution of complex issues, and regulatory compliance.  Thriving career marked by rapid promotions to positions of increasing responsibility.  Demonstrated accuracy, attention to detail, high performance standards and ability to work well in team environment.  Very capable of exercising initiative, achievement and independent judgment handling multiple projects concurrently.  Effective communication skills, proficient in both written and spoken English, Spanish, and basic knowledge of French.  Unique combination of organization, effectiveness and professional demeanor which demonstrates competence and poise in professional and social settings.

## Employment

**Independent  Consultant,** San Juan, Puerto Rico
1998 – Present

- Advisor to the Secretary of the Department of Corrections and Rehabilitation in all matters of prison and community programs for adults and juveniles including project manager for new correctional institutions, Prison Rape Elimination Act (P.R.E.A.) and other issues as assigned.

- Consultant to the Chairperson of the Office of the Special Independent Prosecutor in charge of a historical research project of the institution including an analysis of legislative amendments, court decisions, statistics and other relevant information.

- Served as legislative consultant in the Senate of Puerto Rico in all matters related to legislation in areas of public security, criminal justice, adult and juvenile institutions, and community programs.  Additionally attended public hearings, ordinary and extraordinary sessions to analyze legislation.

EXHIBIT 40  Page009

- Consultant to the *Puerto Rico Civil Rights Commission* in charge of setting and managing a Correctional Observatory which includes a Center of Research and Internship Programs in areas related to the Correctional System.

- Consultant to *Hogares Crea Rehabilitation Centers* providing services for juveniles with drug problems.  Set policies and procedures directed to obtain accreditation of the American Correctional Association.

- Consultant in the *Municipality of Aguas Buenas* serving as liaison between the Mayor and the town council in all matters related to legislation including drafting resolutions and ordinances, attended ordinary and extraordinary sessions, reviewed all legislations from the state legislature and drafted legislative memoranda and technical support to the State Executive Branch.

- Served as advisor for non-profit organizations (arts, community, and health related) for identifying legislative funds, drafted annual reports and supported in the coordination of special events.

**Inter American University, Colegio Universitario de San Juan, University of Phoenix, San** Juan and Bayamón, P.R.
*Criminal Justice Professor* 2007 -2013

- Prepare and deliver lectures to graduate and undergraduate students on topics such as Law and Corrections, Law and Society and Addiction, Criminality and Rehabilitation.

- Prepare course materials such as syllabi, homework assignments, and handouts.

- Plan, evaluate, and revise curricula, course content, and course materials and methods of instruction at departmental level.

- Maintain student attendance records, grades, office hours, and other required records.

**Puerto Rico Civil Rights Commission,** Hato Rey, Puerto Rico
*Executive Director* 2007 to 2008

- Responsible for all administrative duties of the Commission including putting forth public policy, budgetary y, legislative and other relevant issues.

- Served as liaison with the press as well as other governmental and nongovernmental entities.

EXHIBIT 40  Page010

# Professional Highlights

- Corrections Ombudsman(1979-1981), Chairman of the Parole Board (1987-1991), Corrections Administrator , (1992) and Executive Director of Puerto Rico's Civil Rights Commission of the Commonwealth of Puerto Rico,(2007-2008).

- Legislative aide for the Senate Judiciary Committee of the Senate of Puerto Rico   (1982 to 1985) and member of the Advocacy Team of the AARP Puerto Rico State Office (2000-2002).

- Consultant for the Puerto Rico's Civil Rights Commission, Senate of Puerto Rico, the Municipality of Aguas Buenas , Hogares Crea, Inc.(Rehabilitation Centers for juveniles), and the Biennale of Photography, Inc. (1999-2009)

- Executive Director of the Dr. García Rinaldi Foundation (1994-1997).

- Professor for Universidad del Sagrado Corazón, John Dewey College and trainer for Wackenhut Corrections Corporation (1994-2002).

- Actively participated in special activities: 135th Congress of the American Correctional Association in Baltimore, Maryland; National Debate on Prisons and Punishment of the American Association for Correctional and Forensic Psychology (AAFCP) in Alexandria, Virginia; Latin America Civil Rights Summit, Mexico City (2005-2008).

- Member of the Georgetown University Alumni Association, Puerto Rico Chapter and the American Correctional Association, Alexandria, Virginia.

## Education

Georgetown University Law Center, Washington, D.C.
**Juris Doctor**

University of Puerto Rico, Rio Piedras, P.R.
**Master in Arts of Public Administration**

Université de Fribourg, Fribourg, Switzerland
**Georgetown Junior Year Abroad**

Georgetown University, School of Foreign Service, Washington, D.C.
**Bachelor in Science in Foreign Service**

EXHIBIT 40  Page011