DECLARACION JURADO DE DOCTOR ALEJANDRO LEBRON

Yo, Doctor Alejandro Lebrón, digo y declaro lo siguiente:

1. Mi nombre es Alejandro Lebrón. Yo soy un doctor de psicología clínica en San Juan, Puerto Rico. Yo he trabajado en esta área por aproximadamente cuarenta años y he recibido mi licenciatura en psicología de la Universidad Interamericana en 1971, mi maestría en psicología de la Universidad de Puerto Rico en 1982, y mi doctorado en psicología de la universidad de Carlos Albizu en 2007. Yo primero conocí a Obel Cruz-Garcia en 2006 o 2007 en el Rio Piedra cárcel localizada en San Juan Puerto Rico. En ese tiempo, yo estaba trabajando en la cárcel por cerca de tres anos, proveyendo servicios y asistencia para la salud mental de los presos que necesitaban o pidieron mi asistencia. Obel empezó a visitarme regularmente porque deseaba servicios psicológicos. Obel no fue obligado a visitarme por terapia; el tomo la decisión de visitarme por terapia, nadie ordeno que me visitara. Yo creo que el estaba batallando con ansiedad y depresión, atribuido a su encarcelamiento. 

2. Yo recuerdo mis conversaciones con Obel muy claramente. Yo estaba bien impresionado por cuan inteligente, analítico, y lógico el era. Yo tuve la impresión que Obel era honesto. El era un firme creyente en Cristianismo y era versado en la biblia. El es la única persona que yo he conocido que sabe la biblia más bien que yo.

3. Aunque Obel empezó a visitarme para mejorar a su salud mental, yo también aprendía algo nuevo después de cada conversación con el. Obel me ayudo a mirar y analizar a la biblia más cuidadosamente. De través de Obel, yo también descubrí que yo podía usar religión como un

EXHIBIT 45 Page001

terreno común para conectar con pacientes y ayudarles obtener un mejor estado mental mientras que estaban encarcelados.

4. Durante me tiempo trabajando en la cárcel, yo conocí a muchos presos que causaban problemas o que se portaban mal. Obel no era uno de ellos. El era considerado, honesto, y no un creador de problemas. Nunca se metió en problemas. Basado en mis experiencias con el, yo no tuve la impresión que Obel era un peligro a los demás en la cárcel o que el pudría ser un peligro a la sociedad fuera de la cárcel después de salir de la cárcel. Yo creo que Obel estaba viviendo en la poblacion general con los demás presos en la cárcel y no separado. Obel también estaba cerca de y tuvo interacciones con otros civiles, como doctores, trabajadores sociales, y otro personal de la cárcel.



5. La primera vez que yo tuve conocimiento de la situación en la cual Obel se encuentra ha sido cuando Adrian de la Rosa, el investigador trabajando con los abogados de Obel en Tejas me contacto en Marzo de 2015. Yo no sabía de la situación de Obel. Yo si estaba consciente de la convicción por secuestro que Obel recibió en Puerto Rico porque era la ofensa por cual estaba encarcelado. Pero yo nunca esperaba que el podría ser involucrado en este tipo de crimen. Yo creo que Obel era—y todavía es—una buena persona.

6. Aunque digamos que Obel estaba involucrado en la crimen por cual fue condenado en Tejas, yo no creo que el Obel que yo conocí muchos anos después era la misma persona. Yo creo en redención, y yo se, por mi proprio experiencia trabajando con presos que las personas si pueden cambiar.

7. Ningunos de los abogados de Obel me han contactado antes de su juicio en 2013. Se me hubieran contactado, yo les hubiera ayudado lo mas

EXHIBIT 45 Page002



posible. Yo hubiera testificado. Si me hubieran preguntado a testificar, yo hubiera hablado de Obel todo lo que sabia de Puerto Rico: que el era un hombre espiritual, que creía que haciendo hechos buenos y viviendo una vida Cristiana eran las más importantes cosas que pudría hacer.

8. Yo he leído y revisado esta declaración jurada de __3__ páginas.

Yo declare bajo pena de perjurio y bajo las leyes del estado de Texas, que lo anterior es verdadero y correcto según mi mejor conocimiento y que este declaración jurado fue ejecutado el __12__ de Marzo, 2015 en San Juan, Puerto Rico

_____
Dr. Alejandro Lebrón

Subscribed and sworn to before me on March 12, 2015.

_____
Notary Public, State of Texas



ADRIAN DE LA ROSA
Notary Public, State of Texas
My Commission Expires
JUNE 30, 2018

Notary without Bond

EXHIBIT 45 Page003

## CERTIFICATION OF SARAH VALENZUELA

I, Sarah Valenzuela, state and declare as follows:

1. My name is Sarah Valenzuela. I currently live in Austin, Texas. I am fluent in both English and Spanish.

2. I am a native Spanish speaker, born in El Paso, Texas. Spanish was my first language, and I speak Spanish regularly with several family members. I also took formal Spanish classes for native speakers during high school. I am able to speak, read, and write in Spanish proficiently.

3. I am currently a third-year law student at the University of Texas School of Law. I expect to receive my Juris Doctor (J.D.) degree in May of 2015. In September of 2015, I will begin a one-year clerkship with the Honorable Philip R. Martinez, a federal district judge in El Paso, Texas.

4. In January of 2015, I began a law-student clerkship with the Office of Capital Writs ("OCW"). In March 2015, I was asked by the OCW to translate several English-language affidavits into Spanish.

5. The attached notarized affidavit signed by *Doctor Alejandro Lebrón* is the Spanish-language affidavit I translated from an English-language affidavit provided to me by the OCW. The English-language version of the affidavit is also here attached.

EXHIBIT 45 Page004

6. I declare under penalty of perjury under the laws of the State of Texas that the signed document is a true and correct translation of the English-language text that I originally received.

Executed on 4/28/15

Sarah Valenzuela

Subscribed and sworn to before me on April 28, 2015

Notary Public, State of Texas

ADRIAN DE LA ROSA
Notary Public, State of Texas
My Commission Expires
JUNE 30, 2018

Notary without Bond

EXHIBIT 45 Page005

# AFFIDAVIT OF DOCTOR ALEJANDRO LEBRON

I, Doctor Alejandro Lebrón, state and declare as follows:

1. My name is Alejandro Lebrón. I am a doctor of clinical psychology in San Juan, Puerto Rico. I have worked in this area for about forty years and received my degree in psychology from the Interamerican University in 1971, my masters in psychology from the University of Puerto Rico in 1982, and my doctorate in psychology from Carlos Albizu University in 2007. I first met Obel Cruz-Garcia in 2006 or 2007 in the Rio Piedra jail located in San Juan, Puerto Rico. At that time, I was working at the prison for about three years, providing services and assistance for the mental health of prisoners who needed or asked for my assistance. Obel began to visit me regularly because he wanted psychological services. Obel was not forced to see me for therapy; He made the decision to visit me for therapy, no one ordered him to visit me. I think he was struggling with anxiety and depression, attributed to his imprisonment.

2. I remember my conversations with Obel very clearly. I was impressed by how intelligent, analytical, and logical he was. Obel also struck me as an honest person. He was a strong believer in Christianity and was well-versed in the Bible. In fact, he is probably the only person I have ever met who knew the Bible better than I did.

3. Although Obel began visiting with me to improve his overall mental health, I came away from each meeting feeling like I had learned something through our discussions, too. Obel helped me look at the Bible more closely myself and better analyze it. Through Obel, I also discovered that I could use religion as a common ground to connect with and help patients to achieve a better mental state while in the jail.

1

EXHIBIT 45 Page006

4. During my time working at the jail, I knew many prisoners who would cause trouble or misbehave. Obel was not one of them. He was thoughtful, honest, and not a troublemaker. I did not know of him ever getting into trouble. He did not get involved in problems. Based on my experiences with him, I did not have the impression that Obel was a danger to others in the jail or that he would be a danger to society after being released from prison. I believe Obel was living in the general population of the prison, with the other inmates and he was not separated. Obel was also around and interacted with other civilians, such as doctors, social workers, and other jail staff.

5. The first time I heard about Obel's current situation was when I was contacted in March 2015 by Adrian de la Rosa, the investigator working with Obel's post-conviction attorneys in Texas. I had not heard about Obel's current situation. I was aware of the kidnapping conviction Obel had received in Puerto Rico, as that was the reason he was in jail. I would not have expected him to have been involved in this sort of crime. I believe that Obel was—and is—a good person.

6. Even if Obel was involved in the crime he has been convicted of in Texas, I do not believe that the Obel I knew, many years later, was the same individual. I believe in redemption, and I know from my experience working with prisoners that people can change.

7. None of Obel's lawyers contacted me before his trial in 2013. If they had, I would have helped as much as I could. I would have testified. If I had been asked to testify, I would have talked about the Obel that I knew in Puerto Rico: a deeply spiritual man, who believed that doing good work and living a good Christian life was the most important thing he could do.

8. I have read and reviewed this ____ page affidavit.

2

EXHIBIT 45 Page007

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct to the best of my knowledge and that this affidavit was executed on _____ of March, 2015, in _____.

_____

Dr. Alejandro Lebrón

Subscribed and sworn to before me on March __, 2015.

_____

Notary Public, State of Texas

3

EXHIBIT 45 Page008