REPORTER'S RECORD

**VOLUME 8 OF 9 VOLUMES**

TRIAL COURT CAUSE NO. 1364839

COURT OF APPEALS NO. 14-14-00142-CR

| | |
|---|---|
| ROGELIO AVILES-BARROSO ) | IN THE DISTRICT COURT |
| Appellant ) | |
| ) | |
| VS. ) | HARRIS COUNTY, TEXAS |
| ) | |
| THE STATE OF TEXAS ) | |
| Appellee ) | 337TH JUDICIAL DISTRICT |

*******************

**GUILT-INNOCENCE PROCEEDINGS**

*******************

On the 4th day of February, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Renee Magee, Judge presiding, held in Houston, Harris County, Texas;

Proceedings reported by computer-aided transcription/stenograph shorthand.

EXHIBIT 98 Page 001

```
 1                    A P P E A R A N C E S

 2


 3       MS. NATALIE TISE
         Assistant District Attorney
 4       SBOT NO. 00795683
         1201 Franklin
 5       Houston, Texas  77002
         PHONE:  713.755.5800
 6       **ATTORNEY FOR THE STATE OF TEXAS**

 7


 8            - AND -

 9


10       MR. CHARLES BROWN
         SBOT NO. 03101400
11       708 Main Street, Suite 790
         Houston, Texas  77002-3200
12       PHONE:  713.222.0733
         **ATTORNEY FOR THE DEFENDANT**

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 98 Page 002

```
 1                          I N D E X
                            VOLUME 8
 2                   (GUILT-INNOCENCE PROCEEDINGS)

 3    FEBRUARY 4, 2014
```

|  | PAGE | VOL. |
|---|---|---|
| Closing Argument by State's Attorney | 31 | 8 |
| Closing Argument by Defense Attorney | 36 | 8 |
| Closing Argument by State's Attorney | 52 | 8 |
| Jury retired for deliberations | 73 | 8 |
| Testimony read back | 76 | 8 |
| Verdict Received | 82 | 8 |
| Polling of the jury | 82 | 8 |
| Punishment assessed | 85 | 8 |
| Sentencing | 86 | 8 |
| Reporter's Certificate | 87 | 8 |
| Word Glossary | End of Volume | |

**ALPHABETICAL WITNESS INDEX**

(No witnesses this volume)

**EXHIBIT INDEX**

(No exhibits this volume)

EXHIBIT 98 Page 003

```
 1  He didn't care about that.  He decided he wanted to tell
 2  the truth and that's all he ever wanted to do.
 3              I could charge Rudy tomorrow.  I could
 4  charge him tomorrow.  There's no statute of limitations
 5  on capital murder.  And there is nothing to stop me.
 6  Yet, he came here and told you what he told you with no
 7  deal.  No assurances, no promises, nothing.  And how did
 8  that benefit him?  Well, you have to think about the
 9  timing of all this.  He's sitting up in prison in
10  Pennsylvania doing his federal time.  And absolutely, it
11  was almost over.  He is going to get out.
12              So, what does he decide to do?  For the
13  first time in years when the police come calling:  Rudy,
14  tell us what you know about the murder of this little
15  boy.  I am almost done with my federal time, but I think
16  I will go ahead and put myself right in the big middle
17  of this capital murder case.  Never done it before, but
18  today I will.  I'm just going to tell them:  I am right
19  in the middle of this capital murder case.  Don't have a
20  lawyer.  Don't ask for any advice.  Don't know anything
21  about the law of parties.  Don't know whether I am
22  injecting myself and could become criminally responsible
23  for all the things that I say.  I'm going to put myself
24  right in the big middle of it less than a year before I
25  am due to get out of prison.
```

EXHIBIT 98 Page 004

```
 1              How does that benefit Rudy?  It doesn't.
 2  And guess what?  It didn't.  Because he's still sitting
 3  there in that orange jumpsuit in custody when he could
 4  be home in the Dominican with his family.  He could have
 5  gotten on that witness stand after he got an attorney
 6  here in Houston and his attorney goes:  Hey, Rudy,
 7  there's some things you ought to know.  There is this
 8  thing called the law of parties.  And you've already
 9  given your statement and you've already put yourself in
10  the middle of this case, and you can't change that, but
11  what you can do is get on the witness stand and say:  I
12  invoke my Fifth Amendment right not to testify.  I'm not
13  going to get on the witness stand and swear under oath
14  that I was part of a criminal offense.  Could have told
15  him that and he could have not said a word from that
16  witness stand, and there wouldn't have been a damn thing
17  I could do about it.  But he didn't do that.  Even after
18  advised by his lawyer of his rights, he did not do that.
19              I cannot tell you how exceptionally rare
20  what Rudy did is.
21              MR. BROWN:  Objection.  That's outside the
22  spectrum of the case.
23              THE COURT:  That's sustained.
24              MS. TISE:  You didn't have to like him.
25  You don't have to agree with the decisions that he
```

EXHIBIT 98 Page 005