## DECLARACIÓN JURADA DE LUIS GONZÁLEZ MARTÍNEZ

Yo, Luis González Martínez, digo y declaro lo siguiente:

1. Mi nombre es Luis González Martínez. Actualmente soy capellán voluntario de la cárcel en varias diferentes instalaciones correccionales en San Juan, Puerto Rico. Me he ofrecido como capellán voluntario durante unos veintiocho años, y he trabajado en varias instalaciones correccionales diferentes. También trabajé para "El Nuevo Día", el principal diario en Puerto Rico, por unos trece años. Mantuve la maquinaria y tendía al papel para imprimir el periódico.

2. La primera vez que conocí Obel Cruz García fue cuando era un preso alojado en la cárcel 352 en el complejo penitenciario Oso Blanco. Iván Negrón era el capellán supervisor en ese tiempo. Conocí Obel por cerca de cuatro años. Yo lo conocí personalmente a través de sesiones de terapia y de trabajar con él en la capilla, así como nuestras interacciones durante los servicios religiosos. Yo fui su predicador también. Me trasladé a una instalación diferente después de esos cuatro años, pero todavía me mantenía en contacto con Obel. Recuerdo bien a Obel a causa de su fe y de su manera de hablar de su fe. También me acuerdo que él era un gran trabajador y una influencia positiva en general a todo el mundo a su alrededor. Estaba seguro de su fe, y hablaba de sus sentimientos a los demás, y eso era contagioso.

3. Obel ganó la confianza del personal penitenciario en el 352. Me pasé mucho tiempo hablando con él y trabajando con él, y nunca consideré que Obel fuera un preso peligroso o violento. En los años que yo conocía Obel, él estaba ubicado en la población general y se le dieron

EXHIBIT 108 Page 001

enormes privilegios que no a cualquiera le dan. Se permitía abrir la capilla, lo que significaba que tenía llaves importantes y el movimiento sin supervisión dentro de la instalación. También se le dio el privilegio de trabajar en una mueblería, que de nuevo es un trabajo importante solo por los más de confianza. Tengo que insistir en que él ganó tremenda confianza del personal de la cárcel y los capellanes. Durante mi tiempo de trabajo en la instalación de 352, nunca escuché ninguna queja sobre Obel o supe que tuvo problemas disciplinarios. Obel era bien respetado por todos en las instalaciones, incluyendo los administradores de la cárcel, los guardias, y los demás confinados.

4. Una cosa que me impresionó de Obel fue la fuerza de su fe en Dios. Solo a través de hablar con él, yo mismo aprendí mucho acerca de Dios y la espiritualidad. Lo vi cambiar y transformar en un lugar donde es difícil de cambiar porque sucede tanto detrás de esas paredes. Él venció todo eso y era capaz de mantener su fe. No solo eso, él fue capaz de ayudar a otras personas, otros presos, entrar en un buen camino también. Él era muy digna y muy admirable. Estoy agradecido a Obel por pensar en mí como su amigo, su familia, y su pastor.

5. Después de mis veintiocho años de trabajo en los centros penitenciarios, he visto y trabajado con miles de presos, y Obel se destaca como uno de los individuos y los presos mejores comportados y de mayor confianza que puedo recordar.

6. Nunca fui contactado por los abogados litigantes de Obel. Si yo hubiera sido contactado, habría hecho cualquier cosa que podía para ayudar a Obel. Creo que habría sido importante que el tribunal de

EXHIBIT 108 Page 002

Estados Unidos escuchara que exitoso fue Obel mientras estaba en prisión en Puerto Rico. Podría haber hablado al jurado acerca de mi confianza en Obel y la profundidad de su fe en Dios. Creo que esta información habría ayudado al jurado decidir condenarlo a la cadena perpetua.

7. Si me hubieran llamado como testigo, habría testificado del contenido de esta declaración jurada.
8. He leído y revisado esta declaración jurada de tres páginas.

Yo declaro bajo pena de perjurio y bajo las leyes de _Puerto Rico_ que lo anterior es verdadero y correcto según mi mejor conocimiento y que esta declaración jurada fue ejecutada el _11_ de _Agosto_ 2015 en _San Juan, Puerto Rico_.

LRGM

Aff. Num 19-289

Luis González Martínez

Jurado y afirmado ante mi este _11_ día _Agosto_, 2015.

Firma del Notario Público

Imprimir, Escribir o Sello del Notario Público Comisionado:

9397
08/06/2015
$5.00
$5 Sello Asistencia Legal
50593-2015-0806-57483679

EXHIBIT 108 Page 003

## CERTIFICATION OF ADRIÁN DE LA ROSA

I, Adrián de la Rosa, state and declare as follows:

1. My name is Adrián de la Rosa. I currently live in Austin, Texas. I am fluent in both English and Spanish.

2. I am a native Spanish speaker, born in Big Spring, Texas. Spanish was my first language, and I speak Spanish regularly with several family members. I also took formal Spanish classes for native speakers during high school and college. I am able to speak, read, and write in Spanish proficiently.

3. I am a Post-Conviction Investigator at the Office of Capital Writs (OCW) in Austin, Texas. As part of my investigation, I was asked by the OCW to translate several English-language affidavits into Spanish.

4. The attached notarized affidavit signed by Luis González Martínez is the Spanish-language affidavit I translated from an English-language affidavit provided to me by the OCW. The English-language version of the affidavit is also here attached.

5. I declare under penalty of perjury under the laws of the State of Texas that the signed document is a true and correct translation of the English-language text that I originally received.

Executed on August 25, 2015

Adrián de la Rosa

Subscribed and sworn to before me on August 25, 2015

_____
Notary Public, State of Texas



JEREMY SCHEPERS
Notary Public, State of Texas
My Commission Expires
MARCH 20, 2017
Notary without Bond

EXHIBIT 108 Page 004

# AFFIDAVIT OF LUIS GONZÁLEZ MARTÍNEZ

I, Luis González Martínez, state and declare as follows:

1. My name is Luis González Martínez. I currently volunteer as a prison chaplain at several different correctional facilities in San Juan, Puerto Rico. I have volunteered as a chaplain for about twenty-eight years, and I have worked at several different facilities. I also worked at "el Nuevo Dia," the main newspaper in Puerto Rico, for about thirteen years. I maintained the machinery and tended to the paper in order to print the newspaper.

2. I first met Obel Cruz-Garcia when he was an inmate housed at the 352 jail in the Oso Blanco prison complex. Iván Negrón was the head chaplain at the time. I knew Obel for about four years. I knew him personally through counseling sessions and working with him at the chapel, as well as our interactions during church services. I was his preacher as well. I moved to a different facility after those four years, but I still kept in contact with Obel. I remember Obel well because of his faith and the way he spoke of his faith. I also remember him being a hard worker and an overall positive influence on everyone around him. He was secure in his faith, and he spoke of his feelings to others, and that was infectious.

3. Obel earned the trust of the prison staff at the 352. I spent considerable time speaking to him and working with him, and I never considered Obel to be a dangerous or violent inmate. In the years that I knew Obel, he was housed in general population and he was given tremendous privileges that not just anyone is given. He was allowed to open the chapel, which meant he had important keys and unsupervised movement within the facility. He was also given the privilege of working on furniture, which again is an important job for only the most trusted. I have to stress that he gained

1

EXHIBIT 108 Page 005

tremendous trust and confidence from the jail staff and the chaplains. During my time working at the 352 facility, I never heard any complaints about Obel or knew him to have any disciplinary problems. Obel was well respected by everyone in the facility, including jail administrators, guards, and other inmates.

4. One thing that impressed me about Obel was the strength of his faith in God. Just through speaking with him, I myself learned a lot about God and spirituality. I saw him change and transform in a place where it is hard to change because so much happens behind those walls. He overcame all of that and was able to keep his faith. Not only that, he was able to help other people, other inmates, get on a good path as well. He was very dignified and very admirable. I am grateful to Obel for thinking of me as his friend, his family, and his pastor.

5. After my twenty-eight years working in correctional facilities, I have seen and worked with thousands of inmates, and Obel stands out as one of the best behaved and most trusted individuals and inmates I can recall.

6. I was never contacted by Obel's trial attorneys. If I had been contacted, I would have done anything I could to help Obel. I think it would have been important for the court in the United States to hear how successful Obel was in prison in Puerto Rico. I could have spoken to the jury about my trust in Obel and the depth of his faith in God. I think this information would have helped the jury decide to sentence him to life in prison.

7. Had I been called as a witness, I would have testified to the contents of this affidavit.

8. I have read and reviewed this three-page affidavit.

2

EXHIBIT 108 Page 006

I declare under penalty of perjury under the laws of Puerto Rico that the foregoing is true and correct to the best of my knowledge and that this affidavit was executed on the _____ of August, 2015 in San Juan, Puerto Rico.


_____

Luis Gonzalez Martinez


Subscribed and sworn to before me on _____, 2015.


_____

Notary Public

3

EXHIBIT 108 Page 007