AP-77025

CAUSE #1384794
337TH DISTRICT COURT
OBEL CRUZ-GARCIA
VS
THE STATE OF TEXAS
VOLUME III OF III
COURT OF CRIMINAL APPEALS

FILED IN
COURT OF CRIMINAL APPEALS

NOV 1 5 2013

Abel Acosta, Clerk

# CAUSE #1384794

# OBEL CRUZ-GARCIA

# VS.

# THE STATE OF TEXAS

# 337TH DISTRICT COURT

# VOLUME III OF III



CAUSE NO. <u>1384794</u>

| | |
|---|---|
| THE STATE OF TEXAS | IN THE <u>337th</u> DISTRICT COURT |
| VS. | COUNTY CRIMINAL COURT AT |
| <u>Obel Cruz-Garcia</u> | LAW NO. _____ |
| **(Name of Defendant)** | |
| AKA _____ | OF HARRIS COUNTY, TEXAS |

### PRECEPT TO SERVE

BY THE ORDER OF THE COURT, YOU ARE HEREBY COMMANDED to deliver forthwith to the above named defendant, a prisoner in your custody, the copy of the original now on file in said Court.

☐    MOTION TO ADJUDICATE GUILT

☐    MOTION TO REVOKE COMMUNITY SUPERVISION

☒    CAPITAL VENIRE FOR THE WEEK OF <u>May 31, 2013</u>

☐    SHOW CAUSE ORDER FOR CONTEMPT

☐    OTHER _____

HEREIN FAIL NOT and due return make hereof, without delay.

WITNESS my Hand and Seal of Office, at Houston, Texas, on <u>May 20, 2013</u>.

CHRIS DANIEL,
District Clerk, Harris County, Texas

By _____
Deputy

RECEIVED 2013 MAY 20 PM 12:39 INMATE RECORDS HARRIS COUNTY SHERIFF'S OFFICE

---

### SHERIFF'S RETURN

Came to hand _____ A.D., 19_____, at _____ o'clock ____ .m.

And executed _____ A.D., 19_____, at _____ o'clock ____ m.
By delivering the accompanying Copy to the defendant, in person.

Sheriff of Harris County, Texas

By _____, Deputy

**FILED**
Chris Daniel
District Clerk

JUN 03 2013

Time: _____
Harris County, Texas
By _____
Deputy

: 00452

Cause No. _1384794_

**The State of Texas**
v.

_OBEL CRUZ-GARCIA_

a/k/a _____

**F I L E D**
Chris Daniel
District Clerk

JUN 11 2013

Time: _____
By _____
Harris County, Texas

In the _337th_ District Court of Harris, County Texas

## APPLICATION FOR SUBPOENA

The defendant makes this application for issuance of subpoena to the person(s) listed below. The testimony of this / these person(s) is believed to be material to the defense in the case on trial.

_Mireya Perez-Garcia_          _Joel Cruz-Garcia_
_Kilometro 12 Casa 71_          _P.O. Box 31198_
_Los Naranjos De Nagua_        _San Juan, Puerto Rico_
_Dominican Republic_                      _00929-2198_

_____          _____

_____          _____

Return on _July 15, 2013_ at 8:45 a.m.

Contact the DEFENSE attorney upon receipt using the following information:

Name: _R.P. SKIP CORNELIUS_
Texas Bar Card #: _04831500_
Address: _2028 Buffalo Terrace_
Telephone #: _713 237 8547_
Fax #: _713 528 0153_
E-mail address: _rpcornelius@hotmail.com_

1 of 1

: 00453

F I L E D
Chris Daniel
District Clerk

JUN 1 4 2013

Time: _____
Harris County, Texas

**NO. 1384794**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE ~~DISTRICT COURT OF~~ |
| | § | |
| V.S. | § | HARRIS COUNTY, TEXAS |
| | § | |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

## MOTION TO SUPPRESS RESULTS OF ALL DNA TESTING

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **OBEL CRUZ-GARCIA**, the Defendant in the above-styled and numbered causes, by and through his attorney of record, R. P. CORNELIUS, and respectfully requests the Court to suppress and exclude from evidence in the above cause the results of all DNA testing in this matter for the following good and sufficient reasons:

I.

Defendant is being tried for capital murder and the State is seeking the death penalty.

II.

At trial the State will seek to introduce evidence that defendant's DNA was found at the scene of the alleged crime. Specifically from physical evidence recovered from a witness who claims to have been sexually assaulted by defendant and from a cigar allegedly found at the scene of the alleged sexual assault. It is further alleged that defendant kidnapped the 6 year old child of this witness and later had this child murdered.

III.

This DNA evidence was submitted to the former now defunct HPD crime lab for processing and storage.

: 00454

IV.

Later this same evidence was submitted to other labs for testing and the State seeks to offer the results of such testing.

V.

Various investigations and reports have been generated over the years as to the incompetence of the employees and the former now defunct HPD crime lab itself which led to its complete closing. These investigations include the time period that the DNA evidence in this case was handled by the former now defunct HPD crime lab.

VI.

The investigations found rampant false test results, mishandling of evidence, improper police procedure, misconduct, criminal activity, and incompetence.

VII.

Defendant asserts that he will be denied a fair trial and due process if any evidence is admitted at his trial that was stored and/or processed by the former now defunct HPD crime lab.

VIII.

Said reports include, but are not limited to, five Reports of the Independent Investigator for the Houston Police Department Crime Laboratory and Property Room, Michael R. Bromwich; the Final Report of Michael R. Bromwich; HPD Internal Affairs Reports; and reports from Chief's Command/Legal Services to Lester Blizzard concerning internal complaints on certain employees of the former now defunct HPD crime lab.

For these reasons Defendant moves this Honorable Court grant this motion and suppress the results of all DNA testing in this case.

2

: 00455

Respectfully submitted,

_____
R. P. CORNELIUS
2028 Buffalo Terrace
Houston, Texas 77019
(713) 237-8547
State Bar No. 04831500
COURT APPOINTED
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MOTION TO SUPPRESS**

**RESULTS OF ALL DNA TESTING** was sent by hand delivery to the Assistant District Attorney

for Harris County, Texas on this the /4 day of June, 2013.

_____
R. P. CORNELIUS
Court Appointed
Attorney for Defendant

Denied
HRM
6-19-13

3

: 00456

F I L E D
Chris Daniel
District Clerk

JUN 14 2013

Harris County, Texas

Time: _____
By _____
        Deputy

———— IN CAMERA MOTION ————

NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| V.S. | § | HARRIS COUNTY, TEXAS |
| | § | |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

### REQUEST FOR ADVANCE OF FUNDS
### FOR NECESSARY TESTIMONY BY OUT-OF-STATE WITNESS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **OBEL CRUZ-GARCIA**, the Defendant in the above-styled and numbered cause, by and through his attorney of record, R. P. CORNELIUS, and respectfully requests the Court to grant this request for out of court expenses for the following good and sufficient reasons:

I.

In accordance with Article 35.27, Section 6, of the Texas Code of Criminal Procedure, defendant requests the advance of funds from the treasury of this County to obtain the testimony of _Joel Cruz-Garcia_, a necessary and material witness for the defendant.

II.

Article 35.27 of the Texas Code of Criminal Procedure requires that this witness be compensated by the State for reasonable and necessary transportation, meal and lodging expenses incurred by reason of attendance at a proceeding in this state.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

IMAGED

: 00457

## III.

Article 35.27 of the Texas Code of Criminal Procedure also requires that reimbursement be forthcoming only if the witness travels here by commercial transportation or personal vehicle and is lodged in a commercial lodging establishment.

## IV.

By terms of the Uniform Act To Secure Attendance Of Witnesses From Without The State, the State is required to tender compensation to such witnesses in the amount reasonably necessary to enable the witness to attend the proceedings.

## V.

Pursuant to Article 35.27 of the Texas Code of Criminal Procedure, this request is a prerequisite to the County's advance of the funds to the proposed witness. Defendant requests a check from the treasury to accompany documentation to the witness to secure the appearance of said witness.

## VI.

Defendant represents that such testimony from said witness is necessary and material in this capital murder case now on trial in the above referenced District Court.

## VII.

Defendant, and Defense Counsel, represent that the amount of $2,215.89 will, in all likelihood, be sufficient to obtain the testimony of said witness.

WHEREFORE, PREMISES CONSIDERS, Defendant, **OBEL CRUZ-GARCIA**, prays that the Court grant this motion in camera and order that such costs as are necessary be paid by the state.

Respectfully submitted,

R.P. CORNELIUS
2028 Buffalo Terrace
Houston, Texas 77019
(713) 237-8547
State Bar No. 04831500

COURT APPOINTED
ATTORNEY FOR DEFENDANT

3

: 00459

NO. 1384794

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| V.S. | § | HARRIS COUNTY, TEXAS |
| | § | |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

## ORDER

On this 14 day of June, 2013, came on to be heard DEFENDANT'S REQUEST FOR ADVANCE OF FUNDS FOR NECESSARY TESTIMONY BY OUT-OF-STATE WITNESS and it is the Order of the Court that said motion should be granted.

It is the Order of the Court that an amount of $2215.89, is approved for out of court expenses consistent with this motion. If additional funds are needed trial counsel is directed to make an additional request.

Judge, 337th District Court
of Harris County, Texas

4

: 00460

F I L E D

Chris Daniel
District Clerk

JUN 1 4 2013    P.4

--------- IN CAMERA MOTION ---------

NO. 1384794

Time: _____
         Harris County, Texas
By _____
         Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| V.S. | § | HARRIS COUNTY, TEXAS |
| | § | |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

## REQUEST FOR ADVANCE OF FUNDS
## FOR NECESSARY TESTIMONY BY OUT-OF-STATE WITNESS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **OBEL CRUZ-GARCIA**, the Defendant in the above-styled and numbered cause, by and through his attorney of record, R. P. CORNELIUS, and respectfully requests the Court to grant this request for out of court expenses for the following good and sufficient reasons:

I.

In accordance with Article 35.27, Section 6, of the Texas Code of Criminal Procedure, defendant requests the advance of funds from the treasury of this County to obtain the testimony of _Mireya Perez-Garcia_, a necessary and material witness for the defendant.

II.

Article 35.27 of the Texas Code of Criminal Procedure requires that this witness be compensated by the State for reasonable and necessary transportation, meal and lodging expenses incurred by reason of attendance at a proceeding in this state.

IMAGED

: 00461

III.

Article 35.27 of the Texas Code of Criminal Procedure also requires that reimbursement be forthcoming only if the witness travels here by commercial transportation or personal vehicle and is lodged in a commercial lodging establishment.

IV.

By terms of the Uniform Act To Secure Attendance Of Witnesses From Without The State, the State is required to tender compensation to such witnesses in the amount reasonably necessary to enable the witness to attend the proceedings.

V.

Pursuant to Article 35.27 of the Texas Code of Criminal Procedure, this request is a prerequisite to the County's advance of the funds to the proposed witness. Defendant requests a check from the treasury to accompany documentation to the witness to secure the appearance of said witness.

VI.

Defendant represents that such testimony from said witness is necessary and material in this capital murder case now on trial in the above referenced District Court.

VII.

Defendant, and Defense Counsel, represent that the amount of $#2,374^{89}$ will, in all likelihood, be sufficient to obtain the testimony of said witness.

WHEREFORE, PREMISES CONSIDERS, Defendant, **OBEL CRUZ-GARCIA**, prays that

the Court grant this motion in camera and order that such costs as are necessary be paid by the state.

Respectfully submitted,

R.P. CORNELIUS
2028 Buffalo Terrace
Houston, Texas 77019
(713) 237-8547
State Bar No. 04831500

COURT APPOINTED
ATTORNEY FOR DEFENDANT

3

: 00463

NO. 1384794

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
|---|---|---|
| V.S. | § § § | HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § § | 337TH JUDICIAL DISTRICT |

## ORDER

On this __14__ day of __June__, 2013, came on to be heard DEFENDANT'S REQUEST FOR ADVANCE OF FUNDS FOR NECESSARY TESTIMONY BY OUT-OF-STATE WITNESS and it is the Order of the Court that said motion should be granted.

It is the Order of the Court that an amount of __$2,374.89__, is approved for out of court expenses consistent with this motion. If additional funds are needed trial counsel is directed to make an additional request.

_Renee Magee_
Judge, 337th District Court
of Harris County, Texas

4

: 00464

FILED
Chris Daniel
District Clerk

138479Ч

JUN 1 9 2013

Time: _____
Harris County, Texas
By: _____
Deputy

**CAUSE:** ~~1289188~~

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| VS | § | HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | 337th DISTRICT COURT |

# <u>AFFIDAVIT FOR BUSINESS RECORDS</u>

On, **June 17, 2013, Roger H. Runnels** appeared before me, and under oath affirmed the truth of the following: "My name is **Roger H. Runnels".** I am over the age of 21 and of sound mind, declare a full understanding of facts presented in this affidavit. **I am the "911" custodian of records** for the **Technology Services Division; a Division** of the Houston Police Department; these "911" Messages are kept within the regular course of business by **Technology Services, a Division** within the **Houston Police Department.** These message records have been produced by individuals fully authorized to do so by **Technology Services, a Division** with the **Houston Police Department,** of whom have acquired knowledge of the event or incident when these message records were produced pursuant to daily business and at the time or near the time of occurrence of these recorded messages. The provided "911" cassette tape for 09/30/1992 at 23:43:55 – 23:45:04 hrs. is a **true** and **correct copy** of the **master** message record.

**Affiant**

*Roger H. Runnels*

Sworn to and subscribed to before me this 17th day of June, 2013.

**Notary Public in and for the State of Texas** _____

JIM E. ADKINS
NOTARY PUBLIC
STATE OF TEXAS
MY COMMISSION EXPIRES:
09/09/2013

July 2008

: 00465



13 84794
Obel Cruz-Garcia
911 Cassette tape

**Original**

## CAUSE NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | IN THE 337th DISTRICT COURT |
| VS. | * | |
| OBEL CRUZ-GARCIA | * | OF HARRIS COUNTY, TEXAS |

**FILED**
Chris Daniel
District Clerk
JUN 19 2013
By_____
Harris County, Texas
Deputy

### NOTICE TO DEFENDANT OF STATE'S INTENT TO USE EXTRANEOUS OFFENSES AND PRIOR CONVICTION

COMES NOW THE STATE OF TEXAS, by and through its undersigned Assistant District Attorney, Justin K. Wood, and files this Notice of Intention to Use Evidence of Prior Convictions and Extraneous Conduct and would show the Court the following:

1. Cause No. 1384794 is currently pending in this court.
2. Pursuant to Rules 404(b) and 609 of the Texas Rules of Evidence and Rule 37 of the Texas Rules of Criminal Procedure, the undersigned Assistant District Attorney hereby gives notice to the Defendant and his counsel that the State intends to offer evidence of prior convictions and extraneous offenses of this Defendant.
3. A summary of the evidence of prior convictions and extraneous offenses is as follows:

The following are **prior convictions** that the State intends to introduce at trial:

Carrying a Weapon / CCCL 5 / Harris County, Texas / Cause No. 9037380 / 30 days jail / 10.2.90

Kidnapping / Magistrate Court, Higher Court of San Juan / San Juan, Commonwealth State of Puerto Rico / Crim. No. KDC2002G0009 / 16 years confinement / 09.27.02

Kidnapping / Magistrate Court, Higher Court of San Juan / San Juan, Commonwealth State of Puerto Rico / Cause No. K DC2002G0010 / 16 years confinement / 09.27.02

Possession/Use of Deadly Weapon without a License / Magistrate Court, Higher Court of San Juan/ San Juan, Commonwealth State of Puerto Rico / Cause No. K LA2002G0130 / 5 years confinement / 09.27.02

Possession/Use of Deadly Weapon without a License / Magistrate Court, Higher Court of San Juan/ San Juan, Commonwealth State of Puerto Rico / Cause No. K LA2002G0131 / 5 years confinement / 09.27.02

Possession/Use of Deadly Weapon without a License / Magistrate Court, Higher Court of San Juan / San Juan, Commonwealth State of Puerto Rico / Cause No. K LA2002G0132 / 5 years confinement / 09.27.02

1

: 00467

The following are **prior extraneous offenses/crimes/wrongs/bad acts** committed by the Defendant that the State intends to introduce at trial:

During the time Defendant was living in Houston, Texas, in the late 1980's and continuing through1992, the Defendant was known to use and sell multiple controlled/illegal substances, predominantly cocaine, on a regular basis.

Prior to and during 1992 and throughout the course of their relationship while in Harris County, Texas, the Dominican Republic and in Puerto Rico, the Defendant committed multiple acts of family violence against Angelita Rodriguez on various occasions, including striking her with his hands, choking her and threatening to kill Angelita Rodriguez.

On or before, July 1, 1989, in Harris County, Texas, the Defendant intentionally and knowingly caused the death of Saul Cedillo Flores, by strangulation with an unknown object.

**Sometime between 1989 and 1992, the Defendant, along with Carmelo Santana and Rogelio Aviles, committed or attempted to commit a robbery against an individual named "Alejandro" by threatening "Alejandro" with a knife. This incident occurred at an apartment off of Edgebrook Drive in Houston, Harris County, Texas.**

**Sometime between 1989 and 1992, the Defendant and an unknown male committed or attempted to commit a robbery against an individual named "Betico". This incident occurred at an apartment located at the edge of Loop 610 in Houston, Harris County, Texas. The Defendant and the unknown male were driven to the apartment by Carmelo Santana. After the incident, the Defendant admitted to also sexually assaulting a female inside the apartment at that location.**

On or about, June 27, 1991, in Harris County, Texas, the Defendant intentionally and knowingly possessed a controlled substance, namely cocaine. Defendant was charged with Possession of Controlled Substance in Cause No. 602326 in the 337th District Court of Harris County, Texas, and the case was dismissed after the Defendant failed to appear for court and jumped bond in October 1992.

On or about 1991 or 1992, in Harris County, Texas, the Defendant tied up and threatened Bienvenido Melo.

On or about 1991 or 1992, in Harris County, Texas, the defendant tied up and threatened Carmelo Martinez- Santana.

On or about, June 22, 1992, in Harris County, Texas, the Defendant, while in the course of committing theft of property and with intent to maintain control of the property, intentionally and knowingly threatened and placed Maria Alonso, Isidra Santa-Marie and Victor Salinas in fear of imminent bodily injury or death, and the Defendant used and exhibited a deadly weapon, namely a firearm.

On or about, September 30, 1992, in Harris County, Texas, the Defendant intentionally and knowingly caused the penetration of the sexual organ of Diana Garcia, by placing his sexual organ in the sexual organ of Diana Garcia, without the consent of Diana Garcia, namely, by compelling Diana Garcia to submit and participate by the use of physical force and violence and by acts and words the Defendant placed Diana Garcia in fear that death or serious bodily injury would be inflicted upon her.

2

**On or about, October 1, 1992, soon after the commission of the charged offense, the Defendant told Angelita Rodriguez that he was leaving for Puerto Rico and did in fact purchase a plane ticket for Puerto Rico and leave soon thereafter for Puerto Rico (or Dominican Republic), thereby showing evidence of flight.**

On or about, August 6, 1993, the Defendant was charged with the offense of felony possession of cocaine-failure to appear in the United States District Court for the Southern District of Texas that was connected to the bond forfeiture of the Possession of Controlled Substance charge arising out of the 337th District Court of Harris County, Texas.

On or about October 11, 2001, in or around San Juan Puerto Rico, during the course of the kidnapping of Andres Buten and William Garay, the defendant assaulted Manuel Buten by firing a shot at Manuel Buten with a deadly weapon, namely a firearm.

On or about October 11, 2001, in or around San Juan Puerto Rico, during the course of the kidnapping of Andres Buten and William Garay, the defendant used deadly weapons, namely, a firearm, a knife, a hammer, a metal pipe, and his hands and feet to repeatedly strike Andres Buten and William Garay on the head, face, mouth, body, feet and other extremities while holding them captive for 3 days.

On or about October 11, 2011, in or around San Juan Puerto Rico during the course of the kidnapping of Andres Buten and William Garay, the defendant used a deadly weapon, namely a knife to cut the penis of William Garay.

On or about October 11, 2001, in or around San Juan Puerto Rico, during the course of the kidnapping of Andres Buten and William Garay, the defendant threatened to cut off body parts, maim, and kill Andres Buten and William Garay on multiple occasions in multiple ways while holding them captive for three days.

On or about October 11, 2001, in or around San Juan Puerto Rico, during the course of the kidnapping of Andres Buten and William Garay, the defendant demanded a ransom of money and/or drugs from Manuel Buten.   The defendant repeatedly told Manuel Buten that he intended to kill Andres Buten and William Garay and asked Manuel Buten whether he wanted them returned "fried or in a salad."

On or about October 11, 2001, in or around San Juan Puerto Rico, during the course of the kidnapping of Andres Buten and William Garay, the defendant engaged in a sexual act with an underage unknown female in the presence of Andres Buten and physically and verbally taunted Andres Buten during the course of the sexual act.

On or about October 11, 2001, in or around San Juan Puerto Rico, during the course of the kidnapping of Andres Buten and William Garay, the defendant covered their eyes with pillow cases and blind folds, restrained them with coat hangers and handcuffs, confined them in a small bathroom for days, tortured them physically, urinated on them, and deprived them of food and water.

On or about October 13, 2001, in or around San Juan  Puerto Rico, during the course of the kidnapping of Andres Buten and William Garay, the defendant avoided capture by law enforcement by evading arrest in a motor vehicle and on foot.

3

On or about October 20, 2001, in or around San Juan Puerto Rico, after being charged with the kidnapping of Andres Buten and William Garay, the defendant communicated bribes and threats through family members and others to complainants Buten and Garay in order to convince them to drop the charges against him.

On or about, October 10, 2003, while confined in a correctional facility in Puerto Rico, it was discovered that the Defendant and fellow inmate Daniel Garcia Vega planned an escape from the facility when guards discovered a covered hole in the floor of the cell and property in the cell of Defendant and Vega, including a knife, a map, a cell phone, and a rope constructed of sheets.

The defendant admitted to using drugs while in a correctional facility in Puerto Rico.

The defendant is a citizen of the Dominican Republic who entered the United States as well as the Commonwealth of Puerto Rico on multiple occasions since the late 1980's illegally and remained in both locations for periods of time as an undocumented alien.

**On or about, September 23, 2012, the Defendant was disciplined for destroying/altering/ damaging county property for disassembling a county razor while housed in the Harris County Jail. He received seven days loss of visitation and commissary privileges as a result. (Defense counsel was provided a copy of the records pertaining to this disciplinary action)**

**On or about, October 9, 2012, the Defendant was disciplined for possession of unauthorized clothing/bedding while housed in the Harris County Jail. He received seven days loss of visitation and commissary privileges probated for 15 days as a result. (Defense counsel was provided a copy the records pertaining to this disciplinary action)**

Respectfully submitted,

Justin K. Wood
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing notice was delivered to counsel for the defense by facsimile/certified mail/hand delivery on the ___19___ day of ___June___, 2013.

Justin K. Wood
Assistant District Attorney

4

: 00470

FILED

Chris Daniel
District Clerk

JUN 20 2013

Time: _____
Harris County, Texas

By _____
Deputy

---------- IN CAMERA MOTION ----------

NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| V.S. | § | HARRIS COUNTY, TEXAS |
| | § | |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

## MOTION FOR PAYMENT OF OUT-OF-STATE WITNESS EXPENSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **OBEL CRUZ-GARCIA**, Defendant in the above-styled and numbered cause, by and through his attorney of record, R. P. CORNELIUS, and respectfully requests the Court to grant this Motion For Payment of Out-Of-State Witness Expenses for the following good and sufficient reasons:

I.

Defendant is charged with capital murder and the State is seeking the death penalty.

II.

The following witnesses are necessary and material to the defense of his case: MIREYA PEREZ-GARCIA and JOEL CRUZ-GARCIA. (Subpoena is attached).

III.

Their testimony is needed during the week of July 15, 2013.

IV.

Defendant requests that all expenses of travel, lodging, and meals be paid by Harris County to secure the testimony of said witnesses.

IMAGED

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

: 00471

WHEREFORE, PREMISES CONSIDERS, Defendant, **OBEL CRUZ-GARCIA**, prays that

the Court grant this motion in camera and order that such costs as are necessary be paid by the State.

Respectfully submitted,

R.P. CORNELIUS
2028 Buffalo Terrace
Houston, Texas 77019
(713) 237-8547
State Bar No. 04831500

COURT APPOINTED
ATTORNEY FOR DEFENDANT

: 00472

NO. 1384794

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| V.S. | § | HARRIS COUNTY, TEXAS |
| | § | |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

### ORDER

On this _20_ day of _June_, 2013, came on to be heard DEFENDANT'S

MOTION FOR PAYMENT OF OUT-OF-COURT WITNESS EXPENSES and it is the Order of the

Court that said motion should be granted.

RENEE MAGEE, JUDGE
337th District Court
of Harris County, Texas

3

: 00473

**SUBPOENA**

CAUSE NO. _1384794_

THE STATE OF TEXAS

IN THE _337_ DISTRICT COURT

vs.

COUNTY CRIMINAL COURT
AT LAW NO. _____

_Obel Cruz-Garcia_

OF HARRIS COUNTY, TEXAS

TO ANY PEACE OFFICER OF _____ COUNTY OR OTHER PERSON AUTHORIZED TO SERVE THIS PROCESS IN ACCORDANCE WITH ART. 24.01(b) C.C.P. - GREETINGS:

Name Of Person Other Than A Peace Officer To Execute Summons: _____

**YOU ARE HEREBY COMMANDED TO SUMMON** _____

| | |
|---|---|
| _Mireya Perez-Garcia_ | _Joel Cruz-Garcia_ |
| _Kilometro 12 Casa 71_ | _P.O. Box 31198_ |
| _Los Naranjos De Nagua_ | _San Juan, Puerto Rico 00929-2198_ |
| _Dominican Republic_ | |

if to be found in your County, to be and appear before the above designated court in and for Harris County, on _____ at 8:45 a.m., to give evidence on behalf of the State and Defendant in the above styled cause, and there to remain from day to day, and from term to term until discharged by the Court.  Disobedience of this subpoena may result in confinement in the Harris County Jail and a fine.

**WITNESS** my official signature on June 12, 2013

Upon receipt contact DEFENSE/STATE using
the information listed below:

NAME: _R P Cornelius_

ADDRESS: _2028 Buffalo Terrace_

BAR#: _04831500_

TELEPHONE NUMBER: _713 237 8547_

FAX NUMBER: _713 528 0153_

E-MAIL ADDRESS: _rpcornelius@hotmail.com_

**CHRIS DANIEL**, District Clerk
Harris County, Texas

_____, Deputy

: 00474

SHERIFF'S RETURN

CAUSE NO. *1384794*

| THE STATE OF TEXAS | IN THE __*337½*__ DISTRICT COURT |
|---|---|
| vs. | COUNTY CRIMINAL COURT AT LAW NO. _____ |
| *OBEL CRUZ-GARCIA* | OF HARRIS COUNTY, TEXAS |

Came to hand on the _____ day of _____ 20 _____ and executed by summoning the within named witness _____ in person, in the County of        , at the dates as herein stated, viz:

| Date of Service | Name | Miles | Direction | Fee For Service | Fee For Mileage | Total Fee |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | TOTAL FEE... | |

and not executed as to witness _____

the diligence used in finding said witness _____ being _____

_____

and who after due search and diligent inquiry, cannot be found in        County, Texas.


Sheriff of        County, Texas

By _____, Deputy

: 00475

SUBPOENA BY STATE FOR WITNESS IN DISTRICT COURT.

No.**1384794**

The State Of Texas                              In The District Court No. **337th**
vs.                                             Of Harris County, Texas
**OBEL CRUZ-GARCIA**                            Offense **Capital Murder**

To Any Peace Officer or person authorized in accordance with Art. 24.01(b) C.C.P.-Greetings:

YOU ARE HEREBY COMMANDED TO SUMMON THE FOLLOWING NAMED WITNESS(ES) WHOSE LOCATION IN **Harris COUNTY** AND VOCATION AS FAR AS KNOWN, I STATE BELOW:

HPD Officer J.L. Kennedy (Emp # 064938; Re: Incident # 058851589Q)

Juli Rehfuss, HPD Crime Lab (Emp # 113315; RE: Incident # 105758592X)

Deputy Donald Bonner, HCSO

Detention Officer Darrell Novak, HCSO

Fingerprint Expert, HCSO

Dr. Dwayne Wolf
Harris County Institute of Forensic Sciences
RE:  Case # 89-4198; Autopsy Date – 07.01.1989; Decedent – Saul Flores

Bonnie Fiveash
Classification Department, TDCJ
861 IH-45 North
Huntsville, TX 77320

Adolph "AC" Alonzo
P.O. Box 251
Kennedy TX 78119

Raymond Gonzales
City of Houston Office of Inspector General – Legal Department
900 Bagby 4th floor
Houston TX 77002

Johnny Lopez
908 Avenue A
South Houston TX 77587

Tina Longoria Perez
8600 Theta St. #2703
Houston TX 77034

Manuel Buten (Service by DA Investigator)

Andres Castillo-Buten (Service by DA Investigator)

William Garay Martinez (Service by DA Investigator)

Juan DeJesus Rodriguez (Service by DA Investigator)

Efrain Esmurria (Service by DA Investigator)

David Davis, HCSO Classifications

: 00476

if found in your county, to appear before the Honorable **Renee Magee**, District Court No. **337th**, Harris County, Texas, on **July 8, 2013** at 8:45 a. m., to give evidence in behalf of the State and Defendant in the above styled cause wherein the State of Texas is the Plaintiff and **OBEL CRUZ-GARCIA** is the Defendant, and to remain there from day to day, term to term until discharged by the Court.   The testimony of said witness(es) is believed to be material to the State.

**Justin K. Wood**
Assistant District Attorney
Harris County, Texas

Herein Fail Not, and due return make of this writ _____

this _____ day of **MAY 2-2 2013** _____ A.D. 20____.

Witness my official Signature _____

CHRIS DANIEL
DISTRICT CLERK
HARRIS COUNTY, TEXAS

BY _____
Deputy

: 00477

The State Of Texas      §            OBEL CRUZ-GARCIA

                           §    Return

County Of Harris      §            1384794

The undersigned being a peace officer under the laws of the State of Texas certifies that the foregoing subpoena came to hand on the same day issued and that it was executed on the _____ day of _____, 20___, by virtue of the following action, to-wit: , and that the following persons were served in the below described fashion:

_____

_____

_____

_____

_____

_____

_____

_____

### SHERIFF'S RETURN

Came to hand on the ___22___ day of ___June___, 20_13_, and executed by summoning the within witness

_____ in person, in the County of Harris, at the dates as herein stated, viz:

| DATE OF SERVICE | | NAME | MILES | DIRECTION | FEE FOR SERVICE | FEE FOR MILEAGE | TOTAL FEE |
|---|---|---|---|---|---|---|---|
| 6-2-13 | | 1-2 HPD | | | | | |
| | | 3-5 HCSO | | | | | |
| | | 6-11 MATUD | | | | | |
| | | 12-16 DA to Sem | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | TOTAL FEE | | |

and not executed as to witness _____, _____ the diligence used

in finding said witness _____, being _____

_____

and who after due search and diligent inquiry, can not be found in Harris County, Texas.

ADRIAN GARCIA
Sheriff of Harris County, Texas

By _____ Deputy.

**FILED**
Chris Daniel
District Clerk

JUN 21 2013

Time: _____
Harris County, Texas
By _____
Deputy

: 00478

614

APPLICATION FOR SUBPOENA BY STATE FOR WITNESS IN DISTRICT COURT
Justin K. Wood - June 11, 2013

No.**1384794**

The State Of Texas

vs.

**OBEL CRUZ GARCIA**

In The District Court No. **337th**
Of Harris County, Texas
Offense **Capital Murder**

Please issue a subpoena in the above styled cause for the following named witness(es) whose location in **Harris** County and vocation, as far as known, I state below:

Dr. Sharon Derrick
Harris County Institute of Forensic Sciences
1885 Old Spanish Trail
Houston TX 77054
\*\*RE: Case #92-7262

Officer W.T. Bredemeyer – DA INVESTIGATOR TO SERVE

Kerry Gillie – DA INVESTIGATOR TO SERVE

Please contact ADA Justin Wood at 713.755.3376 immediately upon receipt of this subpoena.

if found in your county, to appear before the Honorable **Renee Magee**, District Court No. **337th**, Harris County, Texas, on **July 8, 2013** at 8:45 a. m., to give evidence in behalf of the State and Defendant in the above styled cause wherein the State of Texas is the Plaintiff and **OBEL CRUZ GARCIA** is the Defendant, and to remain there from day to day, term to term until discharged by the Court. The testimony of said witness(es) is believed to be material to the State.

Justin K. Wood
Assistant District Attorney
Harris County, Texas

Sworn to and subscribed before me, this _____ 12 _____ day of _____ June _____ A. D. 20 13

CHRIS DANIEL
DISTRICT CLERK
HARRIS COUNTY, TEXAS

BY _____ Deputy

3

SUBPOENA BY STATE FOR WITNESS IN DISTRICT COURT.

No.**1384794**

The State Of Texas

vs.

**OBEL CRUZ GARCIA**

In The District Court No. **337th**
Of Harris County, Texas
Offense **Capital Murder**

To Any Peace Officer or person authorized in accordance with Art. 24.01(b) C.C.P.-Greetings:

YOU ARE HEREBY COMMANDED TO SUMMON THE FOLLOWING NAMED WITNESS(ES) WHOSE LOCATION IN **Harris** COUNTY AND VOCATION AS FAR AS KNOWN, I STATE BELOW:

Dr. Sharon Derrick
Harris County Institute of Forensic Sciences
1885 Old Spanish Trail
Houston TX  77054
**RE:  Case #92-7262

Officer W.T. Bredemeyer – DA INVESTIGATOR TO SERVE

Kerry Gillie – DA INVESTIGATOR TO SERVE

Please contact ADA Justin Wood at 713.755.3376 immediately upon receipt of this subpoena.

if found in your county, to appear before the Honorable **Renee Magee**, District Court No. **337th**, Harris County, Texas, on **July 8, 2013** at 8:45 a. m., to give evidence in behalf of the State and Defendant in the above styled cause wherein the State of Texas is the Plaintiff and **OBEL CRUZ GARCIA** is the Defendant, and to remain there from day to day, term to term until discharged by the Court.  The testimony of said witness(es) is believed to be material to the State.

Justin K. Wood
Assistant District Attorney
Harris County, Texas

Herein Fail Not, and due return make of this writ _____  Witness my official Signature

this _____ **12** day of ___Jun___ A.D. 20 **13**.

CHRIS DANIEL
DISTRICT CLERK
HARRIS COUNTY, TEXAS

BY _____ Deputy

| The State Of Texas | § | OBEL CRUZ GARCIA |
| County Of Harris | § Return | 1384794 |

The undersigned being a peace officer under the laws of the State of Texas certifies that the foregoing subpoena came to hand on the same day issued and that it was executed on the _____ day of _____, 20___, by virtue of the following action, to-wit: , and that the following persons were served in the below described fashion:

_____

_____

_____

_____

_____

_____

_____

### SHERIFF'S RETURN

Came to hand on the ___12___ day of ___Sowe___, 20_13_, and executed by summoning the within witness

_____ in person, in the County of Harris, at the dates as herein stated, viz:

| DATE OF SERVICE | | | NAME | MILES | DIRECTION | FEE FOR SERVICE | FEE FOR MILEAGE | TOTAL FEE |
|---|---|---|---|---|---|---|---|---|
| 6-21-13 | | | 1- MAIN  2,3 DA ROBSON | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | TOTAL FEE | |

and not executed as to witness _____, _____ the diligence used

in finding said witness _____, being _____

_____

and who after due search and diligent inquiry, can not be found in Harris County, Texas.

ADRIAN GARCIA
Sheriff of Harris County, Texas

By _____ Deputy.

FILED
Chris Daniel
District Clerk
JUN 21 2013
Harris County, Texas
Time: _____
By _____
Deputy
: 00481



Chris Daniel
District Clerk

JUN 2 7 2013

CAUSE NO. 1384794

Time: _____
Harris County, Texas
By _____
Deputy

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

## *STATE'S SUPPLEMENTAL BRADY NOTICE*

COMES NOW, THE STATE OF TEXAS, by and through her Assistant District Attorney, and hereby files this Supplemental *Brady* Notice, and would show the Court the following:

### I.

The Defendant in the above styled and numbered cause has been charged with the offense of CAPITAL MURDER. The Defendant is set for jury trial on JULY 8, 2013. The matters disclosed in this motion have been a part of the State's file, have been discussed with defense counsel on prior occasions, and have been made available to defense counsel for inspection.

### II.

Pursuant to *Brady*, the State discloses the following information to defense counsel.

A.   A presumptive test for blood on the complainant Angelo Garcia, Jr.'s, clothing was negative.

Respectfully submitted,

NATALIE TISE
Asst District Attorney
Harris County, Texas

1

: 00482

## CERTIFICATE OF SERVICE

I, NATALIE TISE, do hereby certify that a copy of the foregoing document was served on SKIP CORNELIUS by ~~facsimile~~ on  6/26/13  .
email

NATALIE TISE
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
713-755-6106 (office)

2

: 00483



CAUSE NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | JANUARY TERM, A. D., 2013 |

Members of the Jury:

The defendant, Obel Cruz-Garcia, stands charged by indictment with the offense of capital murder, alleged to have been committed on or about the 30th day of September, 1992, in Harris County, Texas. The defendant has pleaded not guilty.

A person commits the offense of murder if he:

(1) intentionally or knowingly causes the death of an individual; or

(2) intends to cause serious bodily injury and intentionally or knowingly commits an act clearly dangerous to human life that causes the death of an individual.

A person commits the offense of capital murder if he intentionally commits murder, as hereinbefore defined in paragraph (1), and the person intentionally commits the murder in the course of committing or attempting to commit the offense of kidnapping. Kidnapping is a felony.

"In the course of committing" means conduct that occurs in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of an offense.

"Attempt" to commit an offense occurs if, with specific intent to commit an offense, a person does an act amounting to

IMAGED

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

1

: 00484

more than mere preparation that tends, but fails, to effect the commission of the offense intended.

A person commits the offense of kidnapping if he intentionally or knowingly abducts another person.

A person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to:

(1) facilitate the commission of a felony or the flight after the attempt or commission of a felony; or

(2) inflict bodily injury on him; or

(3) terrorize him or a third person.

Sexual assault and burglary of a habitation are felonies.

The term "abduct" means to restrain a person with intent to prevent his liberation by:

(A) secreting or holding him in a place where he is not likely to be found; or

(B) using or threatening to use deadly force.

The term "restrain" means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him.

Restraint is "without consent" if it is accomplished by force, intimidation, or deception.

"Consent" means assent in fact, whether express or apparent.

"Deadly force" means force that is intended or known by the person acting to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

2

"Effective consent" means assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by force, threats, deception or coercion.

"Theft" is the unlawful appropriation of property with intent to deprive the owner of said property and without the owner's effective consent.

"Owner" means a person who has a greater right to possession of the property than the defendant.

"Possession" means actual care, custody, control, or management of the property.

"Deadly weapon" means anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

The definition of intentionally relative to the offense of capital murder is as follows:

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

4

: 00486

The definitions of intentionally and knowingly relative to the offenses of murder and sexual assault are as follow:

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The definitions of intentionally and knowingly relative to the offenses of kidnapping, aggravated kidnapping and burglary of a habitation are as follow:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

5

: 00487

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

By the term "conspiracy" as used in these instructions, is meant an agreement between two or more persons with intent, that they, or one or more of them, engage in conduct that would constitute the offense. An agreement constituting a conspiracy may be inferred from acts of the parties.

Before you would be warranted in finding the defendant guilty of capital murder, you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant was in the course of committing or attempting to commit the felony offense of kidnapping of Angelo Garcia, Jr., as alleged in this charge, but also that the defendant specifically intended to cause the death of Angelo Garcia, Jr., by stabbing Angelo Garcia, Jr. with a deadly weapon, namely a sharp instrument; or you must find from the evidence beyond a

6

reasonable doubt that the defendant, Obel Cruz-Garcia, with the intent to promote or assist in the commission of the offense of capital murder, if any, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" in stabbing Angelo Garcia, Jr., if he did, with the intention of thereby killing Angelo Garcia, Jr.; or you must find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Obel Cruz-Garcia, entered into an agreement with Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the felony offense of kidnapping, or sexual assault or burglary of a habitation, and pursuant to that agreement they did carry out their conspiracy, and while in the course of committing said conspiracy, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" intentionally caused the death of Angelo Garcia, Jr. by stabbing Angelo Garcia, Jr. with a deadly weapon, namely a sharp instrument while in the course of committing the kidnapping of Angelo Garcia, Jr. and the murder of Angelo Garcia, Jr. was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy; or

You must find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant was in the course of committing or attempting to commit the felony offense of kidnapping of Angelo Garcia, Jr., as alleged in this charge, but also that the defendant specifically intended to cause the death of Angelo Garcia, Jr., by an unknown manner or

7

means; or you must find from the evidence beyond a reasonable doubt that the defendant, Obel Cruz-Garcia, with the intent to promote or assist in the commission of the offense of capital murder, if any, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy", if he did, with the intention of thereby killing Angelo Garcia, Jr.; by an unknown manner or means or you must find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Obel Cruz-Garcia, entered into an agreement with Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the felony offense of kidnapping, or sexual assault or burglary of a habitation, and pursuant to that agreement they did carry out their conspiracy, and while in the course of committing said conspiracy, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" intentionally caused the death of Angelo Garcia, Jr. by an unknown manner or means while in the course of committing the kidnapping of Angelo Garcia, Jr., and the murder of Angelo Garcia, Jr. was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy, and unless you so find, then you cannot convict the defendant of the offense of capital murder.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, the defendant, Obel Cruz-Garcia, did then and there unlawfully, while in the course of committing or attempting

8

: 00490

to commit the kidnapping of Angelo Garcia, Jr., intentionally cause the death of Angelo Garcia, Jr., by stabbing Angelo Garcia, Jr. with a deadly weapon, namely a sharp instrument; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" did then and there unlawfully while in the course of committing or attempting to commit the kidnapping of Angelo Garcia, Jr., intentionally cause the death of Angelo Garcia, Jr. by stabbing Angelo Garcia, Jr. with a deadly weapon, namely a sharp instrument, and that the defendant, Obel Cruz-Garcia, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the offense, if he did; or

If you find from the evidence beyond a reasonable doubt that the defendant, Obel Cruz-Garcia, and Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" entered into an agreement to commit the felony offense of kidnapping, or sexual assault or burglary of a habitation, and pursuant to that agreement, if any, they did carry out their conspiracy and that in Harris County, Texas, on or about the 30th day of September, 1992, while in the course of committing said conspiracy, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" intentionally caused the death of Angelo Garcia, Jr. by stabbing Angelo Garcia, Jr. with a deadly weapon, namely a sharp instrument, while in the course of kidnapping Angelo Garcia, Jr.,

9

: 00491

and the murder of Angelo Garcia, Jr. was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, the defendant, Obel Cruz-Garcia, did then and there unlawfully, while in the course of committing or attempting to commit the kidnapping of Angelo Garcia, Jr., intentionally cause the death of Angelo Garcia, Jr., by an unknown manner or means; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" did then and there unlawfully while in the course of committing or attempting to commit the kidnapping of Angelo Garcia, Jr., intentionally cause the death of Angelo Garcia, Jr. by an unknown manner or means, and that the defendant, Obel Cruz-Garcia, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the offense, if he did; or

If you find from the evidence beyond a reasonable doubt that the defendant, Obel Cruz-Garcia, and Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" entered into an agreement to commit the felony offense of kidnapping or sexual assault or burglary of a habitation, and pursuant to that

10

: 00492

agreement, if any, they did carry out their conspiracy and that in Harris County, Texas, on or about the 30th day of September, 1992, while in the course of committing said conspiracy, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" intentionally caused the death of Angelo Garcia, Jr. by an unknown manner or means, while in the course of kidnapping Angelo Garcia, Jr., and the murder of Angelo Garcia, Jr. was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy, then you will find the defendant guilty of capital murder, as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether the defendant is guilty of the lesser offense of murder.

Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, the defendant, Obel Cruz-Garcia, did then and there unlawfully, intentionally or knowingly cause the death of Angelo Garcia, Jr., by stabbing Angelo Garcia, Jr. with a deadly weapon, namely, a sharp instrument; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy", did then and there unlawfully, intentionally or knowingly cause the death of Angelo Garcia, Jr., by stabbing Angelo Garcia, Jr. with a deadly weapon, namely, a sharp

11

instrument, and that the defendant, Obel Cruz-Garcia, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the offense, if he did; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, the defendant, Obel Cruz-Garcia, did then and there unlawfully intend to cause serious bodily injury to Angelo Garcia, Jr., and did cause the death of Angelo Garcia, Jr. by intentionally or knowingly committing an act clearly dangerous to human life, namely, by stabbing Angelo Garcia, Jr. with a deadly weapon, namely, a sharp instrument; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy", did then and there unlawfully intend to cause serious bodily injury to Angelo Garcia, Jr., and did cause the death of Angelo Garcia, Jr. by intentionally or knowingly committing an act clearly dangerous to human life, namely, by stabbing Angelo Garcia, Jr. with a deadly weapon, namely, a sharp instrument, and that the defendant, Obel Cruz-Garcia, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the offense, if he did; or

12

: 00494

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, the defendant, Obel Cruz-Garcia, did then and there unlawfully, intentionally or knowingly cause the death of Angelo Garcia, Jr., by an unknown manner or means; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy", did then and there unlawfully, intentionally or knowingly cause the death of Angelo Garcia, Jr., by an unknown manner or means, and that the defendant, Obel Cruz-Garcia, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the offense, if he did; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, the defendant, Obel Cruz-Garcia, did then and there unlawfully intend to cause serious bodily injury to Angelo Garcia, Jr., and did cause the death of Angelo Garcia, Jr. by intentionally or knowingly committing an act clearly dangerous to human life, namely, by an unknown manner or means; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy", did then and there unlawfully intend to cause serious bodily injury to Angelo Garcia, Jr., and did cause the death of

13

Angelo Garcia, Jr. by intentionally or knowingly committing an act clearly dangerous to human life, namely, by an unknown manner or means, and that the defendant, Obel Cruz-Garcia, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the offense, if he did, then you will find the defendant guilty of murder.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether the defendant is guilty of the lesser offense of aggravated kidnapping.

Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, the defendant, Obel Cruz-Garcia, did then and there unlawfully, intentionally or knowingly abduct Angelo Garcia, Jr., without consent, with intent to prevent his liberation by secreting or holding Angelo Garcia, Jr. in a place where Angelo Garcia, Jr. was not likely to be found or by using or threatening to use deadly force on Angelo Garcia, Jr., namely a sharp instrument, and with intent to facilitate the commission of a felony; or inflict bodily injury on Angelo Garcia, Jr.; or terrorize Angelo Garcia, Jr. or another person; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy", did then and there unlawfully, intentionally or

14

knowingly abduct Angelo Garcia, Jr., without consent, with intent to prevent his liberation by secreting or holding Angelo Garcia, Jr. in a place where Angelo Garcia, Jr. was not likely to be found or by using or threatening to use deadly force on Angelo Garcia, Jr., namely a sharp instrument, and with intent to facilitate the commission of a felony; or inflict bodily injury on Angelo Garcia, Jr.; or terrorize Angelo Garcia, Jr. or another person, and that the defendant, Obel Cruz-Garcia, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the offense, if he did; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, the defendant, Obel Cruz-Garcia, did then and there unlawfully, intentionally or knowingly abduct Angelo Garcia, Jr., without consent, with intent to prevent his liberation by secreting or holding Angelo Garcia, Jr. in a place where Angelo Garcia, Jr. was not likely to be found or by using or threatening to use deadly force on Angelo Garcia, Jr., by an unknown manner or means, and with intent to facilitate the commission of a felony; or inflict bodily injury on Angelo Garcia, Jr.; or terrorize Angelo Garcia, Jr. or another person; or

If you find from the evidence beyond a reasonable doubt that on or about the 30th day of September, 1992, in Harris County, Texas, Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy", did then and there unlawfully, intentionally or

15

knowingly abduct Angelo Garcia, Jr., without consent, with intent to prevent his liberation by secreting or holding Angelo Garcia, Jr. in a place where Angelo Garcia, Jr. was not likely to be found or by using or threatening to use deadly force on Angelo Garcia, Jr., by an unknown manner or means, and with intent to facilitate the commission of a felony; or inflict bodily injury on Angelo Garcia, Jr.; or terrorize Angelo Garcia, Jr. or another person, and that the defendant, Obel Cruz-Garcia, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Rogelio Aviles and/or Carmelo Martinez-Santana also known as "Rudy" to commit the offense, if he did, then you will find the defendant guilty of aggravated kidnapping.

If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder on the one hand or murder or aggravated kidnapping on the other hand, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of either murder or aggravated kidnapping.

If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict "Not Guilty."

: 00498

An accomplice, as the term is here used, means anyone connected with the crime charged, as a party thereto, and includes all persons who are connected with the crime by unlawful act or omission on their part transpiring either before or during the time of the commission of the offense, and whether or not they were present and participated in the commission of the crime. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or by both. Mere presence alone, however, will not constitute one a party to an offense.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. The term "conduct" means any act or omission and its accompanying mental state.

You are instructed that a conviction cannot be had upon the testimony of an accomplice unless the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission.

The witness, Carmelo Martinez-Santana also known as "Rudy", is an accomplice, if an offense was committed, and you cannot convict the defendant upon his testimony unless you further believe that there is other evidence in the case, outside of the

17

Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him.

In this case, the defendant has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

19

: 00500

You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

: 00501

You are further instructed that any evidence that any witness has been convicted in any case or cases was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the credibility of the witness and the weight to be given his or her testimony, and you will not consider the same for any other purpose.

: 00502

A Grand Jury indictment is the means whereby a defendant is brought to trial in a felony prosecution. It is not evidence of guilt nor can it be considered by you in passing upon the question of guilt of the defendant. The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you,

22

and these instructions, you will acquit him and say by your verdict "Not Guilty."

You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby.

After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Foreman.

During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

No one has any authority to communicate with you except the officer who has you in charge. After you have retired, you may communicate with this Court in writing through this officer. Any communication relative to the cause must be written, prepared and signed by the Foreman and shall be submitted to the court through this officer. Do not attempt to talk to the officer who has you in charge, or the attorneys, or the Court, or anyone else concerning any questions you may have.

Your sole duty at this time is to determine the guilt or innocence of the defendant under the indictment in this cause and

: 00504

restrict your deliberations solely to the issue of guilt or innocence of the defendant.

Following the arguments of counsel, you will retire to consider your verdict.

**F I L E D**
Chris Daniel
District Clerk

JUL 1 5 2013
9:10ᵃ

Time: _____
Harris County, To___

By _____
Deputy

_____
Renee Magee, Judge
337th District Court
Harris County, TEXAS

24

: 00505

CAUSE NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | JANUARY TERM, A. D., 2013 |

## V E R D I C T

"We, the Jury, find the defendant, Obel Cruz-Garcia, not guilty."

_____

Foreman of the Jury

_____

(Please Print) Foreman

"We, the Jury, find the defendant, Obel Cruz-Garcia, guilty of capital murder, as charged in the indictment."

_____

Foreman of the Jury

Matthew Clinger
_____

(Please Print) Foreman

**FILED**
Chris Daniel
District Clerk

JUL 1 9 2013

Time: _____
Harris County, Texas
By _____
Deputy

25

: 00506

"We, the Jury, find the defendant, Obel Cruz-Garcia, guilty of murder."

_____

Foreman of the Jury

_____

(Please Print) Foreman

"We, the Jury, find the defendant, Obel Cruz-Garcia, guilty of aggravated kidnapping."

_____

Foreman of the Jury

_____

(Please Print) Foreman

26

: 00507

CAUSE NUMBER _1384794_

| THE STATE OF TEXAS | X | IN THE DISTRICT COURT OF |
| VS. | X | HARRIS COUNTY, TEXAS |
| Obel Cruz Garcia | X | 337th JUDICIAL DISTRICT |

NOTE

Are we only allowed to consider the interpreted response of the witness in english and not the spanish response as heard by spanish speaking jury members?

**FILED**
Chris Daniel
District Clerk

JUL 15 2013

Time: 12:05 pm

Harris County, Texas

By _____
        Deputy

_FOREMAN OF THE JURY_

COURTS ANSWER

The interpreter's response is the official record and evidence in the case.

Renee Magee

: 00508

CAUSE NUMBER *1384794*

THE STATE OF TEXAS      X

VS.      X

*Obel Cruz Garcia*      X

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

337th JUDICIAL DISTRICT

## NOTE

Two jurors remember the prosecutions investigator stating that he prepared capital murder charges against Roger in relation to this case. Can we see the testimony regarding this statement?

FOREMAN OF THE JURY

## COURTS ANSWER

Yes.

FILED
Chris Daniel
District Clerk

JUL 1 5 2013

Time: 1:40 pm

By _____
Deputy

*Renee Magee*

: 00509

CAUSE NUMBER 1384794

THE STATE OF TEXAS        X        IN THE DISTRICT COURT OF

VS.        X        HARRIS COUNTY, TEXAS

Obel Cruz Garcia        X        337th JUDICIAL DISTRICT

## NOTE

Pete. Is it a certainty that Obel Cruz Garcia <u>will not</u> be eligible for parole until he has served 35 years?

• Does his time served to date count against this 35 years?

• Are we allowed to consider this?

FOREMAN OF THE JURY

## COURTS ANSWER

Please refer to the Court's charge.

**FILED**
Chris Daniel
District Clerk

JUL 19 2013

Time: _____
Harris County, Texas
By _____
Deputy

Reneé Magee

: 00510

CAUSE NUMBER 1384794

| THE STATE OF TEXAS | X | IN THE DISTRICT COURT OF |
| VS. | X | HARRIS COUNTY, TEXAS |
| Obel Cruz Garcia | X | 337th JUDICIAL DISTRICT |

## NOTE

What is the definition of society? ~~To~~ Does this only pertain to the jail system and/or the general populace?

FOREMAN OF THE JURY

## COURTS ANSWER

Please refer to the Courts' charge.

FILED
Chris Daniel
District Clerk

JUL 19 2013

Time: 11:25 am

Harris County, Texas

By _____
Deputy

Renee Magee

: 00511

CAUSE NUMBER 1384794

THE STATE OF TEXAS                         X

VS.                                        X          IN THE DISTRICT COURT OF

Obel Cruz Garcia                           X          HARRIS COUNTY, TEXAS

                                                      337th JUDICIAL DISTRICT

NOTE

May I please Speak to judge.

Angela Bowman.

FOREMAN OF THE JURY

COURTS ANSWER

FILED
Chris Daniel
District Clerk

JUL 19 2013

Time: 3:20pm
By _____
Harris County, Texas
                 Deputy

: 00512

CAUSE NO. 1384794

| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | JANUARY TERM, A. D., 2013 |

Members of the Jury:

By your verdict returned in this case you have found the defendant, Obel Cruz-Garcia, guilty of the offense of capital murder, which was alleged to have been committed on or about the 30th day of September, 1992, in Harris County, Texas. In order for the Court to assess the proper punishment, it is necessary now for you to determine, from all the evidence in the case, the answers to certain questions, called "Special Issues," in this charge. The Court instructs you in answering these "Special Issues" as follows:

The mandatory punishment for capital murder is death or confinement in the Texas Department of Criminal Justice, Institutional Division, for life.

In determining your answers to the questions, or special issues, submitted to you, you shall consider all the evidence submitted to you in this trial. You shall consider all evidence submitted to you during the trial as to the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging

: 00513

You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence, whether presented by the State or the defendant.

The State must prove Special Issue No. 1 submitted to you beyond a reasonable doubt, and you shall return a Special Verdict of "YES" or "NO" on Special Issue No. 1.

In deliberating on Special Issue No. 1 you shall consider all the evidence admitted at the trial, including but not limited to evidence of the defendant's background, character, or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 1 "YES" unless you agree unanimously.

You may not answer Special Issue No. 1 "NO" unless ten (10) or more jurors agree.

Members of the jury need not agree on what particular evidence supports a negative or affirmative answer to Special Issue No.1.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 1.

It is not required that the State prove Special Issue No. 1 beyond all possible doubt; it is required that the State's proof excludes all reasonable doubt concerning the defendant.

You are instructed that if you return an affirmative finding, that is a "YES" answer, to Special Issue No. 1, and only then, are you to answer Special Issue No. 2.

The State must prove Special Issue No. 2 submitted to you beyond a reasonable doubt, and you shall return a Special Verdict of "YES" or "NO" on Special Issue No. 2.

In deliberating on Special Issue No. 2 you shall consider all the evidence admitted at the trial, including but not limited to evidence of the defendant's background, character, or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 2 "YES" unless you agree unanimously.

You may not answer Special Issue No. 2 "NO" unless ten (10) or more jurors agree.

You need not agree on what particular evidence supports a negative or affirmative answer to Special Issue No.2.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 2.

It is not required that the State prove Special Issue No. 2 beyond all possible doubt; it is required that the State's proof excludes all reasonable doubt concerning the defendant.

You are instructed that if you return an affirmative finding, that is a "YES" answer, to Special Issue No. 2, and only then, are you to answer Special Issue No. 3.

In deliberating on Special Issue No. 3 you shall consider all the evidence admitted at the trial, including but not limited to evidence of the defendant's background, character, or the

circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You shall consider mitigating evidence to be evidence that you might regard as reducing the defendant's moral blameworthiness.

You may not answer Special Issue No. 3 "NO" unless you agree unanimously.

You may not answer Special Issue No. 3 "YES" unless ten (10) or more jurors agree.

You need not agree on what particular evidence supports a negative or affirmative answer to Special Issue No.3.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 3.

You are instructed that if you answer Special Issue No. 1, and Special Issue No. 2 "Yes", and you answer Special Issue No. 3 "No", the court shall sentence the Defendant to death. You are further instructed that if you answer Special Issue No. 1 or Special Issue No. 2 "No", or you answer Special Issue No. 3 "Yes", the court shall sentence the Defendant to the Texas Department of Criminal Justice Institutional Division for life.

You may consider evidence of an extraneous crime or bad act in assessing punishment even if the defendant has not yet been charged with or finally convicted of the crime or act. However, you may consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the defendant or is one for which the defendant could be held criminally responsible.

The prosecution does not have to prove an extraneous crime or bad act beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the extraneous crime or bad act.

Therefore, if you find and believe beyond a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the defendant's punishment. However, if you have a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may not consider such evidence in assessing punishment.

You are further instructed that any evidence that any witness has been convicted in any case or cases was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the credibility of the witness and the weight to be given his or her testimony, and you will not consider the same for any other purpose.

Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals thirty-five (35) calendar years. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

You may consider the existence of the parole law. However, you are not to consider the manner in which the parole law may be applied to this particular defendant.

You are instructed that the defendant may testify in his own behalf if he chooses to do so, but if he elects not to do so, that fact cannot be taken by you as a circumstance against him nor prejudice him in any way. The defendant has elected not to testify in this punishment phase of trial, and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever.

: 00521

During your deliberations upon the "Special Issues," you must not consider, discuss, nor relate any matters not in evidence before you.   You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

In arriving at the answers to the "Special Issues" submitted, it will not be proper for you to fix the same by lot, chance, or any other method than by a full, fair and free exchange of the opinion of each individual juror.

After the reading of this charge, you shall not be permitted to separate from each other, nor shall you talk with anyone not of your jury.   After argument of counsel, you will retire and consider your answers to the "Special Issues" submitted to you. It is the duty of your foreman to preside in the jury room and vote with you on the answers to the "Special Issues" submitted.

You are the exclusive judges of the facts proved and the credibility of the witnesses and the weight to be given to their testimony, but you are bound to receive the law from the Court which has been given you and you are bound thereby.

FILED
Chris Daniel
District Clerk

JUL 1 8 2013
Time: 3:05pm
By _____
Harris County, T___
Deputy

Renee Magee, Judge
337th District Court
Harris County, TEXAS

: 00522

CAUSE NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | JANUARY TERM, A. D., 2013 |

The Special Issues, with forms for your answers, are as follow:

### SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt there is a probability that the defendant, Obel Cruz-Garcia, would commit criminal acts of violence that would constitute a continuing threat to society?

### ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "Yes."

_____
Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors have a reasonable doubt as to the matter inquired about in this Special Issue, find and determine that the answer to this Special Issue is "No."

_____
Foreman of the Jury

FILED
Chris Daniel
District Clerk

JUL 1 0 2013

Time: _____
By _____

:00523

## SPECIAL ISSUE NO. 2

Do you find from the evidence beyond a reasonable doubt that Obel Cruz-Garcia, the defendant himself, actually caused the death of Angelo Garcia, Jr., on the occasion in question, or if he did not actually cause the death of Angelo Garcia, Jr., that he intended to kill Angelo Garcia, Jr., or that he anticipated that a human life would be taken?

### ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "YES."

FILED
Chris Daniel
District Clerk

JUL 1 9 2013

Ti...
B...
Deputy

_____
Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors have a reasonable doubt that Obel Cruz-Garcia, the defendant himself, actually caused the death of Angelo Garcia, Jr., on the occasion in question, or that he intended to kill Angelo Garcia, Jr., or that he anticipated that a human life would be taken, determine that the answer to this Special Issue is "NO."

_____
Foreman of the Jury

: 00524

CAUSE NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | JANUARY TERM, A. D., 2013 |

In the event that the jury has answered "Special Issues" number 1, number 2 in the affirmative, and only then, shall the jury answer "Special Issue" number 3.

## SPECIAL ISSUE NO. 3

Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

You are instructed that in answering this "Special Issue" that you shall answer the issue "Yes" or "No."

You may not answer this issue "No" unless you agree unanimously, and you may not answer this issue "Yes" unless ten (10) or more of you agree to do so.

: 00525

ANSWER

We, the jury, unanimously find and determine that the answer
to this Special Issue is "No."

**F I L E D**
Chris Daniel
District Clerk

JUL 1 9 2013

Time: _____

By _____
Harris County, Texas
Deputy

_____
Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors agree that
there is sufficient mitigating circumstance or circumstances to
warrant that a sentence of life imprisonment rather than a death
sentence be imposed, find that the answer to this Special Issue
is "Yes."

_____
Foreman of the Jury

After the jury has answered each of the Special Issues under the conditions and instructions outlined above, the Foreman should sign the verdict form below.

## VERDICT

We, the Jury, return in open court the above answers to the "Special Issues" submitted to us, and the same is our verdict in this case.

**F I L E D**
Chris Daniel
District Clerk

JUL 1 9 2013

Time: 4:30 pm

Harris County, Texas

By _____
Deputy

_____
Foreman of the Jury

Cause No. 1384794

| STATE OF TEXAS | § | IN THE 337 DISTRICT COURT |
|---|---|---|
| v. | § | |
| *Obel Cruz-Garcia*, | § | |
| Defendant | § | OF HARRIS COUNTY, TEXAS |

## ADVICE OF DEFENDANT'S RIGHT TO APPEAL

**The Court, pursuant to TEX. R. APP. P. 25.2, advises the Defendant as follows:**

1. Texas law gives a defendant convicted of a crime the right to appeal his conviction.

2. If you **pled guilty** or **no contest** and accepted the punishment recommended by the prosecutor, however, you **cannot** appeal your conviction unless this Court gives you permission. If you **waived** or gave up your right to appeal, you **cannot** appeal your conviction.

3. If you did not plead guilty, you may have the right to appeal. If you want to appeal, you must give notice of appeal **in writing** to this Court's clerk within **30 days**.

4. If an attorney represents you in the court of appeals, your attorney must mail a copy of the court of appeals' judgment and opinion to your last known address. You must tell your attorney, in writing, of any **change in your address**.

5. If you are not satisfied with your appeal's result, you can ask the Court of Criminal Appeals to review your case by filing a petition for discretionary review within **30 days** of the opinion's issuance in the court of appeals. If you fail to inform your attorney of any change in your address, you may lose the opportunity to seek discretionary review.

**The Defendant declares the following to the Court** (choose one):

1. ☑ I read and write English. I have read and I understand this document. _OB_ _____ (Defendant initial here if true); or

2. ☐ I speak English. _____ (name reader) read this document to me. I understand its contents. _____ (Defendant initial here if true); or

3. ☐ I do not speak English. _____ (name translator) translated this document for me. I understand its contents. _____ (Defendant initial here if true.)

_Obel Cruz garcia_
Defendant's signature

Sworn to and subscribed before me on _____ JUL 2 2 2013 _____.

_____
Harris County Deputy District Clerk

**FILED**
Chris Daniel
District Clerk

JUL 19 2013

Time: _____
Harris County, Texas
By _____
Deputy

_Renee Magee_
JUL 2 2 2013 PRESIDING JUDGE
337 District Court
Harris County, T E X A S

: 00528

Cause No. 1384794

| THE STATE OF TEXAS | IN THE 337 DISTRICT COURT |
|---|---|
| v. | COUNTY CRIMINAL COURT AT LAW NO. _____ |
| OBEL CRUZ-GARCIA Defendant | HARRIS COUNTY, TEXAS |

## TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL*

I, judge of the trial court, certify this criminal case:

☑ is not a plea-bargain case, and the defendant has the right of appeal. [or]

☐ is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial, and not withdrawn or waived, and the defendant has the right of appeal. [or]

☐ is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal. [or]

☐ is a plea-bargain case, and the defendant has NO right of appeal. [or]

☐ the defendant has waived the right of appeal.

*Renee Magee*
Judge

Date Signed 7/22/13

**FILED**
Chris Daniel
District Clerk

JUL 19 2013

Time: _____
Harris County, Texas
By _____
Deputy

I have received a copy of this certification. I have also been informed of my rights concerning any appeal of this criminal case, including any right to file a pro se petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure. I have been admonished that my attorney must mail a copy of the court of appeals's judgment and opinion to my last known address and that I have only 30 days in which to file a *pro se* petition for discretionary review in the court of appeals. TEX. R. APP. P. 68.2 I acknowledge that, if I wish to appeal this case and if I am entitled to do so, it is my duty to inform my appellate attorney, by written communication, of any change in the address at which I am currently living or any change in my current prison unit. I understand that, because of appellate deadlines, if I fail to timely inform my appellate attorney of any change in my address, I may lose the opportunity to file a *pro se* petition for discretionary review.

*Obel Cruz Garcia*
Defendant

Mailing Address: 2028 Buffalo Terra

Telephone number: 713 237 8547

Fax number (if any): 713 528 0153

*R. P. Cornelius*
Defendant's Counsel

State Bar of Texas ID number: 04831500

Mailing Address: 2028 Buffalo Ter

Telephone number: 713 237 8547

Fax number (if any): 713 528 0153

IMAGED

* "A defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a certification of the defendant's right to appeal in every case in which it enters a judgment of guilt or other appealable offense. In a plea bargain case-that is, a case in which a defendant's plea was guilty or *nolo contendere* and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant - a defendant may appeal only: (A) those matters that were raised by a written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." TEXAS RULES OF APPELLATE PROCEDURE 25.2(a)(2).

: 00529

P2

CASE NO. 138479401010
INCIDENT NO./TRN: 9165103092D001

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT |
| | § | |
| vs. | § | COURT |
| | § | |
| CRUZ-GARCIA, OBEL | § | HARRIS COUNTY, TEXAS |
| | § | |
| SID: TX04421988 | § | |

## JUDGMENT OF CONVICTION BY JURY – CAPITAL MURDER

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. RENEE MAGEE | Date Judgment Entered: | 07/22/13 |
| Attorney for State: | TISE, NATALIE WOOD, JUSTIN | Attorney for Defendant: | CORNELIUS, R. P. MADRID MARIO |

Offense for Which Defendant Convicted:
**CAPITAL MURDER**

| Charging Instrument: | Statute for Offense: |
|---|---|
| **INDICTMENT** | N/A |

Date of Offense:
**9/30/1992**

| Degree of Offense: | Plea to Offense: |
|---|---|
| **CAPITAL MURDER** | **NOT GUILTY** |

| Verdict of Jury: | Findings on Deadly Weapon: |
|---|---|
| **GUILTY** | **YES-NOT A FIREARM** |

| Plea to 1st Enhancement Paragraph: | N/A | Plea to 2nd Enhancement/Habitual Paragraph: | N/A |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |

| Punished Assessed by: | Date Sentence Imposed: | Date Sentence to Commence: |
|---|---|---|
| JURY | 07/22/13 | 07/22/13 |

Punishment and Place of Confinement:

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
|---|---|---|---|
| $ N/A | $688 $667 ~~$~~ $1123.50 | $ N/A | N/A |

If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order.

Time Credited:

From 2/12/2010 to 7/15/2013    From    to    From    to

From    to    From    to    From    to

If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below.

N/A DAYS    NOTES: N/A

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in    County, Texas. The State appeared by her District Attorney.

**Counsel / Waiver of Counsel (select one)**

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury of twelve individuals was selected, impaneled, and sworn. The INDICTMENT was read to the jury, and defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel.

The Court received the verdict and ORDERED it entered upon the minutes of the Court.

The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the special issues set out in the jury charge. After due deliberation, the jury was brought into Court, and, in open court, it returned its answers to the special issues as indicated below.

CRUZ-GARCIA, OBEL Judgment of Conviction by Jury--Capital Murder (State seeks Death)_138479401010_3.docx

00530

The jury found beyond a REASONABLE DOUBT that there is a probability that defendant would commit criminal acts of violence that would constitute a continuing threat to society.

☒ Yes (unanimous)

☐ No (by at least 10 jurors)

The jury found beyond a REASONABLE DOUBT that considering all the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed?

☐ Yes (by at least 10 jurors)

☒ No (unanimous)

Special Issues to be included if necessary:

**(If defendant is found GUILTY as a party under TEX. PEN. CODE §§ 7.01, 7.02)**
☑ The jury found beyond a REASONABLE DOUBT that the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

☒ Yes (unanimous)

☐ No (by at least 10 jurors)

**(If defendant has a mental impairment or defect)**
The jury found from a PREPONDERANCE OF THE EVIDENCE that defendant is a person with:

☐ Mental illness

☐ Mental retardation

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS that the State of Texas shall recover all costs of the prosecution from the Defendant and that execution will issue.

**Punishment Options**

☐ **Confinement in Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS TDCJ to make withdrawals from the Defendant's inmate account as such funds become available. The Court ORDERS TDCJ to pay such funds to the individual / agency cited above until the ordered restitution, court fees, costs, and fines are paid in full. TEX. GOV'T CODE § 501.014. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence.

☒ **Death.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** Defendant shall be confined in said Institutional Division in accordance with the provisions of the law governing the Texas Department of Criminal Justice, Institutional Division until a date of execution of the said Defendant is imposed by this Court after receipt in this Court of mandate of affirmance from the Court of Criminal Appeals of the State of Texas. The Court Orders Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence.

**Execution**

☒ The Court ORDERS Defendant's sentence EXECUTED.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

The Court further ORDERS Defendant to pay restitution to the person(s) named above in the amount specified.

**Furthermore, the following special findings or orders apply:**

Deadly Weapon.
The Court FINDS Defendant used or exhibited a deadly weapon, namely, A SHARP INSTRUMENT, during the commission of a felony offense or during immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. art. 42.12 §3g.

Signed and entered on July 18, 2013
22

X *Renee Magee*
**RENEE MAGEE**
JUDGE PRESIDING

Ntc Appeal Filed: **JUL 2 2 2013**   Mandate Rec'd:_____

After Mandate Received, Sentence to Begin Date is:_____

Received on _____ at _____ AM / PM

By:_____, Deputy Sheriff of Harris County

CRUZ-GARCIA, OBEL Judgment of Conviction by Jury -Capital Murder (State seeks Death) 138479401010 3.docx



# Criminal Bill of Cost
## Case Number-CDI: 138479401010-003
## The State of Texas vs. CRUZ-GARCIA, OBEL
## Court number: 337

7/26/2013 8:07:22 AM

| Fee Description | Amount Assessed | Fee Description | Amount Assessed |
|---|---|---|---|
| *Transcript    Total pages:0 | $0.00 | Abused Children Counseling Account | $0.00 |
| *Serving Capias | $50.00 | Financial Responsibility Fee | $0.00 |
| *Summoning Witness/Mileage | $410.00 | PreTrial Fee | $0.00 |
| *Sheriff's Jury Fee | $5.00 | Attorney Fee | $0.00 |
| *Bonds | $0.00 | Interpreter Fee | $0.00 |
| *Commitments | $5.00 | Extradition Fee | $0.00 |
| *Release | $5.00 | Breath Alcohol Testing | $0.00 |
| *Attachment | $5.00 | Comprehensive Rehab Fund | $0.00 |
| *Arrest w/o Warrant/Capias | $35.00 | Time Payment Fee | $0.00 |
| Fine Amount | $0.00 | Consolidated Court Cost | $0.00 |
| Miscellaneous Cost | $0.00 | Center for Study of Juv Crime | $0.00 |
| Judicial Fund Fee | $0.00 | Fugitive Apprehension | $0.00 |
| Special Expense | $0.00 | Juv Delinquency Prevention | $0.00 |
| Trial Fee | $0.00 | CMIT CJC Fee | $0.00 |
| District Attorney Fee | $0.00 | DNA Testing Fee | $0.00 |
| District Clerk's Fee | $40.00 | Confinement Fee | $0.00 |
| Sheriff's Fee* (total of starred costs) | $510.00 | State Water Fine | $0.00 |
| Misdemeanor Costs | $0.00 | State Parks and Wildlife Fine | $0.00 |
| MAP Traffic Costs | $0.00 | EMS Trauma Fund | $0.00 |
| Crime Stoppers Fee | $20.00 | Jury Reimbursement Fee | $4.00 |
| Jury Fee | $20.00 | Support of Judiciary | $0.00 |
| Criminal Justice Planning Fee | $2.00 | DC Records Preservation | $25.00 |
| TCLEOSE (Officer Education Fee) | $3.50 | Child Abuse Prevention | $0.00 |
| Crime Victims Comp Fee | $45.00 | Juvenile Case Mgr Fee | $0.00 |
| DCLCD | $0.00 | Child Safety Fund | $0.00 |
| Judicial Training | $2.00 | Drug Court Program Fee | $0.00 |
| DWI Video Fee | $0.00 | Support of Indg Defense | $2.00 |
| DWI Evaluation Fee | $0.00 | Support Judiciary Fee08 | $6.00 |
| Reward Re-Payment | $0.00 | ThirdParty Referral Fee | $0.00 |
| Security Fee | $5.00 | Court Technology Fee | $4.00 |
| Records Preservation | $0.00 | DNA Testing Comm Supr | $0.00 |

Assessed Date: 7/22/2013

| | |
|---|---|
| Total Amount Assessed: | $688.50 |
| Total Amount Paid: | $0.00 |
| Total Amount Due: | $688.50 |

_Chris Daniel_
Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS
Prepared by Deputy: MELTZER, JOHN

STATE OF TEXAS
COUNTY OF HARRIS
I, Chris Daniel, District Clerk of Harris County, Texas, certify that
this is a true and correct copy of the original record filed and or recorded
in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this       JUL 2 6 2013

CHRIS DANIEL, DISTRICT CLERK
HARRIS COUNTY, TEXAS
                                          Deputy

: 00532

FILED
Chris Daniel
District Clerk

JUL 2 2 2013

Harris County, Texas
By_____
Deputy

Cause No. _____

THE STATE OF TEXAS

OBEL CRUZ-GARCIA V. _____, A/K/A/ _____

Time: _____

___337___ District Court / County Criminal Court at Law No. _____

**Harris County, Texas**

### NOTICE OF APPEAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

On ___7/22/13___ (date), the defendant in the above numbered and styled cause gives NOTICE OF APPEAL of his conviction.

**The undersigned attorney (check appropriate box):**

☑ MOVES to withdraw.

☐ ADVISES the court that he will CONTINUE to represent the defendant on appeal.

___7/22/13___
**Date**

OBEL CRUZ-GARCIA
**Defendant (Printed name)**

R P CORNELIS
**Attorney (Signature)**

RP CORNELIS
**Attorney (Printed name)**

04831500
**State Bar Number**

2028 Buffalo Terrace 77019
**Address**

713 237 8847
**Telephone Number**

**The defendant (check all that apply):**

☑ REPRESENTS to the court that he is presently INDIGENT and ASKS the court to immediately APPOINT appellate counsel to represent him.

☑ ASKS the Court to ORDER that a free record be provided to him.

☐ ASKS the court to set BAIL.

Accordingly, Appellant ASKS the Court to conduct a hearing, make findings, and enter an Order Granting the requested relief.

Obel Cruz garcia
**Defendant (Signature)**

OBEL CRUZ-GARCIA
**Defendant's Printed name**

SWORN TO AND SUBSCRIBED BEFORE ME ON JUL 2 2 2013 _____

By Deputy District Clerk of Harris County, Texas _____

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

IMAGED

# ORDER

On ___JUL 2 2 2013___ the Court conducted a hearing and FINDS that defendant / appellant

☐ IS NOT indigent at this time.

☒ IS indigent for the purpose of

    ☒ employing counsel

    ☒ paying for a clerk's and court reporter's record.

    ☒ employing counsel or paying for a clerk's and court reporter's record.

The Court ORDERS that

    ☐ Counsel's motion to withdraw is GRANTED / DENIED.

    ☐ Defendant / appellant's motion (to be found indigent) is DENIED.

    ☑ Defendant's / appellant's motion is GRANTED and

        ☐ _____(attorney's name & bar card number)
        is APPOINTED to represent defendant / appellant on appeal.

        ☐ The COURT REPORTER is ORDERED to prepare and file the reporter's record without charge to defendant / appellant.

BAIL IS:

    ☐ SET at $ _____

    ☐ TO CONTINUE as presently set.

    ☒ DENIED and is SET at NO BOND. (Felony Only)

DATE SIGNED: ___JUL 2 2 2013___

_Renee Ma_____

JUDGE PRESIDING,
__337th__ DISTRICT COURT /
COUNTY CRIMINAL COURT AT LAW NO. ____,
HARRIS COUNTY, TEXAS



CAUSE NO. 1384794

| THE STATE OF TEXAS | § | 337TH DISTRICT COURT |
| VS. | § | HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | |

## ORDER AND NOTICE

The above named defendant was convicted of capital murder and sentenced to death on July 22, 2013. The Court finds that the defendant is indigent and desires to have counsel appointed for the purpose of a writ of habeas corpus under Art. 11.071, Texas Code of Criminal Procedure.

Therefore, the Court hereby appoints the Office of Capital Writs and Director Brad D. Levenson as counsel for defendant to investigate the case, file the appropriate application, and represent the defendant fully. Following the Motion for New Trial, trial counsel, R.P. "Skip" Cornelius and Mario Madrid, are relieved of their representation of Mr. Cruz-Garcia.

The District Clerk is hereby ordered to forward a copy of this Order and Notice to the Office of Capital Writs and to the Court of Criminal Appeals. Appointed counsel's address is as follows:

Brad D. Levenson
Office of Capital Writs
Stephen F. Austin Building
1700 N. Congress Avenue, Suite 460
Austin, Texas 78711
512-463-8502 – Direct
512-463-8590 – Fax
Brad.Levenson@ocw.texas.gov

So ordered this 22 day of July, 2013.

_Renee Magee_
Renee Magee
Presiding Judge, 337th District Court

IMAGED

: 00535

## PAUPER'S OATH ON APPEAL

CAUSE NO.: _1384794_                    OFFENSE: _Capital Murder_

THE STATE OF TEXAS                       _337_ DISTRICT COURT

VS.                                      OF

_Obel Cruz-Garcia_                       HARRIS COUNTY, TEXAS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES _Obel Cruz-Garcia_, defendant in the above styled and numbered cause, and states under oath that he is without funds, property or income. The defendant respectfully petitions the court to: (check all that apply)

☑ Appoint appellate counsel to represent him.

☐ Asks the court to order that a free record be provided to him.

_x Unavailable to sign_
DEFENDANT

SUBSCRIBED AND SWORN to before me, this _22nd_ day of _July_ A.D., 20_13_.

DEPUTY DISTRICT CLERK
_337th_ DISTRICT COURT
HARRIS COUNTY, TEXAS

### ORDER

On _July 22, 2013_ the court conducted a hearing and found that the defendant is indigent.
_(Mary Ann Rodriguez 00876449)_

☑ The court orders that ~~Wayne Hill~~ is appointed to represent defendant/appellant on appeal.

☑ The court reporter is ordered to prepare and file the reporter's record without charge to the defendant/appellant.

It is further ordered that the clerk of this court mail a copy of the order to the court reporter: _____, by certified mail return receipt requested.

Assistant Public Defender Assigned by HCPD

Bar #_____ SPN #_____

_Renee Magee_
JUDGE PRESIDING
_337th_ DISTRICT COURT
HARRIS COUNTY, TEXAS

### AFFIRMATION

I, _Wayne Hill_, Attorney at Law, swear or affirm that I will be solely responsible for writing a brief and representing the appellant on appeal. If I am not able to preform my duties as appellate counsel, I will notify the court immediately so that the court may take the appropriate action as deemed necessary.

ATTORNEY (SIGNATURE)

ADDRESS _4615 SW Frwy 600_

PHONE _713 623-8312_

BAR/SPN NUMBER _09656300_

CITY _Hou_ STATE _TX_ ZIP _77027_

FAX NUMBER _____

EMAIL ADDRESS _____

SWORN TO AND SUBSCRIBED BEFORE ME ON _July 22, 2013_

DEPUTY DISTRICT CLERK (SIGNATURE)
DISTRICT CLERK

: 00536



# CHRIS DANIEL

### HARRIS COUNTY DISTRICT CLERK

July 30, 2013

WAYNE HILL
ATTORNEY OF RECORD
4615 SW FWY #600
HOUSTON, TX 77027

Defendant's Name: OBEL CRUZ-GARCIA

Cause No: 1384794

Court: 337TH DISTRICT COURT

Please note the following appeal updates on the above mentioned cause:

**Notice of Appeal Filed Date:** 7/22/13
**Sentence Imposed Date:** 7/22/13
**Court of Appeals Assignment:** **Court of Criminal Appeals**
**Appeal Attorney of Record:** WAYNE HILL

Sincerely,

Leslie Charles
Criminal Post Trial Deputy

CC: Mike Anderson
     District Attorney
     Appellate Division
     Harris County, Texas

   MARY ANN RODRIGUEZ (DELIVERED VIA E-MAIL)

This is your notice to inform any and all substitute reporters in this cause.

1201 Franklin   P.O. Box 4651   Houston, Texas  77210-4651

: 00537

Case No: 1384794

STATE OF TEXAS                           IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA                         HARRIS COUNTY, TEXAS

## MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Obel Cruz-Garcia, Defendant in the above-styled and numbered

cause, by and through the undersigned attorney, and moves this Court for an order

granting him a new trial, and in support thereof would show:

I.

Defendant was convicted of capital murder and sentenced to death.

II.

The evidence in support of the verdict of guilt returned by the jury was

insufficient as a matter of law.

III.

The evidence in support of the verdict returned by the jury at the punishment stage

of the trial was insufficient as a matter of law.

IV.

The trial court erred when it found that the evidence used in Defendant's trial was

lawfully obtained.

: 00538

V.

The court misdirected the jury about the law or committed some other material error likely to injure the defendant's rights.

VI.

The verdict is otherwise contrary to the law and the evidence.

VII.

Rule 21.3 of the Texas Rules of Evidence provides that a defendant must be granted a new trial, or a new trial on punishment,  for any of the following reasons:

Rule 21.3(c) - when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion;

Rule 21.3(f) - when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case.............

Rule 21.3(g) - when the jury has engaged in misconduct that the defendant did not receive a fair and impartial trial; or

Rule 21.3(h) - when the verdict is contrary to the law and the evidence.

VIII.

The jury engaged in such misconduct, as set forth in the Affidavit of Mario Madrid which is attached hereto and incorporated herein for all purposes, that the Defendant did not receive a fair and impartial trial of twelve jurors.

IX.

The interest of justice requires the granting of relief in the form of a new trial or a new punishment trial.

XI.

Defendant would show that reasonable grounds to establish that he is entitled to relief have been set forth above.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that after reviewing the matters set forth in this Motion for New Trial, and such other evidence as may be presented this Honorable Court, he be granted a new trial and/or a new punishment trial in this cause.

Respectfully submitted,

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77002
(713) 623-8312

Attorney for Defendant/Appellant
Obel Cruz-Garcia

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the 19th day of August, 2013.

Notary Public in and for the State of Texas

SYLVIA HURON REED
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
JUNE 2, 2016

: 00540

## AFFIDAVIT OF MARIO MADRID

BEFORE ME THE UNDERSIGNED AUTHORITY, on this day personally appeared, Mario Madrid, a person known to me, who after being duly sworn, upon his oath did state:

My name is Mario Madrid. I am an attorney licensed to practice in the State of Texas. I was appointed to represent Obel Cruz-Garcia who was charged by indictment with the offense of capital murder in cause number 1384794 in the 337th District Court of Harris County, Texas.

At the conclusion of the guilt/innocence phase of the trial, the jury found Mr. Cruz-Garcia guilty of capital murder. During the punishment phase deliberations, a juror named Angela Bowman met privately with Judge Magee. Judge Magee stated that Ms. Bowman questioned how long deliberations would last. At the conclusion of the punishment phase of the trial, the jury returned a verdict which resulted in the trial court sentencing Mr. Cruz-Garcia to death.

On the evening of the jury's punishment verdict, I received a telephone call from a juror named Angela Bowman. Ms. Bowman was distraught over her decision to capitulate during the punishment phase deliberations and change her vote from life in prison to the death penalty. Ms. Bowman explained to me that she was pressured into changing her position on the life vs. death decision. She explained that her decision was especially complicated by virtue of the fact that her daughter was suffering from a fever and she (Bowman) was unable to attend to her daughter because of being sequestered. Ms. Bowman also explained that the jury foreman informed the jury that he had been praying about making the right decision and he took out his Bible and started quoting from the Bible during the decision-making process. The introduction of the Bible seemed to sway other jurors toward death rather than life in prison. Ms. Bowman's decision so disturbed her that she told me she had to bring these events to my attention in an effort to correct the injustice that she had participated in.

: 00541

Based on the foregoing information provided to me by Angela Bowman, it is my opinion that the defendant must be granted a new trial, or a new trial on punishment because the death verdict returned in this matter was decided in a manner other than the fair expression of the jurors' opinion. Furthermore, after retiring to deliberate, the jury received other evidence in the form of Biblical passages (not evidence admitted at trial). Based on the jury misconduct outlined above, I do not believe that the defendant received a fair and impartial trial.

Mario Madrid

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the _19_ day of August, 2013.

Notary Public in and for the State of Texas

DONNA M. RAMOS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 17, 2014

: 00542

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion for New Trial has been mailed to: The Harris County District Attorney's Office, Appellate Division, 1201 Franklin, 6th Floor, Houston, Texas 77002.

SIGNED THIS _____ *19* _____ day of August, 2013.

_____
Wayne T. Hill

Case No: 1384794

STATE OF TEXAS                          IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA                        HARRIS COUNTY, TEXAS

## SUPPLEMENT TO DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Obel Cruz-Garcia, Defendant in the above-styled and numbered cause, by and through the undersigned attorney, and moves this Court for an order granting him a new trial, and in support thereof would show:

### I.

Defendant was convicted of capital murder and sentenced to death.

### II.

The evidence in support of the verdict of guilt returned by the jury was insufficient as a matter of law.

### III.

The evidence in support of the verdict returned by the jury at the punishment stage of the trial was insufficient as a matter of law.

### IV.

The trial court erred when it found that the evidence used in Defendant's trial was lawfully obtained.

: 00544

V.

The court misdirected the jury about the law or committed some other material error likely to injure the defendant's rights.

VI.

The verdict is otherwise contrary to the law and the evidence.

VII.

Rule 21.3 of the Texas Rules of Evidence provides that a defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons:

Rule 21.3(c) - when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion;

Rule 21.3(f) - when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case.............

Rule 21.3(g) - when the jury has engaged in misconduct that the defendant did not receive a fair and impartial trial; or

Rule 21.3(h) - when the verdict is contrary to the law and the evidence.

VIII.

The jury engaged in such misconduct, as previously set forth in the Motion for New Trial filed on August 19, 2013 which included the Affidavit of Mario Madrid which is again attached hereto and incorporated herein for all purposes. Defendant would further show by this Supplement to Defendant's Motion for New Trial, which is supported by the attached Affidavits of J.J. Gradoni and Angela Bowman which are incorporated herein for all purposes, that the jury engaged in misconduct as set forth in the Rules

: 00545

recited in Paragraph VII above which deprived Defendant of a fair and impartial trial of twelve jurors.

## IX.

The interest of justice requires the granting of relief in the form of a new trial or a new punishment trial.

## X.

Defendant would show that reasonable grounds to establish that he is entitled to relief have been set forth above.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that after reviewing the allegations with supporting Affidavits set forth in the original Motion for New Trial filed on August 19, 2013, as well as the allegations with supporting Affidavits set forth in this Supplement to Defendant's Motion for New Trial, and such other evidence as may be presented this Honorable Court, he be granted a new trial and/or a new punishment trial in this cause.

Respectfully submitted,

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77002
(713) 623-8312

Attorney for Defendant/Appellant
Obel Cruz-Garcia

: 00546

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on

this the _____ day of August, 2013.

Notary Public in and for the State of Texas

## AFFIDAVIT / INMATE DECLARATION

I, Obel Cruz-Garcia, SPN: 01134368, being presently incarcerated in the Harris

County Jail in Harris County, Texas, declare under penalty of perjury that I am the

defendant in the above-styled and numbered cause. I was present throughout the trial of

this matter. I adopt the allegations contained in the original Motion for New Trial filed

on August 19, 2013 as well as the allegations contained in this Supplement to Defendant's

Motion for New Trial all with accompanying Affidavits. Based upon my personal

knowledge of the events which transpired during my trial, I am requesting a new trial.

Executed this __21__ day of August, 2013.

Obel Cruz-Garcia

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally

appeared, Obel Cruz-Garcia, a person known to me, who after being duly sworn that

make the above and foregoing statement.

Signed this ____ day of August, 2013.

_____

Notary Public in and for the State of Texas

: 00547

COPY          Case No: 1384794

STATE OF TEXAS                    IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA                 HARRIS COUNTY, TEXAS

**FILED**
Chris Daniel
District Clerk
AUG 1 9 2013
Time:_____
Harris County, Texas
By_____
Deputy

## MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Obel Cruz-Garcia, Defendant in the above-styled and numbered cause, by and through the undersigned attorney, and moves this Court for an order granting him a new trial, and in support thereof would show:

I.

Defendant was convicted of capital murder and sentenced to death.

II.

The evidence in support of the verdict of guilt returned by the jury was insufficient as a matter of law.

III.

The evidence in support of the verdict returned by the jury at the punishment stage of the trial was insufficient as a matter of law.

IV.

The trial court erred when it found that the evidence used in Defendant's trial was lawfully obtained.

: 00548

V.

The court misdirected the jury about the law or committed some other material error likely to injure the defendant's rights.

VI.

The verdict is otherwise contrary to the law and the evidence.

VII.

Rule 21.3 of the Texas Rules of Evidence provides that a defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons:

Rule 21.3(c) - when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion;

Rule 21.3(f) - when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case.............

Rule 21.3(g) - when the jury has engaged in misconduct that the defendant did not receive a fair and impartial trial; or

Rule 21.3(h) - when the verdict is contrary to the law and the evidence.

VIII.

The jury engaged in such misconduct, as set forth in the Affidavit of Mario Madrid which is attached hereto and incorporated herein for all purposes, that the Defendant did not receive a fair and impartial trial of twelve jurors.

IX.

The interest of justice requires the granting of relief in the form of a new trial or a new punishment trial.

XI.

Defendant would show that reasonable grounds to establish that he is entitled to relief have been set forth above.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that after reviewing the matters set forth in this Motion for New Trial, and such other evidence as may be presented this Honorable Court, he be granted a new trial and/or a new punishment trial in this cause.

Respectfully submitted,

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77002
(713) 623-8312

Attorney for Defendant/Appellant
Obel Cruz-Garcia

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the 19th day of August, 2013.

Notary Public in and for the State of Texas

: 00550

## AFFIDAVIT OF MARIO MADRID

BEFORE ME THE UNDERSIGNED AUTHORITY, on this day personally appeared, Mario Madrid, a person known to me, who after being duly sworn, upon his oath did state:

My name is Mario Madrid. I am an attorney licensed to practice in the State of Texas. I was appointed to represent Obel Cruz-Garcia who was charged by indictment with the offense of capital murder in cause number 1384794 in the 337th District Court of Harris County, Texas.

At the conclusion of the guilt/innocence phase of the trial, the jury found Mr. Cruz-Garcia guilty of capital murder. During the punishment phase deliberations, a juror named Angela Bowman met privately with Judge Magee. Judge Magee stated that Ms. Bowman questioned how long deliberations would last. At the conclusion of the punishment phase of the trial, the jury returned a verdict which resulted in the trial court sentencing Mr. Cruz-Garcia to death.

On the evening of the jury's punishment verdict, I received a telephone call from a juror named Angela Bowman. Ms. Bowman was distraught over her decision to capitulate during the punishment phase deliberations and change her vote from life in prison to the death penalty. Ms. Bowman explained to me that she was pressured into changing her position on the life vs. death decision. She explained that her decision was especially complicated by virtue of the fact that her daughter was suffering from a fever and she (Bowman) was unable to attend to her daughter because of being sequestered. Ms. Bowman also explained that the jury foreman informed the jury that he had been praying about making the right decision and he took out his Bible and started quoting from the Bible during the decision-making process. The introduction of the Bible seemed to sway other jurors toward death rather than life in prison. Ms. Bowman's decision so disturbed her that she told me she had to bring these events to my attention in an effort to correct the injustice that she had participated in.

Based on the foregoing information provided to me by Angela Bowman, it is my opinion that the defendant must be granted a new trial, or a new trial on punishment because the death verdict returned in this matter was decided in a manner other than the fair expression of the jurors' opinion. Furthermore, after retiring to deliberate, the jury received other evidence in the form of Biblical passages (not evidence admitted at trial). Based on the jury misconduct outlined above, I do not believe that the defendant received a fair and impartial trial.

Mario Madrid

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the _19_ day of August, 2013.

Notary Public in and for the State of Texas

DONNA M. RAMOS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 17, 2014

: 00552

PAGE 04/06

## AFFIDAVIT OF J.J. GRADONI

BEFORE ME THE UNDERSIGNED AUTHORITY, on this day personally appeared, J.J. Gradoni, a person known to me, who after being duly sworn, upon his oath did state:

My name is J.J. Gradoni. I am a licensed investigator in the State of Texas. My Texas License Number is: A05741. I conducted post-trial jury interviews in the case styled: State of Texas v. Obel Cruz-Garcia in cause number 1384794 in the 337th District Court of Harris County, Texas. Mr. Cruz-Garcia was sentenced to death by lethal injection. I am setting out some of the juror interviews below:

I conducted an interview with juror Angela Bowman. Ms. Bowman stated that the verdict she announced in open court when polled by the Judge was not her true and honest punishment verdict. Ms. Bowman explained that she had learned that her daughter was sick with a fever over 101 degrees. Because she had been sequestered during the punishment deliberations, Bowman was unable to attend to her child's medical needs. She was unaware of her daughter's medical status and punishment deliberations continued. Ms. Bowman's inability to tend to her daughter caused her to be distracted and ultimately the subject of undue pressure from other members of the jury to change her vote to favor the death penalty. Ms. Bowman stated that the other jurors told her they were not changing their minds and that she was holding them up and taking the process too personally. She said that other jurors told her she was wasting their time. Ms. Bowman ultimately voted in a way that a death verdict was returned in order to get home and take her child to the hospital. Ms. Bowman also noted that the jury deliberations involved the jury foreman injecting Biblical passages into the deliberations. Ms. Bowman believed that the Biblical references affected other members of the jury and caused them to vote in favor of the death penalty. Ms. Bowman further stated that a juror named Casey Guillotte commented during deliberations that she needed "spiritual guidance" to make her

: 00553

decision. Bowman related that at this point in the deliberations, jury foreman Matthew Clinger took out his Bible and stated that he had prayed on this the night before. After this "religious experience", Ms. Guillotte changed her vote to death. Ms. Bowman was of the opinion that other jurors changed their positions to vote for death after Mr. Clinger read scriptures from the Bible.

I interviewed jury foreman Matthew Clinger who confirmed that he produced his Bible during punishment deliberations. Mr. Clinger stated that he read Romans 13, Genesis 9 and from Deuteronomy while other jurors were present. He stated that he had researched the Bible the night before deliberating on life or death for Obel Cruz-Garcia. Clinger noted that one-third of the jurors favored death, one-third favored life and one-third were undecided. Mr. Clinger indicated to me that juror Casey Guillotte stated that she needed spiritual guidance. Mr. Clinger went on to state that he and Guillotte learned that they attended the same church. When I asked Clinger if his quotes from the Bible caused Guillotte to change her vote, he responded by saying that he thought the Bible verses were "contributing factors".

_____
J.J. Gradoni

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this 20th day of August, 2013.


KAYLA KOENIG
My Commission Expires
September 13, 2016

_____
Notary Public in and for the State of Texas

: 00554

## AFFIDAVIT OF ANGELA BOWMAN

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Angela Bowman, a person known to me, who after being duly sworn, upon her oath did state:

My name is Angela Bowman. I am over the age of eighteen and fully competent to make this Affidavit. I served as a juror in the capital murder case styled: State of Texas v. Obel Cruz-Garcia in cause number 1384794 in the 337th District Court of Harris County, Texas.

I am making this Affidavit of my own free will. I have not been provided anything of value, nor have I been promised anything of value, to get me to make this Affidavit. I am the one who initiated the chain of events which resulted in the filing of this document because I contacted Mario Madrid (trial counsel for Obel Cruz-Garcia) after the jury returned a death penalty verdict in the above-referenced matter. I contacted Mr. Madrid to let him know that I was pressured into voting in favor of the death penalty - this was not my true and honest verdict at the punishment stage of the trial.

On Thursday, July 18, 2013 at 4:17 p.m., I received a voice mail from my ten year old daughter's camp counselor, informing me that my daughter was running a 101.8 fever. This concerned me greatly because I knew the jury was going to be sequestered and I would not be able to care for my sick child. I spoke with Judge Magee and asked that I be removed as a juror and an alternate put in my place. This request was denied. While at dinner, the bailiff allowed me to call home to check on my daughter. I learned that my daughter still had a fever and was sick with a cough. I was very concerned that my daughter may have had pneumonia. I was not free to leave to take care of my child due to being sequestered. During our deliberation during the punishment phase of the trial one of the female jurors (I believe her name was Casey Guillotte) stated that she needed spiritual guidance to make her decision. At that point, our jury foreman (Matthew Clinger) told the jury that he had prayed about the decision the night before.

: 00555

Matthew then pulled out his Bible. After this "religious experience", Ms. Guillotte changed her mind to vote for the death penalty. I believe other jurors changed their position from life to death after Matthew read scriptures from the Bible. I felt a great deal of pressure from the other jurors because it appeared that I was the last holdout for a life sentence. My situation worsened as I became increasingly concerned about my daughter's condition as I had no communication or information updating me on her condition. If it had not been for my concern over my daughter's health condition, I would have remained committed to voting for life in prison. I was told by other members of the jury that I was holding up the process and taking it too personally. Finally, at the end of the day, I was told by the other eleven jurors that they weren't changing their minds and that I was holding them up. I was told that I was wasting the other juror's time. I changed my verdict so I could go home and take care of my child. When I left the courthouse, I took my daughter straight to the emergency room. The verdict I returned was not a true and honest expression of my belief in the evidence supporting the special issues that called for the death penalty.

In my opinion, the jury misconduct deprived Obel Cruz-Garcia of a fair and impartial jury and a fair trial in this matter. I believe that Mr. Cruz-Garcia is entitled to a new punishment trial or the Court's imposition of a life sentence.

Angela Bowman

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the

_20_ day of August, 2013.

My Commission Expires
2/2/2014

Notary Public in and for the State of Texas

Case No: 1384794

STATE OF TEXAS

IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA

HARRIS COUNTY, TEXAS

## PRESENTATION OF MOTION FOR NEW TRIAL TO THE COURT

On this __27__ day of _____August_____, 2013, the attached Motion

for New Trial was presented to the Court in accordance with Rule 21.6 of the Texas

Rules of Appellate Procedure.

This Court ORDERS that an evidentiary hearing be held on:_____

*Renee Magee*

Honorable Renee Magee
Judge Presiding
337th District Court
Harris County, Texas

**FILED**
Chris Daniel
District Clerk

AUG 2 7 2013

Time: _____
Harris County, Texas

By _____
Deputy

: 00557

Case No: 1384794

STATE OF TEXAS

IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA

HARRIS COUNTY, TEXAS

**FILED**
Chris Daniel
District Clerk
AUG 19 2013
Time: _____
Harris County, Texas
By _____
Deputy

### MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Obel Cruz-Garcia, Defendant in the above-styled and numbered cause, by and through the undersigned attorney, and moves this Court for an order granting him a new trial, and in support thereof would show:

I.

Defendant was convicted of capital murder and sentenced to death.

II.

The evidence in support of the verdict of guilt returned by the jury was insufficient as a matter of law.

III.

The evidence in support of the verdict returned by the jury at the punishment stage of the trial was insufficient as a matter of law.

IV.

The trial court erred when it found that the evidence used in Defendant's trial was lawfully obtained.

: 00558

## V.

The court misdirected the jury about the law or committed some other material error likely to injure the defendant's rights.

## VI.

The verdict is otherwise contrary to the law and the evidence.

## VII.

Rule 21.3 of the Texas Rules of Evidence provides that a defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons:

Rule 21.3(c) - when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion;

Rule 21.3(f) - when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case.............

Rule 21.3(g) - when the jury has engaged in misconduct that the defendant did not receive a fair and impartial trial; or

Rule 21.3(h) - when the verdict is contrary to the law and the evidence.

## VIII.

The jury engaged in such misconduct, as set forth in the Affidavit of Mario Madrid which is attached hereto and incorporated herein for all purposes, that the Defendant did not receive a fair and impartial trial of twelve jurors.

IX.

The interest of justice requires the granting of relief in the form of a new trial or a new punishment trial.

XI.

Defendant would show that reasonable grounds to establish that he is entitled to relief have been set forth above.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that after reviewing the matters set forth in this Motion for New Trial, and such other evidence as may be presented this Honorable Court, he be granted a new trial and/or a new punishment trial in this cause.

Respectfully submitted,

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77002
(713) 623-8312

Attorney for Defendant/Appellant
Obel Cruz-Garcia

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the 19th day of August, 2013.

Notary Public in and for the State of Texas

: 00560

## AFFIDAVIT OF MARIO MADRID

BEFORE ME THE UNDERSIGNED AUTHORITY, on this day personally appeared, Mario Madrid, a person known to me, who after being duly sworn, upon his oath did state:

My name is Mario Madrid. I am an attorney licensed to practice in the State of Texas. I was appointed to represent Obel Cruz-Garcia who was charged by indictment with the offense of capital murder in cause number 1384794 in the 337th District Court of Harris County, Texas.

At the conclusion of the guilt/innocence phase of the trial, the jury found Mr. Cruz-Garcia guilty of capital murder. During the punishment phase deliberations, a juror named Angela Bowman met privately with Judge Magee. Judge Magee stated that Ms. Bowman questioned how long deliberations would last. At the conclusion of the punishment phase of the trial, the jury returned a verdict which resulted in the trial court sentencing Mr. Cruz-Garcia to death.

On the evening of the jury's punishment verdict, I received a telephone call from a juror named Angela Bowman. Ms. Bowman was distraught over her decision to capitulate during the punishment phase deliberations and change her vote from life in prison to the death penalty. Ms. Bowman explained to me that she was pressured into changing her position on the life vs. death decision. She explained that her decision was especially complicated by virtue of the fact that her daughter was suffering from a fever and she (Bowman) was unable to attend to her daughter because of being sequestered. Ms. Bowman also explained that the jury foreman informed the jury that he had been praying about making the right decision and he took out his Bible and started quoting from the Bible during the decision-making process. The introduction of the Bible seemed to sway other jurors toward death rather than life in prison. Ms. Bowman's decision so disturbed her that she told me she had to bring these events to my attention in an effort to correct the injustice that she had participated in.

: 00561

Based on the foregoing information provided to me by Angela Bowman, it is my opinion that the defendant must be granted a new trial, or a new trial on punishment because the death verdict returned in this matter was decided in a manner other than the fair expression of the jurors' opinion. Furthermore, after retiring to deliberate, the jury received other evidence in the form of Biblical passages (not evidence admitted at trial). Based on the jury misconduct outlined above, I do not believe that the defendant received a fair and impartial trial.

Mario Madrid

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the _19_ day of August, 2013.

Notary Public in and for the State of Texas

DONNA M. RAMOS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 17, 2014

: 00562

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion for New Trial

has been mailed to: The Harris County District Attorney's Office, Appellate Division,

1201 Franklin, 6th Floor, Houston, Texas 77002.

SIGNED THIS _____ day of August, 2013.

Wayne T. Hill

Case No:  1384794

STATE OF TEXAS

VS.

OBEL CRUZ-GARCIA

IN THE 337TH DISTRICT COURT

HARRIS COUNTY, TEXAS

## PRESENTATION OF SUPPLEMENT TO DEFENDANT'S
## MOTION FOR NEW TRIAL TO THE COURT

On this ___27___ day of ___August___, 2013, the attached

Supplement to Defendant's Motion for New Trial was presented to the Court in

accordance with Rule 21.6 of the Texas Rules of Appellate Procedure.

This Court ORDERS that an evidentiary hearing be held on:_____

_Renee Magee_
Honorable Renee Magee
Judge Presiding
337th  District Court
Harris County, Texas

**F I L E D**
Chris Daniel
District Clerk

AUG 2 7 2013

Time: _____
            Harris County, Texas
By _____
            Deput

: 00564

Case No: 1384794

STATE OF TEXAS                IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA         HARRIS COUNTY, TEXAS

## SUPPLEMENT TO DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Obel Cruz-Garcia, Defendant in the above-styled and numbered cause, by and through the undersigned attorney, and moves this Court for an order granting him a new trial, and in support thereof would show:

### I.

Defendant was convicted of capital murder and sentenced to death.

### II.

The evidence in support of the verdict of guilt returned by the jury was insufficient as a matter of law.

### III.

The evidence in support of the verdict returned by the jury at the punishment stage of the trial was insufficient as a matter of law.

### IV.

The trial court erred when it found that the evidence used in Defendant's trial was lawfully obtained.

## V.

The court misdirected the jury about the law or committed some other material error likely to injure the defendant's rights.

## VI.

The verdict is otherwise contrary to the law and the evidence.

## VII.

Rule 21.3 of the Texas Rules of Evidence provides that a defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons:

Rule 21.3(c) - when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion;

Rule 21.3(f) - when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case.............

Rule 21.3(g) - when the jury has engaged in misconduct that the defendant did not receive a fair and impartial trial; or

Rule 21.3(h) - when the verdict is contrary to the law and the evidence.

## VIII.

The jury engaged in such misconduct, as previously set forth in the Motion for New Trial filed on August 19, 2013 which included the Affidavit of Mario Madrid which is again attached hereto and incorporated herein for all purposes. Defendant would further show by this Supplement to Defendant's Motion for New Trial, which is supported by the attached Affidavits of J.J. Gradoni and Angela Bowman which are incorporated herein for all purposes, that the jury engaged in misconduct as set forth in the Rules

: 00566

·recited in Paragraph VII above which deprived Defendant of a fair and impartial trial of twelve jurors.

IX.

The interest of justice requires the granting of relief in the form of a new trial or a new punishment trial.

X.

Defendant would show that reasonable grounds to establish that he is entitled to relief have been set forth above.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that after reviewing the allegations with supporting Affidavits set forth in the original Motion for New Trial filed on August 19, 2013, as well as the allegations with supporting Affidavits set forth in this Supplement to Defendant's Motion for New Trial, and such other evidence as may be presented this Honorable Court, he be granted a new trial and/or a new punishment trial in this cause.

Respectfully submitted,

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77002
(713) 623-8312

Attorney for Defendant/Appellant
Obel Cruz-Garcia

: 00567

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on

this the ........ day of August, 2013.

Notary Public in and for the State of Texas

**AFFIDAVIT / INMATE DECLARATION**

I, Obel Cruz-Garcia, SPN: 01134368, being presently incarcerated in the Harris

County Jail in Harris County, Texas, declare under penalty of perjury that I am the

defendant in the above-styled and numbered cause. I was present throughout the trial of

this matter. I adopt the allegations contained in the original Motion for New Trial filed

on August 19, 2013 as well as the allegations contained in this Supplement to Defendant's

Motion for New Trial all with accompanying Affidavits. Based upon my personal

knowledge of the events which transpired during my trial, I am requesting a new trial.

Executed this __21__ day of August, 2013.

Obel Cruz-Garcia

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally

appeared, Obel Cruz-Garcia, a person known to me, who after being duly sworn that

make the above and foregoing statement.

Signed this ____ day of August, 2013.

_____

Notary Public in and for the State of Texas

: 00568

COPY

Case No: 1384794

STATE OF TEXAS

VS.

OBEL CRUZ-GARCIA

IN THE 337TH DISTRICT COURT

HARRIS COUNTY, TEXAS

FILED
Chris Daniel
District Clerk
AUG 19 2013
Time:_____
Harris County, Texas
By_____ Deputy

## MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW,  Obel Cruz-Garcia, Defendant in the above-styled and numbered cause, by and through the undersigned attorney, and moves this Court for an order granting him a new trial, and in support thereof would show:

### I.

Defendant was convicted of capital murder and sentenced to death.

### II.

The evidence in support of the verdict of guilt  returned by the jury  was insufficient as a matter of law.

### III.

The evidence in support of the  verdict returned by the jury at the punishment stage of the trial was insufficient as a matter of law.

### IV.

The trial court erred when it found that the evidence used in Defendant's trial was lawfully obtained.

: 00569

## V.

The court misdirected the jury about the law or committed some other material error likely to injure the defendant's rights.

## VI.

The verdict is otherwise contrary to the law and the evidence.

## VII.

Rule 21.3 of the Texas Rules of Evidence provides that a defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons:

Rule 21.3(c) - when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion;

Rule 21.3(f) - when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case.............

Rule 21.3(g) - when the jury has engaged in misconduct that the defendant did not receive a fair and impartial trial; or

Rule 21.3(h) - when the verdict is contrary to the law and the evidence.

## VIII.

The jury engaged in such misconduct, as set forth in the Affidavit of Mario Madrid which is attached hereto and incorporated herein for all purposes, that the Defendant did not receive a fair and impartial trial of twelve jurors.

IX.

The interest of justice requires the granting of relief in the form of a new trial or a new punishment trial.

XI.

Defendant would show that reasonable grounds to establish that he is entitled to relief have been set forth above.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that after reviewing the matters set forth in this Motion for New Trial, and such other evidence as may be presented this Honorable Court, he be granted a new trial and/or a new punishment trial in this cause.

Respectfully submitted,

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77002
(713) 623-8312

Attorney for Defendant/Appellant
Obel Cruz-Garcia

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the 19th day of August, 2013.

Notary Public in and for the State of Texas

: 00571

## AFFIDAVIT OF MARIO MADRID

BEFORE ME THE UNDERSIGNED AUTHORITY, on this day personally appeared, Mario Madrid, a person known to me, who after being duly sworn, upon his oath did state:

My name is Mario Madrid. I am an attorney licensed to practice in the State of Texas. I was appointed to represent Obel Cruz-Garcia who was charged by indictment with the offense of capital murder in cause number 1384794 in the 337th District Court of Harris County, Texas.

At the conclusion of the guilt/innocence phase of the trial, the jury found Mr. Cruz-Garcia guilty of capital murder. During the punishment phase deliberations, a juror named Angela Bowman met privately with Judge Magee. Judge Magee stated that Ms. Bowman questioned how long deliberations would last. At the conclusion of the punishment phase of the trial, the jury returned a verdict which resulted in the trial court sentencing Mr. Cruz-Garcia to death.

On the evening of the jury's punishment verdict, I received a telephone call from a juror named Angela Bowman. Ms. Bowman was distraught over her decision to capitulate during the punishment phase deliberations and change her vote from life in prison to the death penalty. Ms. Bowman explained to me that she was pressured into changing her position on the life vs. death decision. She explained that her decision was especially complicated by virtue of the fact that her daughter was suffering from a fever and she (Bowman) was unable to attend to her daughter because of being sequestered. Ms. Bowman also explained that the jury foreman informed the jury that he had been praying about making the right decision and he took out his Bible and started quoting from the Bible during the decision-making process. The introduction of the Bible seemed to sway other jurors toward death rather than life in prison. Ms. Bowman's decision so disturbed her that she told me she had to bring these events to my attention in an effort to correct the injustice that she had participated in.

: 00572

Based on the foregoing information provided to me by Angela Bowman, it is my opinion that the defendant must be granted a new trial, or a new trial on punishment because the death verdict returned in this matter was decided in a manner other than the fair expression of the jurors' opinion. Furthermore, after retiring to deliberate, the jury received other evidence in the form of Biblical passages (not evidence admitted at trial). Based on the jury misconduct outlined above, I do not believe that the defendant received a fair and impartial trial.

Mario Madrid

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the
___19___ day of August, 2013.

Notary Public in and for the State of Texas

DONNA M. RAMOS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 17, 2014

: 00573

## AFFIDAVIT OF J.J. GRADONI

BEFORE ME THE UNDERSIGNED AUTHORITY, on this day personally appeared, J.J. Gradoni, a person known to me, who after being duly sworn, upon his oath did state:

My name is J.J. Gradoni. I am a licensed investigator in the State of Texas. My Texas License Number is: A05741. I conducted post-trial jury interviews in the case styled: State of Texas v. Obel Cruz-Garcia in cause number 1384794 in the 337th District Court of Harris County, Texas. Mr. Cruz-Garcia was sentenced to death by lethal injection. I am setting out some of the juror interviews below:

I conducted an interview with juror Angela Bowman. Ms. Bowman stated that the verdict she announced in open court when polled by the Judge was not her true and honest punishment verdict. Ms. Bowman explained that she had learned that her daughter was sick with a fever over 101 degrees. Because she had been sequestered during the punishment deliberations, Bowman was unable to attend to her child's medical needs. She was unaware of her daughter's medical status and punishment deliberations continued. Ms. Bowman's inability to tend to her daughter caused her to be distracted and ultimately the subject of undue pressure from other members of the jury to change her vote to favor the death penalty. Ms. Bowman stated that the other jurors told her they were not changing their minds and that she was holding them up and taking the process too personally. She said that other jurors told her she was wasting their time. Ms. Bowman ultimately voted in a way that a death verdict was returned in order to get home and take her child to the hospital. Ms. Bowman also noted that the jury deliberations involved the jury foreman injecting Biblical passages into the deliberations. Ms. Bowman believed that the Biblical references affected other members of the jury and caused them to vote in favor of the death penalty. Ms. Bowman further stated that a juror named Casey Guillotte commented during deliberations that she needed "spiritual guidance" to make her

: 00574

decision. Bowman related that at this point in the deliberations, jury foreman Matthew Clinger took out his Bible and stated that he had prayed on this the night before. After this "religious experience", Ms. Guillotte changed her vote to death. Ms. Bowman was of the opinion that other jurors changed their positions to vote for death after Mr. Clinger read scriptures from the Bible.

I interviewed jury foreman Matthew Clinger who confirmed that he produced his Bible during punishment deliberations. Mr. Clinger stated that he read Romans 13, Genesis 9 and from Deuteronomy while other jurors were present. He stated that he had researched the Bible the night before deliberating on life or death for Obel Cruz-Garcia. Clinger noted that one-third of the jurors favored death, one-third favored life and one-third were undecided. Mr. Clinger indicated to me that juror Casey Guillotte stated that she needed spiritual guidance. Mr. Clinger went on to state that he and Guillotte learned that they attended the same church. When I asked Clinger if his quotes from the Bible caused Guillotte to change her vote, he responded by saying that he thought the Bible verses were "contributing factors".

J.J. Gradoni

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this 20th

day of August, 2013.

Notary Public in and for the State of Texas



KAYLA KOENIG
My Commission Expires
September 13, 2016

## AFFIDAVIT OF ANGELA BOWMAN

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Angela Bowman, a person known to me, who after being duly sworn, upon her oath did state:

My name is Angela Bowman. I am over the age of eighteen and fully competent to make this Affidavit. I served as a juror in the capital murder case styled: State of Texas v. Obel Cruz-Garcia in cause number 1384794 in the 337th District Court of Harris County, Texas.

I am making this Affidavit of my own free will. I have not been provided anything of value, nor have I been promised anything of value, to get me to make this Affidavit. I am the one who initiated the chain of events which resulted in the filing of this document because I contacted Mario Madrid (trial counsel for Obel Cruz-Garcia) after the jury returned a death penalty verdict in the above-referenced matter. I contacted Mr. Madrid to let him know that I was pressured into voting in favor of the death penalty - this was not my true and honest verdict at the punishment stage of the trial.

On Thursday, July 18, 2013 at 4:17 p.m., I received a voice mail from my ten year old daughter's camp counselor, informing me that my daughter was running a 101.8 fever. This concerned me greatly because I knew the jury was going to be sequestered and I would not be able to care for my sick child. I spoke with Judge Magee and asked that I be removed as a juror and an alternate put in my place. This request was denied. While at dinner, the bailiff allowed me to call home to check on my daughter. I learned that my daughter still had a fever and was sick with a cough. I was very concerned that my daughter may have had pneumonia. I was not free to leave to take care of my child due to being sequestered. During our deliberation during the punishment phase of the trial one of the female jurors (I believe her name was Casey Guillotte) stated that she needed spiritual guidance to make her decision. At that point, our jury foreman (Matthew Clinger) told the jury that he had prayed about the decision the night before.

: 00576

Matthew then pulled out his Bible. After this "religious experience", Ms. Guillotte changed her mind to vote for the death penalty. I believe other jurors changed their position from life to death after Matthew read scriptures from the Bible. I felt a great deal of pressure from the other jurors because it appeared that I was the last holdout for a life sentence. My situation worsened as I became increasingly concerned about my daughter's condition as I had no communication or information updating me on her condition. If it had not been for my concern over my daughter's health condition, I would have remained committed to voting for life in prison. I was told by other members of the jury that I was holding up the process and taking it too personally. Finally, at the end of the day, I was told by the other eleven jurors that they weren't changing their minds and that I was holding them up. I was told that I was wasting the other juror's time. I changed my verdict so I could go home and take care of my child. When I left the courthouse, I took my daughter straight to the emergency room. The verdict I returned was not a true and honest expression of my belief in the evidence supporting the special issues that called for the death penalty.

In my opinion, the jury misconduct deprived Obel Cruz-Garcia of a fair and impartial jury and a fair trial in this matter. I believe that Mr. Cruz-Garcia is entitled to a new punishment trial or the Court's imposition of a life sentence.

Angela Bowman

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the ____ day of August, 2013.

My Commission Expires 2/2/2014

Notary Public in and for the State of Texas

: 00577

OFF-DOCKET

CAUSE NO. 1384794          CHARGE Capital Murder

THE STATE OF TEXAS          §          337 DISTRICT COURT

VS.                         §          OF

Obel Cruz-Garcia           §          HARRIS COUNTY, TEXAS
Defendant

## CASE RESET FORM

The undersigned Counsel hereby agrees this case is reset for 9-12-13        8 ᵖᵐ

STATUS CFE.
Hearing on MTN  on _9-20-13_          at 8  a.m.
        New Trial
Type of Setting

_____          HCJ
Attorney for the State          Defendant

☐ The State has offered:          WAYNE HILL
                                 (Print) Attorney for Defendant

                                 _____
                                 (Signature) Attorney for Defendant

☐ The State and Defense agree as follows:

✱  9/20/13 Hearing on MNT by          4615 SW Fwy 600
affidavits per Judge Magee          Address
unless she decides otherwise          Hou    TX    77027
on 9/12/13 Status Conference.          City    State    Zip

                                 09656300

                                 Attorney Bar #          Attorney SPN #

Interpreter Requested:    Yes or No
Language: _____          _____
                                 Phone Number          Fax Number

For: _____ Defendant _____ Witness          _____
Estimated Length of Assignment: _____          Email Address

_____

**FOR COURT STAFF USE ONLY**
Reset by  ☐ Court        ☐ Defense        ☐ Operation of Law        ☐ Prosecution

☐ Attorney not present          ☐ Defendant has new case          ☐ No Tape/Lab
☐ D.A. to contact complainant/witness          ☐ Defendant on call          ☐ Not indicted
☐ D.A. to evaluate case          ☐ Defendant to consider offer          ☐ Other
☐ D.A. to Reindict          ☐ Disposition of misd./OOC case          ☐ Refer to
☐ D.A. to file MAJ/MRP          ☐ File Unavailable          ☐ Restitution Info
☐ Defense to contact witness          ☐ MHMRA Evaluation          ☐ To hire Attorney
                                 _____ 21 Day _____ Full

APPROVED BY THE COURT:

_____          8/29/13
Judge/Coordinator          Date Signed

FILED
Chris Daniel
District Clerk
AUG 29 2013
Harris County, Texas
Time: _____
By _____

5/2/12
: 00578

DISTRICT CLERK



# CHRIS DANIEL

### HARRIS COUNTY DISTRICT CLERK

September 4, 2013

WAYNE HILL
ATTORNEY OF RECORD
4615 SW FWY #600
HOUSTON, TX 77027

Defendant's Name:  OBEL CRUZ-GARCIA

Cause No:  1384794

Court:  337TH DISTRICT COURT

Please note the following appeal updates on the above mentioned cause:

**Notice of Appeal Filed Date:** 7/22/13
**Sentence Imposed Date:** 7/22/13
**Court of Appeals Assignment:  Court of Criminal Appeals**
**Appeal Attorney of Record:**  WAYNE HILL

Sincerely,

Leslie Charles
Criminal Post Trial Deputy

CC: Mike Anderson
District Attorney
Appellate Division
Harris County, Texas

MARY ANN RODRIGUEZ  (DELIVERED VIA E-MAIL)

This is your notice to inform any and all substitute reporters in this cause.

Chris Daniel
District Clerk

SEP 1 2 2013

Time: _____
Harris County, Texas
By _____
Deputy

Case No: 1384794

STATE OF TEXAS                    IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA              HARRIS COUNTY, TEXAS

## MOTION FOR LIVE WITNESS  EVIDENTIARY HEARING
## ON DEFENDANT'S MOTION FOR NEW TRIAL & SUPPLEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW,  Obel Cruz-Garcia, Defendant in the above-styled and numbered cause, by and through the undersigned attorney, and moves this Court for an order granting him an evidentiary hearing with live witnesses testifying before the Court, and in support thereof would show:

### I.

Defendant was convicted of capital murder and sentenced to death.

### II.

Defendant filed a Motion for New Trial and a Supplement to Defendant's Motion for New Trial alleging jury misconduct and the receipt of evidence not admitted during trial. These matters were timely presented to the trial court in accordance with Rule 21.6 of the Texas Rules of Appellate Procedure.

### III.

The  trial court previously set this matter for a "status hearing" on September 12, 2013, and a hearing on Defendant's motions (by affidavits) on September 20, 2013.

IMAGED

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

IV.

The allegations set forth in Defendant's Motion for New Trial and Supplement thereto involve matters which do not appear of record and which cannot be determined from the record. Defendant is requesting that this Court grant him a hearing at which live witnesses can be called to testify under oath and subject to cross-examination.

V.

Defendant submits that he is entitled to a hearing on his Motion for New Trial and Supplement thereto because the motions raised matters that cannot be determined from the record. Defendant submits that the affidavits filed thus far in support of his Motion for New Trial and Supplement thereto raise matters not determinable from the record - making a hearing on the motion mandatory. Defendant further submits that he has established a prima facie case for a cognizable ground raised in his Motion for New Trial and Supplement thereto. Defendant submits that to fully develop the issues raised in his Motion for New Trial and Supplement thereto, a live evidentiary hearing must be conducted.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that after reviewing the matters set forth in this Motion, and such other argument as may be presented, this Honorable Court  grant him a live witness evidentiary hearing  in this cause.

Respectfully submitted,

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77002
(713) 623-8312

Attorney for Defendant/Appellant
Obel Cruz-Garcia

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion was e-mailed

to Ms. Natalie Tise,  Felony Division "A" Chief , Harris County District Attorney's

Office, 1201 Franklin, Houston, Texas 77002. **E-Mail:  tise_natalie@dao.hctx.net**

SIGNED THIS ___ *11 th* ___ day of  September, 2013.


_____
Wayne T. Hill

Case No: 1384794

STATE OF TEXAS                                   IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA                          HARRIS COUNTY, TEXAS

## COURT'S ORDER ON DEFENDANT'S MOTION FOR LIVE WITNESS EVIDENTIARY HEARING ON DEFENDANT'S MOTION FOR NEW TRIAL AND SUPPLEMENT

This Court, having heard Defendant's Motion for Live Witness Evidentiary Hearing

on Defendant's Motion for New Trial and Supplement, makes the following ORDERS:

Defendant's Motion is DENIED.

Defendant's Motion is GRANTED as follows:

_____

_____

_____

_____

_____

SIGNED AND ORDERED this _12_ day of September, 2013.

Honorable Renee Magee
Judge Presiding
337th District Court
Harris County, Texas

: 00584



NO. 1384794

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| V. | § | HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

## STATE'S REPLY TO
## DEFENDANT'S MOTION FOR NEW TRIAL

*FILED*
*Chris Daniel*
*District Clerk*
Time:
SEP 19 2013
By
*Harris County, Texas*
*Deputy*

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW THE STATE OF TEXAS, by and through the undersigned Assistant District Attorney, and files this reply in opposition to the Defendant's Motion for New Trial.

### I.

The Defendant, Obel Cruz-Garcia, has been found guilty by a jury of the offense of capital murder, and the jury answered special issues in such a manner that the Defendant has been assessed the death penalty.

### II.

The Defendant primarily claims that he is entitled to a new trial because he claims that some jurors have engaged in misconduct during deliberations at the punishment stage of his trial. In his Motion for New Trial and in the Supplement to his Motion for New Trial, the Defendant does not specifically identify the juror misconduct that allegedly occurred during jury deliberations.

An affidavit from Mario Madrid attached to both the Defendant's Motion for New Trial and the Supplement to the Defendant's Motion for New Trial suggests the following in support of the Defendant's plea for a new trial:

: 00585

- One of the jurors allegedly felt pressured into answering the special issues in a particular manner because she could not attend to a daughter who allegedly had a fever.
- The jury foreman allegedly quoted from the Bible during jury deliberations at the punishment stage of the trial.

Another affidavit of J.J. Gradoni, attached to the Supplement to the Defendant's Motion for New Trial, suggests further:

- The juror who felt pressured because of her allegedly sick daughter also allegedly felt pressured into answering the special issues in a particular manner because other jurors told her "that she was holding them up and taking the process too personally" and that "she was wasting their time".

### III.

The State questions the credibility of the statements presented in the Defendant's supporting affidavits. As reflected by the record, the particular juror who allegedly felt pressured spoke with the trial judge in her chambers to discuss any concerns that she might have about jury deliberations at the punishment stage of the trial. After this in-chambers discussion,[1] the juror returned to the jury room to continue deliberations with the other jurors. After some time, the jurors announced that they had reached a verdict, and their answers to the special issues were announced in open court. Each of the jurors was individually polled by the trial judge in open court, and each juror announced that the announced answers to the special issues were in fact his or her verdict.

---

[1] The State notes that the allegations presented in the Defendant's supporting affidavits are completely different from the statements made by the allegedly pressured juror during her in-chambers discussion with the Trial Judge. For that reason as well, the State questions the credibility of the Defendant's supporting affidavits.

Furthermore, the State has spoken with individual jurors in this case, and it is now clear to the State:

- That the juror who allegedly felt pressured because of her sick daughter was not so pressured that she changed any answer to the special issues as a result.

- That this juror was not pressured into answering any special issue by any of the other jurors.

- That the jury foreman did not quote directly from the Bible during jury deliberations.

- That any reference to the Bible did not cause a particular juror to change her answer to any of the special issues.

The State contends that the Defendant has not presented any evidence—and certainly no uncontradicted evidence—that would entitle him to a new trial or to a new hearing on the issue of punishment. *Cf. Colyer v. State,* 395 S.W.3d 277, 282 (Tex. App.—Fort Worth 2013, pet. granted).

## IV.

The State further notes that "a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment." A juror's affidavit is also not admissible for these purposes. *See* TEX. R. EVID. 606(b). In this context, the only matter to which a juror may testify is whether any "outside influence" was improperly "brought to bear" upon any juror. *See* TEX. R. EVID. 606(b). The Defendant has failed to show that any "outside influence" was "brought to bear" upon any juror; therefore, the State contends that the affidavits attached to the Defendant's Motion for New Trial and the Supplement to the Motion for New Trial

should not be admitted into evidence for the purpose of supporting the Defendant's Motion for New Trial.

The plain language of Rule 606(b) indicates that an outside influence is something outside of both the jury room and the juror. *McQuarrie v. State*, 380 S.W.3d 145, 151 (Tex. Crim. App. 2012) (quoting *White v. State*, 225 S.W.3d 571, 574 (Tex. Crim. App. 2007)). Thus, the rule prevents a juror from testifying that the jury discussed even improper matters during deliberations. *McQuarrie*, 380 S.W.3d at 151.

Jury deliberations must be kept private to encourage jurors to candidly discuss the law and facts, and during an inquiry pursuant to Rule 606(b), such privacy will be maintained because the court may not delve into deliberations. The court may not inquire as to the subjective thought processes and reactions of the jury, so jurors should continue to feel free to raise and discuss differing viewpoints without the fear of later public scrutiny. Similarly, the jury should be protected from post-trial harassment or tampering. A Rule 606(b) inquiry should be limited to that which occurs outside of the jury room and outside of the juror's personal knowledge and experience. *McQuarrie*, 380 S.W.3d at 153.

"Outside influence" is limited to "something originating from a source outside of the jury room and other than from the jurors themselves." *McQuarrie*, 380 S.W.3d at 154. In that respect, in this case, the Defendant has presented nothing that suggests that any juror engaged in any outside "research" or "investigation" that was "brought to bear" on any of the other jurors. *Cf. McQuarrie*, 380 S.W.3d at 154. The Defendant has presented no reasonable grounds that Bible reading affected the jury's verdict. Therefore, a hearing on a motion for new trial (by way of affidavits or otherwise) is not necessary. *See Lucero v. State*, 246 S.W.3d 86, 95 (Tex. Crim. App. 2008). Since the Defendant has not shown that any "outside influence" was "brought to bear" upon any of the

jurors, his supporting affidavits should not be considered, and his Motion for New Trial should be denied. *See also Romero v. State,* 396 S.W.3d 136, 152-53 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

THEREFORE, it is respectfully requested that this Court deny the Defendant's Motion for New Trial.

RESPECTFULLY SUBMITTED this __19th__ day of September, 2013.

ALAN CURRY
Assistant District Attorney
Harris County, Texas
1201 Franklin, 6th Floor
Houston, Texas 77002
(713) 755-5826
State Bar of Texas No. 05263700

## CERTIFICATE OF SERVICE

I, Alan Curry, hereby certify that a true and correct copy of the foregoing Motion for New Trial was delivered by _____FAX_____ to Wayne Hill on the ___19th___ day of September, 2013.

**Alan Curry**
Assistant District Attorney
Harris County, Texas

NO. 1384794

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| V. | § | HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | 337TH JUDICIAL DISTRICT |

## STATE'S REPLY TO
## DEFENDANT'S MOTION FOR NEW TRIAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW THE STATE OF TEXAS, by and through the undersigned Assistant District Attorney, and files this reply in opposition to the Defendant's Motion for New Trial.

### I.

The Defendant, Obel Cruz-Garcia, has been found guilty by a jury of the offense of capital murder, and the jury answered special issues in such a manner that the Defendant has been assessed the death penalty.

### II.

The Defendant primarily claims that he is entitled to a new trial because he claims that some jurors have engaged in misconduct during deliberations at the punishment stage of his trial. In his Motion for New Trial and in the Supplement to his Motion for New Trial, the Defendant does not specifically identify the juror misconduct that allegedly occurred during jury deliberations.

An affidavit from Mario Madrid attached to both the Defendant's Motion for New Trial and the Supplement to the Defendant's Motion for New Trial suggests the following in support of the Defendant's plea for a new trial:

: 00591

- One of the jurors allegedly felt pressured into answering the special issues in a particular manner because she could not attend to a daughter who allegedly had a fever.
- The jury foreman allegedly quoted from the Bible during jury deliberations at the punishment stage of the trial.

Another affidavit of J.J. Gradoni, attached to the Supplement to the Defendant's Motion for New Trial, suggests further:

- The juror who felt pressured because of her allegedly sick daughter also allegedly felt pressured into answering the special issues in a particular manner because other jurors told her "that she was holding them up and taking the process too personally" and that "she was wasting their time".

## III.

The State questions the credibility of the statements presented in the Defendant's supporting affidavits. As reflected by the record, the particular juror who allegedly felt pressured spoke with the trial judge in her chambers to discuss any concerns that she might have about jury deliberations at the punishment stage of the trial. After this in-chambers discussion,[1] the juror returned to the jury room to continue deliberations with the other jurors. After some time, the jurors announced that they had reached a verdict, and their answers to the special issues were announced in open court. Each of the jurors was individually polled by the trial judge in open court, and each juror announced that the announced answers to the special issues were in fact his or her verdict.

---

[1] The State notes that the allegations presented in the Defendant's supporting affidavits are completely different from the statements made by the allegedly pressured juror during her in-chambers discussion with the Trial Judge. For that reason as well, the State questions the credibility of the Defendant's supporting affidavits.

Furthermore, the State has spoken with individual jurors in this case, and it is now clear to the State:

- That the juror who allegedly felt pressured because of her sick daughter was not so pressured that she changed any answer to the special issues as a result.

- That this juror was not pressured into answering any special issue by any of the other jurors.

- That the jury foreman did not quote directly from the Bible during jury deliberations.

- That any reference to the Bible did not cause a particular juror to change her answer to any of the special issues.

The State contends that the Defendant has not presented any evidence—and certainly no uncontradicted evidence—that would entitle him to a new trial or to a new hearing on the issue of punishment. *Cf. Colyer v. State,* 395 S.W.3d 277, 282 (Tex. App.—Fort Worth 2013, pet. granted).

## IV.

The State further notes that "a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment." A juror's affidavit is also not admissible for these purposes. *See* TEX. R. EVID. 606(b). In this context, the only matter to which a juror may testify is whether any "outside influence" was improperly "brought to bear" upon any juror. *See* TEX. R. EVID. 606(b). The Defendant has failed to show that any "outside influence" was "brought to bear" upon any juror; therefore, the State contends that the affidavits attached to the Defendant's Motion for New Trial and the Supplement to the Motion for New Trial

should not be admitted into evidence for the purpose of supporting the Defendant's Motion for New Trial.

The plain language of Rule 606(b) indicates that an outside influence is something outside of both the jury room and the juror. *McQuarrie v. State,* 380 S.W.3d 145, 151 (Tex. Crim. App. 2012) (quoting *White v. State,* 225 S.W.3d 571, 574 (Tex. Crim. App. 2007)). Thus, the rule prevents a juror from testifying that the jury discussed even improper matters during deliberations. *McQuarrie,* 380 S.W.3d at 151.

Jury deliberations must be kept private to encourage jurors to candidly discuss the law and facts, and during an inquiry pursuant to Rule 606(b), such privacy will be maintained because the court may not delve into deliberations. The court may not inquire as to the subjective thought processes and reactions of the jury, so jurors should continue to feel free to raise and discuss differing viewpoints without the fear of later public scrutiny. Similarly, the jury should be protected from post-trial harassment or tampering. A Rule 606(b) inquiry should be limited to that which occurs outside of the jury room and outside of the juror's personal knowledge and experience. *McQuarrie,* 380 S.W.3d at 153.

"Outside influence" is limited to "something originating from a source outside of the jury room and other than from the jurors themselves." *McQuarrie,* 380 S.W.3d at 154. In that respect, in this case, the Defendant has presented nothing that suggests that any juror engaged in any outside "research" or "investigation" that was "brought to bear" on any of the other jurors. *Cf. McQuarrie,* 380 S.W.3d at 154. The Defendant has presented no reasonable grounds that Bible reading affected the jury's verdict. Therefore, a hearing on a motion for new trial (by way of affidavits or otherwise) is not necessary. *See Lucero v. State,* 246 S.W.3d 86, 95 (Tex. Crim. App. 2008). Since the Defendant has not shown that any "outside influence" was "brought to bear" upon any of the

jurors, his supporting affidavits should not be considered, and his Motion for New Trial should be denied. *See also Romero v. State,* 396 S.W.3d 136, 152-53 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

**THEREFORE**, it is respectfully requested that this Court deny the Defendant's Motion for New Trial.

**RESPECTFULLY SUBMITTED** this _19th_ day of September, 2013.

**ALAN CURRY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, 6th Floor
Houston, Texas 77002
(713) 755-5826
State Bar of Texas No. 05263700

## CERTIFICATE OF SERVICE

I, Alan Curry, hereby certify that a true and correct copy of the foregoing Motion for New Trial was delivered by _____FAX_____ to Wayne Hill on the _____19th_____ day of September, 2013.

**Alan Curry**
Assistant District Attorney
Harris County, Texas

: 00596

State's
Exhibit 1

# AFFIDAVIT OF CASEY LYNN GUILLOTTE

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared, Casey
Lynn Guillotte, who being by me duly sworn, stated as follows:

My name is Casey Lynn Guillotte and I am 28 years of age and was born on March 22, 1985. I
currently reside in Harris County, Texas, at 1508 Rutland Street. I am the same Casey Lynn
Guillotte who previously served as a juror in the capital murder trial of *The State of Texas vs.
Obel Cruz-Garcia.* My jury service concluded on Friday, July 19, 2013, when my fellow jurors
and I answered the three special issue questions in a manner that led to the death penalty being
assessed against Obel Cruz-Garcia.

Testimony in the trial concluded on Thursday, July 18, 2013, and we began our deliberations on
that same day. After being sequestered for the night, we returned to continue our deliberations
on Friday, July 19, 2013. We addressed each of the three special issue questions separately. We
first discussed special issue no. 1 and then addressed special issue no. 2. After discussion on
these special issues, we unanimously answered both questions affirmatively. We then turned to
special issue no. 3 – whether there was sufficient mitigating evidence to warrant life in prison
rather than the death penalty. There was lengthy debate concerning this third special issue and in
coming to our decision we went around the room and each contributed our thoughts. Ultimately
we unanimously decided there was nothing sufficiently mitigating to warrant something less than
the death penalty and answered the third question "no".

After we had come to a unanimous decision on all three special issue questions and before the
jury foreman, Matt Clinger, signed the verdict form, I asked the jury a general question about
how they were going to come to terms with the verdict from an emotional standpoint.
Essentially, I was wondering how they were going to find peace of mind with the verdict we had
reached, knowing the defendant would ultimately be sentenced to death. In response to my
question, Matt retrieved a bible from his personal belongings and appeared to read a passage of
the bible to himself. He then stated he had personally found comfort with his decision because
of a bible verse in the book of Romans. At no time did Matt read the bible verse to the jury or

refer directly to a specific verse or passage from the bible.  Matt's retrieval of the bible and his referral to the bible verse did not in any way influence my decision in answering the three special issue questions.  My response to the three special issue questions was based solely on the facts and the evidence presented throughout the trial of Obel Cruz-Garcia.

_____
Casey Lynn Guillotte

SUBSCRIBED AND SWORN BEFORE ME, the undersigned authority, on this the _18TH_ day of September, 2013.

_____
Notary Public in and for the State of Texas

KERRY ROGER GILLIE
Notary Public, State of Texas
My Commission Expires
October 12, 2016

State's Exhi
#2.

**AFFIDAVIT OF MATTHEW CLINGER**

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this the _18_ day of September, 2013, appeared Matthew Clinger, who being by me duly sworn stated the following:

My name is Matthew Clinger and I am 32 years old, having been born on 9/10/1981. I currently reside at 1101 W Melwood St. in Harris County, Texas. I am the same Matthew Clinger who served on the jury in the capital murder trial of The State of Texas vs. Obel Cruz-Garcia. I was elected by my fellow jurors to serve as the foreman.

Deliberations in the punishment phase of the trial began late in the day on Thursday July 18, 2013, and only lasted a short time on that first day. We were sequestered over night and returned to deliberate on the morning of Friday, July 19, 2013. We all agreed to focus our discussions on the facts and not on emotions. For this reason, we tried to avoid talking about where the results of our answers would lead and instead tried to just answer the Special Issues in our jury charge based on the evidence we had heard. We discussed the Special Issues one by one in the order they were presented in our jury charge and I did not move on to the next Special Issue and sign the jury form as to that issue until we had arrived at a consensus. Ultimately, we all agreed that based on the evidence the answers to the Special Issues were "Yes," "Yes," and "No."

At one point during the discussion Friday morning my fellow juror, Casey Guilliotte, noted that although she knew what the answers to the special issues were based on the evidence, she was concerned about how she would deal emotionally with the fact that by answering the questions in the way the evidence pointed, we were sentencing a person to die. She asked the group for some words

of encouragement to help her through this emotional struggle. At this time numerous jurors spoke up about how they had personally dealt and continued to deal with the emotions surrounding the decision. When it was my turn, I told Casey that I had found some comfort in the Bible. I opened up my personal Bible to a chapter in Romans and laid it on the table. At no point did I read directly from the Bible. I did not see Casey or any other juror read from it. After I laid the Bible on the table Casey acknowledged it, but did not read it. I do not believe Casey or any other juror changed their answers to the Special Issues based on this brief exchange. At the end of the discussion Casey thanked us all for our insights and we went back to discussing the facts of the case and deliberating the answers to the Special Issues presented to us. We were merely discussing how to cope with the emotional ramifications of our decision during this short exchange at Casey's request to help her look past her emotions and focus on the facts of the case as they pertained to answering the Special Issues.

The last juror to come to terms with the decision to answer the Special Issues "Yes," "Yes," and "No" was Angela Bowman. Based on Angela's comments during deliberations, it appeared to me that although she agreed with the rest of the jurors on how the evidence directed us to answer those questions, Angela was still struggling with the emotional consequences of those answers. Several times she said "I agree," and told me to "sign the verdict form," but because I could tell she was not convinced of the verdict I did not do that. We continued talking about the evidence and gave her opportunities to discuss the issues and any facts or evidence that she felt should lead us to a different result. I was very conscientious about making sure Angela was not rushed into a decision.

I seem to recall Angela making an offhand remark about her daughter being sick one time early on during the course of our deliberations. She did not seem overly concerned about that and never mentioned that she needed to hurry up and reach a verdict so she could attend to her daughter's illness. She did, however, mention several times that she was planning to take her daughter to South Padre

for her birthday the following day, Saturday, July 20, 2013.   I remember her asking other jurors how long it would take to get to South Padre.  I did not notice any undue pressure being put on Angela by other jurors and believed that throughout the process we remained respectful of each other's opinions.

Matthew Clinger

SUBSCRIBED AND SWORN BEFORE ME, the undersigned authority, on this the _18_ day of September 2013.

KERRY ROGER GILLIE
Notary Public, State of Texas
My Commission Expires
October 12, 2016

Notary Public In and for the State of Texas

: 00601

Case No:  1384794

*FILED*
Chris Daniel
District Clerk
SEP 2 0 2013
Time:
Harris County, Texas
Deputy

STATE OF TEXAS

VS.

OBEL CRUZ-GARCIA

IN THE 337TH DISTRICT COURT

HARRIS COUNTY, TEXAS

## AFFIDAVITS FILED IN SUPPORT OF DEFENDANT'S MOTION FOR NEW TRIAL AND SUPPLEMENT TO DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW,  Obel Cruz-Garcia, Defendant in the above-styled and numbered cause, by and through the undersigned attorney, and would show as follows:

I.

Defendant was convicted of  capital murder and sentenced to death.

II.

Defendant filed a Motion for New Trial and a Supplement to Defendant's Motion for New Trial alleging jury misconduct and the receipt of  evidence not admitted during trial. These matters were timely presented to the trial court in accordance with Rule 21.6 of the Texas Rules of Appellate Procedure.

III.

The  trial court denied Defendant's previous requests for a live evidentiary hearing on his Motion for New Trial and Supplement thereto.  The trial court set this matter for a hearing on  Defendant's motions (by affidavits) for September 20, 2013.

: 00602

IV.

In accordance with the trial court's Order, the undersigned is filing the following listed Affidavits as evidence in support of Defendant's Motion for New Trial and Supplement to Defendant's Motion for New Trial. It should be noted that several of the "original" Affidavits were previously filed as Exhibits to the Motion for New Trial and Supplement thereto, therefore, "copies" of those Affidavits already on file are included.

Exhibit 1.     Certified copy of Mario Madrid's Affidavit [original filed with Motion for New Trial]

Exhibit 2.     Certified copy of First Affidavit from J.J. Gradoni [original filed with Supplement to Defendant's Motion for New Trial]

Exhibit 3.     Certified copy of Angela Bowman's Affidavit [original filed with Supplement to Defendant's Motion for New Trial]

Exhibit 4.     Second Affidavit of J.J. Gradoni with transcript of interview of jury foreperson [foreman] Matthew Clinger, accompanied by compact disk [CD] of that interview.

V.

During the punishment phase of the trial, no evidence of Biblical scripture or passages was admitted before the jury. Defendant was not afforded the opportunity to object, confront or cross-examine any witnesses or evidence relating to Biblical scripture or passages prior to jury deliberations. Defendant was not made aware of the existence of this evidence until after being sentenced to death.

## VI.

The Court's jury charge [instructions] did not authorize consideration by the jury during deliberations of any Biblical scripture or passages. The Court's jury charge [Exhibit 5] included the following admonishments:

*"During your deliberations upon the "Special Issues", you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence."*

*"In arriving at the answers to the "Special Issues" submitted, it will not be proper for you to fix the same by lot, chance, or any other method than by a full, fair and free exchange of the opinion of each individual juror."*

*"You are the exclusive judges of the facts proved and the credibility of the witnesses and the weight to be given to their testimony, but you are bound to receive the law from the Court which has been given you and you are bound thereby."*

## VII.

Defendant submits that the Affidavits attached hereto reflect that the jury received and was exposed to external influences during its deliberations. Defendant would further submit that any private communication or contact directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the

parties. Defendant would also show that the verdict returned was not a fair expression of the jurors' opinion of the evidence.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that after reviewing the matters set forth in his Motion for New Trial, the Supplement to Defendant's Motion for New Trial, the Affidavits filed herein as evidence, and such other arguments as may be presented, this Honorable Court  grant him a new trial.

Respectfully submitted,

Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas 77002
(713) 623-8312

Attorney for Defendant/Appellant
Obel Cruz-Garcia

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was e-mailed to Ms. Natalie Tise, [tise_natalie@dao.hctx.net] Felony Division "A" Chief , Harris County District Attorney's Office, 1201 Franklin, Houston, Texas 77002.

SIGNED THIS ___19___ day of  September, 2013.

Wayne T. Hill

: 00605

## AFFIDAVIT OF MARIO MADRID

BEFORE ME THE UNDERSIGNED AUTHORITY, on this day personally appeared, Mario Madrid, a person known to me, who after being duly sworn, upon his oath did state:

My name is Mario Madrid. I am an attorney licensed to practice in the State of Texas. I was appointed to represent Obel Cruz-Garcia who was charged by indictment with the offense of capital murder in cause number 1384794 in the 337th District Court of Harris County, Texas.

At the conclusion of the guilt/innocence phase of the trial, the jury found Mr. Cruz-Garcia guilty of capital murder.  During the punishment phase deliberations, a juror named Angela Bowman met privately with Judge Magee. Judge Magee stated that Ms. Bowman questioned how long deliberations would last. At the conclusion of the punishment phase of the trial, the jury returned a verdict which resulted in the trial court sentencing Mr. Cruz-Garcia to death.

On the evening of the jury's punishment verdict, I received a telephone call from a juror named Angela Bowman. Ms. Bowman was distraught over her decision to capitulate during the punishment phase deliberations and change her vote from life in prison to the death penalty. Ms. Bowman explained to me that she was pressured into changing her position on the life vs. death decision. She explained that her decision was especially complicated by virtue of the fact that her daughter was suffering from a fever and she (Bowman) was unable to attend to her daughter because of being sequestered.  Ms. Bowman also explained that the jury foreman informed the jury that he had been praying about making the right decision and he took out his Bible and started quoting from the Bible during the decision-making process. The introduction of the Bible seemed to sway other jurors toward death rather than life in prison. Ms. Bowman's decision  so disturbed her that she told me she had to bring these events to my attention in an effort to correct the injustice that she had participated in.

Exhibit

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion for New Trial has been mailed to: The Harris County District Attorney's Office,  Appellate Division, 1201 Franklin, 6th Floor, Houston, Texas 77002.

SIGNED THIS _____ *l9* _____ day of August, 2013.

Wayne T. Hill

: 00607

## AFFIDAVIT OF J.J. GRADONI

BEFORE ME THE UNDERSIGNED AUTHORITY, on this day personally appeared, J.J. Gradoni, a person known to me, who after being duly sworn, upon his oath did state:

My name is J.J. Gradoni. I am a licensed investigator in the State of Texas. My Texas License Number is: A05741. I conducted post-trial jury interviews in the case styled: State of Texas v. Obel Cruz-Garcia in cause number 1384794 in the 337th District Court of Harris County, Texas. Mr. Cruz-Garcia was sentenced to death by lethal injection. I am setting out some of the juror interviews below:

I conducted an interview with juror Angela Bowman. Ms. Bowman stated that the verdict she announced in open court when polled by the Judge was not her true and honest punishment verdict. Ms. Bowman explained that she had learned that her daughter was sick with a fever over 101 degrees. Because she had been sequestered during the punishment deliberations, Bowman was unable to attend to her child's medical needs. She was unaware of her daughter's medical status and punishment deliberations continued. Ms. Bowman's inability to tend to her daughter caused her to be distracted and ultimately the subject of undue pressure from other members of the jury to change her vote to favor the death penalty. Ms. Bowman stated that the other jurors told her they were not changing their minds and that she was holding them up and taking the process too personally. She said that other jurors told her she was wasting their time. Ms. Bowman ultimately voted in a way that a death verdict was returned in order to get home and take her child to the hospital. Ms. Bowman also noted that the jury deliberations involved the jury foreman injecting Biblical passages into the deliberations. Ms. Bowman believed that the Biblical references affected other members of the jury and caused them to vote in favor of the death penalty. Ms. Bowman further stated that a juror named Casey Guillotte commented during deliberations that she needed "spiritual guidance" to make her

Exhibit 2

decision. Bowman related that at this point in the deliberations, jury foreman Matthew Clinger took out his Bible and stated that he had prayed on this the night before. After this "religious experience", Ms. Guillotte changed her vote to death. Ms. Bowman was of the opinion that other jurors changed their positions to vote for death after Mr. Clinger read scriptures from the Bible.

I interviewed jury foreman Matthew Clinger who confirmed that he produced his Bible during punishment deliberations. Mr. Clinger stated that he read Romans 13, Genesis 9 and from Deuteronomy while other jurors were present. He stated that he had researched the Bible the night before deliberating on life or death for Obel Cruz-Garcia. Clinger noted that one-third of the jurors favored death, one-third favored life and one-third were undecided. Mr. Clinger indicated to me that juror Casey Guillotte stated that she needed spiritual guidance. Mr. Clinger went on to state that he and Guillotte learned that they attended the same church. When I asked Clinger if his quotes from the Bible caused Guillotte to change her vote, he responded by saying that he thought the Bible verses were "contributing factors".

J.J. Gradoni

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this 20th day of August, 2013.

KAYLA KOENIG
My Commission Expires
September 13, 2016

Notary Public in and for the State of Texas

: 00609

## AFFIDAVIT OF ANGELA BOWMAN

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Angela Bowman, a person known to me, who after being duly sworn, upon her oath did state:

My name is Angela Bowman. I am over the age of eighteen and fully competent to make this Affidavit. I served as a juror in the capital murder case styled: State of Texas v. Obel Cruz-Garcia in cause number 1384794 in the 337th District Court of Harris County, Texas.

I am making this Affidavit of my own free will. I have not been provided anything of value, nor have I been promised anything of value, to get me to make this Affidavit. I am the one who initiated the chain of events which resulted in the filing of this document because I contacted Mario Madrid (trial counsel for Obel Cruz-Garcia) after the jury returned a death penalty verdict in the above-referenced matter. I contacted Mr. Madrid to let him know that I was pressured into voting in favor of the death penalty - this was not my true and honest verdict at the punishment stage of the trial.

On Thursday, July 18, 2013 at 4:17 p.m., I received a voice mail from my ten year old daughter's camp counselor, informing me that my daughter was running a 101.8 fever. This concerned me greatly because I knew the jury was going to be sequestered and I would not be able to care for my sick child. I spoke with Judge Magee and asked that I be removed as a juror and an alternate put in my place. This request was denied. While at dinner, the bailiff allowed me to call home to check on my daughter. I learned that my daughter still had a fever and was sick with a cough. I was very concerned that my daughter may have had pneumonia. I was not free to leave to take care of my child due to being sequestered. During our deliberation during the punishment phase of the trial one of the female jurors (I believe her name was Casey Guillotte) stated that she needed spiritual guidance to make her decision. At that point, our jury foreman (Matthew Clinger) told the jury that he had prayed about the decision the night before.

Exhibit 3

Matthew then pulled out his Bible. After this "religious experience", Ms. Guillotte changed her mind to vote for the death penalty. I believe other jurors changed their position from life to death after Matthew read scriptures from the Bible. I felt a great deal of pressure from the other jurors because it appeared that I was the last holdout for a life sentence. My situation worsened as I became increasingly concerned about my daughter's condition as I had no communication or information updating me on her condition. If it had not been for my concern over my daughter's health condition, I would have remained committed to voting for life in prison. I was told by other members of the jury that I was holding up the process and taking it too personally. Finally, at the end of the day, I was told by the other eleven jurors that they weren't changing their minds and that I was holding them up. I was told that I was wasting the other juror's time. I changed my verdict so I could go home and take care of my child. When I left the courthouse, I took my daughter straight to the emergency room. The verdict I returned was not a true and honest expression of my belief in the evidence supporting the special issues that called for the death penalty.

In my opinion, the jury misconduct deprived Obel Cruz-Garcia of a fair and impartial jury and a fair trial in this matter. I believe that Mr. Cruz-Garcia is entitled to a new punishment trial or the Court's imposition of a life sentence.

Angela Bowman

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the ___30___ day of August, 2013.

My Commission Expires
2/2/2014
J Gradan

Notary Public in and for the State of Texas

: 00611

## AFFIDAVIT OF J.J. GRADONI

BEFORE ME. THE UNDERSIGNED AUTHORITY, on this day personally appeared, J.J. Gradoni, who after being duly sworn by me, upon his oath did state:

My name is J.J. Gradoni. I am a licensed private investigator in the State of Texas. My license number is: AO5741. I worked as the trial court investigator in the capital murder case styled: State of Texas v. Obel Cruz-Garcia, Cause No: 1384794 which was heard in the 337th District Court of Harris County, Texas. After the jury returned the death penalty against Mr. Cruz-Garcia, I was asked conduct juror interviews by the appellate attorney for Mr. Cruz-Garcia.

On August 12, 2013, I conducted a juror interview with Mr. Matthew Clinger who served as the jury foreperson (foreman). The attached Exhibit "A" is a complete and accurate transcript of the interview I conducted with Mr. Clinger. The attached Exhibit "B" is a compact disk [CD] of the interview. No changes, alterations or deletions were made to the CD. The CD is a complete and accurate representation of the interview conducted on August 12, 2013 with Matthew Clinger.  My associate, Cindy Klein, was also present and participated in the interview of Mr. Clinger. The parties to the interview are designated by the following initials appearing in the transcript: "JJ" is J.J. Gradoni / "CK" is Cindy Klein and "MC" is Matthew Clinger.

Mr. Clinger was agreeable to signing an Affidavit about what we had discussed. I contacted Matthew Clinger again after the August 12, 2013 interview to arrange a time for him to sign an Affidavit of what we had discussed. Mr. Clinger informed me that his corporate counsel at his workplace had advised him not to sign the Affidavit, advising him instead to give live testimony before this Court. The undersigned asked Mr. Clinger why he would refuse to sign an Affidavit before even seeing its content. Mr. Clinger did not otherwise offer a reason for not signing the Affidavit.

Exhibit 4

: 00612

Exhibits "A" and "B" which are attached hereto, are incorporated herein for all purposes to be considered by this Honorable Court in passing upon the allegations raised in Defendant's Motion for New Trial and the Supplement thereto.

J. J. Gradoni
License No: A05741

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public in and for the State of Texas, on this 19th day of September, 2013.



KAYLA KOENIG
My Commission Expires
September 13, 2016

Notary Public in and for the State of Texas

| CLIENT: | Wayne Hill |
|---|---|
| CASE DESCRIPTION: | Obel Cruz-Garcia Appeal |
| OUR FILE #: | 13-08-0329 |
| REPORT DATE: | September 15, 2013 |
| REPORT TOPIC: | Matthew Clinger - Transcript |
| REPORT #: | 3 |
| RELATIONSHIP TO CASE: | Jury Foreman |

## INVESTIGATIVE ACTIVITY

### I.  Preliminary Information

The following transcript is from the recording of the interview with Matthew Clinger by Investigators JJ Gradoni & Cindy Klein on Monday, August 12, 2013.

### II.  Transcript

JJ:     7:44 PM. Monday, August 12, 2013. Cindy and I will be at the residence of Matthew Clinger, the jury foreman in the Obel case, in an attempt to interview him regarding jury deliberations, at 1101 Millwood, in the Heights.

CK:     Wait a minute, the uh…

JJ:     (unintelligible)

CK:     Yeah.

JJ:     Is it any good?

MC:     It's very good!

JJ:     JJ Gradoni, I'm a Private Investigator.

MC:     Hi.



Exhibit A

: 00614

PAGE #: 2

JJ:     The court has started the appeals process on Obel's case.

MC:     Yes. Ok.

JJ:     And, so, one of the... part of the appeals process is we talk to the jurors.

MC:     Ok.

JJ:     If that's ok with you.

MC:     Yeah, yeah. Do you mind if uh... come on in. Do you mind if I finish my steak real quick?

JJ:     No.

CK:     Oh, sorry to hit you at that time.

JJ:     We'll just...

MC:     No, come in, have a seat. I've only got a couple bites left.

JJ:     Wow, what a great house!

MC:     Thank you!

CK:     Oh it's beautiful.

MC:     Uh, I've been here a little over a year. When I bought it it hadn't been touched in about four years. I started (unintelligible) and uh, moved a bunch of walls. (Unintelligible)

JJ:     Did you do that by yourself?

MC:     Uh, this time... so, my first house I did it all by myself. This time I hired a buddy to do a lot of it, so. It took me five years to do my first house myself, and I didn't feel like taking that kind of time again. So, I um, I saved some projects. I've been re-trimming all the windows outside. Um, I've got a build out (unintelligible). I've got a lot of stuff I'm still working on. I didn't want to take five years, so... (laughing)

JJ:     I can imagine that. I could never, I'm not very handy.

PAGE #: 3

CK:     It's just so open. You know, just...

MC:     There used to be a wall up here, with just a little door. And then this room was segregated a bit as well. So, yeah, that was one of the things I wanted to do, is to open it up.

CK:     Nice job.

MC:     Thank you. Go ahead, you can...

JJ:     So, anyway. The toughest, probably, thing in the world, is to be a juror in a Capital Murder case with a death penalty.

MC:     Yeah.

JJ:     And so, um, now that he's been found Guilty there's years of appeals, and different layers of appeals. So, um, Wayne Hill, who is a Capital Murder Appellate Attorney, was appointed to do the original appeal.

MC:     Ok.

JJ:     And part of that is to talk to the jurors. Um, I know that the Defense Attorney said that they didn't talk to you guys after.

MC:     That's correct.

JJ:     Which is their choice. Actually, the one lead attorney, Skip, said, you know, he said that's just a little too early to talk I think, right now. You know, go (unintelligible)

MC:     Right, right.

JJ:     Anyway. There's, I guess, two phases. One is the Guilt or Innocence and I know that the State put on a lot of evidence, um, regarding that case.

MC:     Mhmm.

JJ:     Um, was there anything there in the Guilt or Innocence that really stuck out?



PAGE #: 4

MC: Um. Just, the DNA, um, was huge for me. Uh, all of the different witnesses. The, the, the big pieces of the story all collaborated really well across all the witnesses. There were certain things in, um, in Rudy's testimony. Little details that, you know, Skip kind of keyed in on. You know, when he gave his statement, the tires blown out on the car is a good example. He said in the statement, I think, two tires blew out and then his testimony said all four. There were little things here and there that Skip kind of keyed in on that Rudy remembered one way in his statement and he remembered another way testifying.

But across the, all the big pieces of the testimony, all the collaborations as well...

JJ: And that's what an intelligent juror, really should do. See if it, kind of fits.

MC: Yeah. Um. There were, um...I really thought that, uh, if I can get her name correct. His, his wife...

JJ: Angelita

MC: Angelita. I really felt like...her testimony was impactful for me, personally. Uh, I really felt like she was telling the truth. Um, there were some other jurors that weren't quite so convinced, but for me, her testimony was, was pretty impactful and meaningful. Um, and, I mean it was all important. I'm an Engineer by degree and training, I guess, so I'm kind of a detail guy and I like to gather data and take in a lot of data and put it together into a, kind of a logical explanation or conclusion I guess. So, you know, I didn't take any of it...

The only thing I, well, that was not in the Guilty...the only thing I kind of had to just brush aside was, there was a gentleman's testimony in the sentencing phase. He was the friend of the young man that was murdered and found in the dumpster, and I mean he had like 8 convictions and he was just. He was kind of all over the map and went off the, not went off the deep end. (Unintelligible) Anyway, that was kind of the only guy that at the end of the day I just, I kind of have to ignore what he said cuz I just can't (unintelligible) him as credible.

JJ: But in the Guilt or Innocence, I guess, for the jury that went pretty smooth? I mean...

: 00617

PAGE #: 5

MC:    It did. There was uh… it did. There were a couple of things that um, we talked for a while about uh, Rudy's testimony and the small details that didn't quite match up between his statement and his verbal testimony. Uh, and then Skip kind of threw out there a couple, uh, what were later called "straw men" by the Prosecution, in their closing argument.

Uh, you know, basically, uh, I think the straw man that we talked the most about was whether or not the, you know… The DNA clearly, clearly proved that Obel was the one that had sex with, with Angelita, or no, I forgot her name.

JJ:    The boy's mother.

MC:    The boy's mother. Yes. But Skip's point that he was trying to make was that it didn't prove that it wasn't consensual at some earlier point in time.

JJ:    Mhmm.

MC:    And, uh, and he's right. It didn't prove that. Uh, and we talked about that at length, but where we ended up coming down as a jury was, correct it did not prove that, but all the other pieces of evidence, if you put the whole picture together it really points towards Obel.

Everything really falls into place and that's really a lot harder to swallow or a lot harder to conclude than somehow they had consensual sex earlier in the day, unbeknownst to anyone else. Rather than all the other pieces of evidence that come together showing that he was the one that was there that night that raped her. Um, anyway, I don't know if that's …

JJ:    And of course, the State's mission was to prove he didn't kill the boy, he ordered it. Right?

MC:    Correct.

JJ:    That was the scenario.

MC:    Correct.

JJ:    The other, I don't know what his name was …

PAGE #: 6

MC:     Robert I think. I think they were calling him, yeah.

JJ:     The other guy is the one who actually stabbed the little boy.

MC:     Correct.

JJ:     Um, ok. So, uh, getting to 12 on that wasn't too difficult?

MC:     That was not overly difficult, no.

JJ:     Then of course, then you have the real work, at least from my standpoint. Where now you found this person guilty and, uh. They explained... see that happened back in, what, '92? Or...

MC:     '93. Yeah.

JJ:     And back then there wasn't Life without Parole. Back then, there was Life. But Life wasn't Life because, I think, after 40 years or something they would be eligible for parole.

MC:     You were eligible, right.

JJ:     So, under those guidelines is what you had to deliberate on, right?

MC:     Right.

JJ:     And they actually explained that to you.

MC:     Correct. They did.

JJ:     See, in the old days they didn't explain that. They would just say Life and when the jury went back to deliberate, they weren't told that Life wasn't Life. They just thought it was Life. Back in the days when, um, they could get out.

MC:     I see, I see.

JJ:     And for some constitutional reason, whatever, they never told them that. And I was wondering, so you knew that ...

MC:     Yes. It was clear. Yeah, yeah. It was clear. They explained it to us and it was also very clear in our charge that was the case. So, not

PAGE #: 7

only did they verbally explain that, they also, uh, that was clear in the charge.

JJ:    And, what was it? That he could get out after possibly(unintelligible).

MC:    Yeah, I believe it was 40 years.

JJ:    Of course, Obel was what, 40 something…

MC:    He's 45.

JJ:    (unintelligible)

MC:    He was going to be around, he might've been 35. I wanna say he was going to be around (unintelligible). He was going to be a pretty elderly man.

JJ:    Yeah. But you guys knew that.

MC:    Yes.

JJ:    So you knew that if you gave him Life it was that window, he could possible leave prison and then of course, obviously, the other option was the Death Penalty.

MC:    Yeah.

JJ:    So, how hard was that?

MC:    That was extremely difficult. That was extremely difficult. Uh, not only for me, but for the… I mean, there seemed to be a few members of the jury that it was less difficult for than others. It was very difficult for me. Um, and there were a few members that (unintelligible) so…

       Really what it boiled down to, for me, um…Through the remaining testimony, particularly of the gentleman from Puerto Rico, that he kidnapped.

JJ:    They actually brought him.

MC:    Yeah. There were three of them. One guy that just… there was an older brother and… he was an older brother of one guy and a step-

PAGE #: 8

father of the other guy. And, um, he had actually founded his own taco truck company and was doing really well, and he had just bought a new truck and was kind of starting to have the appearances of having money.

And Obel and his little gang came and held him up and, uh, when he got away they kidnapped his 16 year old step-son and younger brother, who was like 22 at the time. And um, I mean, just beat him up badly. I won't go into all the details but it was brutal. Brutal. They told him he was going to be killed (unintelligible). He took his mask off so they could both see him and said, you know, I don't care if you blank blank blank see me cuz I'm just going to kill you, and beat him up badly and then left him for a while.

The Puerto Rican cops did an amazing job and tricked him and caught him, uh, while he was trying to embezzle some drugs and some money. But, uh, hearing the testimony from those guys about the whole experience. These three guys were all very, very... I mean they were just, very honest guys trying to make a living and just, were victims. And, um, and this guy... I mean, they were still, to this day, this was ...'01 that that happened? And they're still, to this day, I mean, sitting on the stand and wouldn't look at Obel, just because they're still so afraid of him, and just, seeing the, kind of the fear that he could impart, even after so long, on some individuals...on those individuals' lives.

JJ:     Wow.

MC:     Um, you know. They weren't the only ones. The other, a number of the other witnesses testifying, I mean. Something that was really impactful for me too is, particularly, they flew in the Puerto Rican Detective who came up with the plan to catch him. While he was up there during one of the, while they were taking us out for a little break, Obel was kind of talking from the Defense, I mean, from his (unintelligible). I mean I wasn't there, there were a couple of us that saw it and, um, we talked about that in our deliberation.

He was, I mean, with some pretty angry facial expressions, just mouthing some...you know, I don't know Spanish.

JJ:     Right.

PAGE #: 9

MC:   I couldn't tell what he was saying, but it wasn't like "Hi. How are you?" I mean, it was pretty clear, um, he was (unintelligible). So, where I was heading with all that, one of the witnesses that the Prosecution brought in kind of explained that if we were to give him Life, what that would mean and where he would _____ in the system. The type of people... the type of freedoms he would have and the type of people he would regularly come into contact with.

After hearing all of the testimony in the sentencing phase, in addition to the Guilt phase, and just hearing how, just the manipulator of people that he was and, and how many people he has hurt over a period of time... Emotionally it would have been a whole lot easier to give him Life, but I really felt strongly that he was dangerous enough that if I gave him Life he would just slide as a Level 3 or whatever the term was and able to just walk freely about with, you know, DWI offenders or you know, maybe some white collar criminals.   People that have done something wrong but definitely not cut from the same cloth.

I really felt pretty strongly the odds were good that he would, you know hurt or harm, if not kill, someone else between now and when he eventually did pass naturally. So, um, to me it really came down to it would almost be a selfish decision on my part. If you're just going by the algorithm they gave us, and if I was honest, by just going by that algorithm and answering those questions truthfully in my heart, emotionally, it would have been easier for me to give him Life, but my, in my head I knew that the thing that this was leading me to... I really felt strongly that he was a real danger to society. And, uh, and the other two questions we kind of already answered.

That's kind of the one it really boiled down to.

JJ:   Yeah, I don't know much about death (unintelligible).

MC:   Ok.

JJ:   I thought the guys that got Life for Murder were all put in the hardcore prison. I thought...

CK:   Yeah, I don't know. Where did you get that?

JJ:   I thought they were all in with the bad guys.



PAGE #: 10

MC: No, they brought in the girl that does the classifications and she talked about an hour and a half. She kind of explained that if he was just given a Life Sentence, I mean, he'd be in there with a lot of other people at this, you know, they could just have a DWI or white collar crime, so...

JJ: Ok. So, initially when you started out the Life/Death how many wanted Death and how many wanted Life?

MC: Uh, so the morning. So we broke...

JJ: Thursday.

MC: Thursday afternoon. We talked just for a short period and then they sequestered us. And then Friday morning we started off by having everyone go around and just kind of speak their mind of what they had been thinking about. I mean I thought about it all night and I'm sure others did too. And, I would say after everyone went around, it took probably about five minutes talking through everything, and I asked them to kind of give a leaning. I would say it was probably a third that were leaning for Life, a third that were leaning for the Death Penalty and a third that were undecided. I think it was pretty evenly split.

Um, we didn't really take a poll the first, Thursday afternoon. Friday morning that was, it was pretty evenly split.

JJ: And I've never been on a jury, so.

MC: Ok.

JJ: I've been on, you know, cases but I've never been in a jury room where you have to deliberate that.

MC: I hope you're never on one like this.

(laughter)

JJ: I don't know if I'd want to be but, but at some point, I mean, you have to move everybody to one place, or it's a mistrial. So, how do you get, and I would say, _____ common. You know, you have, everybody listens to the testimony, but you've got individuals that are not sure. How do you, you were the foreman.

MC:     Mhmm.

JJ:     Not that it's your job. Your job is to, I guess, be the organizer, but how do you get all these people in one spot?

MC:     Right.

JJ:     How do you do that?

MC:     Um, we really just started by going... the first question was the hardest question. Which was basically do you feel like he's a continuing threat to society. And we spent most of the morning talking over that. Um, so we started, you know, I kind of started by just defining what that meant, and we spent some time kind of talking that over and getting everyone on the same page as to what the definition of society was. The definition of _____, we talked about all those things. Um, and really we just had a lot of round table discussion. We were, we had a really good jury and everyone was very, very respectful of each other. So we really, I would just kind of take turns and let people talk back and forth.

JJ:     Mhmm.

MC:     I mean, there were obviously people on both sides of the fence. (unintelligible) And the second one was pretty...

JJ:     So by lunch time everybody was kind of on board for "he's a continuing threat."

MC:     Yeah. A continuing threat and I think I also signed off on, the second one was basically, "Do you feel like he, himself, was personally responsible for killing the boy or responsible for having him killed?" We basically had agreed to that already, from the Guilt/Innocence phase. So those, that one, once we decided the first one that one was, you know, five minutes. That was pretty easy.

JJ:     If you don't mind me asking, what third were you in?

MC:     I was undecided that morning. I definitely was. If I had to choose a lean I was probably leaning towards... man, I really don't know. I don't know where I was leaning. I was definitely undecided.

JJ:     Well, don't you think the decision actually, I mean once you assimilate all the testimony, the decision, actually, I think actually comes from the jury discussing it.

MC:     Yeah. Oh absolutely.

JJ:     It's kind of like, you know, the pros and cons and discussing it.

MC:     Yeah, yeah. And that's the way of the system, I mean...

JJ:     That's the way it's supposed to work.

MC:     That's the way it's supposed to work and that's the way, it only works well if that's the case.

JJ:     Correct.

MC:     Um, the thing that I had the hardest time with was this, uh, I don't know how many of the details of the case you know, but as the Defense was finishing up there was an 18 year old kid that came in that knew Obel in prison for a period of time. He was basically, he was the one who brought him his food while he was in solitary.

And, um, this kid read about the case in the paper. He'd been out for a couple months. He read about the case in the paper and felt compelled enough to find his way downtown and just show up and talk to Skip during one of the breaks and volunteer that he wanted to testify on Obel's behalf. And he testified that during that time Obel had been really kind to him and really tried to talk a lot of truth into his life. They talked about a lot of, he called it, you know, "spiritual stuff", trying to kind of give him advice. And then he said Obel had even continued to write him a couple of letters when he got out. And, um, to me that was, that was incredibly touching.

I was... if it hadn't have been for that kid, it would have been a much easier decision for me. I think I would have probably fallen on the third favoring the Death Penalty if it hadn't been for that kid. I definitely, I don't think I would have...I would not have made up my mind, but I would have, that would have been my leaning going in if it hadn't been for that kid.

But, as we talked through that kid's testimony, as a jury, um, and I readily admitted to everyone even before we started deliberating, my

nature is to always try and look for any inkling of hope or any inkling of good in someone and just give them the benefit and go with it. That's just kind of my nature, and some of the, the other juror members, that had a little more life experience than me, all pointed out that Obel's consistent, or his entire life all the testimony we heard was to find, kind of, weaker individuals around him and just kind of use them and mold them for his purposes.

And, uh, you saw that when he was here in Houston dealing drugs. Well, you saw that, you know, when he was 20 years old in the Dominican, and in Puerto Rico and here in Houston. We heard about it again when he was back in Puerto Rico and back in the Dominican.

And, you know, the point was this was just another example. This kid was just looking for a father-figure. He just, he's 18, in prison, and, uh, he's come from a rough past. He's just looking for any… he's just reaching out for anyone. And Obel was just looking for someone, he's in Solitary Confinement. He's looking for someone he can, uh, kind of exploit (unintelligible). The more I thought about it, that made a lot of sense and I ended up agreeing with them. It actually made me feel even better after the trial was over. The judge came in, the Prosecution; they both agreed that's what they thought he was doing too. But uh, after everything was said and done. That was one of the biggest things

JJ:     So the judge (unintelligible)

MC:     Yeah. After everything was said and done. Actually I think it was the prosecutor. The prosecutor said that's what the judge thought. So, the judge didn't actually say that herself. She just came in and thanked us for our time and all that.

CK:     Exploited for what?

MC:     What's that?

CK:     Exploited for what?

MC:     Well so, he had been, you know. In Puerto Rico he had been in all kinds of, he had a number of things smuggled into him. He had cell phones smuggled in, uh, that was basically what, you know, he was angling to get something. Whether it was something smuggled to him or it was just trying to get (unintelligible).

PAGE #: 14

JJ:     The other jurors thought that this kid, although he was genuine…

MC:     Exactly. No one disagreed at all that the kid was 100% genuine.

JJ:     But Obel's motive was not to help the kid, but more to…

MC:     Yeah.

JJ:     Manipulate the kid.

MC:     Correct.

CK:     Oh.

JJ:     Well you know, it's kind of like, you could talk to five witnesses of an accident, who all are…

MC:     Oh yeah.

JJ:     Watching it and everyone's got kind of a different take.

MC:     Everyone's going to have a different perspective.

JJ:     So, how long did it take to get to twelve?

MC:     Oh man, uh…

JJ:     Well I mean, you did that day, right?

MC:     We did that day, but it was the end of the day. I mean it was 4:00 PM or 4:30 PM that afternoon.

JJ:     Would you guys… You weren't sequestered for the Guilt/Innocence? You went home right?

MC:     No, that is correct.

JJ:     So…

MC:     We found that… we were given, we were handed the charge, I think it was Friday morning.

JJ:     Let's say Friday you guys had not come up with the agreement.

PAGE #: 15

MC:     Yes.

JJ:     Would you have to spend all weekend sequestered?

MC:     Yeah. Yeah.

JJ:     I mean, that was explained to you?

MC:     It was.

JJ:     But during that, if you had come to a decision on Saturday morning then you could go, it's not like you'd have to wait til Monday. You could go in, right?

MC:     Yeah.

JJ:     Yeah, I mean…

MC:     No, she… yeah, that was explained.

JJ:     Do you think anybody rushed your decision, so you didn't have to spend the weekend?

MC:     Umm

JJ:     Or did anybody say that?

MC:     No one s… I, I don't remember anyone saying as much. There was one girl that, I, I don't know… she was pretty emotional.

JJ:     Like… upset? What do you mean emotional?

MC:     She was just upset about the whole thing. She basically went and, uh, she just didn't want to be there anymore. It was kind of a, she kind of thought this was going to be, kind of an adventure. And then when it came down to, uh, it just wasn't fun anymore. (Unintelligible) have to make decisions.

        In fact, she even asked…she went to see the judge to see if she could (unintelligible)

JJ:    Do you know what...? I mean, I guess this conversation... do you know what... she actually went to the judge and (unintelligible) home?

MC:    Yeah. I saw...Yeah. I had to write a note. But that's what she said, she wanted to go. She told us. She basically... she did not understand the process. She thought the alternates were there so basically, that, she thought she wasn't enjoying this anymore so she could just go home and one of the alternates would come in.

       She asked me that multiple times. No, no. That's not how this works.

JJ & MC: (unintelligible)

MC:    Exactly! And that's what I said, (unintelligible) in my truck on the way to lunch or something like that. So, but finally, I mean she was adamant enough, she had to write a note and she went to talk to the judge about it. So, no, I wasn't sitting there for the conversation.

JJ:    But I guess the judge sent her back and said...

MC:    The judge sent her back and yeah, what she told us the judge said no, you're here until y'all reach a verdict.

CK:    I've never heard of that, when they only partially sequester.

MC:    I'm sure we would've been sequestered for the guilt/innocence if we hadn't reached a verdict in the same day.

CK:    I see.

MC:    But they handed us the charge, I think it was a Friday morning and we had reached a verdict in the late afternoon. It was the same day they handed us the charge. (Unintelligible) we talked about earlier. That one went fairly quickly.

JJ:    Yeah, they probably would've ... anyway. I guess, I don't know. I mean, I can understand, on the Death Penalty issue having to sequester the jury. I mean that kind of makes sense. That's serious deliberation, so...

CK:    But you actually went home the first night?

PAGE #: 17

JJ:     No.

CK:     Oh, no?

JJ:     That was on Thursday.

MC:     No. No, no, no, no, no. They sequestered, they gave us the charge
        Thursday afternoon at about 3:30 PM or 4:00 PM and the
        sequestered us that night.

CK:     I see.

JJ:     And you deliberated for a short period of time…

MC:     Yeah, an hour and a half to two hours.

JJ:     …and they went to sequester, which, I guess you were prepared for?

MC:     Yes

(Unintelligible)

JJ:     They didn't just say "Hey, look. By the way…"

MC:     Wednesday night…

JJ:     Oh you got toothpaste…

MC:     Yeah, Wednesday night the Bailiff called us. I got a call about 8:00
        PM that said "The judge would like you to bring some clothes, just in
        case."

(Unintelligible)

MC:     Right.

CK:     So, they let you bring a change of clothes and…?

MC:     A change of clothes and overnight things. You know, whatever you
        need for staying overnight.

JJ:     Did they take the phones?



PAGE #: 18

MC: Oh yeah. Took the phones, turned the TVs and the phones off in the room. Yeah, uh, when we went to dinner they turned the music off in the restaurant.

JJ: I mean, that's pretty sequestered. Yeah when you can't talk...

CK: You can't talk.

JJ: Can't see TV, which, I guess it could be on the TV. Um, can't call anybody to discuss the case.

MC: Yeah.

JJ: Can't use the phone in your hotel room.

MC: Right.

JJ: Don't have your cell phone.

MC: They let us make one, right before, they let us make one quick call just to give out the Bailiff's number, before they allowed us to start deliberating. Then they kind of took our phones and iPads and whatever else...

JJ: Did the Bailiff (unintelligible)

MC: Yes. Two Bailiffs. We had, the male Bailiff was our primary Bailiff and then they brought in a female from another court who stayed with the ladies. So he stayed with us. The guys and JJ stayed on one floor and the ladies, I don't know...

JJ: It wasn't John, was the Bailiff John M_____?

MC: No, it was JJ, uh, I'll think of it here in a minute. No it was not (unintelligible)

JJ: Anything else?

MC: Um, I mean, not really. I'm happy to answer any questions...

JJ: No, I mean, you kind of...you've kind of given me the process...I mean, honestly, our job is to talk to the jurors. It's not like we're trying to find something wrong, it's just, what was the process?

PAGE #: 19

MC:     Right.

JJ:     I mean, cuz it is possible that the jurors were fighting and screaming and yelling and…

MC:     Yeah. We didn't have any of that.

JJ:     I guess that happens.

MC:     Yeah, I'm sure it does.

JJ:     You know. Um…

MC:     We spent the afternoon basically, the third question basically asks "Are there any mitigating circumstances…" or… any circumstances that would sufficiently mitigate the crime to basically allow the Life Sentence to be given rather than the Death Penalty.

        So we basically spent the afternoon… I got, I got the dry erase board and we just started listing any mitigating circumstances we could think of. And, uh, we came up with about, I think 10 or so, and, uh, it was all pretty, pretty weak stuff.

JJ:     But, do you consider the crime or do you also consider the stuff they brought up in the punishment, like the Puerto Rican people that got kidnapped…

MC:     Oh absolutely. You consider all, yeah, yeah. Yeah you bring in everything.

CK:     That'd be awful tough for me. I just don't know that I could do that.

MC:     It was, yeah it was extremely difficult. It was a lot. I mean I actually, I have to admit, I mentioned there was a girl that said "I just wanna go home now." You know, and, I think we all felt that way. It's just, heavy. It's heavy to sit through and listen to all this stuff. It just gets really heavy there and (unintelligible). If I was sincere, I don't wish it on anyone.

JJ:     Well, that's why they have, how many? 120? I think they start out with 120 people.

PAGE #: 20

MC:   We had 150 something. They called, they started with 75 and then I was part of the second group of 75. I mean, yeah.

JJ:   It's, it's a long process. I think to some degree it has to be that way, based on what the end could be for the Defendant, who we presume innocent until proven guilty.

MC:   Right.

JJ:   And then, then you get into the second phase. So, at what point during the deliberation did you bring out your Bible?

MC:   Uh, it was about 10:00 AM Friday morning. One of the, one of the girls was um, she actually goes to my church and, uh, she was in tears.

JJ:   A girl on the jury goes to your church?

MC:   Uh huh. I never met her before but...

JJ:   Wow.

MC:   We just found... small talk

JJ:   Now, you figured this out after you were on the jury?

MC:   Yeah, I mean we were...

JJ:   You go to the same church?

MC:   It was Thursday or Friday, of the first week. Yeah.

JJ:   Wow.

MC:   So we had just, kinda, come on that in small talk. So I kinda, we had talked a little bit more just about, you know, upbringing and church backgrounds and stuff just during breaks and,uh... Friday morning she had, um, she broke down Friday morning and basically admitted in her, her head she knew, she knew one thing to be true but in her she, she basically said, how do I live with myself knowing that I sentenced somebody to die?

PAGE #: 21

I had, I'd spent a lot of time researching that beforehand, throughout the voir dire process. The Death Penalty is always something I had an opinion on, but it wasn't ever something that I... It was an opinion, but, you know, rubber meets the road type of thing.

CK:   Mhmm.

MC:   It was never something I had to, you know, stand up and live by. So, during the voir dire process I did a lot of research on it. You know, that's, the Bible is, it's hearsay and a lot of people say this, but the Bible really is what I strive to live my life through. That's, that's kind of my guidebook so I spent a lot of time researching what I felt scripture said about it, and I came down to basically the Lord has instilled government to, you know, to enact justice for citizens and, uh, Romans 13 is the passage I spoke about Friday morning. That Friday morning.

You know, Paul's writing and saying that, uh, you know, the Lord has given the sword to govern and, uh, the sword's really, it's not used for a slap on the hand, so. You know, I, that was, that was kind of the key passage I used. You know, Genesis 9 and a lot of places in Deuteronomy. So, you know. I just spoke knowing her, kind of, background and where she stood.

Everyone else talked for probably 10 minutes and I, I just kind of closed with that briefly, and said...I started by saying I'm not trying to, not trying to preach here and I hope not to be offensive to anyone, but I know Casey's background and I know where she goes to church and I know what, that scripture, you know, scripture is important to her so, I just shared (unintelligible) about that.

JJ:   Well, ok, when you say... ok. Cuz normally when someone says "I researched", the first thing I go, "Oh, you got it on the internet?" You researched in the Bible?

MC:   Yeah.

JJ:   Ok. So, when you, I mean, I couldn't quote (unintelligible)

MC:   Yeah, no.

JJ:   So, when you impart this information, is it something you read or is it all in your head? I mean, you know this inside out.

PAGE #: 22

MC:     Yeah, but I had my Bible there too. I had it in my overnight bag. So...

JJ:     So did you read from the Bible or did you quote it from memory?

MC:     No, I read.

JJ:     Read it from the Bible.

MC:     Yeah.

JJ:     Did that offend anybody?

MC:     Uh, no one said that, no.

JJ:     No.

MC:     And as I ... I kind of qualified it by saying, you know, I'm not trying ... as I said, I'm not trying to be offensive. I just, I think this will be helpful to Casey and so, I just want to share it.

JJ:     So, after you read that was Casey able to say Death?

MC:     Uh, after I read that she was able to move, that was, we were finishing up talking about the first question and she was able to move on from the first question. Uh, we still talked about a lot more stuff throughout the course of the day, but she was able to move on...

JJ:     No, no, that helped her move on to question number two.

MC:     Correct.

JJ:     Which is....?

MC:     That was "Do you feel like he was responsible for the child's death?" So, that, everyone was in agreement on that one. That was, as I said...

JJ:     Well, frankly if he ordered the death, I mean, that's kind of a no-brainer.

MC:     Exactly. Yeah. Yeah.

PAGE #: 23

JJ:     I guess. If you believe the testimony that he ordered the child to be killed.

MC:     Yeah. And it really was, like I said, we …. (unintelligible)

JJ:     …He's certainly responsible…

MC:     We spent about five minutes on that one. That one went quick.

CK:     So did you spend longer on the first one then, than the last one?

MC:     Pretty even I would say, between the first… We probably spent, it was probably a little bit longer on the first one, but the third one was … we spent three plus hours on _____, so.

CK:     Well, did you go back to the Bible then?

MC:     No.

CK:     Not after…?

MC:     No.

CK:     And the people were listening, I guess, when you were saying this, and did it help them understand? You think it made a difference to them?

MC:     It made a difference with Casey. I don't know if it made a difference with anyone else.

CK:     Yeah. Yeah.

JJ:     Cuz nobodoy said…

MC:     Yeah, she was, she was sitting right next to me and I, I really, like, I read it but I slid it over where she could see it and I was kind of just talking to her and she smiled and thanked me afterwards.

CK:     Did it make a difference to you?

MC:     Uh, it felt good to be able to kind of share what I had, you know, what I had researched and spent time processing. I, I had already, that was a path I'd been down a number of times already.



PAGE #: 24

It made a lot of… it made a lot of difference to me, kind of earlier in the process. Um, I don't really remember if it was helpful again that morning or not.

JJ: Is this girl married, single?

MC: She's married. Yeah.

CK: Now this kid that, that came in the courtroom that said that Obel made an impact on his life.

MC: Mhmm.

CK: Uh, that was a spiritual impact?

MC: Uh that's what he said, yeah. He didn't really elaborate on it, but that's what he said, yeah.

CK: Yet people didn't think that that was genuine?

MC: Well, uh, I don't think anyone, I don't think anyone disagreed. We all agreed that we hoped it was genuine. It was just the motives behind it is kind of, that's where we ended up.

CK: But the Bible gives hope right? So you'd think people can be redeemed, or…

MC: Oh absolutely! Yeah. No, no doubt about that.

CK: You didn't bring any of that stuff out as well, or?

MC: Yeah we talked about that.

CK: Really?

MC: Yeah. Actually, one of the guys, one of the other jurors talked about that at length. Yeah we talked about that for a while, so.

CK: At the mitigation part, or? That's tough.

MC: Yeah.

CK: Very tough. Glad it wasn't me.

PAGE #: 25

JJ:    So in reality, you knew that the kid was genuine and you knew that Obel had had the conversations with him, but overall you thought maybe Obel's motives were not going to help the kid turn around (unintelligible)

MC:    (Unintelligible) I mean there's countless examples of individuals (unintelligible) you know, in scripture (unintelligible)...

JJ:    Oh yeah.

MC:    You know, to manipulate. Even if what they're speaking is truth, I mean, it can really change, it can still make genuine impacts on hearts and lives, but you know, the motive behind it. So, that's what it really came down to on that.

JJ:    Do you have any questions or anything?

CK:    Yeah, I just, I... You know it's a shame when somebody's, and it was coming from you. I mean, that somebody's so cynical that they can't think that somebody might ... (unintelligible)

JJ:    Can, I didn't have your phone number. Could I get it in case there's...

MC:    Absolutely. (713) 449-3987. That's my cell phone.

CK:    Is there anything else that stands out to you that may be important for us to know? That we didn't ask you.

MC:    Um, the girl that was, um, the girl that was real emotional that I mentioned, that just wanted to go home, um, she was the, uh, it really did... At the end of the day, when we all approached kind of the questions from the facts, she would answer... The reason, the way, she was getting hung up on her emotions.

          We all asked questions from different angles. She would answer them, she would end up answering the fact, the questions based on the facts but then she would just basically break down and, uh, and say, you know, her emotions were just (unintelligible). And that was really hard. We spent a lot of time just trying to talk her through it.

          That was, that was really, really difficult. Um...

PAGE #: 26

CK:   You think she didn't want the Death Penalty?

MC:   She didn't want the Death, she was one of the most adamantly opposed. I mean, that morning she was, you know I said there was a third, a third, a third. I think, she was, she was pretty adamant. She was probably the only one in the third that was against the Death Penalty that was pretty adamantly against it that morning. Um, and just, that was just, that was very difficult.

I really, I felt fortunate to be on the jury with … it was just really a great group of individuals. Everyone really was, was very understanding and caring. A lot of the women especially, I mean, I kinda got to a point where, you know, I was trying to direct in conversation and really just trying to come at it from all these different angles of logic, and, uh, now it's just kinda done (laughing) (unintelligible) I mean, I just, I don't know what to do now.

They really, I mean, I don't, I don't deal well with emotions, so they were able to kind of talk through probably some different angles, kind of emotional. That was helpful, so. That's probably the only other thing I guess I would say. That, that was probably the, I would say eleven of the twelve were at a consensus probably by about _____, and it took us a while to talk it through with Angela.

CK:   What time was it when you _____?

MC:   I want to say it was 4:30 PM or so.

JJ:   Do you think… Angela didn't really want to be there.

MC:   Correct.

JJ:   And she didn't want the Death Penalty, but she didn't really stay the course and say ok. You know, you see movies about this, when…

MC:   Right, the whole….

(Unintelligible)

JJ:   She didn't stay the course and be the hold out, so, she obviously changed her mind, and uh, I guess, why did she change her mind? Did she want to leave? Cuz she thought it was the right thing to do? Do you even have a guess?

PAGE #: 27

MC:   I don't know.

JJ:   You probably haven't thought it through.

MC:   I haven't thought it through.

JJ:    So, but in your opinion, Cas, it is Casey

MC:   Casey.

JJ:   Casey was able to come to peace with the first question after the scriptures.

MC:   Not just that, I mean, there were probably nine of the twelve that shared something during that time. And she, it was not just the scriptures.

JJ:   Ok.

MC:   It was kind of a collaboration of everything that everyone said. Uh, it definitely (unintelligible)

JJ:   Oh, ok.

MC:   Everyone was contributing something and that was just kind of my little, I didn't, you know, they covered a lot and said some really nice things. I knew that that was something that was important to her as well and just said here's one other thing that I researched coming into this that might be helpful for you.

      So, but, no I, after that she, she went around and thanked everyone for their, their words and …

JJ:   Now we'll let you have your dessert.

(Unintelligible)

CK:   I'm sorry we came…

MC:   No, you're fine. Thanks for letting me eat my last couple bites of steak.

CK:   Yeah, I was really jealous.

PAGE #: 28

JJ:     Why do you think they picked you as the foreman?

MC:     Um, so there were, there were kind of two older gentlemen on the jury. One was kind of a quieter, he was more of an introvert, and the other guy was pretty strong, was kind of my impression. So, I think I was, I don't know. I was just friendly to everyone and …

CK:     You're very personable

JJ:     I think they made a good choice. I think they made a good choice. Again, it's 12 people from 12 different backgrounds.

MC:     It was really neat. I mean we had every, we had a guy that drove a truck, a lady that, you know, sits as a Security Guard, we had a retired, like, COO of a pretty big insurance company, another guy was a COO of a big Human Resources firm, I mean it's, a school teacher.

JJ:     Wow.

MC:      I mean it really was, we had one kid just graduated from college. It really was neat. All different, you know, ethnicities. It was really neat. And everyone, I mean, from the first day we really hit it off. Enjoyed it as much as, I mean…

JJ:     Yeah, yeah. Listening to all that. Cuz I would assume that, from the juror perspective, all the stuff that you heard, that stuff that has to do with what goes on on the streets and dope dealing. Whatever. Which is, probably not everybody in the jury had dealings with that.

MC:     No.

JJ:     So you had to listen to this stuff that really happens in the real world out there, um…

MC:     Yeah. My comments to people when they've asked about the case, I don't really like to talk about it much, but one of the things I say is it was just kind of a sad glimpse into a side of society you'd rather not hear about.

JJ:     Yeah. If you notice, the courthouse is not sparse of people.

MC:     No, it was a busy place. (Unintelligble)

PAGE #: 29

JJ:     Are you kidding me? It's got the worst engineering. It's horrible!

MC:     No I, (unintelligible) every morning when I got there.

JJ:     I asked an attorney once, I said ok, let's say your client's here on time, but he can't get up in the elevator, and he gets to the courtroom at 9:30 cuz he can't get up on the elevator. Does the judge revoke his bond? And he said get here at 7:30. I said, even knowing that he had this nightmare. He said the judge's answer to that is get here at 7:30. I said wow.

MC:     The second day of trial we were supposed to, court was set to begin at 10:00 AM. I got there at 9:00. I was standing at the elevator shaft at 9:25. I made the mistake of going up to 10 and trying to go over...

JJ:     Oh yeah, yeah.

MC:     And catch it the rest of the way. I stood there for 30 minutes. I called the _____. Ended up, I went back down to one and I'd been watching, you know there's six elevators on the _____ that go up between 15 and 20. I'm watching and I figured out which three were working and which three weren't, so I went back down to one and I went and stood by the door of one of the three that was working that I kind of figured was the last one to cycle. It hit like a minute after I got over there. We got there 10 minutes late but... the Bailiff was down looking for us, I mean, it was terrible. I was there 35 minutes early.

JJ:     Yeah I know, it's an absolute... I hate it. I mean, if you go at 10:00 you're ok, but if you try to go when all these people...

MC:     And the judge commented, it was after the holiday weekend. She said it was just kind of an abnormal day, but yeah.

JJ:     It's like that every day!

MC:     Ok.

JJ:     I mean it's just crazy. So. I thought the jurors had a, like...

CK:     Freight elevator?

JJ:     No, I thought they had the ability to (unintelligible)

PAGE #: 30

MC: Well we did. We had a special elevator, but that particular morning I went to that elevator but the Bailiffs kind of had seized it, because they had a line of jurors all the way from that elevator in the basement almost back to the little hallway to the jury building, or whatever. I mean it was 100 yards long. So I went there and they said no, you can't use it today. So I had to use that other one on the other side.

JJ: Now, you go up to the new civil building...

MC: Yeah they said they figured it out and that one's 100 times better.

JJ: Yeah you go through you get on the elevator.

MC: Yeah. That's what JJ was telling us.

JJ: But, that civil building does not have traffic in the morning like the criminal building has. And everybody says the civil building, they figured it out. Well I just want to know what would happen if all of those people that descend on the criminal building at 9:00 in the morning descend on the civil building.

MC: Descend on the civil building.

JJ: Cuz there's not that...

MC: I got ya.

JJ: K. I wonder what would happen. It might be the same. Who knows. Thank you for your time.

MC: My pleasure. Give me a call if anything else comes up.

JJ: I will. I got your number.

CK: Thank you.

MC: Yup.

CK: Sorry about the food and all

MC: Are y'all with, how does it work? Are y'all with one side or the other? How does it...

PAGE #: 31

JJ:     Well, the court, the court appoints an attorney…

MC:    Ok.

JJ:     …to do the Appellate process after the punishment phase. Then the attorney doesn't go out and talk to everybody, he appoints the Investigators (unintelligible)

MC:    To do that.

JJ:     To go out and do it. So then we talk to the jurors, we write reports that say "Ok, this is what Matt told us," and then he may say "Hey look can we put this together? Maybe I can throw an Affidavit up on what Matt told you and then you'd have to see if he'd want to sign that…" Whatever his purpose is.

MC:    Yeah, ok.

JJ:     So that's how it works. The attorneys don't ever go out and do anything. (unintelligible) But he has to do a filing within 30 days of sentencing. That's the first thing.

MC:    I see.

JJ:     And then it gets real complicated. There's all kind of different appeal processes. Somebody looks at all the trial testimony and is there an error…

MC:    I see.

JJ:     Is there lawyer incompetence, is there, what'd you think of the Defense lawyers?

MC:    Skip was really good. I was thoroughly impressed. The young guy, I remember his name. He didn't talk very much. I mean he gave kind of, he gave closing statements both times. He seemed to be good as well, but Skip was very, very impressive. We all commented on that. Um, even though, I mean, there just didn't seem to be, he didn't have a lot of ammunition to draw from, but he still did an excellent job with what he had, so.

JJ:     He's certainly a trial veteran.

PAGE #: 32

MC:    I really, um, after the trial was over I was a little disappointed that he didn't come talk to us. I understand why he didn't, but I did want to shake his hand and just thank him, because you know, I felt like he did an outstanding job. I would have felt, and other jurors commented, that they also would've felt just not right about the process had there just been a lay down Defense attorney, if that makes sense.

Skip really did everything he could and really did a bang up job.

JJ:    Yeah and I asked him, he said you know, he said you guys, he said after a week or two, that's the time to talk to the jurors, not right at that moment.

MC:    Yeah.

JJ:    Now, he said had they found him not guilty or, he said I (unintelligible). He said you know, that's a very stressful thing and you're right, you're limited to what you had to work with. But he's a very seasoned, I don't know how many trials he's done, but...

MC:    Yeah and you can, I mean, the Prosecution did a good job as well, but it was clear who had the experience and (unintelligible). I mean Skip, Skip definitely had been down that road a lot more times. The Prosecutors were just younger.

JJ:    I think so. I think the lady prosecutor has done a bunch of cases.

MC:    Ok.

JJ:    I think. I think she's... Janelle...

MC:    Justin. Yeah.

JJ:    I never saw ....

MC:    They both, they did a good job. But Skip definitely, I mean you could just tell he'd been doing it longer.

JJ:    Thanks again.

PAGE #: 33

MC: Alright, thank y'all. Pleasure to meet you. Just curious if, I mean was the, you asked about the scripture thing (unintelligible) Was that a problem at all or just kind of a... ?

JJ: No, that's of interest. I mean, I don't know what the, um, how would you say? I don't know what a lawyer would look at and say "Oh ok." I don't know. The Appellate process is, we're more fact finders. Now, if we were talking about the Guilt or Innocence part, where we have tons of experience interviewing witnesses, putting together these criminal cases, I could answer that. But, in the ...

MC: And that's fine. I was just curious.

JJ: Well see, in the Appellate process, which we've done on Death Penalty cases where, let's say the guy's already on Death Row...

MC: Mhmm

JJ: ...and you're working with the attorney and say, well why don't we find this out? And they say you can't do that. Why can't we do that? Cuz it's not allowed in this portion of the appeal. So if we get this information and it's helpful, we can't use it. It's very structured and I don't understand it.

MC: Yeah.

JJ: I do understand on this one it's basically trial procedures, um you know, let's say the attorney says you know I think the Defense attorneys did a really poor job. They're unprepared, etc.

MC: Yeah.

JJ: So, and as a result of that I think Mr. Obel should have a new trial, or whatever, ok?

MC: I see

JJ: I don't have a clue. So all we do is, we're like sponges. We talked to Matt and this is what he told us.

MC: Yup.

PAGE #: 34

JJ: We talk to this person and that's what they told us. We talked to this person and they said no we're not gonna talk to you. Now here you go Mr. Hill. Do whatever the heck you gotta do.

MC: Yeah. And will we get feedback, as to the findings of the appeals process or how does that…not generally?

JJ: I can let you know on this, but the rest of it… it goes to different courts and then it goes to the Federal courts. It's a long process. Somebody gets on Death Row, we had a case where the guy was on Death Row for 30 years.

MC: Wow.

JJ: How many times did they send it back? Three? He had three Guilt or Innocence trials then they sent it, and he'd been there 30 years, then they sent it back for punishment. Ok he's guilty, but now we have to re-do the punishment phase. Does he get Life or does he get Death? Now, he went to Death Row when he was 19 and he's now 50.

MC: 50

JJ: Finally the State said you know what? We'll just, let's just forget about this and we'll give him life.

MC: Ok.

JJ: So, they actually got off the Death Penalty, finally, after that.

MC: Wow. And was it just they found some error somewhere along the way?

JJ: In the Guilt or Innocence trial they kept sending it back for whatever reasons. I'm sure some of it had to do with attorneys and competence. I'm only guessing. But you know, this guy was like, on Death Row for 30 years. Went there when he was 19.

MC: Wow.

JJ: And he was, uh, he actually killed a guy on Death Row. Back when Death Row wasn't like it is now. They actually had two guys to a cell and this guy attacked him and he killed him with a wishbone. Stabbed him in his chest when he was 20. So, he had that against

PAGE #: 35

him, you know. But they finally just said you know what? We'll give him life. So, he'll probably be eligible for parole when he's about 75. You know, but he spent his entire life, since he was 19, in prison, over a Church's Fried Chicken robbery.

You know, it's amazing, the process. In reality they spend, they could've given him Life to start with. I don't know.

MC:     Thank y'all for explaining that to me. I appreciate it.

JJ:     We'll let you know. I'll give you a call.

MC:     Take care.

JJ:     K, Matt. Thanks.

MC:     Yup.


_____                    _____
President/Manager, Texas License A05741               Date  9/15/2013
G:\Cases\2013 Case Files\08\0329\Reports\ .doc



Matthew Clinger
Interview
8/12/13

13-08-0329
Wayne Hill
Obel Cruz-Garcia
Appeal

Gradoni & Associates

Professional Investigative Services
State License A 5741

2611 FM 1960 West
Suite C100
Houston, TX 77068
(281)440-0800
jj@gradoni.com

# Exhibit  B

4|5

CAUSE NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | JANUARY TERM, A. D., 2013 |

Members of the Jury:

By your verdict returned in this case you have found the defendant, Obel Cruz-Garcia, guilty of the offense of capital murder, which was alleged to have been committed on or about the 30th day of September, 1992, in Harris County, Texas. In order for the Court to assess the proper punishment, it is necessary now for you to determine, from all the evidence in the case, the answers to certain questions, called "Special Issues," in this charge. The Court instructs you in answering these "Special Issues" as follows:

The mandatory punishment for capital murder is death or confinement in the Texas Department of Criminal Justice, Institutional Division, for life.

In determining your answers to the questions, or special issues, submitted to you, you shall consider all the evidence submitted to you in this trial. You shall consider all evidence submitted to you during the trial as to the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

IMAGED



Exhibit 5

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging

: 00650

You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence, whether presented by the State or the defendant.

The State must prove Special Issue No. 1 submitted to you beyond a reasonable doubt, and you shall return a Special Verdict of "YES" or "NO" on Special Issue No. 1.

In deliberating on Special Issue No. 1 you shall consider all the evidence admitted at the trial, including but not limited to evidence of the defendant's background, character, or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 1 "YES" unless you agree unanimously.

You may not answer Special Issue No. 1 "NO" unless ten (10) or more jurors agree.

Members of the jury need not agree on what particular evidence supports a negative or affirmative answer to Special Issue No.1.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 1.

It is not required that the State prove Special Issue No. 1 beyond all possible doubt; it is required that the State's proof excludes all reasonable doubt concerning the defendant.

You are instructed that if you return an affirmative finding, that is a "YES" answer, to Special Issue No. 1, and only then, are you to answer Special Issue No. 2.

The State must prove Special Issue No. 2 submitted to you beyond a reasonable doubt, and you shall return a Special Verdict of "YES" or "NO" on Special Issue No. 2.

In deliberating on Special Issue No. 2 you shall consider all the evidence admitted at the trial, including but not limited to evidence of the defendant's background, character, or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 2 "YES" unless you agree unanimously.

You may not answer Special Issue No. 2 "NO" unless ten (10) or more jurors agree.

You need not agree on what particular evidence supports a negative or affirmative answer to Special Issue No.2.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 2.

It is not required that the State prove Special Issue No. 2 beyond all possible doubt; it is required that the State's proof excludes all reasonable doubt concerning the defendant.

You are instructed that if you return an affirmative finding, that is a "YES" answer, to Special Issue No. 2, and only then, are you to answer Special Issue No. 3.

In deliberating on Special Issue No. 3 you shall consider all the evidence admitted at the trial, including but not limited to evidence of the defendant's background, character, or the

circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You shall consider mitigating evidence to be evidence that you might regard as reducing the defendant's moral blameworthiness.

You may not answer Special Issue No. 3 "NO" unless you agree unanimously.

You may not answer Special Issue No. 3 "YES" unless ten (10) or more jurors agree.

You need not agree on what particular evidence supports a negative or affirmative answer to Special Issue No.3.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 3.

You are instructed that if you answer Special Issue No. 1, and Special Issue No. 2 "Yes", and you answer Special Issue No. 3 "No", the court shall sentence the Defendant to death. You are further instructed that if you answer Special Issue No. 1 or Special Issue No. 2 "No", or you answer Special Issue No. 3 "Yes", the court shall sentence the Defendant to the Texas Department of Criminal Justice Institutional Division for life.

You may consider evidence of an extraneous crime or bad act in assessing punishment even if the defendant has not yet been charged with or finally convicted of the crime or act. However, you may consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the defendant or is one for which the defendant could be held criminally responsible.

The prosecution does not have to prove an extraneous crime or bad act beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the extraneous crime or bad act.

Therefore, if you find and believe beyond a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the defendant's punishment. However, if you have a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may not consider such evidence in assessing punishment.

You are further instructed that any evidence that any witness has been convicted in any case or cases was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the credibility of the witness and the weight to be given his or her testimony, and you will not consider the same for any other purpose.

Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals thirty-five (35) calendar years. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

You may consider the existence of the parole law. However, you are not to consider the manner in which the parole law may be applied to this particular defendant.

You are instructed that the defendant may testify in his own behalf if he chooses to do so, but if he elects not to do so, that fact cannot be taken by you as a circumstance against him nor prejudice him in any way.  The defendant has elected not to testify in this punishment phase of trial, and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever.

During your deliberations upon the "Special Issues," you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

In arriving at the answers to the "Special Issues" submitted, it will not be proper for you to fix the same by lot, chance, or any other method than by a full, fair and free exchange of the opinion of each individual juror.

After the reading of this charge, you shall not be permitted to separate from each other, nor shall you talk with anyone not of your jury. After argument of counsel, you will retire and consider your answers to the "Special Issues" submitted to you. It is the duty of your foreman to preside in the jury room and vote with you on the answers to the "Special Issues" submitted.

You are the exclusive judges of the facts proved and the credibility of the witnesses and the weight to be given to their testimony, but you are bound to receive the law from the Court which has been given you and you are bound thereby.

**F I L E D**
Chris Daniel
District Clerk

JUL 1 8 2013

Time: 3:05 pm

By _____

Harris County, T

Deputy

_Renee Magee_
Renee Magee, Judge
337th District Court
Harris County, TEXAS

: 00659

CAUSE NO. 1384794

| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT COURT |
|---|---|---|
| VS. | § | OF HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | JANUARY TERM, A. D., 2013 |

The Special Issues, with forms for your answers, are as follow:

## SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt there is a probability that the defendant, Obel Cruz-Garcia, would commit criminal acts of violence that would constitute a continuing threat to society?

## ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "Yes."

FILED
Chris Daniel
District Clerk

JUL 1 9 2013

Time: _____

By _____

_____
Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors have a reasonable doubt as to the matter inquired about in this Special Issue, find and determine that the answer to this Special Issue is "No."

_____
Foreman of the Jury

: 00660

## SPECIAL ISSUE NO. 2

Do you find from the evidence beyond a reasonable doubt that Obel Cruz-Garcia, the defendant himself, actually caused the death of Angelo Garcia, Jr., on the occasion in question, or if he did not actually cause the death of Angelo Garcia, Jr., that he intended to kill Angelo Garcia, Jr., or that he anticipated that a human life would be taken?

## ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "YES."

FILED
Chris Daniel
District Clerk

JUL 1 9 2013

Tl...                                    _____
4:30p                                    Foreman of the Jury
Harris County, ...
Pv _____
Deputy

OR

We, the jury, because at least ten (10) jurors have a reasonable doubt that Obel Cruz-Garcia, the defendant himself, actually caused the death of Angelo Garcia, Jr., on the occasion in question, or that he intended to kill Angelo Garcia, Jr., or that he anticipated that a human life would be taken, determine that the answer to this Special Issue is "NO."

_____
Foreman of the Jury

: 00661

CAUSE NO. 1384794

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 337TH DISTRICT COURT |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| OBEL CRUZ-GARCIA | § | JANUARY TERM, A. D., 2013 |

In the event that the jury has answered "Special Issues" number 1, number 2 in the affirmative, and only then, shall the jury answer "Special Issue" number 3.

## SPECIAL ISSUE NO. 3

Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

You are instructed that in answering this "Special Issue" that you shall answer the issue "Yes" or "No."

You may not answer this issue "No" unless you agree unanimously, and you may not answer this issue "Yes" unless ten (10) or more of you agree to do so.

: 00662

ANSWER

We, the jury, unanimously find and determine that the answer to this Special Issue is "No."

**FILED**
Chris Daniel
District Clerk

JUL **1 9** 2013

Time: _____

By _____
Harris County, Texas
Deputy

_____
Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors agree that there is sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed, find that the answer to this Special Issue is "Yes."

_____
Foreman of the Jury

: 00663

After the jury has answered each of the Special Issues under the conditions and instructions outlined above, the Foreman should sign the verdict form below.

### VERDICT

We, the Jury, return in open court the above answers to the "Special Issues" submitted to us, and the same is our verdict in this case.

**FILED**
Chris Daniel
District Clerk

JUL 1 9 2013

Time: _____
Harris County, Texas
By _____
Deputy

_____
Foreman of the Jury

: 00664

Case No:  1384794

STATE OF TEXAS                         IN THE 337TH DISTRICT COURT

VS.

OBEL CRUZ-GARCIA                       HARRIS COUNTY, TEXAS

**COURT'S ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL
AND SUPPLEMENT TO DEFENDANT'S MOTION FOR NEW TRIAL**

The Court makes the following ruling:

Defendant's Motion for New Trial and Supplement to Defendant's Motion for New

Trial is DENIED.

Defendant's Motion for New Trial and Supplement to Defendant's Motion for New

Trial is GRANTED.

SIGNED AND ORDERED this _20_ day of September, 2013.

_Renee Magee_

Honorable Renee Magee
Judge Presiding
337th  District Court
Harris County, Texas

: 00665

Case Number: 1384794

STATE OF TEXAS                        IN THE 337th DISTRICT COURT

VS.

OBEL CRUZ-GARCIA                HARRIS COUNTY, TEXAS

## DESIGNATION OF MATERIAL FOR
## INCLUSION IN THE RECORD ON APPEAL

**FILED**
Chris Daniel
District Clerk

SEP 2 3 2013

Time: _____
By: _____
Harris County, Texas
Deputy

TO THE HONORABLE JUDGE OF SAID COURT:

      COMES NOW, Defendant/Appellant and files this Designation of Material for Inclusion in

the Record on Appeal for the above-referenced case as follows:

1).      All reset forms and docket sheets including entries made thereon regarding all court settings.

2).      All subpoenas; pleadings; motions or other documents presented to or filed with the court.

3).      All written orders of the court, including, but not limited to, pre-trial motions and requested jury charges (guilt and punishment) filed in this case. Jury charges submitted to the jury during both stages of the trial. All jury notes and responses thereto.

4).      Any Motion for New Trial or Supplements to a Motion for New Trial; Requests for Live Evidentiary Hearings; Affidavits filed in support of Motion for New Trial and Supplement; The trial court's ruling on any Motion for New Trial and Supplement; Notice of Appeal and the Trial Court's Certification of Defendant's Right to Appeal.

5).      All other matters contained in Rule 34.5 of the Texas Rules of Appellate Procedure.

6).      The original or duplicate **color** photographic copies of all pre-trial and trial exhibits on file (including verbatim transcription of tape recordings or audio or video tapes offered or admitted into evidence at any stage of the proceedings) in accordance with the Texas Rules of Appellate Procedure.

7).      A copy of any audio or video tape, including any of Defendant/Appellant, which was marked, offered or introduced in evidence during any pre-trial or post-trial hearing or at trial.

8).      This Designation of Material for Inclusion in the Record on Appeal.

: 00666

9).    The transcription of the Court Reporter's Notes, during all pre-trial, trial and any post-trial proceedings.

10).   Any and all Sealed Records / testimony filed with or by the Court for appellate purposes; All bills of exception, including any recordings [CD] of juror interviews.

11).   Any Findings of Fact and Conclusions of Law requested or required by law.

12).   Any search or arrest warrants (including supporting affidavits) or consent to search in this case.

13).   Copies of all offered and/or admitted trial exhibits.

14).   Juror information sheets and questionnaires used during voir dire.

WHEREFORE, PREMISES CONSIDERED, Defendant/Appellant requests the foregoing items be included in the record on appeal.

Respectfully submitted,

Wayne T. Hill
TBA # 09656300
4615 Southwest Freeway, Suite 600
Houston, Texas  77027
(713) 623-8312
(713) 626-0182

Attorney for Defendant
Obel Cruz-Garcia

### CERTIFICATE OF SERVICE

On this 20th day of September, 2013, a copy of this document was delivered to the Harris County District Attorney's Office - Appellate Division - 1201 Franklin, 6th Floor - Houston, TX. 77002

Wayne T. Hill

: 00667

Harris County Criminal District Docket Sheet

| THE STATE OF TEXAS VS. CRUZ-GARCIA, OBEL | Bond: $0 |
|---|---|
| Cause No.: 138479401010-3 Court: 337th | Next Setting: |
| Offense: CAPITAL MURDER    Level: C Level Felony | Case Disposition: Disposed |
| Charging Instrument: On Appeal CCA | Case Status: Appeal |
| | Defendant Status: JAIL |
| GENERAL ORDERS OF THE COURT | |

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |
| 4/19/2013 | GRAND JURY ACTION: Reindictment GJ COURT: 338<br>OFFENSE: CAPITAL MURDER    C Level Felony<br>BOND AMOUNT: $0<br>Previous Case Number: 1289188 |
| 4/19/2013 | CAPIAS ISSUED—INDICTMENT<br>BOND AMOUNT: $0 |
| 4/19/2013 | Precept issued to serve copy of indictment |
| 4/23/2013 | The defendant filed a sworn pauper's oath, and JUDGE MAGEE, HOLLY RENEE<br>ordered MADRID, MARIO appointed as Appointed Defense Attorney |
| 4/23/2013 | The defendant filed a sworn pauper's oath, and JUDGE MAGEE, HOLLY RENEE<br>ordered CORNELIUS, R. P.    appointed as Appointed Defense Attorney |
| 4/23/2013 | MOTION FILED: TRANSFER PRIOR MTS |
| 4/23/2013 | MOTION FILED: NTC OF REINDICTMENT |
| 4/23/2013 | ORDER: GRNT TRANSFER PRIOR MOTIONS |
| 5/2/2013 | BENCH WARRANT ISSUED<br>ISSUED FOR SPN: 01206555 MARTINEZ, CAMELO, Bench Warrant Material Witness For Prosecution |
| 5/3/2013 | MOTION FILED: DISCLOSE EXPRT |
| 5/6/2013 | ORDER: GRANTED DISCLOSE EXPERTS |
| 5/20/2013 | Precept issued to serve copy of veniremen |
| 5/23/2013 | MOTION FILED: STS:NTC OF TRANSLTR |
| 6/3/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

: 00668

## Harris County Criminal District Docket Sheet

| 6/3/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, R. P..<br>Interpreter FLORES, MARILU & DE LA TORRE, MAURICO<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter: RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>9:45 AM THE COURT CAME TO ORDER, ALL PARTIES WERE PRESENT AND ANNOUNCED READY.<br><br>10:00 AM THE COURT EXCUSED JUROR #9 AND #59 BY AGREEMENT.<br><br>10:10 AM 85 GOOD MEN AND WOMEN WERE SEATED AS PROSPECTIVE JURORS.  THE COURT INSTRUCTED THE JURORS AS TO THE LAW.<br><br>10:15 AM THE COURT BEGAN VOIR DIRE.<br>12:00 NOON THE JURORS WERE EXCUSD FOR LUNCH BREAK.<br>THE FOLLOWING JURORS WERE STRUCK BY AGREEMENT: NOS. 1, 3, 6, 8, 9, 10, 12, 16, 18, 20,23, 26, 27, 29, 30, 36, 39, 47, 48, 49, 50, 51, 55, 59, 61, 63, 65, 66, 67, 71, 73, 75, 77, 79, 80, 81, 82, 85.<br><br>1:00 PM THE COURT CAME TO ORDER AND 83 JURORS WERE SEATED.<br><br>1:10 PM THE FOLLOWING JURORS WERE STRUCK BY FOR STATE CAUSE: NOS. 21, 32, 33, 42.<br><br>1:50 PM THE COURT RECESSED FOR A SHORT BREAK.<br><br>2:05 PM THE COURT CAME TO ORDER.  NO. 2 JUROR WAS SWORN AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>3:15 PM JUROR #2 CALUAG, JOSHUA WAS SELECTED AS THE 1ST JUROR.  JUROR #4 BOLLOM TOOK THE STAND.<br><br>4:25 PM JUROR #4 WAS EXCUSED FROM THE COURT ROOM AND MATTERS WERE DISCUSSED OUTSIDE HIS PRESENCE.<br><br>4:35 PM JUROR #4 WAS STRUCK BY THE DEFENSE (1ST PEREMPTORY).  JUROR #5 JORDAN TOOK THE STAND.<br><br>5:40 PM JUROR #5 WAS SELECTED AS THE 2ND JUROR. JUROR #7 TOOK THE STAND.<br><br>6:10 PM JUROR #7 GONZALEZ WAS STRUCK FOR STATE'S CAUSE.<br><br>COURT STAFF WAS INSTRUCTED TO RETURN @ 8:30 AM.  COURT STANDS IN RECESS UNTIL 06-04-13 |
| 6/3/2013 | MOTION FILED: LIMINE |
| 6/3/2013 | ORDER: GRANT LIMINE |
| 6/3/2013 | Continued 6/04/2013 09:00 AM Jury Trial |
| 6/4/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 6/4/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, R. P..<br>Interpreter HERNANDEZ, ROLANDO<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter: RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>9:05 AM THE COURT CAME TO ORDER, ALL PARTIES WERE PRESENT AND ANNOUNCED READY.<br><br>9:10 AM THE STATE AND DEFENSE AGREED TO STRIKE JUROR #11, WILLIS, RACHEL. JUROR #14 TOOK THE STAND.<br><br>10:15 AM THE STATE AND DEFENSE AGREED TO STRIKE JUROR #14 KIRKPATRICK. JUROR #13 TOOK THE STAND.<br><br>11:15 AM THE STATE MOTIONED TO STRIKE JUROR #13, MCPHERSON FOR CAUSE / MOTION DENIED. STATE MADE 1ST PEREMPTIVE STRIKE.<br><br>11:25 AM JUROR #15 TOOK THE STAND. THE STATE AND DEFENSE AGREED TO STRIKE.<br><br>11:30 AM THE STATE AND DEFENSE AGREED TO STRIKE JUROR #17.<br><br>THE COURT RECESSED FOR LUNCH BREAK UNTIL 1PM<br><br>1:05 PM THE COURT CAME TO ORDER, AND JUROR #2, RODRIGUEZ, ADELA TOOK THE STAND.<br><br>2:00 PM THE DEFENSE MADE THE 3RD PEREMPTIVE STRIKE ON JUROR #22, RODRIGUEZ. JUROR #19 TOOK THE STAND.<br><br>2:25 PM THE STATE AND DEFENSE AGREED TO STRIKE JUROR #19, MASEMENE, TSEPISO. JUROR #24 TOOK THE STAND.<br><br>2:30 PM BOTH SIDES AGREED TO STRIKE, JUROR #24, PARAGAS, EDWIN. LEGAL MATTERS WERE DISCUSSED AND JUROR #31, MALONE, RANDI AND JUROR #37,TOWSE-PAULK, DANA WERE STRUCK BY AGREEMENT.<br><br>2:45 PM THE COURT STAND ADJOURNED UNTIL 06-05-13 @ 8:30 AM. |
| 6/4/2013 | Continued 6/05/2013 09:00 AM Jury Trial |
| 6/5/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

**Harris County Criminal District Docket Sheet**

| 6/5/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, R. P. / MADRID, MARIO Interpreter HERNANDEZ, ROLANDO TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter: RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE |
|---|---|
| | 9:00 AM THE COURT CAME TO ORDER, ALL PARTIES WERE PRESENT AND ANNOUNCED READY. LEGAL MATTERS WERE DISCUSSED. |
| | 9:10 AM JUROR #25, GENAW, LINDA TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN. |
| | 10:00 AM THE STATE STRUCK JUROR #25.  JUROR #28, SANCHEZ, OLA TOOK THE STAND. |
| | 10:40 AM THE STATE AND DEFENSE ACCEPTED JUROR #28, SANCHEZ, OLGA. |
| | 10:45 AM JUROR #34, EMERT, ALLYN TOOK THE STAND. |
| | 11:30 AM THE STATE MADE A MOTION AND USED 3RD PEREMPTORY TO STRIKE JUROR #34, EMER, ALLYN |
| | 11:45 AM THE COURT RECESSED FOR LUNCH UNTIL 1PM. |
| | 1:00 PM THE COURT CAME TO ORDER AND LEGAL MATTERS WERE DISCUSSED. |
| | 1:05 PM JUROR #35, JOHNSON, MARCELLA TOOK THE STAND. |
| | 1:55 PM THE DEFENSE MADE A MOTION AND USED 4TH PEREMPTORY TO STRIKE JUROR #35,JOHNSON MARCELLA.  JUROR #38, BROWN, SCOTT TOOK THE STAND |
| | 2:30 PM THE STATE EXERCISED 4TH PEREMPTORY STRIKE.  JUROR #40, MONTGOMERY, WAYNE TOOK THE STAND |
| | 3:35 PM THE STATE AND DEFENSE ACCEPTED MONTGOMERY, WAYNE AS JUROR #4 |
| | MATTERS WERE DISCUSSED.  THE STATE AND DEFENSE AGREED TO STRIKE JUROR #52 LOWRANCE, MICHAEL AND #54 QUINTANILLA, ELSY . |
| | 3:55 PM THE COURT STAFF WAS INSTRUCTED BY THE COURT TO RETURN 06-06-13 @ 8:30AM. |
| 6/5/2013 | Continued 6/06/2013 09:00 AM Jury Trial |

**Harris County Criminal District Docket Sheet**

| | |
|---|---|
| 6/6/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, R. P. & MADRID, MARIO Interpreter:HERNANDEZ, ROLANDO & FLORES, MARILU TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE

AT 9:03AM COURT CAME TO ORDER, ALL PARTIES PRESENT AND READY, AT THIS TIME JUROR #41 MCDONALD WAS SEATED FOR INDIVIDUAL VOIR DIRE.

AT 9:41AM ST MADE A MOTION TO EXCUSE JUROR#41 FOR CAUSE WHICH WAS DENIED BY THE COURT. AT 9:43AM STATE EXERCISED 5TH PEREMPTORY STRIKE AND EXCUSED JUROR# 41 MCDONALD.

AT 9:48AM JUROR #44 CLARK WAS SEATED FOR INDIVIDUAL VOIR DIRE. AT 9:50AM BOTH SIDES AGREED TO STRIKE JUROR #44 CLARK.

AT 9:52AM JUROR #45 CHAMBERS WAS SEATED AND VOIR DIRE BEGAN. AT 10:10AM ST MADE A MOTION TO STRIKE JUROR FOR CAUSE. AT 10:23AM JUROR #45 WAS EXCUSED AND MATTERS WERE ADDRESSED OUTSIDE OF HER PRESENCE. AT 10:30AM JUROR #45 RETURNED TO OPEN COURT AND QUESTIONNING CONTINUED; AT THIS TIME THE COURT GRANTED ST'S MOTION AND EXCUSED JUROR #45 CHAMBERS.

AT 10:33AM JUROR #46 BROWN TOOK THE STAND AND VOIR DIRE BEGAN. AT 11:22AM JUROR #46 BROWN WAS EXCUSED BY DEFENSE 5TH PEREMPTORY STRIKE.

AT 11:26AM THE COURT RECCESSED FOR LUNCH.

AT 1:01PM ALL PARTIES PRESENT AND JUROR #53 ZINK WAS SEATED FOR INDIVIDUAL VOIR DIRE. AT 1:57PM JUROR#53 ZINK WAS EXCUSED FOR A MOMENT. AT.2:00PM JUROR #53 ZINK RETURNED TO OPEN COURT, AT THIS TIME DEFENSE USED 6TH PEREMPTORY STRIKE TO EXCUSE HIM.

AT 2:03PM JUROR #57 PEREZ TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN. AT 2:06PM STATE MADE A MOTION TO STRIKE JUROR #57 PEREZ FOR CAUSE, AT THIS TIME THE COURT GRANTED STATE'S MOTION.

AT 2:17PM BOTH JUROR #56 BALL AND JUROR #60 MIXON WERE EXCUSED BY AGREEMENT.

AT 2:22PM COURT INSTRUCTED EVERYONE TO RETURN 6/7/13 BY 9AM, AT THIS TIME COURT ADJOURNED. |
| 6/6/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |
| 6/6/2013 | Reset By Court, 6/07/2013 09:00 AM Jury Trial |
| 6/7/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

: 00672

**Harris County Criminal District Docket Sheet**

| 6/7/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, R. P.. Interpreter:HERNANDEZ, ROLANDO & MARILU FLORES TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE<br><br>AT 9:08AM ALL PARTIES PRESENT AND READY, AT THIS TIME JUROR #58 CHAYKOSKY TOOK THE STAND FOR INDIVIDUAL VOIR DIRE. AT 9:26AM BOTH SIDES AGREED AND STRUCK JUROR #58.<br><br>AT 9:29AM JUROR #62 DENMAN WAS SEATED AND VOIR DIRE BEGAN. AT 10:13AM JUROR #62 WAS EXCUSED SO MATTERS COULD BE DISCUSSED. AT 10:15AM JUROR #62 DENMAN RETURNED TO OPEN COURT, AT THIS TIME THE STATE USED THEIR 6TH PEREMPTORY STRIKE.<br><br>AT 10:16AM THE COURT TOOK A BREAK.<br><br>AT 10:19AM JUROR #70 ANDERSON WAS SEATED FOR INDIVIDUAL VOIR DIRE. AT 11:13 JUROR WAS EXCUSED AND MATTERS WERE DISCUSSED. AT 11:14AM JUROR #70 ANDERSON RETURNED TO OPEN COURT, AT THIS TIME THE DEFENSE USED THEIR 7TH PEREMPTORY STRIKE.<br><br>AT 11:17AM JUROR #69 RIVERA TOOK THE STAND FOR INDIVIDUAL VOIR DIRE.  AT 11:40AM JUROR WAS EXCUSED AND MATTERS WERE DISCUSSED. AT 11:42AM VOIR DIRE WITH JUROR #69 RIVERA CONTINUED. AT 12:06PM JUROR WAS EXCUSED AND MATTERS WERE DISCUSSED OUTSIDE HER PRESENCE. AT 12:12PM JUROR #69 RIVERA RETURNED TO OPEN COURT, AT THIS TIME THE COURT GRANTED STATE'S CHALLENGE FOR CAUSE.<br><br>AT 12:14PM THE COURT TOOK A BREAK.<br><br>AT 12:17PM JUROR #64 PYPER WAS SEATED FOR INDIVIDUAL VOIR DIRE. AT 1:18PM JUROR WAS EXCUSED AND MATTERS WERE ADDRESSED. AT 1:21PM JUROR #64 PYPER RETURNED TO OPEN COURT, AT THIS TIME BOTH SIDES ACCEPTED HER AND THE COURT ADMONISHED HER AS TO THE LAW.<br><br>AT 1:24PM THE COURT TOOK A SHORT BREAK.<br><br>AT 1:26PM JUROR #72 BOWERS WAS SEATED AND VOIR DIRE BEGAN. AT 2:06PM JUROR WAS EXCUSED FOR A MOMENT. AT 2:07PM JUROR #72 BOWERS RETURNED TO OPEN COURT AND AT THIS TIME STATE USED THIER 7TH PEREMPTORY STRIKE TO EXCUSE HIM.<br><br>AT 2:10PM COURT GAVE INSTRUCTIONS TO BOTH PARTIES TO RETURN 6/10/13 AT 9AM AND THEN ADJOURNED. |
| --- | --- |
| 6/7/2013 | Reset By Court, 6/10/2013 09:00 AM Jury Trial |

### Harris County Criminal District Docket Sheet

| 6/10/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, SKIP & MADRID, MARIO Interpreter:HERNANDEZ, ROLANDO & MARILU FLORES TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>9:05 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.<br><br>9:10 AM  JUROR #43 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>10:10 AM THE DEFENSE USED 8TH PEREMPTORY TO STRIKE JUROR #43.  LEGAL  MATTERS WERE DISCUSSED.A<br><br>10:30 AM JUROR #76 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>11:15 AM THE STATE AND DEFENSE ACCEPTED JUROR #76.<br><br>JUROR 1122 IN THE NEXT PANEL IS EXCUSED BY THE STATE AND DEFENSE.<br><br>11:25 AM JUROR #78 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>11:30 AM THE STATE AND DEFENSE AGREED TO STRIKE FOR CAUSE.  THE COURT RECESSED FOR LUNCH.<br><br>1:00 PM THE COURT CAME TO ORDER.  THE STATE AND DEFENSE AGREED TO STRIKE FOR CAUSE JUROR #102 & JUROR #88.<br><br>1:05 PM JUROR #83 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>2:05 PM THE STATE AND DEFENSE AGREED TO STRIKE FOR CAUSE.<br><br>2:10 PM JUROR #84 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>3:10 PM THE STATE AND THE DEFENSE AGREED TO ACCEPT JUROR #84.<br><br>COURT ADJOURNED UNTIL 06-11-13 9:00 AM |
| --- | --- |
| 6/10/2013 | Continued 6/11/2013 09:00 AM Jury Trial |

: 00674

**Harris County Criminal District Docket Sheet**

| 6/11/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, SKIP & MADRID, MARIO Interpreter:HERNANDEZ, ROLANDO & MARILU FLORES TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE<br><br>10:00 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY. LEGAL MATTERS WERE DISCUSSED.<br><br>10:10 AM THE STATE AND DEFENSE AGREED TO EXCUSE JUROR #86 UNTIL 06-12-2013 @ 9AM<br><br>10:25 AM 65 GOOD MEN AND WOMEN WERE SEATED AS PROSPECTIVE JURORS. THE COURT BEGAN ADMONISHED THE PANEL AS TO THE LAW.<br><br>12:10 PM THE JURY PANEL RECESSED FOR LUNCH UNTIL 1:00 PM. THE STATE AND DEFENSE MADE CAUSE/AGREEMENTS.<br><br>1:15 PM THE COURT CAME TO ORDER AND THE JURY PANEL WAS SEATED. INDIVIDUAL JURORS WERE CALLED TO THE BENCH FOR QUESTIONING BY BOTH SIDES.<br><br>1:50 PM THE STATE AND DEFENSE AGREED TO EXCUSE THE FOLLOWING JURORS FOR CAUSE, NOS: 86,87, 88, 90, 94, 100, 102, 103, 104, 105, 106, 108, 114, 116, 118, 119, 120, 121, 122, 123, 124, 125, 126, 131, 133, 134, 135, 138, 142, 144, 145, 146, 147. THE STATE MADE MOTIONS AND THE COURT GRANTED 8TH PEREMPTORY STRIKE FOR JUROR #94 AND 9TH PEREMPTORY STRIKE FOR JUROR #120.<br><br>2:00 PM JUROR #89 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>2:55 PM THE COURT GRANTED THE STATE'S 10TH PEREMPTORY FOR JUROR #89.<br><br>3:00 PM JUROR #91 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>3:45 PM THE DEFENSE MOTIONED AND COURT GRANTED 9TH PEREMPTORY STRIKE FOR JUROR #91.<br><br>3:55 PM JUROR #92 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>4:35 PM THE DEFENSE STRUCK JUROR #92 - 11TH PEREMPTORY.<br><br>4;45 PM STAND ADJOURNED UNTIL 06-12-13 @ 9AM |
| --- | --- |
| 6/11/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |
| 6/11/2013 | Reset By Court, 6/12/2013 09:00 AM Jury Trial |

**Harris County Criminal District Docket Sheet**

| | |
|---|---|
| 6/12/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, SKIP & MADRID, MARIO<br>Interpreter:HERNANDEZ, ROLANDO & MARILU FLORES<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>8:50 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  LEGAL MATTERS WERE DISCUSSED.<br><br>8:55 AM JUROR #86 CAME BEFORE THE BENCH AND THE COURT ADMONISHED HIM AS TO THE LAW REGARDING HIS ABSENCE FROM THE COURT 06-11-2013 @ 9:30 AM<br><br>9:10 AM JUROR #93 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>10:20 AM THE STATE AND DEFENSE ACCEPTED JUROR #93.<br><br>10:30 AM JUROR #95 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.  10:35 AM JUROR #95 RETIRED TO THE HALL AND LEGAL MATTERS WERE DISCUSSED.<br><br>10:40 AM JUROR #95 RETURNED TO THE STAND AND VOIR DIRE RESUMED.<br><br>11:00 AM DEFENSE MOTION FOR CAUSE WAS GRANTED BY THE COURT ON JUROR #95.<br><br>11:00 AM JUROR #96 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>12:00 NOON THE DEFENSE MOTIONED AND THE COURT GRANTED STRIKE FOR CAUSE OF JUROR #96.<br><br>12:05 PM JUROR #97 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>1:00 PM THE STATE AND DEFENSE ACCEPTED JUROR #97 AS THE 9TH JUROR.<br><br>1:05 PM THE COURT RECESSED FOR 30 MINUTE LUNCH.<br><br>1:35 PM JUROR #98 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>2:15 PM THE STATE USED 10TH PEREMPTORY CHALLENGE FOR JUROR #98.<br><br>2:20 PM JUROR #99 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>2:30 PM JUROR #99 WAS STRUCK FOR CAUSE BY THE COURT.<br><br>2:35 PM JUROR #101 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>2:40 PM THE COURT GRANTED MOTION TO STRIKE JUROR #101.<br><br>2:45 PM JUROR #107 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>3:30 PM THE STATE ACCEPTED JUROR #107 AND THE DEFENSE EXERCISED 10TH PEREMPTORY. |
| 6/12/2013 | Reset By Court, 6/13/2013 09:00 AM Jury Trial |
| 6/13/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

## Harris County Criminal District Docket Sheet

| 6/13/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, SKIP & MADRID, MARIO Interpreter:HERNANDEZ, ROLANDO & MARILU FLORES<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>9:00 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  MATTERS WERE DISCUSSED.<br><br>9:05 AM JUROR #109 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>10:05 AM THE DEFENSE MOTIONED TO STRIKE JUROR #109 AND THE COURT GRANTED MOTION.<br><br>10:10 AM JUROR #110 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>10:45 AM THE STATE AND DEFENSE ACCEPTED JUROR #110 AS JUROR #10.<br><br>10:50 AM JUROR #111 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>11:05 AM THE STATE MOTIONED FOR CAUSE AND THE COURT GRANTED THE MOTION FOR CAUSE.<br><br>11:15 AM JUROR #112 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN<br><br>11:35 AM STATE MOTIONED TO STRIKE JUROR #112 FOR CAUSE. THE COURT GRANTED MOTION.<br><br>THE COURT RECESSED FOR LUNCH.<br><br>1:10 PM THE COURT CAME TO ORDER.  JUROR #113 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>1:25 PM THE STATE AND THE DEFENSE AGREED TO STRIKE JUROR #113<br><br>1:30 PM JUROR #115 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>2:00 PM THE STATE EXCERCISED #11TH PEREMPTORY STRIKE ON JUROR #115<br><br>2:05 PM JUROR #117 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>2:20 PM THE DEFENSE MOTIONED TO STRIKE JUROR #117 FOR CAUSE.  THE COURT GRANTED THE MOTION.<br><br>2:25 PM JUROR #127 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>3:25 PM THE DEFENSE MOTIONED TO STRIKE JUROR #127 FOR CAUSE AND THE COURT GRANTED THE MOTION.<br><br>3:30 PM THE COURT ADJOURNED UNTIL FRIDAY, 06-14-13 @ 8:30 AM |
| --- | --- |
| 6/13/2013 | Continued 6/14/2013 09:00 AM Jury Trial |
| 6/14/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

: 00677

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 6/14/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, SKIP & MADRID, MARIO<br>Interpreter:HERNANDEZ, ROLANDO & MARILU FLORES<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>9:00 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  MATTERS WERE DISCUSSED.<br><br>9:10 AM JUROR #128 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>9:55 AM THE STATE ACCEPTED JUROR #128 AND THE DEFENSE MOTIONED TO EXERCISE<br>PEREMPTROY STRIKE.  THE COURT GRANTED MOTION.<br><br>10:00 AM JUROR #129 TO THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>10:45 AM THE DEFENSE MOTIONED TO STRIKE JUROR #129 FOR CAUSE.  THE COURT GRANTED THE<br>MOTION.<br><br>10:50 AM JUROR #130 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>11:10 AM THE STATE MOTIONED TO STRIKE JUROR #130 FOR CAUSE AND THE COURT GRANTED THE<br>MOTION.<br><br>11:15 AM JUROR #132 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>11:20 AM THE STATE MOTIONED TO STRIKE JUROR #132 FOR CAUSE.  THE COURT GRANTED THE<br>MOTION.<br><br>11:40 THE COURT RECESSED FOR LUNCH.<br><br>12:20 PM THE COURT CAME TO ORDER, ALL PARTIES WERE PRESENT AND ANNOUNCED READY.<br><br>12:25 PM JUROR #136 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>1:20 PM STATE MOTION FOR 12TH PEREMPTORY STRIKE ON JUROR #136.  THE COURT GRANTED THE<br>STRIKE.<br><br>1:25 PM JUROR #137 TORRES, LEONARD TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>2:20 PM THE STATE AND DEFENSE ACCEPTED JUROR #137.<br><br>THE COURT RECESSED FOR SHORT BREAK.<br><br>2:45 PM JUROR #139 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>3:35 PM THE DEFENSE EXCERCISED 13TH PEREMPTORY STRIKE.  THE COURT GRANTED STRIKE.<br><br>3:40 PM JUROR #140 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.<br><br>4:35 PM THE DEFENSE EXERCISED 14TH PEREMPTORY STRIKE FOR JUROR #140.<br><br>THE COURT ADJOURNED UNTIL MONDAY @ 9AM. |
| 6/14/2013 | MOTION FILED: FUND OUT-ST WITNESS |
| 6/14/2013 | MOTION FILED: FUND OUT-ST WITNESS |
| 6/14/2013 | ORDER: GRNT OUT-ST WITNESS $2,374 |
| 6/14/2013 | ORDER: GRNT OUT-ST WITNESS $2,215 |
| 6/14/2013 | Continued 6/17/2013 09:00 AM Jury Trial |
| 6/17/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

: 00678

## Harris County Criminal District Docket Sheet

| 6/17/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, SKIP & MADRID, MARIO Interpreter:HERNANDEZ, ROLANDO & MARILU FLORES TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE

9:00 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  MATTERS WERE DISCUSSED.

9:10 AM JUROR #141 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.

9:35 AM THE COURT RECESSED FOR A SHORT BREAK.

9:55 AM THE COURT CAME TO ORDER AND JUROR #141 TOOK THE STAND AND INDIVIDUAL VOIR CONTINUED.

10:25 PM THE STATE AND THE DEFENSE ACCEPTED JUROR #141 AS JUROR #12.

THE COURT RECESSED FOR A SHORT BREAK.

11:45 AM THE COURT CAME TO ORDER.  JUROR #143 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.

11:30 AM THE STATE AND THE DEFENSE ACCEPTED JUROR #143 AS THE 1ST ALTERNATE JUROR.

11:40 AM JUROR #148 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.

12:25 PM THE STATE ACCEPTED JUROR #148 AND THE DEFENSE USED 15TH PEREMPTORY STRIKE

12:30 PM JUROR #149 TOOK THE STAND AND INDIVIDUAL VOIR DIRE BEGAN.

1:20 PM THE STATE AND THE DEFENSE ACCEPTED JUROR #149 AS THE 2ND ALTERNATE JUROR.

1:30 PM THE COURT STAND ADJOURNED UNTIL WEDNESDAY, 06-19-13 @ 9AM |
| 6/17/2013 | Continued 6/18/2013 09:00 AM Jury Trial |
| 6/18/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |
| 6/18/2013 | Continued 6/19/2013 09:00 AM Jury Trial |

: 00679

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 6/19/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, SKIP & MADRID, MARIO<br>Interpreter:HERNANDEZ, ROLANDO & MARILU FLORES<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>9:15 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY FOR THE MOTIONS HEARING.  LEGAL MATTERS WERE DISCUSSED.<br><br>9:45 AM THE STATE BEGAN OPENING STATEMENT.<br><br>9:50 AM THE STATE BEGAN TESTIMONY.<br><br>10:35 AM THE COURT RECESSED FOR A SHORT BREAK.<br><br>10:50 AM THE STATE'S TESTIMONY CONTINUED.<br><br>11:40 AM THE STATE BEGAN CLOSING.<br><br>11:45 AM THE DEFENSE BEGAN CLOSING. |
| 6/19/2013 | MOTION FILED: NTC INT USE PRIORS |
| 6/19/2013 | Reset By Agreement Of Both Parties, 7/03/2013 09:00 AM Jury Trial |
| 6/20/2013 | MOTION FILED: PYMT OUT-ST WITNESS |
| 6/20/2013 | ORDER: GRANT PYMT OUT-ST WITNESS |
| 7/3/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel MADRID, MARIO<br>Interpreter:MARILU FLORES<br>TISE, NATALIE appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>1:00 PM ALL PARTIES WERE PRESENT AND ANNOUNCED READY FOR THE MOTIONS HEARING.<br><br>RULINGS WERE MADE BY THE COURT.<br><br>1:30 PM ALL PARTIES WERE INSTRUCTED TO RETURN MONDAY, 07-08-13 @ 10AM.<br><br>LEGAL MATTERS WERE DISCUSSED. |
| 7/3/2013 | Reset By Operation Of Law, 7/08/2013 09:00 AM Jury Trial |

: 00680

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 7/8/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO<br>Interpreter:MARILU FLOREs & HERNANDEZ,ROLANDO<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>10:15 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  LEGAL MATTERS WERE DISCUSSED.<br><br>10:25 AM THE INDICTMENT WAS READ AND THE DEFENDANT WAS ARRAIGNED OUTSIDE THE PRESENCE OF THE JURY.<br><br>10:30 AM LEGAL MATTERS WERE DISCUSSED.<br><br>10:45 AM  THE JURY WAS SWORN AND SEATED.  THE STATE READ THE INDICTMENT.  THE WITNESSES WERE SWORN AND THE RULE WAS INVOKED.  THE DEFENDANT PLED "NOT GUILTY".  THE STATE BEGAN OPENING STATEMENT.<br><br>11:05 AM THE DEFENSE BEGAN OPENING STATEMENT.<br><br>11:15 AM THE STATE BEGAN TESTIMONY.<br><br>12:15 PM THE JURY RETIRED AND THE COURT RECESSED FOR SHORT LUNCH BREAK.<br><br>1:40 PM THE STATE RESUMED TESTIMONY.<br><br>2:45 PM THE COURT RECESSED FOR A BREAK.<br><br>3:10 PM THE COURT CAME TO ORDER THE JURY WAS SEATED AND THE STATE CONTINUED TESTIMONY<br><br>5:25 PM THE COURT STAND ADJOURNED UNTIL TUESDAY, 07-09-13 @ 10AM |
| 7/8/2013 | Reset By Operation Of Law, 7/09/2013 09:00 AM Jury Trial |
| 7/9/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNEILUS, R. P.. |
| 7/9/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO<br>Interpreter:MARILU FLOREs & HERNANDEZ,ROLANDO<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>10:15 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.<br><br>10:20 AM THE JURY WAS SEATED AND THE STATE RESUMED TESTIMONY.<br><br>11:55 AM THE JURY RETIRED AND THE COURT RECESSED FOR LUNCH.<br><br>1:20 PM THE COURT CAME TO ORDER, THE JURY WAS SEATED AND THE STATE CONTINUED TESTIMONY.<br><br>2:30 PM THE JURY RETIRED TO THE JURY ROOM.  LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY.<br><br>3:05 PM THE JURY WAS SEATED AND THE STATE CONTINUED TESTIMONY.<br><br>4:30 PM THE COURT STAND ADJOURNED UNTIL WEDNESDAY, 07-10-13 @ 10AM. |
| 7/9/2013 | Reset By Operation Of Law, 7/10/2013 09:00 AM Jury Trial |

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 7/10/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |
| 7/10/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO Interpreter:MARILU FLOREs & HERNANDEZ,ROLANDO TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE<br><br>10:15 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  THE JURY WAS SEATED AND THE STATE BEGAN TESTIMONY.<br><br>11:30 AM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED OUTSIDE THEIR PRESENCE.<br><br>11:50 AM THE JURY WAS SEATED AND THE STATE RESUMED TESTIMONY.<br><br>12:10 PM THE COURT RECESSED FOR LUNCH<br><br>1:35 PM THE COURT CAME TO ORDER, THE JURY WAS SEATED AND THE STATE CONTINUED TESTIMONY.<br><br>2:30 PM THE JURY RETIRED AND THE COURT RECESSED FOR A SHORT BREAK.<br><br>2:50 PM THE JURY WAS SEATED.  THE STATE RESTED AND THE DEFENSE BEGAN CROSS-EXAMINATION.<br><br>4:30 PM THE COURT RECESSED FOR A SHORT BREAK.<br><br>4:45 PM THE COURT CAME TO ORDER, THE JURY WAS SEATED AND THE STATE CONTINUED TESTIMONY.<br><br>5:30 PM THE JURY RETIRED AND MATTERS WERE DISCUSSED.<br><br>5:35 PM THE COURT STAND ADJOURNED UNTIL THURSDAY, 07-10-13 @ 9AM |
| 7/10/2013 | Reset By Operation Of Law, 7/11/2013 09:00 AM Jury Trial |
| 7/11/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |
| 7/11/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO Interpreter:MARILU FLORES & HERNANDEZ,ROLANDO TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE<br><br>10:10 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  THE JURY WAS SEATED AND THE STATE BEGAN TESTIMONY.<br><br>10:35 AM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED OUTSIDE THEIR PRESENCE.<br><br>10:50 AM THE JURY WAS SEATED AND THE STATE RESUMED TESTIMONY.<br><br>12:20 PM THE COURT RECESSED FOR LUNCH UNTIL 2:00 PM<br><br>2:15 PM THE COURT CAME TO ORDER, THE JURY WAS SEATED AND THE STATE CONTINUED TESTIMONY.<br><br>3:30 PM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED.<br><br>3:40 PM THE JURY WAS SEATED AND TESTIMONY CONTINUED.<br><br>4:40 PM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED.<br><br>4:50 PM THE JURY WAS SEATED AND INSTRUCTED To RETURN FRIDAY, 07-12-13 @ 10AM.  LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY. |
| 7/11/2013 | Reset By Operation Of Law, 7/12/2013 09:00 AM Jury Trial |

: 00682

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 7/12/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |
| 7/12/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO Interpreter:MARILU FLORES & HERNANDEZ,ROLANDO TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE

10:50 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY

12:35 PM THE JURY RECESSED FOR LUNCH.

2:00 PM THE JURY RETURNED TO THE JURY ROOM.

2:30 PM THE JURY WAS SEATED AND INSTRUCTED TO RETURN MONDAY, 07-15-13 @9 AM.  LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY.




10:35 AM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED OUTSIDE THEIR PRESENCE. |
| 7/12/2013 | Reset By Operation Of Law, 7/15/2013 09:00 AM Jury Trial |
| 7/15/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

: 00683

## Harris County Criminal District Docket Sheet

| 7/15/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO<br>Interpreter:MARILU FLORES & HERNANDEZ,ROLANDO<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>9:10 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY.<br><br>9:15 AM THE JURY WAS SEATED AND THE COURT READ THE CHARGE.<br><br>9:45 AM THE STATE BEGAN CLOSING STATEMENTS.<br><br>10:05 AM THE DEFENSE BEGAN CLOSING STATEMENTS.<br><br>11:00 AM THE STATE BEGAN FINAL CLOSING STATEMENTS.<br><br>11:30 AM THE JURY RETIRED TO DELIBERATE GUILT OR INNOCENCE.<br><br>12:15 PM THE JURY RECESSED FOR LUNCH.<br><br>12:45 PM THE JURY RESUMED DELIBERATION.<br><br>1:55 PM THE JURY WAS SEATED AND THE COURT REPORTER READ BACK TRANSCRIPT.<br><br>2:00 PM THE JURY RETIRED AND CONTINUED TO DELIBERATE.<br><br>4:20 PM THE JURY WAS SEATED.  THE JURY FOUND THE DEFENDANT GUILTY.  THE JURY WAS POLLED AND THE VOTE WAS UNANIMIOUS.<br><br>4:25 PM THE JURY AND STAFF WERE INSTRUCTED TO RETURN @ 10AM, TUESDAY, 07/16/13 |
| 7/15/2013 | Reset By Operation Of Law, 7/16/2013 09:00 AM Jury Trial |
| 7/16/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

: 00684

**Harris County Criminal District Docket Sheet**

| 7/16/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO Interpreter:MARILU FLORES & HERNANDEZ,ROLANDO TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE <br><br> 9:45 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY. <br><br> 10:30 AM THE JURY WAS SEATED AND THE STATE BEGAN PUNISHMENT OPENING STATEMENT. <br><br> 10:35 AM THE DEFENSE WAIVED PUNISHMENT OPENING STATEMENT.  THE WITNESSES WERE SWORN AND THE STATE BEGAN PUNISHMENT TESTIMONY. <br><br> 11:30 AM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED OUTSIDE THEIR PRESENCE. <br><br> 11:40 AM THE JURY WAS SEATE AND THE STATE RESUMED TESTIMONY. <br><br> 12:30 PM THE JURY RETIRED AND THE COURT RECESSED FOR LUNCH. <br><br> 2:00 PM THE COURT CAME TO ORDER AND THE JURY WAS SEATED.  THE STATE RESUMED PUNISHMENT TESTIMONY. <br><br> 2:20 PM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED. <br><br> 4:15 PM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED OUTSIDE THEIR PRESENCE. <br><br> 4:20 PM THE COURT RECESSED FOR A SHORT BREAK. <br><br> 4:35 PM THE COURT CAME TO ORDER, THE JURY WAS SEATED AND THE DEFENSE BEGAN CROSS-EXAM. <br><br> 4:40 PM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED.  THE COURT RECESSED FOR A SHORT BREAK. <br><br> 5:00 PM THE JURY WAS SEATED AND THE DEFENSE CONTINUED CROSS-EXAM. <br><br> 5:05 pm THE JURY AND THE COURT WERE INSTRUCTED TO RETURN 07-17-13 @ 10 AM. |
|---|---|
| 7/16/2013 | Reset By Operation Of Law, 7/17/2013 09:00 AM Jury Trial |
| 7/17/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

: 00685

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 7/17/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO<br>Interpreter:MARILU FLORES & HERNANDEZ,ROLANDO<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>10:00 AM ALL PARTIES WERE PRESENT AND ANNOUNCED READY.  LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY.  THE WITNESSES WERE SWORN AND THE RULE WAS INVOKED.<br><br>10:15 AM THE JURY WAS SEATED AND THE STATE CONTINUED PUNISHMENT TESTIMONY.<br><br>10:30 AM THE JURY WAS SEATED AND THE STATE BEGAN PUNISHMENT OPENING STATEMENT.<br><br>12:20 PM THE JURY RETIRED AND THE COURT RECESSED FOR LUNCH.<br><br>1:50 PM THE COURT CAME TO ORDER AND THE JURY WAS SEATED AND THE DEFENSE RESUMED CROSS-EXAM PUNISHMENT TESTIMONY.<br><br>3:05 PM THE JURY RETIRED AND THE COURT RECESSED FOR A SHORT BREAK.<br><br>3:20 PM THE JURY WAS SEATED AND THE STATE RESUMED PUNISHMENT TESTIMONY.<br><br>4:15 PM THE JURY RETIRED AND LEGAL MATTERS WERE DISCUSSED.<br><br>4:20 PM THE COURT RECESSED FOR A BREAK.<br><br>4:50 PM THE JURY WAS SEATED AND TESTIMONY CONTINUED.<br><br>5:05 PM THE JURY WAS INSTRUCTED TO RETURN 10 AM, THURSDAY, 07-18-13.  THE JURY RETIRED. LEGAL MATTERS WERE DISCUSSED.   THE COURT WAS INSTRUCTED TO RETURN @ 9:30 AM.<br><br>5:10 PM THE COURT STAND ADJOURNED. |
| 7/17/2013 | Reset By Operation Of Law, 7/18/2013 09:00 AM Jury Trial |
| 7/18/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 7/18/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO Interpreter:MARILU FLORES & HERNANDEZ,ROLANDO TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE |
| | 10:40 AM THE COURT CAME TO ORDER AND ALL PARTIES WERE PRESENT AND ANNOUNCED READY. LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY. |
| | 10:55 AM THE JURY WAS SEATED AND THE DEFENSE BEGAN PUNISHMENT TESTIMONY. |
| | 12:45 PM THE JURY RETIRED AND THE COURT RECESSED FOR LUNCH |
| | 2:15 PM THE COURT CAME TO ORDER AND LEGAL MATTERS WERE DISCUSSED OUTSIDE THE PRESENCE OF THE JURY. |
| | 2:30 PM THE JURY WAS SEATED AND DEFENSE PUNISHMENT CONTINUED. |
| | 3:05 PM THE DEFENSE REST AND THE COURT READ THE CHARGE. |
| | 3:15 PM THE JURY RETIRED AND COURT RECESSED FOR A BREAK. |
| | 3:30 PM THE JURY WAS SEATED AND THE STATE WAIVED THE RIGHT TO OPEN WITH CLOSING STATEMENTS. THE DEFENSE BEGAN CLOSING. |
| | 4:20 PM THE STATE BEGAN FINAL CLOSING. |
| | 5:20 PM THE JURY RETIRED TO DELIBERATE PUNISHMENT. |
| | 6:10 PM THE JURY WAS SEATED. THE COURT INSTRUCTED THE JURY REGARDING THE SEQUESTER. THE COURT STANDS ADJOURNED UNTIL FRIDAY, 07-18-13 @ 8:30AM |
| 7/18/2013 | Reset By Operation Of Law 7/19/2013 09:00 AM Jury Trial |
| 7/19/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel CORNELIUS, R. P.. |
| 7/19/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNELIUS, SKIP & MADRID, MARIO Interpreter:MARILU FLORES & HERNANDEZ,ROLANDO TISE, NATALIE & WOOD, JUSTIN appeared for the State. Court Reporter:RODRIGUEZ, MARY ANN Judge Presiding: MAGEE, HOLLY RENEE |
| | 9:20 AM THE JURY RETIRED TO THE JURY ROOM TO BEGAN DELIBERATING. |
| | 12:45 PM THE JURY RECESSED FOR LUNCH. |
| | 2:00 PM THE JURY RETIRED TO RESUME DELIBERATIONS. |
| | 4:30 PM THE JURY WAS SEATED AND THE VERDICT WAS READ: SPECIAL ISSUES: #1=YES, #2=YES, #3=NO. |
| | 4:33 PM THE JURY WAS THANKED AND EXCUSED FROM FURTHER SERVICE. |
| | 4:35 PM THE COURT WILL ASSESS PUNISHMENT MONDAY, 07-22-13. |
| 7/19/2013 | Continued 7/22/2013 09:00 AM Sentencing |
| 7/22/2013 | The defendant filed a sworn pauper's oath, and JUDGE MAGEE, HOLLY RENEE ordered HILL, WAYNE T. appointed as Appointed Atty On Appeal |
| 7/22/2013 | Appeal BOND SET AT $0 BAIL OPTIONS ORDERED: $0 APPEAL BOND PER JGE MAGEE |
| 7/22/2013 | ORDER: APPT COUNSEL ART 11.071 |
| 7/22/2013 | ORDER: PREP STMT FACT APPEAL GRNTD |
| 7/22/2013 | ORDER: DEF REMAIN ON ORIGINAL BOND |
| 7/22/2013 | Delivery Order Issued Location: Texas Department of Criminal Justice awaiting mandate |
| 7/22/2013 | Notice of Appeal Filed |

## Harris County Criminal District Docket Sheet

| | |
|---|---|
| 7/22/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel CORNEILUS, SKIP & MADRID, MARIO<br>Interpreter:MARILU FLORES & HERNANDEZ,ROLANDO<br>TISE, NATALIE & WOOD, JUSTIN appeared for the State.<br>Court Reporter:RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>9:05 AM THE COURT CAME TO ORDER ALL PARTIES WERE PRESENT AND ANNOUNCED READY.<br><br>THE COURT SENTENCED THE DEFENDANT TO DEATH.<br><br>9:09 AM THE COURT THANKED AND EXCUSED THE STATE AND DEFENSE. |
| 7/22/2013 | Continued 9/20/2013 09:00 AM Motion for New Trial Hearing |
| 7/26/2013 | ORDER: ATTORNEY FEE VOUCHER<br>FEE AMOUNT: $60,000 |
| 7/29/2013 | ORDER: ATTORNEY FEE VOUCHER<br>FEE AMOUNT: $88,266 |
| 7/30/2013 | Assigned to Court of Criminal Appeals |
| 8/7/2013 | ORDER: CCA #AP-77,025 |
| 8/19/2013 | MOTION FILED: NEW TRIAL |
| 8/21/2013 | MOTION FILED: SUPPLEMENT NEW TRIAL |
| 9/9/2013 | ORDER: ATTORNEY FEE VOUCHER<br>FEE AMOUNT: $1,682 |
| 9/12/2013 | MOTION FILED: LIVE WITNS EVID HRNG |
| 9/16/2013 | ORDER: DENIED LIVE WIT EVID HEARIN |
| 9/19/2013 | MOTION FILED: FOR NEW TRIAL |
| 9/20/2013 | Defendant CRUZ-GARCIA, OBEL appeared with counsel HILL, WAYNE T.. |
| 9/20/2013 | Defendant CRUZ-GARCIA, OBEL appeared in person with Counsel HILL, WAYNE<br>TISE, NATALIE appeared for the State.<br>Court Reporter: RODRIGUEZ, MARY ANN<br>Judge Presiding: MAGEE, HOLLY RENEE<br><br>10:30 AM THE COURT CAME TO ORDER, ALL PARTIES WERE PRESENT AND ANNOUNCED READY. THE<br>DEFENDANT BEGAN MOTION FOR NEW TRIAL HEARING.<br><br>11:30 AM MOTION OF NEW TRIAL WAS DENIED. |
| 9/20/2013 | Continued 9/12/2013 09:00 AM Other |

: 00688

## CERTIFICATE OF THE CLERK

THE STATE OF TEXAS   IN THE 337TH JUDICIAL DISTRICT COURT

COUNTY OF HARRIS   OF HARRIS COUNTY, TEXAS

I, Chris Daniel, District Clerk of Harris County, Texas, do hereby certify that the above

and foregoing proceedings, instruments and other papers contained in Volume I OF III

Pages   1- 6 8 9 inclusive, to which this certification is attached and made a part thereof,

are true and correct copies of all proceedings, instruments and other papers specified by

Rule 34.5 (a) and matter designated by the parties pursuant to Rule 34.5 (b) in Cause No.

1384794, styled  OBEL CRUZ-GARCIA  vs. The State of Texas in said court.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in Harris County,
Texas on  November 12, 2013

    Chris Daniel
    Harris County District Clerk

    By
     Deputy

: 00689