REPORTER'S RECORD

**VOLUME 2 OF 35 VOLUMES**

TRIAL COURT CAUSE NO. 1384794

COURT OF CRIMINAL APPEALS NO. AP-77,025

| | | |
|---|---|---|
| OBEL CRUZ-GARCIA | ) | IN THE DISTRICT COURT OF |
| | ) | |
| Appellant | ) | |
| | ) | |
| | ) | |
| V. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| | ) | |
| THE STATE OF TEXAS | ) | |
| | ) | |
| Appellee | ) | 337TH JUDICIAL DISTRICT |

---

**PRETRIAL MOTIONS**

---

On the 18th of January, 2011, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Mike Anderson, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

```
 1                          APPEARANCES

 2

 3         MS. NATALIE TISE
           SBOT No. 00795683
 4         Assistant District Attorney
           Harris County District Attorney's Office
 5         1201 Franklin
           Houston, Texas  77002
 6         Telephone:  713.755.5800
           Attorney for the State of Texas
 7

 8

 9                        - AND -

10

11         MR. CHRISTIAN CAPITAINE
           SBOT No. 24031911
12         MR. STEVEN SHELLIST
           SBOT No. 24039172
13         Capitaine, Shellist, Peebles & McAlister
           405 Main St., Ste 200
14         Houston, Texas  77002
           Telephone:  713-715-4500
15         Attorneys for the Defendant

16

17

18         MR. ROLANDO HERNANDEZ, Interpreter

19

20

21

22

23

24

25
```

```
 1                    CHRONOLOGICAL INDEX

 2   JANUARY 18, 2011                          PAGE    VOL

 3   Defendant's Motion for Continuance          4      2

 4   Court's ruling granting continuance         6      2

 5   Defendant's Motion for Discovery Regarding

 6      DNA Evidence                             6      2

 7   Court's ruling on Motion for Discovery

 8      Regarding DNA Evidence                   9      2

 9   Defendant's request for in-camera inspection

10      of Brady material regarding Deetrice Wallace   11      2

11   Defendant's Motion to Dismiss Sexual Assault

12      charge                                  13      2

13   Defendant's Motion to Transfer Motions to

14      New Cause Number                        16      2

15   Reporter's certificate                     24      2

16

17

18

19

20

21

22

23

24

25
```

```
 1                 (In open court, defendant present.)
 2                 THE COURT:  Cause Nos. 1181910 and 1289188
 3      and 1289189, The State of Texas vs. Obel Cruz-Garcia.
 4      Cause No. 1181910, charged with capital murder; Cause
 5      No. 1289188, charged with capital murder; 1289189,
 6      charged with aggravated sexual assault.  All are alleged
 7      to have occurred on or about September 30, 1992, in
 8      Harris County, Texas.
 9                 We are here this morning, this is a trial
10      setting.  There was a Motion for Continuation filed,
11      according to the file stamp, January 11, 2011.  We will
12      consider that this morning.  I have read the Motion for
13      Continuance in its entirety.  I have also read the
14      amendment previously filed Motion for Continuance; and
15      although on that document it only alludes to 1289188,
16      these motions will apply to all three of the
17      aforementioned cause numbers.  And that's by agreement of
18      all parties, I believe.
19                 MS. TISE:  Yes, Judge.
20                 MR. CAPITAINE:  It is, Judge.
21                 THE COURT:  I have read the contents of
22      the motions or the Motion for Continuance and the
23      amendment.  I am under the impression that there is DNA
24      evidence that for whatever reason -- and again, not to
25      point doubt at either side or cast aspersions either
```

1    way -- that needs to be examined by a defense expert.

2    That has not been done.  It appears to me that that needs

3    to be done before a fair trial can be had.  That is my

4    ruling on that part of the Motion for Continuance.

5               But there are some other allegations made,

6    some which have greater weight than others.  But the one,

7    in my opinion, that has the greatest weight may not be a

8    legal reason -- it probably should be, if it's not -- but

9    it's come to my attention that the attorney of record in

10   this case, Mr. Capitaine, is having some personal issues

11   that are no fault of his own, issues that hopefully any

12   person would understand and sympathize with.  I can't

13   imagine how anyone could be expected to have their mind

14   on a trial -- even a trial of this magnitude and this

15   importance -- when a loved one, especially someone as

16   close as his mom is terminally ill and is under his care.

17   She has, from my understanding of the affidavit, has

18   chosen to be with him and his family -- his children

19   rather than in Hospice care and that, basically, he is

20   providing what is essentially Hospice care for his

21   mother.  That's enough for me.  I think, hopefully, the

22   Courts understand that while what we do down here is

23   important, our personal lives, in this humble Court's

24   opinion, are more important.

25               So, your Motion for Continuance is

1    granted.

2            We will look at dates that will give --

3    and, again, for the record, so that the record has some

4    indication, we had a conference off the record with both

5    counsel for the Defense and the State; and the request

6    that the Defense has made, I think, is sometime in early

7    May.  Anyway, at some point in the late spring or early

8    summer, it's believed that all of the DNA evidence and

9    expert examination, report preparation, and trial

10   preparation will be completed.  Is that fairly accurate?

11           MR. SHELLIST:  Yes, Your Honor.  Well, I

12   mean -- again, I'm presuming --

13           THE COURT:  Well, as far as you can see.

14   I mean, obviously, you don't have a crystal ball and you

15   can't tell; but that's just a good general rule of time

16   that we can work in?

17           MR. SHELLIST:  Yes, Your Honor.

18           THE COURT:  Any objection by the State?

19           MS. TISE:  No objection, Judge.

20           THE COURT:  It's just the right thing to

21   do.

22           Is there anything that we need to take up

23   now?  There are certainly motions in limine.  Those

24   certainly can be taken up at the time of trial or as

25   trial is approaching.  The Motion for Discovery is on

1   file.  There apparently is some evidence that needs to be

2   examined by the Defense; and, again, for whatever

3   reason -- not that they need to be gone into at this

4   time -- but needs to be examined.  And that will be

5   opened to the Defense, I understand; is that correct?

6                   MS. TISE:  Yes, Judge.

7                   THE COURT:  So, we can start the ball

8   rolling as far as that goes.

9                   Is there anything else that we need to

10  deal with?

11                  MR. SHELLIST:  There is, Judge.  And,

12  again, just so the record is clear -- and I've already

13  spoken to Ms. Tise, and she's going to get these

14  documents for us -- but the Motion for Discovery asking

15  for -- we filed that additional one regarding DNA

16  evidence.  I know that file has gotten thick; but if

17  that's in there, is that motion then granted with respect

18  to the items on there so that we can make sure that we

19  have the items that are requested in that Motion for

20  Discovery?

21                  THE COURT:  Well, I'm flattered by your

22  belief in my memory, but let me make sure.  There are

23  several motions for discovery.  Can you point me to

24  which -- here's Motion for Discovery and Production --

25                  MR. SHELLIST:  No, Judge.  There's one

1   that should say Regarding DNA Evidence.  Motion for

2   Discovery Regarding DNA Evidence.

3               I'm happy to look through it, if it will

4   be easier.

5               THE COURT:  I will bow to y'all's

6   familiarity with this file.

7               MR. SHELLIST:  Filed on January 11th.

8               Judge, I can make a copy and refile.

9               And just, while we're on the record, I

10  should let you know that HPD has already started to

11  comply with that because I issued a separate subpoena on

12  it because time was of the essence.

13              THE COURT:  Well, I think we should treat

14  time as still of the essence just so that anybody that's

15  been subpoenaed doesn't get the idea that they can put

16  something else on the front burner.  It would certainly,

17  I think, benefit everybody.  The earlier you get this,

18  the more access you'll have to it.  So, as far as that

19  goes, I'll be available if y'all need some backup to the

20  different agencies to get what you need, let me know.

21  I'll be happy to help in any way I can.

22              MS. TISE:  And if I can just say, Judge,

23  at this point in time, I think the subpoena is the more

24  appropriate way to handle it.  Because of the fact that

25  these are, like, slides in gel, I don't have those and

1   really don't want them.  So, I can't -- I don't want to

2   be responsible for getting them to turn over to Defense

3   attorney.  But if they're in the possession of the DNA

4   lab, I think it would be more appropriate for them to get

5   them directly from them via subpoena, which my

6   understanding is they're working on doing that now.

7                   MR. SHELLIST:  They do.  I just -- and,

8   Judge, however you want to handle it.  I just -- I may

9   have to file -- if I don't get it timely, I may have to

10  file some kind of Motion to Compel or something.

11                  THE COURT:  Sure.

12                  MR. SHELLIST:  I did file one already with

13  Orchid; and in fairness to them, it was just done on the

14  11th.  But I went over the subpoena with them, but I

15  faxed it to them right away.  Maybe they're working on

16  it; but as you can see, we don't always get things.

17                  THE COURT:  Sure.  That's why I'm offering

18  my help.  Sometimes, for some reason, they think if a

19  judge has gotten a deputy to call -- and I've had good

20  luck with that because they listen to the deputies over

21  there and we can get what you need.  I mean, that's what

22  this is all about.  We just need to make sure you get

23  what you're entitled to.  And I don't know that it's fair

24  to make the State get it for you, but I'll work with you

25  on it.  I'll make sure you get it, if it can be gotten.

1  And it needs to be gotten, I think, directly through them

2  and cut out the middleman.

3            MS. TISE:  And, Judge, I will say with

4  regard to Orchid, specifically, they've been in

5  communication with me, notified me that they received the

6  subpoena.  I advised them, you know, that I certainly had

7  no objection to their compliance with that; and that they

8  were in the process of working on that.  I don't know

9  where they are on it, but...

10           THE COURT:  Well, let's stay on it, to use

11  a legal term; and Ms. Armand can always get in touch with

12  me.  I'm happy to help you get it because you're entitled

13  to it; and the faster you get it, the better.  The more

14  time your expert has to look at it and to form whatever

15  expert opinion they need.  And then if some follow-up

16  needs to be done, we can have that all done so that

17  you've got everything you need by the time we set it.

18  We'll set it with a cushion, figuring something probably

19  won't go smoothly, just because that's the way things

20  are, but far enough ahead so that at that point we can

21  say, okay, we're going to try it this date.  That's

22  plenty of time, and then we're in good shape.

23           MR. SHELLIST:  Just so I'm clear, I'll

24  keep the subpoenas in motion.  I'll issue another one for

25  Genetic Design, if I can find them.  If I can't, maybe

```
 1   Natalie can help me with that.

 2              MS. TISE:  I've got an address for them.

 3              MR. SHELLIST:  Okay.  And then if, within

 4   a reasonable period of time, within the next say 30 days

 5   or so --

 6              THE COURT:  Sure.

 7              MR. SHELLIST:  -- I don't get anything

 8   back, I can come back to the Court for some sort of

 9   compelling -- a Motion to Compel Compliance with the

10   Subpoena or something to that effect, and Your Honor will

11   help?

12              THE COURT:  Absolutely.  You are exactly

13   right.  And I think if we all push to get that done, it

14   will get done.  And 30 days is a good time to look at it;

15   and if it's not -- or if you start getting the feeling

16   that somebody is dragging their feet or they're not going

17   to comply, let me know and I'll get involved and we'll

18   get it for you.

19              MR. SHELLIST:  Well, that takes care of

20   DNA discovery.

21              Another issue that might be helpful for

22   the Court to weigh in on is we filed -- either to compel

23   discovery or for an in-camera inspection.  There is,

24   Judge, in this case -- and I'm sure you could tell from

25   reading this -- there is a file on Deetrice Wallace, who
```

```
 1    was the first criminalist in 1992 to touch this case for
 2    the office.  She handled the evidence that's in the
 3    report.  I went up and did a PIA request.  The State did
 4    provide us with Brady notice of her conviction.  She was
 5    convicted with three counts of tampering with a
 6    governmental record.  So, we did a PIA request.  I went
 7    up and viewed the file; and Scott Durfee, with the State,
 8    provided me with some of the information but,
 9    specifically, he held back a bunch of work product.  And
10    one of them was a disciplinary file on her.  And I don't
11    expect the State -- I mean, I don't know if they will
12    willingly turn that over to me.  I'd love to see it.  But
13    I think --
14                    THE COURT:  I don't know if they can.
15                    MR. SHELLIST:  They may not.  But I think
16    it would certainly be worthwhile and now that we have
17    time, I would ask the Court to do an in-camera inspection
18    of at least that to see if there's anything in there that
19    falls under Brady.
20                    THE COURT:  Sure.
21                    MS. TISE:  I've got them in my possession;
22    and, actually, that was my case.  I asked my assistant to
23    look through all of those files.  I asked her to look for
24    Brady material in the files other than, obviously, the
25    conviction and the 2007 stuff she was involved in.  So,
```

```
1    you did receive already copies of a significant portion

2    of some of her files.  You just didn't receive the --

3                 THE COURT:  You just want me to look at

4    the disciplinary records?

5                 MR. SHELLIST:  I want you to look at the

6    disciplinary records to look for hints of dishonesty --

7                 THE COURT:  Brady material.

8                 MR. SHELLIST:  -- and truthfulness and

9    things like that or whatever else the Court deems would

10   be Brady.

11                THE COURT:  Okay.

12                MS. TISE:  And I can speak for Maite, we

13   didn't find anything like that in the file; but we'll

14   certainly turn it over to the Court for your inspection.

15                THE COURT:  Okay.

16                MR. SHELLIST:  I would think the only

17   other thing, Judge, is -- and I don't know if you want to

18   take it up now or not, although this may be a good time.

19   We also filed a Motion to Dismiss the sexual assault

20   count because we believe it's barred by statute of

21   limitations.  That's been on file; the State has a copy

22   of it.  It's an extra count that's hanging around.  If

23   the Court wants to rule on that now or read the motion or

24   let the State respond to that motion.

25                THE COURT:  Do y'all intend to try that?
```

1          MS. TISE:  It wasn't our intention to try

2    that today.  When we try this case in the future, my

3    intention is to go forward on the capital murder.

4          THE COURT:  If it becomes a bridge we need

5    to cross, we will do that in plenty of time to give you a

6    chance to make a record or put on testimony or whatever

7    you need to do, but flesh it out as it needs to be

8    fleshed out.

9          MR. SHELLIST:  Okay, Judge.  Let me just

10   look -- and thank you for your patient.

11          THE COURT:  Did y'all not find this Motion

12   to Produce Record Regarding DNA Analysis in the court's

13   file?

14          Go ahead -- let's stay with this stream of

15   thought.  Before we get away, I want to address that and

16   make sure there is one in there, even if we have to

17   substitute a copy.

18          MR. SHELLIST:  I'll look through it again,

19   but I don't have anything else that can't wait until we

20   get closer.

21          THE COURT:  Okay.

22          MR. SHELLIST:  Can I ask the Court, just

23   since this is a unique situation where we have a visiting

24   judge that, you know, doesn't have a regular place, I

25   guess -- and we've never dealt with this before.  If we

1    have motions or anything that we need to take before the

2    Court, should we just approach Ms. Armand and ask --

3                    THE COURT:  Ms. Armand?

4                    MS. ARMAND:  I suggest that we set a

5    pretrial motion setting, say, two weeks, three weeks

6    before the trial date.  That way, everybody comes back,

7    make sure we're on the same page.

8                    THE COURT:  Yeah.  Well, let's do it

9    around 30 days from now.  We'll kind of do a status

10   hearing.

11                   MR. SHELLIST:  Perfect.

12                   THE COURT:  Let me just see something here

13   real quick.

14                   MR. SHELLIST:  Judge, it doesn't appear to

15   be in here, but I can make copies of it.

16                   THE COURT:  Well, I mean, I think your

17   copy is file stamped and it would show -- any objection

18   to --

19                   MS. TISE:  Well, my only objection would

20   be if that's a discovery motion, that puts the obligation

21   on me to produce it.

22                   THE COURT:  Well, I didn't rule on it.  My

23   ruling was that we'll do it another way.  I'm not going

24   to make you the middle person.  I'm just saying if it was

25   something that was in the file, it just needs to be

```
1   there.  I'm not going to make you have to do it.
2                   MS. TISE:  I don't have any objection to
3   it, Judge.
4                   MR. SHELLIST:  Okay.  When we get that,
5   that one is denied, but we will use subpoena to
6   accomplish what we need to accomplish, with the Court's
7   assistance.
8                   THE COURT:  Right.  It's denied as far as
9   making the State produce it.
10                  MR. SHELLIST:  Understood.
11                  Judge, there's one other motion.  I found
12  the one where it was Defense Request to Transfer Motions
13  to the New Cause Number.  I know you did it verbally, but
14  it's unsigned.  I know the State filed one as well, and I
15  believe that was signed.
16                  THE COURT:  When did you file this?
17                  MS. TISE:  I think those were all filed on
18  Monday.
19                  THE COURT:  See, this is the first I've
20  seen it -- the first I've seen these motions.
21                  MS. TISE:  Monday, the 10th.  That was
22  when I was in Puerto Rico.
23                  MR. SHELLIST:  I guess we should have gone
24  to -- we were going to the 337th and talking to their
25  coordinator and saying, Can you help us get these
```

1   motions?  He said, I'll take care of it; or, I'll call

2   the Judge.  And I know you were in trial, Judge; and we

3   probably -- it just didn't work.

4                   THE COURT:  Well, I said I would come down

5   Thursday and hear them.

6                   MR. SHELLIST:  We didn't -- we didn't hear

7   about that, so...

8                   We'll go through Ms. Armand from now on.

9                   THE COURT:  Anyway, bottom line is, you

10  know, this is kind of new territory, I guess.  So, nobody

11  is to blame for anything.  We'll just go from here.

12                  All right.  Let's see, 30 days from now

13  would be in February.  From the 15th through the end of

14  February, I'm open.

15                  MR. CAPITAINE:  Judge, would the 18th

16  work, which is exactly a month from today?

17                  MS. TISE:  That's fine with me.

18                  MR. CAPITAINE:  It's a Friday.

19                  THE COURT:  Let's do it on Thursday.  How

20  about the 17th?  Does that work?

21                  MS. TISE:  That works.

22                  THE COURT:  Y'all may get called away to

23  pick a jury on a Friday.  I know some people do that.

24  But not many people pick a jury on a Thursday.

25                  MR. SHELLIST:  Not to get cute, Judge, but

 1    where would this be held?

 2                    MS. ARMAND:  I'll go ahead and schedule it

 3    for the same courtroom.

 4                    THE COURT:  That's not cute at all.

 5                    Stephanie is an amazing --

 6                    MS. TISE:  Coordinator.

 7                    THE COURT:  Well, she's more than that.

 8                    MS. TISE:  Coordinator extraordinaire.

 9                    THE COURT:  And juggler.

10                    Okay.  Let's see, so, 9:00 o'clock here on

11    February 17th?

12                    MR. CAPITAINE:  Yes, Your Honor.

13                    THE COURT:  Now, the trial setting, y'all

14    talked about sometime in May?

15                    MS. TISE:  I am scheduled to begin voir

16    dire on a death capital on April 29th in Judge Hill's

17    court.  The trial date is May 31; voir dire is April

18    29th.

19                    THE COURT:  That takes May out of the

20    picture for sure.  But, then again, it gives more time

21    for stuff to be ready.

22                    Last week of June, I'm in Mark Ellis's

23    court, through July 7th.  How about a time in June?

24                    MS. TISE:  Works for me.

25                    MR. CAPITAINE:  Fine with me.

 1                    THE COURT:  I know there's something that

 2     just got scheduled.  I need to find out exactly when that

 3     is; but if June is a good target date, we'll figure that

 4     out.  I'll know today, and we'll let you know and go from

 5     there.  So, we'll have a status hearing, kind of a

 6     pretrial motion status hearing in about 30 days; and then

 7     we'll go from there.

 8                    MS. TISE:  Okay.

 9                    THE COURT:  Is there anything else we need

10     to take up?

11                    MR. SHELLIST:  No, sir.  Thank you, Judge.

12                    MS. TISE:  I think this case will take a

13     full five days, don't you?

14                    THE COURT:  Well, I want to have that week

15     and maybe just as a buffer a couple of days the following

16     week, just in case.  I just sat on a case in the 185th

17     and everybody thought it was going to be done in four

18     days and I'm not sure it's over yet.  Nobody was dragging

19     their feet; it just took time to do it.

20                    So, June, we will call y'all today and

21     maybe get everybody on a conference call.  I will stalk

22     Stephanie -- follow her around and drive her nuts until I

23     give her the dates, and then we'll get with y'all and

24     make sure it's okay.  Fair enough?

25                    MS. TISE:  Thanks, Judge.

1                    MR. SHELLIST:   Thank you, Judge.   May we

2    be excused?

3                    THE COURT:   You bet.

4                    (Proceedings concluded.)

```
 1    STATE OF TEXAS
      COUNTY OF HARRIS
 2         I, Jill Hamby, Official Court Reporter in and for

 3    the 337th District Court of Harris County, State of

 4    Texas, do hereby certify that the above and foregoing

 5    contains a true and correct transcription of all portions

 6    of evidence and other proceedings requested in writing by

 7    counsel for the parties to be included in this volume of

 8    the Reporter's Record in the above-styled and numbered

 9    cause, all of which occurred in open court or in chambers

10    and were reported by me.

11         I further certify that this Reporter's Record of the

12    proceedings truly and correctly reflects the exhibits, if

13    any, admitted, tendered in an offer of proof or offered

14    into evidence.

15         I further certify that the total cost for the

16    preparation of this Reporter's Record will be paid by

17    Harris County.

18         Reporter's Record supplied to Harris County District

19    Clerk's Office; not to be copied or duplicated in any way.

20         WITNESS MY OFFICIAL HAND, the 9th day of October, 2013.

21

22                          /s/Jill Hamby_____
                            Jill Hamby, CSR
23                          Texas CSR 5814, Expires 12/31/15
                            338th District Court
24                          Harris County, Texas
                            1201 Franklin
25                          Houston, Texas 77002
                            Telephone:  713-755-0876
```