REPORTER'S RECORD

**VOLUME 17 OF 35 VOLUMES**

TRIAL COURT CAUSE NO. 1384794

COURT OF CRIMINAL APPEALS NO. AP-77,025


| | | |
|---|---|---|
| OBEL CRUZ-GARCIA | ) | IN THE DISTRICT COURT |
| Appellant | ) | |
| | ) | |
| | ) | |
| VS. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| | ) | |
| THE STATE OF TEXAS | ) | |
| Appellee | ) | 337TH JUDICIAL DISTRICT |



*******************

**MOTION TO SUPPRESS**

**(CONTINUED)**

*******************


On the 3rd day of July, 2013, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Renee Magee, Judge presiding, held in Houston, Harris County, Texas;

Proceedings reported by computer-aided transcription/stenograph shorthand.

1                    **A P P E A R A N C E S**

2

3

4       MS. NATALIE TISE
        SBOT NO. 00795683
        Assistant District Attorney

5       1201 Franklin
        Houston, Texas  77002

6       PHONE:  713.755.5800
        **ATTORNEY FOR THE STATE OF TEXAS**

7

8
             **- AND -**
9

10

11      MR. MARIO MADRID
        SBOT NO. 00797777
        440 Louisiana, Suite 1225

12      Houston, Texas  77002-1659
        PHONE:  713.877.9400

13      **ATTORNEY FOR THE DEFENDANT**

14

15

16      Rolando Hernandez
        Marilu Flores,

17      **Interpreters**

18

19

20

21

22

23

24

25

**I N D E X**
**VOLUME 17**
**(MOTION TO SUPPRESS - CONTINUED)**

**JULY 3, 2013**

| | PAGE | VOL. |
|---|---|---|
| Findings of Fact............................... | 4 | 17 |
| Ruling on motion to suppress ................. | 5 | 17 |
| Reporter's Certificate........................ | 25 | 17 |
| Word Glossary...............................End of Volume | | |

**ALPHABETICAL WITNESS INDEX**

(No witnesses this volume)

**EXHIBIT INDEX**

(No exhibits this volume)

```
 1                    (Open court, defendant present, no jury)
 2               THE COURT:  We're back on the record in
 3   Cause No. 1384794, the State of Texas vs. Obel
 4   Cruz-Garcia.  And present is Mr. Garcia at counsel table
 5   and his lawyer, Mario Madrid.  Present for the State is
 6   Natalie Tise.
 7               And we're ready to proceed on the Defense's
 8   Motion to Suppress in which we began and heard evidence
 9   in that case.  It was back on June 19th, is when we
10   heard evidence on that.  And I'm here to make my ruling
11   today and findings of fact.
12               All right.  First off, I find by clear and
13   convincing evidence that the DNA evidence from the cigar
14   and the sexual assault kit of Diana Garcia and the test
15   results as determined by Orchid Cellmark Laboratory on
16   those items is sufficiently reliable and relevant to
17   assist the jury in accurately determining a fact issue
18   in this case and understanding other evidence presented
19   in this case.
20               And having said that, I did receive -- I
21   want to put on the record, I did receive a bench
22   memorandum from the State and I did receive several
23   cases in which they support their position on it.  And I
24   have asked Mr. Madrid if they had any case law for me to
25   consider.
```

```
 1                   And, Mr. Madrid, do you want to put on the
 2    record what your response was?
 3                   MR. MADRID:  Correct.  We don't have any
 4    additional -- or any case law.
 5                   THE COURT:  Okay.  And so, in my ruling I
 6    did read through and consider the case law on State vs.
 7    Pope, cite is 161 S.W.3d 114; State vs. Valdez, 386
 8    S.W.3d 324; Delbasco vs. State, 978 S.W.2d 236; and
 9    Curtis vs. State, 205 S.W.3d 656.
10                   So, I do find that the DNA evidence that
11    relates to Orchid Cellmark testing is sufficiently
12    reliable and relevant and is admissible.
13                   I also find and make the following findings
14    of fact.  That witness Eric Mehl, a sergeant with the
15    Houston Police Department; Matt Quartaro with Orchid
16    Cellmark; and Courtney Heard {sic} from the new HPD
17    Crime Lab are credible witnesses for purposes of this
18    hearing.
19                   I did find that Mark Quartaro was a
20    qualified forensic supervisor and analyst with a
21    master's degree in molecular biology and currently works
22    for Cellmark Forensics, which was formerly known as
23    Orchid Cellmark Laboratory.  I find him qualified to
24    perform the genetic testing that was referenced in this
25    hearing and to testify as to its results.
```

1           I also find that Courtney Heard was a

2  qualified criminal specialist with the new HPD Crime

3  Lab.  And I find she is qualified to perform the DNA

4  testing referenced in the hearing and qualified to

5  testify about those results.

6           And just so the record is clear, I'm making

7  a finding that the new HPD Crime Lab is the Houston

8  Police Department Crime Lab's DNA serology lab as

9  reopened in 2007.  And that the old HPD Crime Lab is the

10  Houston Police Department Crime Lab DNA serology section

11  that was closed in 2002.  And prior to that closing,

12  that's all considered old HPD Crime Lab.  And the time

13  period encompassing the offense in this case, September

14  of 1992.

15           I make a finding that the evidence that is

16  to be admitted regarding the DNA is one cigar, the cigar

17  found at the crime scene; one sexual assault kit taken

18  from Diana Garcia and collected by Gloria Kologinczok,

19  R.N., a SANE nurse and a J.D.  Additional evidence is

20  certain samples of blood taken from Diana Garcia, Arturo

21  Garcia {sic} -- let's see--

22           MS. TISE:  Candido Lebrom.

23           THE COURT:  Yes.  Candido Lebrom,

24  Bienviendo Melo, Leonardo German, and Carmelo Martinez.

25           The Motion to Suppress is denied based on

1 that evidence.  That evidence is admissible.  These

2 items as well as the test results from Orchid Cellmark,

3 in regards to these items will be admitted.  Also

4 admitted is the test results of the new HPD Crime Lab

5 only in comparing the Orchid Cellmark's results to a

6 known sample of DNA taken from the defendant, Obel

7 Cruz-Garcia.  Okay.

8            Further, I find that the cigar evidence was

9 stored at the HPD property room on Goliad Street on

10 October 1st, 1992, and was retrieved from that location

11 by Sergeant Mehl in October 2007.  I find that the cigar

12 evidence was inside a larger container of evidence, was

13 taken to the old HPD Crime Lab sometime in 1992, but was

14 returned to the HPD property room and appeared to be

15 unopened by the HPD Crime Lab at the time it was

16 retrieved by Sergeant Mehl and mailed to Orchid Cellmark

17 Laboratory for DNA testing on October 2nd, 2007.

18            I find that the sexual assault kit from

19 Diana Garcia was taken by a qualified SANE nurse

20 previously described as Gloria Kologinczok, and

21 consisted of panties from Diana Garcia, several vaginal

22 swabs taken from Diana Garcia, and blood samples from

23 Diana Garcia.  The sexual assault kit was sealed and

24 stored in the Houston Police Department property room

25 annex on the 24th floor of 1200 Travis.  And that was in

1   1992.

2            I find that sometime in 1992, that sexual

3   assault kit was taken to the old HPD Crime Lab and

4   tested by Dr. B. Sharma.  I find that Dr. Sharma took

5   cuttings from the panties in that sexual assault kit and

6   extracted DNA from the cutting that he retrieved from

7   those panties.

8            Further, I find that the DNA extracted by

9   Dr. Sharma was forwarded by Jim Bolding, head of the old

10  HPD Crime Lab, to Genetic Design Lab.  And that is

11  another laboratory.  And it was forwarded for DNA

12  testing back in 1992.

13            I find that neither the results of the

14  testing from the old HPD Crime Lab, nor the results from

15  the Genetic Design Lab are offered and they will not be

16  admitted.  The sexual kit evidence was retrieved from

17  the Houston Police Department's property room annex on

18  the 24th floor of 1200 Travis in October 2007 by

19  Sergeant Eric Mehl, who retrieved it and observed that

20  it appeared to be sealed and it was sent to Orchid

21  Cellmark Laboratories on October 2nd, 2007.

22            Further, I find that blood samples from

23  several persons were collected in 1992 and were stored

24  at the Houston property -- excuse me -- Houston Police

25  Department property room annex on the 24th floor of 1200

1    Travis.  Once again, those persons' names are Arturo

2    Garcia -- and that's the husband of Diana Garcia --

3    Mr. Candido Lebrom, Mr. Bienviendo Melo, Mr. Leonardo

4    German, and Mr. Carmelo Martinez.  These blood samples

5    have been tested by the old HPD Crime Lab and were

6    returned to the Houston Police Department property room

7    sometime in 1992.

8              I find that the old HPD Crime Lab results

9    are not admissible on those blood samples.  These

10   samples were retrieved by Sergeant Eric Mehl of HPD and

11   sent to Orchid Cellmark Laboratory on December 2nd,

12   2007.  Testing performed by the Orchid Cellmark

13   Laboratory on these samples is admissible.

14             I find that the Orchid Cellmark Laboratory

15   analyzed the cigar evidence, the sexual assault

16   evidence, and the blood sample evidence, and one known

17   DNA sample from the defendant.

18              Breaking that down starting with the

19   sexual assault evidence, I find that Orchid Cellmark's

20   initial assessment of the evidence performed -- they

21   performed their own extractions from a cutting of the

22   panties of Diana Garcia that they obtained, which was a

23   different cutting than that used by the old HPD Crime

24   Lab.  Orchid Cellmark performed their own DNA analysis

25   from their own extractions in order to obtain their own

1   DNA results.  Orchid Cellmark obtained a full male DNA

2   profile from epithelial DNA cells left on the cigar

3   evidence.  Orchid Cellmark obtained a mixture of three

4   DNA profiles from the cutting from Diana Garcia's

5   panties.  One of these profiles was female and

6   belonged to D. Garcia.  The other two profiles were male

7   profiles obtained from the semen fraction of the cells.

8   One of the male profiles was determined to be that of

9   Diana Garcia's husband, Arturo Garcia.  The second

10  profile at that time, which was the main contributor to

11  the mixture, was an unknown male.

12          Orchid Cellmark's DNA analysis determined

13  that the profile of the unknown male, the semen fraction

14  from the panties, matched the unknown sample of the

15  epithelial DNA obtained from the cigar.  All of the

16  known samples of DNA available at the time of the

17  initial testing, namely, Mr. Carmelo Garcia, Mr. Melo,

18  Mr. Lebrom, Mr. German were all excluded as being the

19  donors of the DNA -- the unknown DNA from the cigar and

20  panties.

21          One vaginal swab was tested by Orchid

22  Cellmark.  Orchid Cellmark used a separate swab from the

23  one previously tested by the old HPD Crime Lab.  The

24  results of the DNA from the swab is that the unknown

25  donor from the cigar and the panties could not be

 1   excluded.

 2           On May 23rd, 2008, Sergeant Eric Mehl

 3   located the defendant, Obel Cruz-Garcia, in a Puerto

 4   Rico jail.  Sergeant Mehl worked with the FBI to obtain

 5   a DNA sample by warrant.  Sergeant Mehl received the

 6   evidence of the known DNA sample of the defendant on May

 7   23rd, 2008, and forwarded the evidence directly to

 8   Orchid Cellmark Laboratories.

 9           Prior to May 23rd, 2008, neither of the old

10   HPD Crime Lab, nor the HPD property room, nor Orchid

11   Cellmark -- or Orchid Cellmark had a DNA sample from the

12   defendant.  Orchid Cellmark received the known sample of

13   the defendant's DNA in May 2008.  They compared the

14   known DNA of the defendant against the cigar evidence

15   and the sexual assault kit evidence.  Orchid Cellmark

16   found that the defendant's DNA could not be excluded

17   from the epithelial DNA found on the cigar.  They

18   further found that the defendant's DNA could not be

19   excluded from DNA extraction found on the vaginal swab

20   and could not be excluded as a main contributor to the

21   DNA mixture obtained from the panty cutting.

22           Orchid Cellmark found that the DNA profile

23   of the defendant would be expected to be found in

24   roughly 1 in 71.5 quadrillion unrelated individuals.

25   Orchid Cellmark found no evidence of degradation in any

1    of the evidence from the old HPD Crime Lab.  Orchid

2    Cellmark found no evidence of contamination on evidence

3    from the old HPD Crime Lab.

4                    In October 2010, the defendant was in

5    custody in the Harris County Jail, having been

6    extradited from Puerto Rico.  The defendant, Obel

7    Cruz-Garcia, consented to have a buccal swab taken from

8    his body.  That buccal swab was obtained by an

9    investigator from the Harris County District Attorney's

10   Office and sent to the new HPD Crime Lab.  The new HPD

11   Crime Lab, namely, Analyst Courtney Heard, extracted DNA

12   from the buccal swab and obtained a DNA profile of Obel

13   Cruz-Garcia.

14                    Courtney Heard compared the known DNA of

15   the defendant to the evidentiary samples obtained from

16   Orchid Cellmark.  Ms. Heard did not independently obtain

17   DNA profiles from the evidentiary samples, but rather

18   relied on the DNA profiles already obtained by Orchid

19   Cellmark.  Upon comparison of those evidentiary samples

20   to the known sample of the defendant, the defendant

21   could not be excluded from the cigar evidence,

22   epithelial DNA, the sperm fraction of the vaginal swabs,

23   or the sperm fraction of the cuttings from the panties.

24   The results of the new HPD Crime Lab as to the

25   comparison is admissible and relevant.

1          I find that the old HPD Crime Lab

2  handled -- has not handled any of the evidence in this

3  case since 1994.  I find that the old HPD Crime Lab's

4  DNA serology lab was closed in 2002.

5          I find that there is no evidence in this

6  case that any of the evidence in question, the DNA

7  evidence in question was stored in a manner or placed in

8  a location that is alleged to be subject to

9  contamination, mishandling, or malfeasance by the HPD

10  property room or the old HPD Crime Lab.

11          I find there was a report, termed the

12  Bromwich Report, which was initiated in 2003 upon the

13  closing of the crime lab.  I find that this report

14  investigates and scrutinizes the Houston Police

15  Department Crime Laboratory and the storage of property

16  at the Houston Police Department.  The report is an

17  extensive document covering hundreds of pages and is

18  made a part of the record for purposes of this hearing.

19  The report consists of Defense Exhibits 2 through 7 and

20  covers numerous areas of scrutiny, including toxicology

21  portion of the laboratory, ballistics portion of the

22  laboratory, trace evidence portion of the laboratory,

23  storage issues, serology, and DNA testing.

24          The report discusses case studies where

25  other fact scenarios and other actual cases are set out

1    and looked at in-depth to discuss errors that were made.

2    The report sets out facts and discussions of employees

3    at the HPD -- old HPD Crime Laboratory and discusses

4    disputes, allegations of misconduct, and potential

5    criminal activity.  The report sets out certain issues

6    with the old HPD DNA serology section of the crime lab.

7    Those issues include deficiency in documentation of

8    procedures, mistakes in performing analysis of samples

9    containing mixtures of more than one person's DNA,

10   errors in calculating statistical probabilities,

11   mischaracterization of DNA results and testimony, lack

12   of established quality assurance and internal auditing

13   systems, inadequate resources, a technical leader with

14   inadequate qualifications, inadequate training program,

15   insufficient educational background for analysts, and

16   inadequate standard of operating procedures.

17            The Bromwich Report makes specific

18   recommendations to address these issues.  All the

19   recommendations that were recommended by the Bromwich

20   Report were followed by the agency and by the State in

21   this case in order to remedy any potential issues.  No

22   issues have been identified in the Bromwich Report or in

23   this hearing or in any discovery that the Court has been

24   made aware of that there were any concerns addressed in

25   those items regarding the evidence in this case.

1           Therefore, I find that the Bromwich Report

2   is not admitted, not to be mentioned or alluded to or

3   discussed, because it is irrelevant under 401 and 402.

4   And even if some portions may be relevant, its probative

5   value is substantially outweighed by the danger of

6   unfair prejudice, confusion of the issues, and

7   misleading to the jury.   Therefore, Defense Exhibits 2

8   through 7 are not admissible at trial.

9           Defense also seeks -- seeks to admit

10   evidence, Defense Exhibits 8 and 9.   This is evidence of

11   employee misconduct or criminal history of individuals

12   working in the old HPD Crime Lab.   So, I am going to

13   address those one at time per each individual.

14           First, as to Joseph Chu.   I find that

15   Joseph Chu was an employee of the old HPD Crime Lab.

16   Mr. Chu, according to the evidence in this case, did

17   nothing on this case except for the hair analysis.   And

18   that evidence is not being offered and is not

19   admissible.   So, if Mr. Chu is not being called as a

20   witness to testify, if that is true, Mr. Chu's nine

21   allegations of employee misconduct as a criminalist for

22   the HPD Crime Lab are not admissible.

23           I do find that in Defense Exhibit No. 9,

24   Mr. Chu, according to their own records, had allegations

25   of nine employee misconduct allegations.   Of those, only

1  two were sustained.  The others -- the other seven were

2  either unfounded, not sustained, or he was exonerated of

3  them.  The two that were sustained, one was for

4  misconduct having nothing to do with this case, and

5  another was for an at-fault accident.  I find that

6  impeachment of Mr. Chu would be improper if he is not

7  called as a witness and when his testimony and his test

8  results are not offered.

9         I also find that evidence of misconduct or

10  criminal history is not admissible under any theory,

11  608, 609 of the Texas Rules of Evidence.  And is

12  irrelevant and prejudicial under 401, 402, 403, and 404.

13         As to Dr. Belda Sharma.  I find that

14  Dr. Sharma is an old HPD Crime Lab employee and that he

15  did perform DNA analysis on the extractions in this case

16  from the old HPD Crime Lab in 1992.  These results are

17  not offered and they are not admitted.  Dr. Sharma is

18  not being called as a witness.  And according to the

19  testimony, I find that he used an antiquated form of

20  analysis, a form different from the form that was used

21  by Orchid Cellmark to make their determinations as to

22  the DNA and the evidence in the case.

23         I do find, after reviewing Defense Exhibit

24  9, that Dr. Sharma had five instances of alleged

25  employee misconduct while at the old HPD Crime Lab.

1  Four of those instances were sustained.  However, none

2  of those instances relate to the evidence in the case.

3  No allegation of criminal activity against Dr. Sharma or

4  Dr. Chu has ever been sustained.  And I find that his

5  employee misconduct is not admissible under Rule 608 and

6  609 of the Texas Rules of Evidence and is irrelevant in

7  this proceeding, and is, therefore, inadmissible.

8              As to Deetrice Wallace, I find that

9  Deetrice Wallace was an employee of the old HPD Crime

10  Lab at the time the evidence was taken in this case.

11  The evidence supports that Deetrice Wallace received the

12  sexual assault kit in 1992 and screened a portion of the

13  sexual assault kit for blood evidence.  However, she

14  performed no DNA analysis and no extractions on the

15  sexual assault kit evidence.  And any testing that

16  Ms. Wallace performed on the evidence in this case is

17  not offered.  Ms. Wallace will not be called as a

18  witness and any results from her testing are not

19  admitted.  Ms. Wallace has no allegations of employee

20  misconduct while at the Houston Police Department old

21  crime lab.  Ms. Wallace subsequently obtained a felony

22  allegation or conviction -- the record is unclear -- for

23  tampering with a government document while working at a

24  subsequent -- different laboratory approximately ten

25  years after she handled the evidence in this case.  I

1  find it improper to impeach her with that criminal

2  history if she is not called as a witness and that that

3  criminal history is irrelevant to this case.  I also

4  find that she had no instances of employee misconduct

5  alleged while she was at the Houston Police Department

6  Crime Lab.

7              And I find no evidence of mishandling,

8  contamination, malfeasance on the part of any of these

9  individuals, or on the part of the old HPD Crime Lab as

10 it relates to the evidence in this case as to what came

11 in our hearing.

12             Now, so that's my ruling on all of the

13 evidence that's sought to be admitted, but I will

14 allow -- so, I'm completely clear, I will allow

15 cross-examination on contamination issues by the

16 defense.  I will allow cross-examination on the fact

17 that the evidence did go to the HPD Crime Lab and the

18 extensive history of where this evidence was, where it

19 was stored, where it was taken to, and whether those

20 locations were proper or whether they were -- whether it

21 was stored in a manner that was sealed or in a condition

22 that could have been contaminated.  But I will not allow

23 the defense to go into the Bromwich Report or the

24 closure of the lab or the reasons for the closure of the

25 lab or the impeachment of the witnesses at the

1    laboratory that do not testify.

2                    Okay?  Do you have any questions or

3    anything?

4                    MS. TISE:  As far as the cross-examination

5    issues are concerned, if the State is not offering any

6    witnesses who have firsthand knowledge of the crime lab

7    issues, which is the case, we're not bringing anyone who

8    worked there at the time and would have firsthand

9    knowledge, I would object to the defense, basically,

10   asking questions that assume facts not in evidence to a

11   witness who doesn't have the firsthand knowledge to

12   address it.

13                   THE COURT:  Okay.

14                   MS. TISE:  I think --

15                   THE COURT:  Go ahead.

16                   MS. TISE:  -- the only proper way they

17   could get into any kind of contamination issues is to

18   bring their own witness who would have firsthand

19   knowledge to talk about it.  And my witnesses are going

20   to say:  I don't know.  All I know is what I read in the

21   paper about the crime lab.

22                   THE COURT:  Okay.

23                   MS. TISE:  So, I'm just a little concerned

24   about cross-examination that might put facts in there --

25                   THE COURT:  I guess that would be something

1  you could object to at the time.  If it assumes facts

2  not in evidence, that would be a proper objection.  And

3  if it's a proper objection, I will sustain it.  If it

4  goes without being objected, perhaps, they could go into

5  it, but I'm not going to shut them down completely on

6  being able to cross-examine on contamination and storage

7  issues.  If they ask a witness that doesn't know, then

8  the witness can testify that they don't know.

9          MS. TISE:  But in that situation, that's

10  exactly the situation I fear because they are going to

11  put evidence in front of the jury, through their

12  questions to a witness who is not qualified to -- you

13  know, who doesn't have the knowledge to respond to it.

14          THE COURT:  Well, that would be assuming

15  facts not in evidence.  If they are going to start

16  putting facts that aren't out there and just asking them

17  to agree, then that would be assuming facts not in

18  evidence.  So, I guess you could object.

19          MS. TISE:  And I'd ask for a motion in

20  limine at this time to prevent them from doing that,

21  that at the very least we need to establish -- maybe by

22  taking witnesses on voir dire -- of whether they have

23  the knowledge that the defense is going to seek to

24  elicit.

25          THE COURT:  We can take the witnesses on

1   voir dire ahead of time.  I'm not going to give you a

2   running objection as to -- because I don't know what

3   they are going to ask them on cross-examination.  They

4   can't go into the Bromwich Report, they can't go into

5   the closure of the laboratory, and they can't go into

6   the impeachment of those witnesses, but I am going to

7   give them some latitude on contamination issues just

8   because I think that it's the fair thing to do in terms

9   of evidence that's -- number one, I think that's always

10  available to them.  And number two, in terms of evidence

11  that's 20 years old that's been sitting somewhere for 20

12  years, I think they have the right to ask some questions

13  about that.

14              MS. TISE:  And I don't disagree with that

15  at all, Judge.  I'm just asking they be required to do

16  it through permissible means, means where they are

17  putting their own witness on the stand who is going to

18  be able to testify to things from firsthand knowledge.

19  Because, otherwise, we have the exact situation that we

20  had in Curtis where they're trying to get something in

21  through witnesses who actually didn't have personal

22  knowledge of those things, and, basically, back-dooring

23  and getting it in.  And that leaves us in the position

24  of not really being able to adequately respond to it.

25              THE COURT:  Okay.  So, let's deal with it

1  this way.  I've made my ruling.  As it comes up at

2  trial, if we need to have the jury step out and have a

3  situation where we put something on the record to either

4  go into what a witness knows so we know we're not just

5  going to, you know, have the defense go on and on about

6  things that they don't know, and, basically, testifying

7  for the witness, or if you feel it's improper and we can

8  put something on the record and make an objection that's

9  specific to that witness and we feel that it's going

10  down the wrong path, then we can address it at that

11  time.  But I can't guess at everything that's going to

12  be asked or everything that's going -- where we're going

13  to go from there, you know.  I've got to give the

14  defense some latitude in addressing their defense.

15            So, do you have any questions, Mr. Madrid?

16            MR. MADRID:  No, no.  I think that's clear.

17  I was just thinking in my head, while you're saying all

18  of this, something that would affect, obviously, where

19  was that stored.  And we're a little worried even at

20  Orchid Cellmark.  We could go into a little bit of where

21  it was stored at and the chain of custody and it has

22  this tag, you know.  That's what normally people would

23  testify to.

24            THE COURT:  Right.

25            MR. MADRID:  Going back to Detective Mehl,

1  where was it taken to.  And I am talking out loud

2  because I can see what Ms. Tise is saying, something to

3  the effect that, well, we took it down to the crime lab.

4  Well, who did you take it to?  Okay.  And where did it

5  go then?  And there's kind of a gap in between that,

6  right?

7           So, we'll try to structure our questions

8  where, obviously, we're not going to say, you know,

9  Joseph Chu touched it.  And he's not testifying, so we

10  can't talk about that.  Dr. Sharma, or whoever.  Okay.

11 So, I understand that, but I guess we'll kind of -- I

12 agree with you and just ask that we can kind of -- give

13 us some latitude, but at the same time we're not --

14           THE COURT:  Detective Mehl seemed to know

15 quite a bit about where it was and where it had been

16 during the time period.

17           MR. MADRID:  It went to Goliad.  That's why

18 if we completely shut that down, then we can't really

19 ask those questions.

20           THE COURT:  Exactly.  I'll allow them to go

21 into that; where it was stored for that period of time

22 or where they believed it was stored, get tags or

23 whatever.  You know, I'm not going to let you get into

24 leaky roofs and stuff like that, that didn't apply to

25 this case.  But, clearly, I think the jury has the right

1  to know where it was this entire time, and, you know, if

2  it was kept in a manner that was properly stored and if

3  it wasn't contaminated.  And I think the scientists can

4  address it to a certain extent, too, in looking at the

5  evidence.  They can't say:  Hey, I know this was

6  contaminated or I know it wasn't contaminated or -- but

7  looking at evidence and they're able to see whether it's

8  degraded or not, they may be able to say that it had to

9  be stored properly because of the way that it appears at

10  the current time, you know.  So, we can address it in

11  that way.

12              MR. MADRID:  Quick question.  This is what

13  I was thinking.  I don't think this will happen, but I

14  can see a scenario where, you know, say the question

15  were asked:  Well, why isn't it there anymore?  Now,

16  that's -- well, because it was closed, but we can't talk

17  about that.  Correct?

18              THE COURT:  I don't want you to go into the

19  fact that the HPD Crime Lab was closed.

20              MR. MADRID:  Just, it was sent to Orchid

21  Cellmark to do the testing and it was compared with the

22  present analyst, right?

23              THE COURT:  Correct.

24              MR. MADRID:  Okay.

25              THE COURT:  None of the stuff from the old

1  crime lab is admissible.  And so, just the fact that it

2  was stored there and the fact that it went there.  I

3  will allow you to go into the fact that it actually did

4  go to the HPD Crime Lab at some point, but not that --

5  we're not going to go into any of the testing or who

6  tested it or anything like that.  Okay?

7            MR. MADRID:  Okay.

8            THE COURT:  And so, I think we'll be able

9  to deal with it pretty quickly.  If you make an

10 objection, if you think it's going down the wrong path,

11 Ms. Tise, make an objection, I will take the jury out,

12 and we'll deal with it that way.

13            MS. TISE:  Okay.

14            THE COURT:  All right.  Then we're

15 adjourned for today.  See you on Monday.

16            MR. WOOD:  Judge, we were going to ask --

17 and you may have covered this before I got here -- as

18 far as timing goes when we're lining up our witnesses

19 and telling them -- did y'all talk about that?

20            MS. TISE:  No, we haven't.

21            THE COURT:  We'll go off the record.

22            (Proceedings recessed)

23

24

25

1                      **REPORTER'S CERTIFICATE**

2    THE STATE OF TEXAS   )
     COUNTY OF HARRIS     )
3

4        I, Mary Ann Rodriguez, Official Court Reporter in

5    and for the 337th District Court of Harris County, State

6    of Texas, do hereby certify that the above and foregoing

7    contains a true and correct transcription of all

8    portions of evidence and other proceedings requested in

9    writing by counsel for the parties to be included in

10   this volume of the Reporter's Record, in the

11   above-styled and numbered cause, all of which occurred

12   in open court or in chambers and were reported by me.

13       I further certify that this Reporter's Record of

14   the proceedings truly and correctly reflects the

15   exhibits, if any, admitted by the respective parties.

16       WITNESS MY OFFICIAL HAND this the 3rd day of

17   October, 2013.

18

19

20   /s/ Mary Ann Rodriguez
     Mary Ann Rodriguez, Texas CSR 3047
21   Expiration Date:  12/31/2013
     Official Court Reporter
22   337th Court
     1201 Franklin
23   Houston, Texas  77002
     713.755.7746

24

25

## /

/s - 25:20

## 0

**00795683** - 2:4
**00797777** - 2:11

## 1

**1** - 10:24
**114** - 4:7
**12/31/2013** - 25:21
**1200** - 6:25, 7:18, 7:25
**1201** - 2:5, 25:22
**1225** - 2:11
**1384794** - 1:3, 3:3
**161** - 4:7
**17** - 1:2, 1:1, 1:4, 1:5, 1:6
**1992** - 5:14, 6:10, 6:13, 7:1, 7:2, 7:12, 7:23, 8:7, 15:16, 16:12
**1994** - 12:3
**19th** - 3:9
**1st** - 6:10

## 2

**2** - 12:19, 14:7
**20** - 20:11
**2002** - 5:11, 12:4
**2003** - 12:12
**2007** - 5:9, 6:11, 6:17, 7:18, 7:21, 8:12
**2008** - 10:2, 10:7, 10:9, 10:13
**2010** - 11:4
**2013** - 1:20, 1:3, 25:17
**205** - 4:9
**236** - 4:8
**23rd** - 10:2, 10:7, 10:9
**24th** - 6:25, 7:18, 7:25
**25** - 1:6
**2nd** - 6:17, 7:21, 8:11

## 3

**3** - 1:3
**3047** - 25:20
**324** - 4:8
**337th** - 1:12, 25:5, 25:22
**386** - 4:7
**3rd** - 1:20, 25:16

## 4

**4** - 1:4
**401** - 14:3, 15:12
**402** - 14:3, 15:12
**403** - 15:12
**404** - 15:12
**440** - 2:11

## 5

**5** - 1:5

## 6

**608** - 15:11, 16:5
**609** - 15:11, 16:6
**656** - 4:9

## 7

**7** - 12:19, 14:8
**71.5** - 10:24
**713.755.5800** - 2:6

**713.755.7746** - 25:23
**713.877.9400** - 2:12
**77002** - 2:5, 25:23
**77002-1659** - 2:12

## 8

**8** - 14:10

## 9

**9** - 14:10, 14:23, 15:24
**978** - 4:8

## A

**able** - 19:6, 20:18, 20:24, 23:7, 23:8, 24:8
**above-entitled** - 1:21
**above-styled** - 25:11
**accident** - 15:5
**according** - 14:16, 14:24, 15:18
**accurately** - 3:17
**activity** - 13:5, 16:3
**actual** - 12:25
**additional** - 4:4
**Additional** - 5:19
**address** - 13:18, 14:13, 18:12, 21:10, 23:4, 23:10
**addressed** - 13:24
**addressing** - 21:14
**adequately** - 20:24
**adjourned** - 24:15
**admissible** - 4:12, 6:1, 8:9, 8:13, 11:25, 14:8, 14:19, 14:22, 15:10, 16:5, 24:1
**admit** - 21:18
**admitted** - 5:16, 6:3, 6:4, 7:16, 14:2, 15:17, 16:19, 17:13, 25:15
**affect** - 21:18
**agency** - 13:20
**agree** - 19:17, 22:12
**ahead** - 18:15, 20:1
**aided** - 1:24
**allegation** - 16:3, 16:22
**allegations** - 13:4, 14:21, 14:24, 14:25, 16:19
**alleged** - 12:8, 15:24, 17:5
**allow** - 17:14, 17:16, 17:22, 22:20, 24:3
**alluded** - 14:2
**Alphabetical** - 1:8
**analysis** - 8:24, 9:12, 13:8, 14:17, 15:15, 15:20, 16:14
**analyst** - 4:20, 23:22
**Analyst** - 11:11
**analysts** - 13:15
**analyzed** - 8:15
**Ann** - 25:4, 25:20
**annex** - 6:25, 7:17, 7:25
**antiquated** - 15:19
**Ap-77,025** - 1:4
**Appeals** - 1:4
**appeared** - 6:14, 7:20
**Appellant** - 1:7
**Appellee** - 1:12
**apply** - 22:24
**areas** - 12:20
**Arturo** - 5:20, 8:1, 9:9
**assault** - 3:14, 5:17, 6:18, 6:23, 7:3, 7:5, 8:15, 8:19, 10:15, 16:12, 16:13, 16:15
**assessment** - 8:20
**assist** - 3:17
**Assistant** - 2:4
**assume** - 18:10
**assumes** - 19:1

**assuming** - 19:14, 19:17
**assurance** - 13:12
**at-fault** - 15:5
**Attorney** - 2:4, 2:6, 2:13
**Attorney's** - 11:9
**auditing** - 13:12
**available** - 9:16, 20:10
**aware** - 13:24

## B

**back-dooring** - 20:22
**background** - 13:15
**ballistics** - 12:21
**based** - 5:25
**began** - 3:8
**Belda** - 15:13
**belonged** - 9:6
**bench** - 3:21
**between** - 22:5
**Bienviendo** - 5:24, 8:3
**biology** - 4:21
**bit** - 21:20, 22:15
**blood** - 5:20, 6:22, 7:22, 8:4, 8:9, 8:16, 16:13
**body** - 11:8
**Bolding** - 7:9
**Breaking** - 8:18
**bring** - 18:18
**bringing** - 18:7
**Bromwich** - 12:12, 13:17, 13:19, 13:22, 14:1, 17:23, 20:4
**buccal** - 11:7, 11:8, 11:12

## C

**calculating** - 13:10
**Candido** - 5:22, 5:23, 8:3
**Carmelo** - 5:24, 8:4, 9:17
**case** - 3:9, 3:18, 3:19, 3:24, 4:4, 4:6, 5:13, 12:3, 12:6, 12:24, 13:21, 13:25, 14:16, 14:17, 15:4, 15:15, 15:22, 16:2, 16:10, 16:16, 16:25, 17:3, 17:10, 18:7, 22:25
**cases** - 3:23, 12:25
**Cellmark** - 3:15, 4:11, 4:16, 4:22, 4:23, 6:2, 6:16, 7:21, 8:11, 8:12, 8:14, 8:24, 9:1, 9:3, 9:22, 10:8, 10:11, 10:12, 10:15, 10:22, 10:25, 11:2, 11:16, 11:19, 15:21, 21:20, 23:17
**Cellmark's** - 6:5, 8:19, 9:12
**cells** - 9:2, 9:7
**certain** - 5:20, 13:5, 23:4
**Certificate** - 1:6, 25:1
**certify** - 25:6, 25:13
**chain** - 21:21
**chambers** - 25:12
**Chu** - 14:14, 14:15, 14:16, 14:19, 14:24, 15:6, 16:4, 22:9
**Chu's** - 14:20
**cigar** - 3:13, 5:16, 6:8, 6:11, 8:15, 9:2, 9:15, 9:19, 9:25, 10:14, 10:17, 11:21
**cite** - 4:7
**clear** - 3:12, 5:6, 17:14, 21:16
**clearly** - 22:25
**closed** - 5:11, 12:4, 23:16, 23:19
**closing** - 5:11, 12:13
**closure** - 17:24, 20:5
**collected** - 5:18, 7:23
**compared** - 10:13, 11:14, 23:21

**comparing** - 6:5
**comparison** - 11:19, 11:25
**completely** - 17:14, 19:5, 22:18
**computer** - 1:24
**computer-aided** - 1:24
**concerned** - 18:5, 18:23
**concerns** - 13:24
**condition** - 17:21
**confusion** - 14:6
**consented** - 11:7
**consider** - 3:25, 4:6
**considered** - 5:12
**consisted** - 6:21
**consists** - 12:19
**container** - 6:21
**containing** - 13:9
**contains** - 25:7
**contaminated** - 17:22, 23:3, 23:6
**contamination** - 11:2, 12:9, 17:8, 17:15, 18:17, 19:6, 20:7
**Continued** - 1:17, 1:2
**contributor** - 9:10, 10:20
**conviction** - 16:22
**convincing** - 3:13
**Correct** - 4:3, 23:17, 23:23
**correct** - 25:7
**correctly** - 25:14
**counsel** - 3:4, 25:9
**County** - 1:9, 1:23, 11:5, 11:9, 25:2, 25:5
**court** - 3:1, 25:12
**Court** - 1:3, 1:4, 1:6, 3:2, 4:5, 5:23, 13:23, 18:13, 18:15, 18:22, 18:25, 19:14, 19:25, 20:25, 21:24, 22:14, 22:20, 23:18, 23:23, 23:25, 24:8, 24:14, 24:21, 25:4, 25:5, 25:21, 25:22
**Courtney** - 4:16, 5:1, 11:11, 11:14
**covered** - 24:17
**covering** - 12:17
**covers** - 12:20
**credible** - 4:17
**Crime** - 4:17, 5:2, 5:7, 5:8, 5:9, 5:10, 5:12, 6:4, 6:13, 6:15, 7:3, 7:10, 7:14, 8:5, 8:8, 8:23, 9:23, 10:10, 11:1, 11:3, 11:10, 11:11, 11:24, 12:1, 12:3, 12:10, 12:15, 12:3, 14:12, 14:15, 14:22, 15:14, 15:16, 15:25, 16:9, 17:6, 17:9, 17:17, 23:9, 24:4
**crime** - 5:17, 12:13, 13:6, 16:21, 18:6, 18:21, 22:3, 24:1
**Criminal** - 1:4
**criminal** - 5:2, 13:5, 14:11, 15:10, 16:3, 17:1, 17:3
**criminalist** - 14:21
**cross** - 17:15, 17:16, 18:4, 18:24, 19:6, 20:3
**cross-examination** - 17:15, 17:16, 18:4, 18:24, 20:3
**cross-examine** - 19:6
**Cruz** - 1:6, 3:4, 6:7, 10:3, 11:7, 11:13
**Cruz-garcia** - 1:6, 3:4, 6:7, 10:3, 11:7, 11:13
**Csr** - 25:20
**current** - 23:10
**Curtis** - 4:9, 20:20
**custody** - 11:5, 21:21
**cutting** - 7:6, 8:21, 8:23, 9:4, 10:21

cuttings - 7:5, 11:23

## D

danger - 14:5
Date - 25:21
deal - 20:25, 24:9, 24:12
December - 8:11
Deetrice - 16:8, 16:9, 16:11
Defendant - 2:13
defendant - 3:1, 6:6, 8:17, 10:3, 10:6, 10:12, 10:14, 10:23, 11:4, 11:6, 11:15, 11:20
defendant's - 10:13, 10:16, 10:18
Defense - 12:19, 14:7, 14:9, 14:10, 14:23, 15:23
defense - 17:16, 17:23, 18:9, 19:23, 21:5, 21:14
Defense's - 3:7
deficiency - 13:7
degradation - 10:25
degraded - 23:8
degree - 4:21
Delbasco - 4:8
denied - 5:25
Department - 4:15, 5:8, 5:10, 6:24, 7:25, 8:6, 12:15, 12:16, 16:20, 17:5
Department's - 7:17
depth - 13:1
described - 6:20
Design - 7:10, 7:15
Detective - 21:25, 22:14
determinations - 15:21
determined - 3:15, 9:8, 9:12
determining - 3:17
Diana - 3:14, 5:18, 5:20, 6:19, 6:21, 6:22, 6:23, 8:2, 8:22, 9:4, 9:9
different - 8:23, 15:20, 16:24
dire - 19:22, 20:1
directly - 10:7
disagree - 20:14
discovery - 13:23
discuss - 13:1
discussed - 14:3
discusses - 12:24, 13:3
discussions - 13:2
disputes - 13:4
District - 1:6, 1:12, 2:4, 11:9, 25:5
Dna - 3:13, 4:10, 5:3, 5:8, 5:10, 5:16, 6:6, 6:17, 7:6, 7:8, 7:11, 8:17, 8:24, 9:1, 9:2, 9:4, 9:12, 9:15, 9:16, 9:19, 9:24, 10:5, 10:6, 10:11, 10:13, 10:14, 10:16, 10:17, 10:18, 10:19, 10:21, 10:22, 11:11, 11:12, 11:14, 11:17, 11:18, 11:22, 12:4, 12:6, 12:23, 13:6, 13:9, 13:11, 15:15, 15:22, 16:14
document - 12:17, 16:23
documentation - 13:7
donor - 9:25
donors - 9:19
dooring - 20:22
down - 8:18, 19:5, 21:10, 22:3, 22:18, 24:10
Dr - 7:4, 7:9, 15:13, 15:14, 15:17, 15:24, 16:3, 16:4, 22:10
during - 22:16

## E

educational - 13:15
effect - 22:3
either - 15:2, 21:3
elicit - 19:24
employee - 14:11, 14:15, 14:21, 14:25, 15:14, 15:25, 16:5, 16:9, 16:19, 17:4
employees - 13:2
encompassing - 5:13
entire - 23:1
entitled - 1:21
epithelial - 9:2, 9:15, 10:17, 11:22
Eric - 4:14, 7:19, 8:10, 10:2
errors - 13:1, 13:10
establish - 19:21
established - 13:12
Evidence - 15:11, 16:6
evidence - 3:8, 3:10, 3:13, 3:18, 4:10, 5:15, 5:19, 6:1, 6:8, 6:12, 7:16, 8:15, 8:16, 8:19, 8:20, 9:3, 10:6, 10:7, 10:14, 10:15, 10:25, 11:1, 11:2, 11:21, 12:2, 12:5, 12:6, 12:7, 12:22, 13:25, 14:10, 14:16, 14:18, 15:9, 15:22, 16:2, 16:10, 16:11, 16:13, 16:15, 16:16, 16:25, 17:7, 17:10, 17:13, 17:17, 17:18, 18:10, 19:2, 19:11, 19:15, 19:18, 20:9, 20:10, 23:5, 23:7, 25:8
evidentiary - 11:15, 11:17, 11:19
exact - 20:19
exactly - 19:10
Exactly - 22:20
examination - 17:15, 17:16, 18:4, 18:24, 20:3
examine - 19:6
except - 14:17
excluded - 9:18, 10:1, 10:16, 10:19, 10:20, 11:21
excuse - 7:24
Exhibit - 1:10, 14:23, 15:23
Exhibits - 12:19, 14:7, 14:10
exhibits - 1:11, 25:15
exonerated - 15:2
expected - 10:23
Expiration - 25:21
extensive - 12:17, 17:18
extent - 23:4
extracted - 7:6, 7:8, 11:11
extraction - 10:19
extractions - 8:21, 8:25, 15:15, 16:14
extradited - 11:6

## F

Fact - 1:4
fact - 3:11, 3:17, 4:14, 12:25, 17:16, 23:19, 24:1, 24:2, 24:3
facts - 13:2, 18:10, 18:24, 19:1, 19:15, 19:16, 19:17
fair - 20:8
far - 18:4, 24:18
fault - 15:5
Fbi - 10:4
fear - 19:10
felony - 16:21
female - 9:5
Findings - 1:4
findings - 3:11, 4:13

First - 3:12, 14:14
firsthand - 18:6, 18:8, 18:11, 18:18, 20:18
five - 15:24
floor - 6:25, 7:18, 7:25
Flores - 2:16
followed - 13:20
following - 1:20, 4:13
foregoing - 25:6
forensic - 4:20
Forensics - 4:22
form - 15:19, 15:20
formerly - 4:22
forwarded - 7:9, 7:11, 10:7
Four - 16:1
fraction - 9:7, 9:13, 11:22, 11:23
Franklin - 2:5, 25:22
front - 19:11
full - 9:1

## G

gap - 22:5
Garcia - 3:4, 3:14, 5:18, 5:20, 5:21, 6:19, 6:21, 6:22, 6:23, 8:2, 8:22, 9:6, 9:9, 9:17
garcia - 1:6, 3:4, 6:7, 10:3, 11:7, 11:13
Garcia's - 9:4, 9:9
genetic - 4:24
Genetic - 7:10, 7:15
German - 5:24, 8:4, 9:18
Gloria - 5:18, 6:20
Glossary.............................
.end - 1:7
Goliad - 6:9, 22:17
government - 16:23
guess - 18:25, 19:18, 21:11, 22:11

## H

hair - 14:17
Hand - 25:16
handled - 12:2, 16:25
Harris - 1:9, 1:23, 11:5, 11:9, 25:2, 25:5
head - 7:9, 21:17
heard - 1:21, 3:8, 3:10
Heard - 4:16, 5:1, 11:11, 11:14, 11:16
hearing - 4:18, 4:25, 5:4, 12:18, 13:23, 17:11
held - 1:23
hearing - 25:6
Hernandez - 2:16
history - 14:11, 15:10, 17:2, 17:3, 17:18
Honorable - 1:22
Houston - 1:23, 2:5, 2:12, 4:15, 5:7, 5:10, 6:24, 7:17, 7:24, 8:6, 12:14, 12:16, 16:20, 17:5, 25:23
Hpd - 4:16, 5:2, 5:7, 5:9, 5:12, 6:4, 6:9, 6:13, 6:14, 6:15, 7:3, 7:10, 7:14, 8:5, 8:8, 8:10, 8:23, 9:23, 10:10, 11:1, 11:3, 11:10, 11:24, 12:1, 12:3, 12:9, 12:10, 13:3, 13:6, 14:12, 14:15, 14:22, 15:14, 15:16, 15:25, 16:9, 17:9, 17:17, 23:19, 24:4
hundreds - 12:17
husband - 8:2, 9:9

## I

identified - 13:22

impeach - 17:1
impeachment - 15:6, 17:25, 20:6
improper - 15:6, 17:1, 21:7
in-depth - 13:1
inadequate - 13:13, 13:14, 13:16
inadmissible - 16:7
include - 13:7
included - 25:9
including - 12:20
independently - 11:16
Index - 1:8, 1:10
individual - 14:13
individuals - 10:24, 14:11, 17:9
initial - 8:20, 9:17
initiated - 12:12
inside - 6:12
instances - 15:24, 16:1, 16:2, 17:4
insufficient - 13:15
internal - 13:12
Interpreters - 2:17
investigates - 12:14
investigator - 11:9
irrelevant - 14:3, 15:12, 16:6, 17:3
issue - 3:17
issues - 12:23, 13:5, 13:7, 13:18, 13:21, 13:22, 14:6, 17:15, 18:5, 18:7, 18:17, 19:7, 20:7
items - 3:16, 6:2, 6:3, 13:25

## J

jail - 10:4
Jail - 11:5
Jd - 5:19
Jim - 7:9
Joseph - 14:14, 14:15, 22:9
Judge - 1:22, 20:15, 24:16
Judicial - 1:12
July - 1:20, 1:3
June - 3:9
jury - 3:1, 3:17, 14:7, 19:11, 21:2, 22:25, 24:11

## K

kept - 23:2
kind - 18:17, 22:5, 22:11, 22:12
kit - 3:14, 5:17, 6:18, 6:23, 7:3, 7:5, 7:16, 10:15, 16:12, 16:13, 16:15
knowledge - 18:6, 18:9, 18:11, 18:19, 19:13, 19:23, 20:18, 20:22
known - 4:22, 6:6, 8:16, 9:16, 10:6, 10:12, 10:14, 11:14, 11:20
knows - 21:4
Kologinczok - 5:18, 6:20

## L

Lab - 4:17, 5:3, 5:7, 5:9, 5:10, 5:12, 6:4, 6:13, 6:15, 7:3, 7:10, 7:14, 7:15, 8:5, 8:8, 8:24, 9:23, 10:10, 11:1, 11:3, 11:10, 11:11, 11:24, 12:1, 12:10, 14:12, 14:15, 14:22, 15:14, 15:16, 15:25, 16:10, 17:6, 17:9, 17:17, 23:19, 24:4

**lab** - 5:8, 12:4, 12:13, 13:6, 16:21, 17:24, 17:25, 18:6, 18:21, 22:3, 24:1
**Lab's**- 5:8, 12:3
**Laboratories**- 7:21, 10:8
**Laboratory**- 3:15, 4:23, 6:17, 8:11, 8:13, 8:14, 12:15, 13:3
**laboratory** - 7:11, 12:21, 12:22, 16:24, 18:1, 20:5
**lack** - 13:11
**larger** - 6:12
**latitude** - 20:7, 21:14, 22:13
**law** - 3:24, 4:4, 4:6
**lawyer** - 3:5
**leader** - 13:13
**leaky** - 22:24
**least** - 19:21
**leaves** - 20:23
**Lebrom**- 5:22, 5:23, 8:3, 9:18
**left** - 9:2
**Leonardo**- 5:24, 8:3
**limine** - 19:20
**lining** - 24:18
**located** - 10:3
**location** - 6:10, 12:8
**locations** - 17:20
**looked** - 13:1
**looking** - 23:4, 23:7
**loud** - 22:1
**Louisiana**- 2:11

### M

**Madrid** - 2:10, 3:5, 3:24, 4:1, 4:3, 21:15, 21:16, 21:25, 22:17, 23:12, 23:20, 23:24, 24:7
**Magee** - 1:22
**mailed** - 6:16
**main** - 9:10, 10:20
**male** - 9:1, 9:6, 9:8, 9:11, 9:13
**malfeasance** - 12:9, 17:8
**manner** - 12:7, 17:21, 23:2
**Marilu** - 2:16
**Mario** - 2:10, 3:5
**Mark** - 4:19
**Martinez** - 5:24, 8:4
**Mary** - 25:4, 25:20
**master's** - 4:21
**matched** - 9:14
**Matt** - 4:15
**means** - 20:16
**Mehl** - 4:14, 6:11, 6:16, 7:19, 8:10, 10:2, 10:4, 10:5, 21:25, 22:14
**Melo** - 5:24, 8:3, 9:17
**memorandum** - 3:22
**mentioned** - 14:2
**might** - 18:24
**mischaracterization** - 13:11
**misconduct** - 13:4, 14:11, 14:21, 14:25, 15:4, 15:9, 15:25, 16:5, 16:20, 17:4
**mishandling** - 12:9, 17:7
**misleading** - 14:7
**mistakes** - 13:8
**mixture** - 9:3, 9:11, 10:21
**mixtures** - 13:9
**molecular** - 4:21
**Monday** - 24:15
**motion** - 1:5, 19:19
**Motion** - 1:16, 1:2, 3:8, 5:25

### N

**namely** - 9:17, 11:11
**names** - 8:1
**Natalie** - 2:3, 3:6
**need** - 19:21, 21:2
**new** - 4:16, 5:2, 5:7, 6:4, 11:10, 11:24
**nine** - 14:20, 14:25
**None** - 23:25
**none** - 16:1
**normally** - 21:22
**nothing** - 14:17, 15:4
**number** - 20:9, 20:10
**numbered** - 1:22, 25:11
**numerous** - 12:20
**nurse** - 5:19, 6:19

### O

**Obel** - 1:6, 3:3, 6:6, 10:3, 11:6, 11:12
**object** - 18:9, 19:1, 19:18
**objected** - 19:4
**objection** - 19:2, 19:3, 20:2, 21:8, 24:10, 24:11
**observed** - 7:19
**obtain** - 8:25, 10:4, 11:16
**obtained** - 8:22, 9:1, 9:3, 9:7, 9:15, 10:21, 11:8, 11:12, 11:15, 11:18, 16:21
**obviously** - 21:18, 22:8
**occurred** - 25:11
**October** - 6:10, 6:11, 6:17, 7:18, 7:21, 11:4, 25:17
**offense** - 5:13
**offered** - 7:15, 14:18, 15:8, 15:17, 16:17
**offering** - 18:5
**Office** - 11:10
**Official** - 25:4, 25:16, 25:21
**old** - 5:9, 5:12, 6:13, 7:3, 7:9, 7:14, 8:5, 8:8, 8:23, 9:23, 10:9, 11:1, 11:3, 12:1, 12:3, 12:10, 13:3, 13:6, 14:12, 14:15, 15:14, 15:16, 15:25, 16:9, 16:20, 17:9, 20:11, 23:25
**Once**- 8:1
**One**- 9:5, 9:8, 9:21
**one** - 5:16, 5:17, 8:16, 9:23, 13:9, 14:13, 15:3, 20:9
**Open**- 3:1
**open** - 25:12
**operating** - 13:16
**Orchid** - 3:15, 4:11, 4:15, 4:23, 6:2, 6:5, 6:16, 7:20, 8:11, 8:12, 8:14, 8:19, 8:24, 9:1, 9:3, 9:12, 9:21, 9:22, 10:8, 10:10, 10:11, 10:12, 10:15, 10:22, 10:25, 11:1, 11:16, 11:18, 15:21, 21:20, 23:20
**order** - 8:25, 13:21
**otherwise** - 20:19
**outweighed** - 14:5
**own** - 8:21, 8:24, 8:25, 14:24, 18:18, 20:17

### P

**Page** - 1:3
**pages** - 12:17
**panties** - 6:21, 7:5, 7:7, 8:22, 9:5, 9:14, 9:20, 9:25, 11:23
**panty** - 10:21
**paper** - 18:21

**part** - 12:18, 17:8, 17:9
**parties** - 25:9, 25:15
**path** - 21:10, 24:10
**people** - 21:22
**per** - 14:13
**perform** - 4:24, 5:3, 15:15
**performed** - 8:12, 8:20, 8:21, 8:24, 16:14, 16:16
**performing** - 13:8
**perhaps** - 19:4
**period** - 5:13, 22:16, 22:21
**permissible** - 20:16
**person's** - 13:9
**personal** - 20:21
**persons** - 7:23
**persons'** - 8:1
**Phone** - 2:6, 2:12
**placed** - 12:7
**point** - 24:4
**Police** - 4:15, 5:8, 5:10, 6:24, 7:17, 7:24, 8:6, 12:14, 12:16, 16:20, 17:5
**Pope** - 4:7
**portion** - 12:21, 12:22, 16:12
**portions** - 14:4, 25:8
**position** - 3:23, 20:23
**potential** - 13:4, 13:21
**prejudice** - 14:6
**prejudicial** - 15:12
**present** - 3:1, 3:4, 23:22
**Present** - 3:5
**presented** - 3:18
**presiding** - 1:23
**pretty** - 24:9
**prevent** - 19:20
**previously** - 6:20, 9:23
**probabilities** - 13:10
**probative** - 14:4
**procedures** - 13:8, 13:16
**proceed** - 3:7
**proceeding** - 16:7
**proceedings** - 1:21, 25:8, 25:14
**Proceedings** - 1:24, 24:22
**profile** - 9:2, 9:10, 9:13, 10:22, 11:12
**profiles** - 9:4, 9:5, 9:6, 9:7, 9:8, 11:17, 11:18
**program** - 13:14
**proper** - 17:20, 18:16, 19:2, 19:3
**properly** - 23:2, 23:9
**property** - 6:9, 6:14, 6:24, 7:17, 7:24, 7:25, 8:6, 10:10, 12:10, 12:15
**Puerto** - 10:3, 11:6
**purposes** - 4:17, 12:18
**put** - 3:21, 4:1, 18:24, 19:11, 21:3, 21:8
**putting** - 19:16, 20:17

### Q

**quadrillion** - 10:24
**qualifications** - 13:14
**qualified** - 4:20, 4:23, 5:2, 5:3, 5:4, 6:19, 19:12
**quality** - 13:12
**Quartaro** - 4:15, 4:19
**questions** - 18:2, 18:10, 19:12, 20:12, 21:15, 22:7, 22:19
**Quick** - 23:12
**quickly** - 24:9
**quite** - 22:15

### R

**rather** - 11:17

**read** - 4:6, 18:20
**ready** - 3:7
**really** - 20:24, 22:18
**reasons** - 17:24
**receive** - 3:20, 3:21, 3:22
**received** - 10:5, 10:12, 16:11
**recessed** - 24:22
**recommendations** - 13:18, 13:19
**recommended** - 13:19
**record** - 3:2, 3:21, 4:2, 5:6, 12:18, 16:22, 21:3, 21:8, 24:21
**Record**- 1:1, 25:10, 25:13
**records** - 14:24
**referenced** - 4:24, 5:4
**reflects** - 25:14
**regarding** - 5:16, 13:25
**regards** - 6:3
**relate** - 16:2
**relates** - 4:11, 17:10
**relevant** - 3:16, 4:12, 11:25, 14:4
**reliable** - 3:16, 4:12
**relied** - 11:18
**remedy** - 13:21
**Renee**- 1:22
**reopened** - 5:9
**report** - 12:11, 12:13, 12:16, 12:19, 12:24, 13:2, 13:5
**Report**- 12:12, 13:17, 13:20, 13:22, 14:1, 17:23, 20:4
**reported** - 1:24, 25:12
**Reporter**- 25:4, 25:21
**Reporter's**- 1:1, 1:6, 25:1, 25:10, 25:13
**requested** - 25:8
**required** - 20:15
**resources** - 13:13
**respective** - 25:15
**respond** - 19:13, 20:24
**response** - 4:2
**results** - 3:15, 4:25, 5:5, 6:2, 6:4, 6:5, 7:13, 7:14, 8:8, 9:1, 9:24, 11:24, 13:11, 15:8, 15:16, 16:18
**retrieved** - 6:10, 6:16, 7:6, 7:16, 7:19, 8:10
**returned** - 6:14, 8:6
**reviewing** - 15:23
**Rico**- 10:4, 11:6
**Rn**- 5:19
**Rodriguez**- 25:4, 25:20
**Rolando**- 2:16
**roofs** - 22:24
**room** - 6:9, 6:14, 6:24, 7:17, 7:25, 8:6, 10:10, 12:10
**roughly** - 10:24
**Rule**- 16:5
**Rules**- 15:11, 16:6
**Ruling**- 1:5
**ruling** - 3:10, 4:5, 17:12, 21:1
**running** - 20:2

### S

**S.w.2d** - 4:8
**S.w.3d** - 4:7, 4:8, 4:9
**sample** - 6:6, 8:16, 8:17, 9:14, 10:5, 10:6, 10:11, 10:12, 11:20
**samples** - 5:20, 6:22, 7:22, 8:4, 8:9, 8:10, 8:13, 9:16, 11:15, 11:17, 11:19, 13:8
**Sane** - 5:19, 6:19
**Sbot**- 2:4, 2:11

**scenario** - 23:14
**scenarios** - 12:25
**scene** - 5:17
**scientists** - 23:3
**Sergeant** - 16:12
**scrutinizes** - 12:14
**scrutiny** - 12:20
**sealed** - 6:23, 7:20, 17:21
**second** - 9:9
**section** - 5:10, 13:6
**See** - 24:15
**see** - 5:21, 22:2, 23:7, 23:14
**seek** - 19:23
**seeks** - 14:9
**semen** - 9:7, 9:13
**sent** - 7:20, 8:11, 11:10, 23:20
**separate** - 9:22
**September** - 5:13
**Sergeant** - 6:11, 6:16, 7:19, 8:10, 10:2, 10:4, 10:5
**sergeant** - 4:14
**serology** - 5:8, 5:10, 12:4, 12:23, 13:6
**set** - 12:25
**sets** - 13:2, 13:5
**seven** - 15:1
**several** - 3:22, 6:21, 7:23
**sexual** - 3:14, 5:17, 6:18, 6:23, 7:2, 7:5, 7:16, 8:15, 8:19, 10:15, 16:12, 16:13, 16:15
**Sharma** - 7:4, 7:9, 15:13, 15:14, 15:17, 15:24, 16:3, 22:10
**shorthand** - 1:25
**shut** - 19:5, 22:18
**sic** - 4:16, 5:21
**sitting** - 20:11
**situation** - 19:9, 19:10, 20:19, 21:3
**sometime** - 6:13, 7:2, 8:7
**somewhere** - 20:11
**sought** - 17:13
**specialist** - 5:2
**specific** - 13:17, 21:9
**sperm** - 11:22, 11:23
**stand** - 20:17
**standard** - 13:16
**start** - 19:15
**starting** - 8:18
**State** - 1:11, 2:6, 3:3, 3:5, 3:22, 4:6, 4:7, 4:8, 4:9, 13:20, 18:5, 25:2, 25:5
**statistical** - 13:10
**step** - 21:2
**storage** - 12:15, 12:23, 19:6
**stored** - 6:9, 6:24, 7:23, 12:7, 17:19, 17:21, 21:19, 21:21, 22:21, 22:22, 23:2, 23:9, 24:2
**Street** - 6:9
**structure** - 22:7
**studies** - 12:24
**stuff** - 22:24, 23:25
**styled** - 25:11
**subject** - 12:8
**subsequent** - 16:24
**subsequently** - 16:21
**substantially** - 14:5
**sufficiently** - 3:16, 4:11
**Suite** - 2:11
**supervisor** - 4:20
**support** - 3:23
**supports** - 16:11
**Suppress** - 1:16, 1:2, 3:8, 5:25
**suppress** - 1:5

**sustain** - 19:3
**sustained** - 15:1, 15:2, 15:3, 16:1, 16:4
**swab** - 9:21, 9:22, 9:24, 10:19, 11:7, 11:8, 11:12
**swabs** - 6:22, 11:22
**systems** - 13:13

## T

**table** - 3:4
**tag** - 21:22
**tags** - 22:22
**tampering** - 16:23
**technical** - 13:13
**ten** - 16:24
**termed** - 12:11
**terms** - 20:8, 20:10
**test** - 3:14, 6:2, 6:4, 15:7
**tested** - 7:4, 8:5, 9:21, 9:23, 24:6
**testify** - 4:25, 5:5, 14:20, 18:1, 19:8, 20:18, 21:23
**testifying** - 21:6, 22:9
**testimony** - 13:11, 15:7, 15:19
**Testing** - 8:12
**testing** - 4:11, 4:24, 5:4, 6:17, 7:12, 7:14, 9:17, 12:23, 16:15, 16:18, 23:21, 24:5
**Texas** - 1:11, 1:9, 1:23, 2:5, 2:6, 2:12, 3:3, 15:11, 16:6, 25:2, 25:6, 25:20, 25:23
**theory** - 15:10
**Therefore** - 14:1, 14:7
**therefore** - 16:7
**thinking** - 21:17, 23:13
**three** - 9:3
**timing** - 24:18
**Tise** - 2:3, 3:6, 5:22, 18:4, 18:14, 18:16, 18:23, 19:9, 19:19, 20:14, 22:2, 24:11, 24:13, 24:20
**today** - 3:11, 24:15
**took** - 7:4, 22:3
**touched** - 22:9
**toxicology** - 12:20
**trace** - 12:22
**training** - 13:14
**transcription** - 25:7
**transcription/stenograph** - 1:25
**Travis** - 6:25, 7:18, 8:1
**trial** - 14:8, 21:2
**Trial** - 1:3
**true** - 14:20, 25:7
**truly** - 25:14
**try** - 22:7
**trying** - 20:20
**two** - 9:6, 15:1, 15:3, 20:10

## U

**unclear** - 16:22
**under** - 14:3, 15:10, 15:12, 16:5
**unfair** - 14:6
**unfounded** - 15:2
**unknown** - 9:11, 9:13, 9:14, 9:19, 9:24
**unopened** - 6:15
**unrelated** - 10:24
**up** - 21:1, 24:18

## V

**vaginal** - 6:21, 9:21, 10:19, 11:22
**Valdez** - 4:7

**value** - 14:5
**voir** - 19:22, 20:1
**Vol** - 1:3
**Volume** - 1:2, 1:1, 1:7
**volume** - 1:9, 1:11, 25:10
**Volumes** - 1:2
**vs** - 3:3, 4:6, 4:7, 4:8, 4:9
**Vs** - 1:9

## W

**Wallace** - 16:8, 16:9, 16:11, 16:16, 16:17, 16:19, 16:21
**warrant** - 10:5
**Witness** - 1:8, 25:16
**witness** - 4:14, 14:20, 15:7, 15:18, 16:18, 17:2, 18:11, 18:18, 19:7, 19:8, 19:12, 20:17, 21:4, 21:7, 21:9
**witnesses** - 1:9, 4:17, 17:25, 18:6, 18:19, 19:22, 19:25, 20:6, 20:21, 24:18
**Wood** - 24:16
**Word** - 1:7
**works** - 4:21
**worried** - 21:19
**writing** - 25:9

## Y

**y'all** - 24:19
**years** - 16:25, 20:11, 20:12