```
 1                  REPORTER'S RECORD

 2              VOLUME 23 OF 35 VOLUMES

 3            TRIAL COURT CAUSE NO. 1384794

 4        COURT OF CRIMINAL APPEALS NO. AP-77,025

 5

 6   OBEL CRUZ-GARCIA          )  IN THE DISTRICT COURT
                               )
 7       Appellant             )
                               )
 8                             )
                               )
 9   VS.                       )  HARRIS COUNTY, TEXAS
                               )
10                             )
                               )
11   THE STATE OF TEXAS        )
                               )
12       Appellee              )  337TH JUDICIAL DISTRICT

13

14

15              ******************

16          GUILT-INNOCENCE PROCEEDINGS

17              ******************

18

19

20       On the 15th day of July, 2013, the following

21   proceedings came on to be heard in the above-entitled

22   and numbered cause before the Honorable Renee Magee,

23   Judge presiding, held in Houston, Harris County, Texas;

24       Proceedings reported by computer-aided

25   transcription/stenograph shorthand.
```

1                    **A P P E A R A N C E S**

2


3

       MS. NATALIE TISE
4      SBOT NO. 00795683
       MR. JUSTIN WOOD
5      SBOT NO. 24039247
       Assistant District Attorneys
6      1201 Franklin
       Houston, Texas  77002
7      PHONE:  713.755.5800
       **ATTORNEYS FOR THE STATE OF TEXAS**
8


9

               **- AND -**
10


11

       MR. R.P. 'SKIP' CORNELIUS
12     SBOT NO. 04831500
       2028 Buffalo Terrace
13     Houston, Texas  77019-2408
       PHONE:  713.237.8547
14

       MR. MARIO MADRID
15     SBOT NO. 00797777
       440 Louisiana, Suite 1225
16     Houston, Texas  77002-1659
       PHONE:  713.877.9400
17     **ATTORNEYS FOR THE DEFENDANT**

18


19


20     Rolando Hernandez
       Marilu Flores,
21     **Interpreters**

22


23


24


25

1              **I N D E X**
              **VOLUME 23**
2       **(GUILT-INNOCENCE PROCEEDINGS)**

3   **JULY 15, 2013**
                                              **PAGE   VOL.**
4   Closing Argument by State's Attorney.......... 29     23
    Closing Argument by Defense Attorney.......... 40     23
5   Closing Argument by State's Attorney.......... 78     23

6   Jury retired for deliberations................ 99     23

7   Verdict Received.............................. 101    23

8   Polling of the jury........................... 102    23

9   Reporter's Certificate........................ 107    23

10  Word Glossary...............................End of Volume

11              **ALPHABETICAL WITNESS INDEX**

12              (No witnesses this volume)

13              **EXHIBIT INDEX**

14              (No exhibits this volume)

15

16

17

18

19

20

21

22

23

24

25

 1                    (Open court, defendant present, no jury)

 2                    THE COURT:  On the record in Cause

 3    No. 1384794, the State of Texas vs. Obel Cruz-Garcia.

 4                    We are present here on Monday morning, July

 5    15th, 2013, to proceed with the reading of the charge to

 6    the jury and arguments of counsel on the guilt phase of

 7    the trial.

 8                    I have before me the charge that was

 9    discussed and decided on last week as of Friday.  And I

10    am going to hand that charge to the clerk of the Court

11    to be file-stamped.  It is the charge that we had --

12    that each party had a copy of on Friday.

13                    Having file-stamped a copy of that charge,

14    does the defense have any objections to the charge on

15    the record?

16                    MR. CORNELIUS:  No, Your Honor.

17                    THE COURT:  And does the State -- other

18    than the items we have put on the record, do you have

19    any objections further on that charge?

20                    MS. TISE:  No further objections, Judge.

21                    THE COURT:  Okay.  Very good.

22                    We're ready to bring in the jury as soon as

23    Deputy Perry returns saying they are ready.

24                    (Open court, defendant and jury present)

25                    THE COURT:   Please be seated.

1            We're ready to proceed at this time in the

2   trial of the case of the State of Texas vs. Obel

3   Cruz-Garcia.  Let the record reflect the attorneys for

4   the State, the attorneys for the defendant, and the

5   defendant are present in the courtroom.  And all members

6   of the jury are present and seated in the courtroom.

7            At this time, ladies and gentlemen, I will

8   read you the charge of the Court containing the law

9   applicable to this case.  Please listen carefully as I

10  read the charge to you.  The original will be placed on

11  the table in the jury room when you retire to begin your

12  deliberations.

13           Cause No. 1384794, the State of Texas vs.

14  Obel Cruz-Garcia, in the 337th District Court of Harris

15  County, Texas.

16           Members of the jury:  The defendant, Obel

17  Cruz-Garcia, stands charged by indictment with the

18  offense of capital murder, alleged to have been

19  committed on or about the 30th day of September, 1992,

20  in Harris County, Texas.  The defendant has pleaded not

21  guilty.

22           A person commits the offense of murder if

23  he intentionally or knowingly causes the death of an

24  individual; or intends to cause serious bodily injury

25  and intentionally or knowingly commits an act clearly

1  dangerous to human life that causes the death of an

2  individual.

3            A person commits the offense of capital

4  murder if he intentionally commits murder, as

5  hereinbefore defined in paragraph one, and the person

6  intentionally commits the murder in the course of

7  committing or attempting to commit the offense of

8  Kidnapping. Kidnapping is a felony.

9            "In the course of committing" means conduct

10 that occurs in an attempt to commit, during the

11 commission, or in the immediate flight after the attempt

12 or commission of an offense.

13            "Attempt" to commit an offense occurs if,

14 with specific intent to commit an offense, a person does

15 an act amounting to more than mere preparation that

16 tends, but fails, to effect the commission of the

17 offense intended.

18            A person commits the offense of kidnapping

19 if he intentionally or knowingly abducts another person.

20 A person commits the offense of aggravated kidnapping if

21 he intentionally or knowingly abducts another person

22 with the intent to, one, facilitate the commission of a

23 felony or the flight after the attempt or commission of

24 a felony; or, two, inflict bodily injury on him; or,

25 three terrorize him or a third person.  Sexual assault

1 and burglary of a habitation are felonies.

2          The term "abduct" means to restrain a

3 person with intent to prevent his liberation by:

4 A, secreting or holding him in a place where he is not

5 likely to be found; or, B, using or threatening to use

6 deadly force.

7          The term "restrain" means to restrict a

8 person's movements without consent, so as to interfere

9 substantially with his liberty, by moving him from one

10 place to another or by confining him.  Restraint is

11 "without consent" if it is accomplished by force,

12 intimidation, or deception.  "Consent" means assent in

13 fact, whether express or apparent.  "Deadly force" means

14 force that is intended or known by the person acting to

15 cause, or in the manner of its use or intended use is

16 capable of causing, death or serious bodily injury.

17          A person commits the offense of sexual

18 assault if the person intentionally or knowingly,

19 one, causes the penetration of the female sexual organ

20 of another person by any means, without that person's

21 consent; or, two, causes the sexual organ of another

22 person, without that person's consent, to contact the

23 mouth of another person, including the defendant.

24 A sexual assault is without the consent of the other

25 person if, one the defendant compels the other person to

1  submit or participate by the use of physical force or

2  violence; or, two, the defendant compels the other

3  person to submit or participate by threatening to use

4  force or violence against the other person, and the

5  other person believes that the defendant has the present

6  ability to execute the threat.

7            A person commits the offense of burglary

8  if, without the effective consent of the owner, he

9  enters a habitation with intent to commit a felony or

10 theft. Sexual assault is a felony.  "Enter" means to

11 intrude any part of the body, or any physical object

12 connected to the body.

13           "Habitation" means a structure or vehicle

14 that is adapted for the overnight accommodation of

15 persons, and includes, A, each separately secured or

16 occupied portion of the structure or vehicle and, B,

17 each structure appurtenant to or connected with the

18 structure or vehicle.

19           "Effective consent" means assent in fact,

20 whether express or apparent, and includes consent by a

21 person legally authorized to act for the owner. Consent

22 is not effective if induced by force, threats, deception

23 or coercion.

24           "Theft" is the unlawful appropriation of

25 property with intent to deprive the owner of said

1    property and without the owner's effective consent.

2    "Owner" means a person who has a greater right to

3    possession of the property than the defendant.

4    "Possession" means actual care, custody, control, or

5    Management of the property.

6              "Deadly weapon" means anything manifestly

7    designed, made, or adapted for the purpose of inflicting

8    death or serious bodily injury; or anything that in the

9    manner of its use or intended use is capable of causing

10   death or serious bodily injury.

11             "Bodily injury" means physical pain,

12   illness, or any impairment of physical condition.

13   "Serious bodily injury" means bodily injury that creates

14   a substantial risk of death or that causes death,

15   serious permanent disfigurement, or protracted loss or

16   impairment of the function of any bodily member or

17   organ.

18             The definition of intentionally relative to

19   the offense of capital murder is as follows:  A person

20   acts intentionally, or with intent, with respect to a

21   result of his conduct when it is his conscious objective

22   or desire to cause the result.

23             The definitions of intentionally and

24   knowingly relative to the offenses of murder and sexual

25   assault are as follows:

1          A person acts intentionally, or with

2 intent, with respect to a result of his conduct when it

3 is his conscious objective or desire to cause the

4 result.

5          A person acts knowingly, or with knowledge,

6 with respect to a result of his conduct when he is aware

7 that his conduct is reasonably certain to cause the

8 result.

9          The definitions of intentionally and

10 knowingly relative to the offenses of kidnapping,

11 aggravated kidnapping and burglary of a habitation are

12 as follows:

13          A person acts intentionally, or with

14 intent, with respect to the nature of his conduct or to

15 a result of his conduct when it is his conscious

16 objective or desire to engage in the conduct or cause

17 the result.

18          A person acts knowingly, or with knowledge,

19 with respect to the nature of his conduct or to

20 circumstances surrounding his conduct when he is aware

21 of the nature of his conduct or that the circumstances

22 exist. A person acts knowingly, or with knowledge, with

23 respect to a result of his conduct when he is aware that

24 his conduct is reasonably certain to cause the result.

25 All persons are parties to an offense who are guilty of

1  acting together in the commission of the offense. A

2  person is criminally responsible as a party to an

3  offense if the offense is committed by his own conduct,

4  by the conduct of another for which he is criminally

5  responsible, or by both.

6            A person is criminally responsible for an

7  offense committed by the conduct of another if, acting

8  with intent to promote or assist the commission of the

9  offense, he solicits, encourages, directs, aids, or

10  attempts to aid the other person to commit the offense.

11  Mere presence alone will not constitute one a party to

12  an offense.

13            If, in the attempt to carry out a

14  conspiracy to commit one felony, another felony is

15  committed by one of the conspirators, all conspirators

16  are guilty of the felony actually committed, though

17  having no intent to commit it, if the offense was

18  committed in furtherance of the unlawful purpose and was

19  one that should have been anticipated as a result of the

20  carrying out of the conspiracy.

21            By the term "conspiracy" as used in these

22  instructions, is meant an agreement between two or more

23  persons with intent, that they, or one or more of them,

24  engage in conduct that would constitute the offense.  An

25  agreement constituting a conspiracy may be inferred from

1  acts of the parties.

2          Before you would be warranted in finding

3  the defendant guilty of capital murder, you must find

4  from the evidence beyond a reasonable doubt not only

5  that on the occasion in question the defendant was in

6  the course of committing or attempting to commit the

7  felony offense of kidnapping of Angelo Garcia, Jr., as

8  alleged in this charge, but also that the defendant

9  specifically intended to cause the death of Angelo

10 Garcia, Jr., by stabbing Angelo Garcia, Jr., with a

11 deadly weapon, namely a sharp instrument; or you must

12 find from the evidence beyond a reasonable doubt that

13 the defendant, Obel Cruz-Garcia, with the intent to

14 promote or assist in the commission of the offense of

15 capital murder, if any, solicited, encouraged, directed,

16 aided or attempted to aid Rogelio Aviles and/or Carmelo

17 Martinez-Santana also known as "Rudy" in stabbing Angelo

18 Garcia, Jr., if he did, with the intention of thereby

19 killing Angelo Garcia, Jr.; or you must find from the

20 evidence beyond a reasonable doubt that on the occasion

21 in question the defendant, Obel Cruz-Garcia, entered

22 into an agreement with Rogelio Aviles and/or Carmelo

23 Martinez-Santana also known as "Rudy" to commit the

24 felony offense of kidnapping, or sexual assault or

25 burglary of a habitation, and pursuant to that agreement

1  they did carry out their conspiracy, and while in the

2  course of committing said conspiracy, Rogelio Aviles

3  and/or Carmelo Martinez-Santana also known as "Rudy"

4  intentionally caused the death of Angelo Garcia, Jr. by

5  stabbing Angelo Garcia, Jr. with a deadly weapon,

6  namely, a sharp instrument while in the course of

7  committing the kidnapping of Angelo Garcia, Jr.  And the

8  murder of Angelo Garcia, Jr. was committed in

9  furtherance of the conspiracy and was an offense that

10 should have been anticipated by the defendant as a

11 result of carrying out the conspiracy; or you must find

12 from the evidence beyond a reasonable doubt not only

13 that on the occasion in question the defendant was in

14 the course of committing or attempting to commit the

15 felony offense of kidnapping of Angelo Garcia, Jr., as

16 alleged in this charge, but also that the defendant

17 specifically intended to cause the death of Angelo

18 Garcia, Jr., by an unknown manner or means; or you must

19 find from the evidence beyond a reasonable doubt that

20 the defendant, Obel Cruz-Garcia, with the intent to

21 promote or assist in the commission of the offense of

22 capital murder, if any, solicited, encouraged, directed,

23 aided or attempted to aid Rogelio Aviles and/or Carmelo

24 Martinez-Santana also known as "Rudy," if he did, with

25 the intention of thereby killing Angelo Garcia, Jr.; by

1   an unknown manner or means or you must find from the

2   evidence beyond a reasonable doubt that on the occasion

3   in question the defendant, Obel Cruz-Garcia, entered

4   into an agreement with Rogelio Aviles and/or Carmelo

5   Martinez-Santana also known as "Rudy" to commit the

6   felony offense of kidnapping, or sexual assault or

7   burglary of a habitation, and pursuant to that agreement

8   they did carry out their conspiracy, and while in the

9   course of committing said conspiracy, Rogelio Aviles

10   and/or Carmelo Martinez-Santana also known as "Rudy"

11   intentionally caused the death of Angelo Garcia, Jr. by

12   an unknown manner or means while in the course of

13   committing the kidnapping of Angelo Garcia, Jr., and the

14   murder of Angelo Garcia, Jr. was committed in

15   furtherance of the conspiracy and was an offense that

16   should have been anticipated by the defendant as a

17   result of carrying out the conspiracy, and unless you so

18   find, then you cannot convict the defendant of the

19   offense of capital murder.

20           Now, if you find from the evidence beyond a

21   reasonable doubt that on or about the 30th day of

22   September, 1992, in Harris County, Texas, the defendant,

23   Obel Cruz-Garcia, did then and there unlawfully, while

24   in the course of committing or attempting to commit the

25   kidnapping of Angelo Garcia, Jr., intentionally cause

the death of Angelo Garcia, Jr., by stabbing Angelo

Garcia, Jr. with a deadly weapon, namely a sharp

instrument; or if you find from the evidence beyond a

reasonable doubt that on or about the 30th day of

September, 1992, in Harris County, Texas, Rogelio Aviles

and/or Carmelo Martinez-Santana also known as "Rudy" did

then and there unlawfully while in the course of

committing or attempting to commit the kidnapping of

Angelo Garcia, Jr., intentionally cause the death of

Angelo Garcia, Jr. by stabbing Angelo Garcia, Jr. with a

deadly weapon, namely, a sharp instrument, and that the

defendant, Obel Cruz-Garcia, with the intent to promote

or assist the commission of the offense, solicited,

encouraged, directed, aided or attempted to aid Rogelio

Aviles and/or Carmelo Martinez-Santana also known as

"Rudy" to commit the offense, if he did; or if you find

from the evidence beyond a reasonable doubt that the

defendant, Obel Cruz-Garcia, and Rogelio Aviles and/or

Carmelo Martinez-Santana also known as "Rudy" entered

into an agreement to commit the felony offense of

kidnapping, or sexual assault or burglary of a

habitation, and pursuant to that agreement, if any, they

did carry out their conspiracy and that in Harris

County, Texas, on or about the 30th day of September,

1992, while in the course of committing said conspiracy,

1    Rogelio Aviles and/or Carmelo Martinez-Santana also
2    known as "Rudy" intentionally caused the death of Angelo
3    Garcia, Jr. by stabbing Angelo Garcia, Jr. With a deadly
4    weapon, namely a sharp instrument, while in the course
5    of kidnapping Angelo Garcia, Jr., and the murder of
6    Angelo Garcia, Jr. was committed in furtherance of the
7    conspiracy and was an offense that should have been
8    anticipated by the defendant as a result of carrying out
9    the conspiracy; or if you find from the evidence beyond
10   a reasonable doubt that on or about the 30th day of
11   September, 1992, in Harris County, Texas, the defendant,
12   Obel Cruz-Garcia, did then and there unlawfully, while
13   in the course of committing or attempting to commit the
14   kidnapping of Angelo Garcia, Jr., intentionally cause
15   the death of Angelo Garcia, Jr., by an unknown manner or
16   means; or if you find from the evidence beyond a
17   reasonable doubt that on or about the 30th day of
18   September, 1992, in Harris County, Texas, Rogelio Aviles
19   and/or Carmelo Martinez-Santana also known as "Rudy" did
20   then and there unlawfully while in the course of
21   committing or attempting to commit the kidnapping of
22   Angelo Garcia, Jr., intentionally cause the death of
23   Angelo Garcia, Jr. by an unknown manner or means, and
24   that the defendant, Obel Cruz-Garcia, with the intent to
25   promote or assist the commission of the offense,

1  solicited, encouraged, directed, aided or attempted to

2  aid Rogelio Aviles and/or Carmelo Martinez-Santana also

3  known as "Rudy" to commit the offense, if he did; or if

4  you find from the evidence beyond a reasonable doubt

5  that the defendant, Obel Cruz-Garcia, and Rogelio Aviles

6  and/or Carmelo Martinez-Santana also known as "Rudy"

7  entered into an agreement to commit the felony offense

8  of kidnapping or sexual assault or burglary of a

9  habitation, and pursuant to that agreement, if any, they

10  did carry out their conspiracy and that in Harris

11  County, Texas, on or about the 30th day of September,

12  1992, while in the course of committing said conspiracy,

13  Rogelio Aviles and/or Carmelo Martinez-Santana also

14  known as "Rudy" intentionally caused the death of Angelo

15  Garcia, Jr. by an unknown manner or means, while in the

16  course of kidnapping Angelo Garcia, Jr., and the murder

17  of Angelo Garcia, Jr. was committed in furtherance of

18  the conspiracy and was an offense that should have been

19  anticipated by the defendant as a result of carrying out

20  the conspiracy, then you will find the defendant guilty

21  of capital murder, as charged in the indictment.

22            Unless you so find from the evidence beyond

23  a reasonable doubt, or if you have a reasonable doubt

24  thereof, or if you are unable to agree, you will next

25  consider whether the defendant is guilty of the lesser

```
 1   offense of murder.  Therefore, if you find from the
 2   evidence beyond a reasonable doubt that on or about the
 3   30th day of September, 1992, in Harris County, Texas,
 4   the defendant, Obel Cruz-Garcia, did then and there
 5   unlawfully, intentionally or knowingly cause the death
 6   of Angelo Garcia, Jr., by stabbing Angelo Garcia, Jr.
 7   with a deadly weapon, namely, a sharp instrument; or if
 8   you find from the evidence beyond a reasonable doubt
 9   that on or about the 30th day of September, 1992, in
10   Harris County, Texas, Rogelio Aviles and/or Carmelo
11   Martinez-Santana also known as "Rudy," did then and
12   there unlawfully, intentionally or knowingly cause the
13   death of Angelo Garcia, Jr., by stabbing Angelo Garcia,
14   Jr. with a deadly weapon, namely, a sharp instrument,
15   and that the defendant, Obel Cruz-Garcia, with the
16   intent to promote or assist the commission of the
17   offense, solicited, encouraged, directed, aided or
18   attempted to aid Rogelio Aviles and/or Carmelo
19   Martinez-Santana also known as "Rudy" to commit the
20   offense, if he did; or if you find from the evidence
21   beyond a reasonable doubt that on or about the 30th day
22   of September, 1992, in Harris County, Texas, the
23   defendant, Obel Cruz-Garcia, did then and there
24   unlawfully intend to cause serious bodily injury to
25   Angelo Garcia, Jr., and did cause the death of Angelo
```

1   Garcia, Jr. by intentionally or knowingly committing an

2   act clearly dangerous to human life, namely, by stabbing

3   Angelo Garcia, Jr. with a deadly weapon, namely, a sharp

4   instrument; or if you find from the evidence beyond a

5   reasonable doubt that on or about the 30th day of

6   September, 1992, in Harris County, Texas, Rogelio Aviles

7   and/or Carmelo Martinez-Santana also known as "Rudy,"

8   did then and there unlawfully intend to cause serious

9   bodily injury to Angelo Garcia, Jr., and did cause the

10  death of Angelo Garcia, Jr. by intentionally or

11  knowingly committing an act clearly dangerous to human

12  life, namely, by stabbing Angelo Garcia, Jr. with a

13  deadly weapon, namely, a sharp instrument, and that the

14  defendant, Obel Cruz-Garcia, with the intent to promote

15  or assist the commission of the offense, solicited,

16  encouraged, directed, aided or attempted to aid Rogelio

17  Aviles and/or Carmelo Martinez-Santana also known as

18  "Rudy" to commit the offense, if he did; or if you find

19  from the evidence beyond a reasonable doubt that on or

20  about the 30th day of September, 1992, in Harris County,

21  Texas, the defendant, Obel Cruz-Garcia, did then and

22  there unlawfully, intentionally or knowingly cause the

23  death of Angelo Garcia, Jr., by an unknown manner or

24  means; or if you find from the evidence beyond a

25  reasonable doubt that on or about the 30th day of

1  September, 1992, in Harris County, Texas, Rogelio Aviles

2  and/or Carmelo Martinez-Santana also known as "Rudy,"

3  did then and there unlawfully, intentionally or

4  knowingly cause the death of Angelo Garcia, Jr., by an

5  unknown manner or means, and that the defendant, Obel

6  Cruz-Garcia, with the intent to promote or assist the

7  commission of the offense, solicited, encouraged,

8  directed, aided or attempted to aid Rogelio Aviles

9  and/or Carmelo Martinez-Santana also known as "Rudy" to

10  commit the offense, if he did; or if you find from the

11  evidence beyond a reasonable doubt that on or about the

12  30th day of September, 1992, in Harris County, Texas,

13  the defendant, Obel Cruz-Garcia, did then and there

14  unlawfully intend to cause serious bodily injury to

15  Angelo Garcia, Jr., and did cause the death of Angelo

16  Garcia, Jr. by intentionally or knowingly committing an

17  act clearly dangerous to human life, namely, by an

18  unknown manner or means; or if you find from the

19  evidence beyond a reasonable doubt that on or about the

20  30th day of September, 1992, in Harris County, Texas,

21  Rogelio Aviles and/or Carmelo Martinez-Santana also

22  known as "Rudy," did then and there unlawfully intend to

23  cause serious bodily injury to Angelo Garcia, Jr., and

24  did cause the death of Angelo Garcia, Jr. by

25  intentionally or knowingly committing an act clearly

1  dangerous to human life, namely, by an unknown manner or

2  means, and that the defendant, Obel Cruz-Garcia, with

3  the intent to promote or assist the commission of the

4  offense, solicited, encouraged, directed, aided or

5  attempted to aid Rogelio Aviles and/or Carmelo

6  Martinez-Santana also known as "Rudy" to commit the

7  offense, if he did, then you will find the defendant

8  guilty of murder.

9           Unless you so find from the evidence beyond

10  a reasonable doubt, or if you have a reasonable doubt

11  thereof, or if you are unable to agree, you will next

12  consider whether the defendant is guilty of the lesser

13  offense of aggravated kidnapping.

14           Therefore, if you find from the evidence

15  beyond a reasonable doubt that on or about the 30th day

16  of September, 1992, in Harris County, Texas, the

17  defendant, Obel Cruz-Garcia, did then and there

18  unlawfully, intentionally or knowingly abduct Angelo

19  Garcia, Jr., without consent, with intent to prevent his

20  liberation by secreting or holding Angelo Garcia, Jr. in

21  a place where Angelo Garcia, Jr. was not likely to be

22  found or by using or threatening to use deadly force on

23  Angelo Garcia, Jr., namely a sharp instrument, and with

24  intent to facilitate the commission of a felony; or

25  inflict bodily injury on Angelo Garcia, Jr.; or

1  terrorize Angelo Garcia, Jr. or another person; or if

2  you find from the evidence beyond a reasonable doubt

3  that on or about the 30th day of September, 1992, in

4  Harris County, Texas, Rogelio Aviles and/or Carmelo

5  Martinez-Santana also known as "Rudy," did then and

6  there unlawfully, intentionally or knowingly abduct

7  Angelo Garcia, Jr., without consent, with intent to

8  prevent his liberation by secreting or holding Angelo

9  Garcia, Jr. in a place where Angelo Garcia, Jr. was not

10  likely to be found or by using or threatening to use

11  deadly force on Angelo Garcia, Jr., namely a sharp

12  instrument, and with intent to facilitate the commission

13  of a felony; or inflict bodily injury on Angelo Garcia,

14  Jr.; or terrorize Angelo Garcia, Jr. or another person,

15  and that the defendant, Obel Cruz-Garcia, with the

16  intent to promote or assist the commission of the

17  offense, solicited, encouraged, directed, aided or

18  attempted to aid Rogelio Aviles and/or Carmelo

19  Martinez-Santana also known as "Rudy" to commit the

20  offense, if he did; or if you find from the evidence

21  beyond a reasonable doubt that on or about the 30th day

22  of September, 1992, in Harris County, Texas, the

23  defendant, Obel Cruz-Garcia, did then and there

24  unlawfully, intentionally or knowingly abduct Angelo

25  Garcia, Jr., without consent, with intent to prevent his

1  liberation by secreting or holding Angelo Garcia, Jr. in

2  a place where Angelo Garcia, Jr. was not likely to be

3  found or by using or threatening to use deadly force on

4  Angelo Garcia, Jr., by an unknown manner or means, and

5  with intent to facilitate the commission of a felony; or

6  inflict bodily injury on Angelo Garcia, Jr.; or

7  terrorize Angelo Garcia, Jr. or another person; or if

8  you find from the evidence beyond a reasonable doubt

9  that on or about the 30th day of September, 1992, in

10 Harris County, Texas, Rogelio Aviles and/or Carmelo

11 Martinez-Santana also known as "Rudy," did then and

12 there unlawfully, intentionally or knowingly abduct

13 Angelo Garcia, Jr., without consent, with intent to

14 prevent his liberation by secreting or holding Angelo

15 Garcia, Jr. in a place where Angelo Garcia, Jr. was not

16 likely to be found or by using or threatening to use

17 deadly force on Angelo Garcia, Jr., by an unknown manner

18 or means, and with intent to facilitate the commission

19 of a felony; or inflict bodily injury on Angelo Garcia,

20 Jr.; or terrorize Angelo Garcia, Jr. or another person,

21 and that the defendant, Obel Cruz-Garcia, with the

22 intent to promote or assist the commission of the

23 offense, solicited, encouraged, directed, aided or

24 attempted to aid Rogelio Aviles and/or Carmelo

25 Martinez-Santana also known as "Rudy" to commit the

1    offense, if he did, then you will find the defendant

2    guilty of aggravated kidnapping.

3              If you believe from the evidence beyond a

4    reasonable doubt that the defendant is guilty of either

5    capital murder on the one hand or murder or aggravated

6    kidnapping on the other hand, but you have a reasonable

7    doubt as to which of said offenses he is guilty, then

8    you must resolve that doubt in the defendant's favor and

9    find him guilty of the lesser offense of either murder

10   or aggravated kidnapping.

11             If you have a reasonable doubt as to

12   whether the defendant is guilty of any offense defined

13   in this charge you will acquit the defendant and say by

14   your verdict "not guilty."

15             An accomplice, as the term is here used,

16   means anyone connected with the crime charged, as a

17   party thereto, and includes all persons who are

18   connected with the crime by unlawful act or omission on

19   their part transpiring either before or during the time

20   of the commission of the offense, and whether or not

21   they were present and participated in the commission of

22   the crime.  A person is criminally responsible as a

23   party to an offense if the offense is committed by his

24   own conduct, by the conduct of another for which he is

25   criminally responsible or by both.  Mere presence alone,

1  however, will not constitute one a party to an offense.

2  A person is criminally responsible for an offense

3  committed by the conduct of another if, acting with

4  intent to promote or assist the commission of the

5  offense, he solicits, encourages, directs, aids, or

6  attempts to aid the other person to commit the offense.

7  The term "conduct" means any act or omission and its

8  accompanying mental state.

9           You are instructed that a conviction cannot

10  be had upon the testimony of an accomplice unless the

11  accomplice's testimony is corroborated by other evidence

12  tending to connect the defendant with the offense

13  charged, and the corroboration is not sufficient if it

14  merely shows the commission of the offense, but it must

15  tend to connect the defendant with its commission.

16  The witness, Carmelo Martinez-Santana also known as

17  "Rudy," is an accomplice, if an offense was committed,

18  and you cannot convict the defendant upon his testimony

19  unless you further believe that there is other evidence

20  in the case, outside of the testimony of Carmelo

21  Martinez-Santana, also known as "Rudy," tending to

22  connect the defendant with the offense committed, if you

23  find that an offense was committed, and the

24  corroboration is not sufficient if it merely shows the

25  commission of the offense, but it must tend to connect

1  the defendant with its commission, and then from all of

2  the evidence you must believe beyond a reasonable doubt

3  that the defendant is guilty of the offense charged

4  against him.

5          Our law provides that a defendant may

6  testify in his own behalf if he elects to do so.  This,

7  however, is a right accorded a defendant, and in the

8  event he elects not to testify, that fact cannot be

9  taken as a circumstance against him.

10          In this case, the defendant has elected not

11 to testify and you are instructed that you cannot and

12 must not refer to or allude to that fact throughout your

13 deliberations or take it into consideration for any

14 purpose whatsoever as a circumstance against him.

15          You are further instructed that if there is

16 any evidence before you in this case regarding the

17 defendant's committing an alleged offense or offenses

18 other than the offense alleged against him in the

19 indictment in this case, you cannot consider such

20 evidence for any purpose unless you find and believe

21 beyond a reasonable doubt that the defendant committed

22 such other offense or offenses, if any, and even then

23 you may only consider the same in determining the

24 motive, opportunity, intent, preparation, plan,

25 knowledge, identity, or absence of mistake or accident

1   of the defendant, if any, in connection with the

2   offense, if any, alleged against him in the indictment

3   and for no other purpose.

4            You are further instructed that any

5   evidence that any witness has been convicted in any case

6   or cases was admitted before you for the purpose of

7   aiding you, if it does aid you, in passing upon the

8   credibility of the witness and the weight to be given

9   his or her testimony, and you will not consider the same

10  for any other purpose.

11           A Grand jury indictment is the means

12  whereby a defendant is brought to trial in a felony

13  prosecution. It is not evidence of guilt nor can it be

14  considered by you in passing upon the question of guilt

15  of the defendant.  The burden of proof in all criminal

16  cases rests upon the State throughout the trial and

17  never shifts to the defendant.

18           All persons are presumed to be innocent and

19  no person may be convicted of an offense unless each

20  element of the offense is proved beyond a reasonable

21  doubt. The fact that he has been arrested, confined, or

22  indicted for, or otherwise charged with the offense

23  gives rise to no inference of guilt at his trial. The

24  law does not require a defendant to prove his innocence

25  or produce any evidence at all.  The presumption of

1  innocence alone is sufficient to acquit the defendant,

2  unless the jurors are satisfied beyond a reasonable

3  doubt of the defendant's guilt after careful and

4  impartial consideration of all the evidence in the case.

5  The prosecution has the burden of proving the defendant

6  guilty and it must do so by proving each and every

7  element of the offense charged beyond a reasonable doubt

8  and if it fails to do so, you must acquit the defendant.

9  It is not required that the prosecution prove guilt

10  beyond all possible doubt; it is required that the

11  prosecution's proof excludes all reasonable doubt

12  concerning the defendant's guilt.

13            In the event you have a reasonable doubt as

14  to the defendant's guilt after considering all the

15  evidence before you, and these instructions, you will

16  acquit him and say by your verdict "not guilty."

17  You are the exclusive judges of the facts proved, of the

18  credibility of the witnesses and the weight to be given

19  their testimony, but the law you shall receive in these

20  written instructions, and you must be governed thereby.

21  After you retire to the jury room, you should select one

22  of your members as your foreman.  It is his or her duty

23  to preside at your deliberations, vote with you, and

24  when you have unanimously agreed upon a verdict, to

25  certify to your verdict by using the appropriate form

1   attached hereto and signing the same as foreman.

2   During your deliberations in this case, you must not

3   consider, discuss, nor relate any matters not in

4   evidence before you.  You should not consider nor

5   mention any personal knowledge or information you may

6   have about any fact or person connected with this case

7   which is not shown by the evidence.

8               No one has any authority to communicate

9   with you except the officer who has you in charge.

10  After you have retired, you may communicate with this

11  Court in writing through this officer. Any communication

12  relative to the cause must be written, prepared and

13  signed by the foreman and shall be submitted to the

14  court through this officer.  Do not attempt to talk to

15  the officer who has you in charge, or the attorneys, or

16  the Court, or anyone else concerning any questions you

17  may have.

18              Your sole duty at this time is to determine

19  the guilt or innocence of the defendant under the

20  indictment in this cause and restrict your deliberations

21  solely to the issue of guilt or innocence of the

22  defendant.  Following the arguments of counsel, you will

23  retire to consider your verdict.

24              The verdict page, which is the last two

25  pages, reads:  We, the jury, find the defendant; Obel

1   Cruz-Garcia, not guilty; or:  We, the jury, find the

2   defendant, Obel Cruz-Garcia, guilty of capital murder as

3   charged in the indictment; or:  We, the jury, find the

4   defendant, Obel Cruz-Garcia, guilty of murder; or:  We,

5   the jury, find the defendant, Obel Cruz-Garcia, guilty

6   of aggravated kidnapping.

7           I'm going to permit the lawyers to make

8   closing argument at this time.

9           Ms. Tise, would you like to proceed?

10  Mr. Wood.

11          Would you like a five-minute warning?

12          MR. WOOD:  I'll be brief.

13          THE COURT:  Okay.

14          **STATE'S CLOSING STATEMENT**

15          MR. WOOD:  Ladies and gentlemen, I know

16  last week was a really long week for you guys.  And you

17  have heard a lot of witness testimony over the course of

18  four or five days.  And a lot of evidence is before you

19  now that you will take back with you and consider.  Now

20  you get to talk about the facts of the case.  You get to

21  talk about what you've heard.  And I know that the job

22  that you now face is difficult in weighing all of that.

23  And Natalie and I appreciate all of the time and the

24  attention you have given to this case thus far, but your

25  job is not quite done.

1          You have just listened to the Judge for

2    last 30-plus minutes read the Judge's -- or the Court's

3    instruction to you, the jury charge.  It is almost --

4    it's 26 pages.  And there is a lot of information in

5    there.  And it's a lot of legal mumbo-jumbo, probably,

6    what you heard the Judge read.  And it's one of the

7    bizarre things about our criminal justice system that at

8    the end of a case, we give you all of this language that

9    sounds like lawyer talk and say:  Here you go, you go

10   back there and you sort all that out.

11          So, I'm going to take a few minutes and

12   explain a few things and a few high points in this jury

13   charge about some of the law that you have.  And then I

14   will sit down and the defense will speak to you and

15   Natalie will finish up.

16          So, I want to just go back now what's been

17   a month -- or a month plus since we talked to each of

18   you in jury selection and on voir dire when we talked to

19   you individually and hit a few of the high points about

20   some of those concepts that we talked about.  And if you

21   will remember, one of the things that we talked about

22   was the elements of the offense and beyond a reasonable

23   doubt.  And we visited with you and the Judge talked to

24   you about those elements of the offense of capital

25   murder as it relates to this case.  And we told you that

1  at the end of the case, you would have to find that

2  Natalie and I proved this case to you beyond a

3  reasonable doubt.  And we have to prove each and every

4  one of those elements of the offense.

5              That on or about September 30th, 1992, that

6  in Harris County, Texas, that this defendant, Obel

7  Cruz-Garcia, while in the course of committing or

8  attempting to commit the kidnapping of Angelo Garcia,

9  Jr., intentionally caused the death of Angelo Garcia,

10  Jr. by stabbing him with a deadly weapon, namely in this

11  case, a sharp instrument or by some unknown manner and

12  means.

13              Those are the elements of capital murder.

14  You have now heard five days of testimony relating to

15  those elements.  And you have to find that we have

16  proven each and every one of those elements beyond a

17  reasonable doubt.  And that's just fine, but I will ask

18  you to remember one of the things we talked about.

19  Beyond a reasonable doubt only goes to those elements up

20  there.  And you, as a jury, as you work through this and

21  you talk through this, you might have to ask yourself --

22  if you have a conflict internally about something, you

23  ask yourself:  Do I have a doubt about that?  Is that

24  doubt that I have reasonable?  And then, does it go to

25  one of those elements?

 1            I suspect the defense might get up here and

 2  tell you, you know, you heard a conflict in testimony

 3  about X, Y, and Z.  And a conflict in testimony alone is

 4  not reasonable doubt.  You have to ask yourself:  Is it

 5  reasonable and does it go to one of those elements?  You

 6  know, did Rudy tell you that two tires blew out on that

 7  car or four tires blew out on that car after they --

 8  after Angelo was killed?  Who cares, ladies and

 9  gentlemen?  Does that discrepancy go to one of those

10  elements?  That's the kind of thing that you have to

11  work through.

12            And at the end of all of that, you, as a

13  jury, based on the evidence that you have and the

14  testimony you've heard, may find exactly what it says up

15  there, that the defendant himself was responsible for

16  intentionally causing the death of Angelo Garcia, Jr.

17  after he was kidnapped.

18            But a couple of other concepts I want to

19  talk to you about that we spoke to you about in jury

20  selection, was that concept of the law of parties and

21  the law of co-conspirators.  Because as we talked about,

22  it's easily imaginable, which we now know as it plays

23  out in this case, that more than one individual can be

24  involved in a criminal case.  And when that happens, the

25  law says as it relates to the law of parties that when

1  more than one individual participates in the commission

2  of that offense, every individual can be guilty of that

3  offense.  And the law of parties is laid out to you in

4  your jury charge, as well as the law of co-conspirators.

5  And it's on about Page 6 of your jury charge.  And the

6  law of parties, basically, says that if that other

7  person solicits, encourages, directs, aids, or attempts

8  to aid that other person, then they are a party to that

9  offense.

10            Kind of similar to that is the law of

11  co-conspirators.  And furthermore, the law of parties

12  says that someone's mere presence at a scene or at the

13  commission of an offense does not make that person a

14  party, but the law of co-conspirators says that in an

15  attempt to carry out a conspiracy to commit one

16  felony -- say, for example, in this case you have

17  kidnapping, you have the felony of burglary of a

18  habitation, you have the felony of sexual assault.  That

19  while in the course of committing one of those felonies,

20  another felony is committed such as capital murder, that

21  all of the conspirators are guilty of the felony

22  actually committed, of capital murder as it applies in

23  this case, if that offense, that capital murder was

24  committed in furtherance of that unlawful purpose of

25  that original felony, and was one that should have been

1   anticipated.  That's kind of how the law of

2   co-conspirators reads and how you will see it plays out.

3   Like I told you, that's going to be somewhere around

4   Page 6 of your jury charge.

5                 And then what the jury charge does is it

6   takes that law and then for several pages it applies it

7   to this case.  And trust me, you will have plenty of

8   opportunity to go back there and read and work through

9   some of that.  But when you do that, you've got to apply

10  it to the defendant and what you know about this case

11  and what the facts of this case dictate as it relates to

12  law of parties.  You may, as a jury, or some of you may

13  believe that the defendant himself is the one who

14  intentionally inflicted that blow that killed Angelo

15  Garcia.  Maybe he is the one that personally stabbed him

16  and killed him or cut him and killed him.  Some of you

17  may believe that, and that's fine.

18                Some of you may believe that out there in

19  Baytown at that scene on September 30th that the

20  defendant directed Roger to kill Angelo Garcia, Jr.  And

21  by directing him, by aiding and participating in the

22  murder of Angelo Garcia, Jr., he is a party to capital

23  murder.  And that makes him guilty of the charged

24  offense as it relates and how it works with law of

25  parties.

1            You can also work through the law of

2  co-conspirators and maybe find that in the commission of

3  one of those other felonies, burglary, kidnapping,

4  sexual assault, that that other felony occurred, capital

5  murder, and that because it was committed in furtherance

6  of that original felony and was one that should have

7  been anticipated, he can also be guilty under the law of

8  co-conspirators.  That's kind of how those two concepts

9  of the law work as it relate to this case.  And you will

10 have several pages explaining that.

11            Another concept that we talked about and

12 the Judge spoke to you in detail about in jury selection

13 was the idea of accomplice witnesses and when an

14 accomplice witness comes into court and testifies, how

15 you treat an accomplice witness' testimony.  And the

16 law -- the jury instruction that you have, that starts

17 on Page 17 of the charge, it talks about accomplice

18 witness testimony.  And it tells you in this case, Rudy

19 is considered an accomplice witness.

20            And if you remember back to jury selection,

21 the Judge told you that an accomplice witness can come

22 into court -- we spoke to you about that as well.  They

23 can come into court and testify.  You can weigh their

24 credibility, you can go back and review what they said,

25 figure out, hey, does Rudy fill in holes to this story,

1  do we find him credible, and that's perfectly fine.  But

2  with an accomplice witness' testimony, the law says that

3  there has got to be something extra.  There's got to be

4  some corroboration that tends to connect the defendant

5  to the offense committed.  And the way that works is

6  you've got to look at Rudy's testimony, review that, and

7  then find out if there is some corroboration.  And the

8  Judge told you that the law is actually the tiniest

9  little bit of corroboration is enough.  But when you go

10 back and review the evidence and the testimony in this

11 case, you have a got corroboration, after corroboration,

12 after corroboration of what Rudy told you.

13         Probably the most damning corroboration for

14 the defendant in this case is the DNA evidence.  You

15 know that there is DNA evidence that the defendant's DNA

16 was on the panties of Diana Garcia's the night of that

17 sexual assault, the defendant's DNA is on the vaginal

18 swabs taken after the rape of Diana Garcia on September

19 30th, 1992, the same time the kidnapping of Angelo

20 Garcia, Jr. taking place and ultimately his death.  That

21 is corroboration that tends to connect the defendant to

22 the commission of the offense.

23         You've also got Linda Hernandez's

24 testimony.  What did Linda tell you?  Linda told you

25 that what we now know is shortly after Angelo Garcia,

1  Jr. had been killed, she's getting a call from the

2  defendant.  And where is he at?  Baytown, where the

3  offense was committed.  Linda Hernandez's testimony

4  tends to connect the defendant to the commission of the

5  offense.  That's more corroboration.

6          You then have Angelita Rodriguez's

7  testimony.  Amongst many other credible things that

8  Angelita told you, she told that in that conversation

9  down in the Dominican Republic, the defendant told her

10  he did it.  That's corroboration.  So, you've got more

11  than enough corroboration with Rudy's testimony in

12  considering him as an accomplice witness.

13          One other area of the law or concept of the

14  law that I want to speak to you about is the idea of

15  lesser-included offenses.  And if you were following

16  what the Judge said, you probably realized she was

17  talking about the offense of capital murder and then she

18  started talking about the offenses of murder and

19  aggravated kidnapping.  And with lesser-included

20  offenses, the law says that the defense is able to ask

21  for you to be instructed on and consider lesser-included

22  offenses, if they apply.  Well, of course, the offense

23  of murder and aggravated kidnapping apply in the case

24  because if you combine them, you get the charged offense

25  of capital murder.  You remember us talking about that

 1  in jury selection.

 2              So, the way that works is that you've got

 3  to look at all of the evidence that you have, base it on

 4  what you have to consider.  And if after considering all

 5  of the evidence and all of the testimony you-all believe

 6  that the defendant is guilty of the charged offense of

 7  capital murder, then you are done.  The jury charge

 8  tells you if -- only if you have a disagreement as to

 9  that do you then go through those lesser-included

10  offenses of first murder and then aggravated kidnaping.

11  And, of course, based on the evidence I would submit to

12  you he's guilty of murder and he's also guilty of

13  aggravated kidnaping.  And when you combine those, he's

14  guilty of the charged offense of capital murder.

15              So, if you-all agree on that, you can stop

16  your discussion.  But step back and think about that.

17  Because if you are asked to consider the lesser-included

18  offenses of murder and aggravated kidnaping in this

19  case, think how that plays out.  If you were to believe

20  that the defendant is only guilty of the offense of

21  murder, just murder alone, you would then have to

22  believe that he had no involvement in the kidnaping of

23  Angelo Garcia, Jr., which makes absolutely no sense

24  based on the facts.

25              I guess you would have to believe that

1  little 6-year-old Baby Angelo somehow got down to

2  Baytown that night on September 30th, 1992, wandered

3  down or somehow got down there, and then came into

4  contact or encountered the defendant and he killed him.

5  That's ridiculous.  That does not make sense based on

6  the facts.  And you are asked to use your common sense.

7          The flip-side also does not make a lot of

8  sense.  If you are to believe he was only guilty of the

9  offense of aggravated kidnapping, you would also then

10  have to believe that he had nothing to do with the

11  murder of Angelo Garcia, Jr., which based on what you

12  know, you know also does not make sense.  So, that's

13  kind of how you work through the concepts of

14  lesser-included offenses.  And I submit to you that when

15  you really look at the jury charge, that's pages --

16  around 11 through 16.  And if you come to the

17  determination that you believe he's guilty of capital

18  murder, those pages, 11 and 16, a bulk of that jury

19  charge, may not be that relevant to you.

20          I'm going to sit down very shortly and the

21  defense will get up and speak to you, but before I sit

22  down, I want to leave you with one thought.  And we know

23  that based on what you heard that from the time the

24  defendant got in that car on September 30th, 1992 and

25  left Diana and Arturo's apartment and drove down to

 1  Baytown, it took him somewhere around 20 minutes

 2  probably.  That is roughly the exact amount of time I

 3  have been standing up and talking to you, 20 minutes.

 4          So, as I leave you, I want you to think

 5  about Baby Angelo's last 20 minutes of his life.  We

 6  know he was taken from his home in the middle of the

 7  night.  We know that he was sat in that car and driven

 8  away from his mother, driven down to Baytown.  And we

 9  know from Rudy that he wasn't crying.  He wasn't saying

10  anything.  Maybe he was confused or maybe he was just in

11  shock.  Or maybe he spent the last 20 minutes of his

12  life really, really terrified.  That's what I want you

13  to think about.  Thank you.

14          THE COURT:  Thank you, Mr. Wood.

15          Attorneys for the defense.

16          MR. MADRID:  Thank you, Your Honor.

17          THE COURT:  Mr. Madrid, you may proceed.

18          **DEFENSE CLOSING STATEMENT**

19          MR. MADRID:  Good morning.

20          JURORS:  Good morning (in unison).

21          MR. MADRID:  Y'all have sat here for the

22  last week listening to the evidence in the case.  And

23  it's got to the point where after we speak with you, you

24  are going to go to the room that y'all have been going

25  to to take a break and where you meet every day and

1   you're going to sit down and deliberate and discuss the

2   evidence.  Just a quick point on the charge.  You are

3   going to get the charge.  And it can be confusing to sit

4   there and listen to 26 pages read to you.  I just want

5   to make a quick note on that regarding the

6   lesser-includeds of aggravated kidnapping and murder.

7                 In this case, we don't concede anything.

8   The idea that you can't consider or it's not going to be

9   that relevant to you that you could consider an

10  aggravated kidnapping or murder, I mean, if we were to

11  flip the script on this and Rudy was in this case and

12  the State -- the story that the State wants you to

13  believe, Rudy wouldn't be guilty of murder because he

14  was just a lookout.  You could say he was guilty of

15  kidnapping or aggravated kidnapping because he was a

16  lookout, right?  And then he abandoned or he was under

17  duress or whatever he is saying.  And that's an example

18  of somebody guilty of aggravated kidnapping and not

19  murder or capital murder.

20                And I want to bring that up to you because

21  the charge is important, the charge against Obel

22  Cruz-Garcia is important for the lesser-includeds.  The

23  Judge wouldn't put them in there if they didn't mean

24  anything.

25                The second point I want to make, I want to

1    ask each one of y'all when you go back there and you

2    deliberate, you -- each of you are going to have a

3    verdict.  Obviously, you're going to come together or

4    not come together, but in a case like this, you saw the

5    picture that Mr. Wood put up of Baby Angelo.  And I'm

6    sure during closing you might see it again.  And there

7    is pressure because of this little boy, this innocent

8    little boy.  And there is nobody in this courtroom that

9    would -- that doesn't feel that or know that emotion,

10   but I don't want that emotion to play a part into being

11   pressured into a verdict.  Because the verdict has to be

12   based on the evidence.  So, I want you to consider those

13   things.

14             As to the evidence, if you will remember,

15   this case started a week ago.  Mr. Wood came up here and

16   gave a compelling and a dramatic opening.  It was really

17   good.  He said something to the effect:  It was November

18   5th, 1992 and it had been 36 days since Baby Angelo went

19   mix.  Y'all remember that?  And it was a great

20   technique.  It's like in a movie where you have the

21   opening scene and then you flash back.  And you have

22   these characters, the grieving mother.  And you probably

23   had a vision in your mind of the grieving mother.  You

24   probably didn't have a vision that these were drug

25   dealers that didn't even tell the police who possibly

1  could have taken their son.

2              And then you have the character with the

3  bought of conscious.  After all these years, just had to

4  come clean.  And he was so scared out there that he

5  defecated in his pants.  You remember that?  He didn't

6  even testify to that.  He might be full of crap, but he

7  did not defecate in his pant.  He came up here and told

8  a bunch of lies.  But what the State wanted you to do,

9  what they wanted you to do at the end here with the

10 picture of Baby Angelo, is to feel that emotion.  But a

11 conviction for any case, and for capital murder, can't

12 be based on that.  It has to be based on more than that.

13             Now, I'm sure they'll tell you:  Yeah, we

14 have evidence, we have DNA, and we have medical, and we

15 have witnesses, but did they really?  Did they really?

16 I mean, they had a medical autopsy report that was one

17 page long.  Okay.  And because of the condition that the

18 remains were found, you know, they kind of used that as

19 an excuse to say:  Hey, we can't really prove up the

20 cause of death.  It was a sharp instrument and an

21 unknown object.

22             But the bones, if you remember on

23 cross-examination, there aren't any marks on the bones

24 and there isn't any proof of that.  You might say:

25 Well, yeah, because of the elements and all these

1   things, but you can't give the State a pass.  They have

2   to prove the case.  You can't just say:  Oh, well, the

3   evidence isn't there because such and such.  The

4   evidence is either there or it's not there.  And if it

5   is not there, that is a reasonable doubt.

6           The DNA didn't prove anything.  The DNA --

7   you remember there was a cigar, State's 32?  And the

8   cigar doesn't prove that Obel Cruz-Garcia was there at

9   the apartment.  And if you remember, these people were

10  all friends.  Even Diana Garcia said that he was there

11  that day.  And it's kind of an absurd story.  Think

12  about this cigar and a man coming in with a gun and a

13  ski mask on with a cigar.  It's absurd.  I don't think

14  people rob people like that.  He was there earlier that

15  day and it's very conceivable he left it there.  It

16  doesn't prove anything.

17          Rudy even said:  We were like family.  It

18  makes sense that the cigar was there, just as if you

19  were a smoker and you had an ashtray at somebody's house

20  and you left your cigarette.  It doesn't prove anything.

21  The State will tell you:  Well, there was the vaginal

22  swabs and the panties.  Again, it doesn't prove a sexual

23  assault.  It may prove sexual relations.  It doesn't

24  prove -- there wasn't -- you don't hear the SANE nurse

25  come in and talk about any kind of physical force or

1  tearing, anything that happened to Diana Garcia.  There

2  was DNA from her husband.  Nobody is saying he raped

3  her.  It's conceivable there was sexual relations

4  between the two.  There is nothing to show that.  There

5  is nothing to show what happened to the DNA for 15 years

6  if there was a third party and somebody had committed a

7  sexual assault.  We know that the DNA was in the Houston

8  Crime Lab for 15 years and we know nothing else.  That's

9  all that we know about that.  DNA doesn't prove

10  anything.

11             But where the State started their case was,

12  they had a 911 tape.  Again, that doesn't say anything

13  about a sexual assault.  And then Sergeant Devereaux.

14  And Sergeant Devereaux -- and it is very important when

15  somebody takes a little boy to identify who took this

16  little boy.  Now, nobody identified this man.  Okay?

17  And who they identified was two black males.  And this

18  is not a black male.  There was a distinction that was

19  tried -- that Sergeant Elliott, after all these years,

20  tried to make.  He tried to tell you in 1992 in Houston,

21  Texas we didn't know the difference -- we only knew

22  white, black, and Asian.  We didn't know the difference.

23             MS. TISE:  Objection.  That

24  mischaracterizes Sergeant Elliott's testimony.

25             THE COURT:  Members of the jury, you will

1  be reminded that the arguments of counsel are not

2  evidence and you will recall and rely on the testimony

3  from the witness stand in your deliberations.  That's

4  overruled.

5            MR. MADRID:  So, you will remember that he

6  discussed this.  And the reason it's important is, well,

7  there was people with HPD, U.P. Hernandez and Sergeant

8  Devereaux, that said:  Yeah, there is identifiers for

9  those things.  And the reason it is important is because

10  it was identified as two black males.  Okay?  Now, one

11  was a tall black male.  Deputy Perry is a tall black

12  male.  And so, we know -- this is common since.  You can

13  think of:  What is a tall black male?  Because you are

14  looking for these people.  It's important.

15            And the other distinction is what language

16  did they speak.  And somehow we didn't know that maybe

17  people from the Dominican Republic or Puerto Rico spoke

18  Spanish but were African descent in 1992.  This wasn't

19  in 1892.  This was 1992.  It's an absurd statement to

20  make.

21            Arturo, if you remember, he said -- he told

22  U.P. Hernandez -- he spoke about a black man.  And he

23  was saying he spoke English.  Diana Garcia Hernandez

24  said they didn't speak English or Spanish.  The

25  importance about this is Diana and Arturo, they dealt

1   drugs and they dealt with the Dominicans and Puerto

2   Ricans.  Arturo spoke Spanish.  He came up here with an

3   interpreter.  He would know the difference between an

4   accent of somebody from the islands, from Puerto Rico,

5   or Dominican, and somebody from his country of Mexico.

6   He would know the difference.

7                   So, this whole argument about, well, we

8   weren't sure if they were two African-American males or

9   someone of African descent that spoke Spanish.  It

10  doesn't really make sense because these people, who were

11  close friends and were dealing drugs, they dealt with

12  Puerto Ricans and they dealt with Dominicans who could

13  be people of African descent that spoke Spanish.  They

14  would know the difference in accents and would know what

15  they looked like.

16                  The reason it's important is the State

17  wants you to find this man guilty and he was never

18  identified, but two black males were.  Two black males

19  that spoke English.  And if you take it a step further

20  and you say:  Well, somehow in this scenario that they

21  gave, the second person that came and didn't even

22  speak -- which I didn't really understand, but they want

23  you to believe that one man came and spoke and the other

24  guy didn't speak.

25                  But even in that scenario, the one man that

1   spoke, spoke English.  And if he spoke English, he spoke

2   like a black male, that doesn't really make sense.

3   There was no -- there was not any testimony at all that

4   those were people that Obel Cruz-Garcia was dealing

5   with.  They really -- they can't put him in the room.

6   The other distinction they made were these masks.  There

7   was two masks.  And Rudy said that one of the -- that

8   they used pantyhose, which is another absurdity,

9   pantyhose and a cigar, if you want to believe their

10  story.  They had these pantyhose on their head and they

11  made a hole in the mouth or they were just regular

12  masks, but that's the importance of identifying people.

13              As to Diana and Arturo, remember they were

14  the first people -- they were the people that called the

15  police.  There is one thing that the State really can't

16  answer, and not anybody answered here, is that these

17  people were friends.  Okay?  And Obel Cruz-Garcia, he

18  supplied them with drugs.  He didn't have any reason to

19  steal drugs from them or steal money from them or take

20  their child or sexually assault Diana Garcia.  It

21  doesn't really make sense.

22              Rudy did, Carmelo Santana Martinez.  And

23  I'll get to that.  He had a motive to do this, but this

24  man didn't have a motive to do that.  These were people

25  that helped him make money and these were friends.  He

1     was there that day. He wasn't there fighting that day.

2     Diana Garcia said he was there earlier that day. But

3     getting back to the idea that it's not a stretch -- and

4     I don't get up here or take pleasure in trying to -- and

5     I'm not doing that. And I don't want you to hold this

6     against my client and think I'm trying to disparage

7     Diana Garcia. Say that, hey, she was with this man, but

8     I don't think that's consulting in any way. Things

9     happen in marriages. She was married to a man and then

10     she left that man for Arturo. I don't have a problem

11     with that. They have been together for 20 years or

12     something. So, it's conceivable that this happened.

13           What doesn't really make sense is that if

14     you look at State's 42, it's a lease, does it really

15     make sense to you that -- she said they were good enough

16     friends that she cosigned. And it says: This apartment

17     will be occupied by residents and Diana Garcia only.

18     The reason -- who is to tell you she hadn't been over

19     there? She told you she was over there. It was an

20     important testimony that I think could have gotten lost

21     during cross-examination. Have you ever been over

22     there? And if you remember -- it's either "yes" or

23     "no," it's not a big deal. You could see her sitting

24     there and thinking. She said: Just that one time. I'm

25     not sure what happened that one time. I know she's one

1    of the people that could be there.  I know she was there

2    without her husband.  And I know it's not a stretch that

3    it could have happened.

4              I also know that her husband said that he

5    didn't remember that Obel was there that day.  Okay?

6    Now, Angelo Garcia, Jr. likely was not there in

7    September.  It was most likely a school day.  So, the

8    son was away.  I mean, her husband didn't even know that

9    this man was there.  So, could have something happened?

10   Certainly.

11             Something else that I thought was real

12   important regarding that line.  Arturo was asked --

13   first he said:  Well, this is the man that raped my

14   wife.  And shortly after he was asked:  Did they ever

15   date?  Do you remember that?  Did they ever date?  Can

16   you imagine that?  Somebody rapes your wife and you are

17   asked:  Did they ever date?  I would be coming out of my

18   chair.  But he didn't.  It didn't phase him.  It's a

19   pretty insulting question, but one that has to be asked.

20   And all he said was -- he did that pause too.  He said:

21   Not that I know of.  Not that I know of.  Don't think

22   that something wasn't going on there.

23             And when we're talking about two black

24   males, there was another very important question that

25   was asked during cross-examination.  Did you know -- you

1  will remember there was Alice Lemone, who was your

2  neighbor, who said -- she said you were arguing with two

3  black males earlier that day when you were down by the

4  store.  And he paused and he thought and he said:  I

5  don't remember.

6          Don't you think he'd remember that?  This

7  little boy was taken.  And you would start to think:

8  Who could have done this?  Who could have taken him?  He

9  told the police all along:  We don't have any enemies, I

10 don't know who could have done this.  And he would say:

11 No, I didn't have -- anybody would say:  No, I didn't

12 argue with two black males because there was -- the

13 original description was two black males and he was

14 asked a question and -- if somebody else had seen him

15 arguing with two black males.  Not that I remember.  You

16 better believe you are going remember "yes" or "no."

17 And those kinds of answers lessen his credibility.

18          He also -- another big point during both of

19 their testimonies:  If anybody else could have done

20 this, who could have done this?  Right?  You remember

21 about a month before, a month or so before at their old

22 apartment somebody broke into their apartment.  And at

23 first, Diana didn't want to be forthcoming, but she

24 thought about it and said:  Yes, they took drugs and

25 money.

1              Does that sound familiar?  Because they

2 took drugs and money in this case, too.  About a month

3 before, somebody broke into their apartment and took

4 drugs and money.  You asked Arturo and you remember what

5 he -- they took a hat.  He couldn't even remember the

6 drugs and money.  They took a hat from him.

7              And why is that important?  Because they

8 were dealing drugs and somebody ransacked -- you could

9 look through the pictures -- their apartment that night,

10 and what do you think they were looking for?  They were

11 looking for drugs and money.  And there were likely

12 other people -- there were likely other people who would

13 have a reason to steal from them.  Obel didn't.

14              Now, you would think back in 1992 when this

15 happened that you would be telling the police:  You

16 know, I think Obel did it because he was mad at me

17 because of such and such.  Now, you have Sergeant

18 Devereaux, Investigators U.P. Hernandez and Elliott --

19 and I'm probably missing another -- and they said they

20 had a host of others.  Not one person came to testify

21 and said that Diana said that it must be Obel because he

22 was mad at me for whatever reason.  There was never any

23 testimony of that.  She never even said it.  You know

24 when she decided that Obel Garcia did this was in 2008

25 when Sergeant Mel came to her and said:  Hey, we got a

1   DNA hit on this.  Well, she had to say it then because

2   that revealed the relationship she never told her

3   husband about, but you would think all those years she

4   would have told somebody.  And she never did.  Because

5   she never believed it.  And because there was no reason

6   for Obel to do this.  He gained nothing from this.

7               There was one other witness that was put up

8   here shortly, Linda Hernandez.  And she said something

9   that was very telling and it was about Rudy, if you

10  remember during cross-examination.  And what she said

11  about Rudy was that she didn't trust him.  And her

12  mother didn't trust him.  And she got a bad vibe from

13  him.  But why?  He was always asking to take my little

14  boy to the store.  Doesn't that sound familiar?  Why

15  would this man want to take her little boy?  And she

16  felt uncomfortable about that.  And she wouldn't allow

17  that because she had that mother's intuition.  Because

18  we know as parents and -- we want to protect our

19  children and we know when somebody might harm your

20  child.  If they were truly friends, she would say:

21  Yeah, you can take him, do whatever you want to do.  But

22  she knew, she knew who Rudy was and she wouldn't allow

23  Rudy to go to the store with her son.  Well, isn't that

24  familiar?  Here we are with a kidnapping of a little boy

25  and Rudy was at the scene.

1            And then there is Angelita.  Okay?  She was

2   Obel Cruz-Garcia's wife in 1992.  And she came up here

3   and said something.  She came up here and said that

4   about two months after this happened, Obel confessed to

5   her.  This was 1992.  That's a big piece of evidence.

6   And I'm sure the State will talk to you about that.  Why

7   are we even here if he confessed, right, in 1992?

8            Now, she was good friends with Diana

9   Garcia.  She called her the next day.  These were good

10  friends.  Okay?  Now, she might have been in the

11  Dominican Republic a couple of months after, but we know

12  she came back.  She testified that she's been married,

13  she's been living in Houston, she has grown children.  I

14  think she's been married around 15 years.  There wasn't

15  one officer that came up here and testified and said:

16  Yeah, she told -- and you remember, she had a lawyer

17  from day one and she met with the police multiple times.

18  There is not one person that came up here and said:

19  Yeah, she told us that Obel told -- because you would

20  have heard it.  If she would have ever told anybody, you

21  would have heard this.  You would have heard it.

22            Why would she have done it all these years?

23  I tell you one reason.  One reason why is because she

24  absolutely hates this man.  Like many ex-wives would.

25  Not only is -- because that's her ex-husband, but he

1   completely bailed out on her.  Okay?  From one day to

2   the next, he left.  He left some rent money and left,

3   didn't see her ever again until she came to see him.

4   She claims she went to see him in the Dominican

5   Republic.  There's no proof of that either.  She has

6   great a dislike for him.

7              And the other reason is because of Rudy.

8   Remember Rudy is her close cousin.  When they came here

9   in the late 80s, it was with Rudy who came and brought

10  them.  Rudy got them in the drug trade.  You remember

11  she diminished her role in that and blamed it on all

12  Obel.  They were here from the late 80s to 1992 dealing

13  drugs for three or four or five years.  She wants to

14  diminished that.  He bailed on her.  And what happened

15  to her?  Rudy told us she went to prison for a drug

16  conviction.  Okay?  Don't you think she's going to be

17  angry at him?  He ran, he took off.  The way she saw it,

18  he ran and she gets stuck with the drug charge.  She

19  ends up doing a couple of years.  Of course she dislikes

20  him.  And, of course, she's going to protect her cousin.

21  Because you remember her cousin, who is not a very good

22  guy, and he came up here and testified, Rudy.  If you

23  remember, when she was asked:  How is Rudy?  Well, Rudy

24  is a good boy.  Rudy is a good boy.  You remember that?

25  Rudy is not a good boy.  Rudy is sitting up in the

1  federal penitentiary in Pennsylvania.  He is not a good

2  boy.  Rudy is a liar and he's self-serving.  And so now

3  we get to Rudy.  And the State told you, through their

4  witnesses -- and I'm sure they'll get up here and tell

5  you again.  Rudy never had a deal.  We never offered him

6  anything.  They didn't.  They didn't even charge him.

7  Give me a break.  There was nothing to offer him.  There

8  was no, hey, we're going to give you 30 years instead of

9  capital murder, we're going to drop this down to an

10  aggravated assault, or just a kidnapping.  Of course,

11  there is no deal.  There's not even a charge.  He got

12  the best deal.  And he told you that he is getting out

13  soon.  Okay?

14             And so, when the FBI went to talk to him,

15  they told him:  Hey, we got some DNA on Obel

16  Cruz-Garcia.  We're charging him.  And so, he starts

17  talking because he knows that he is coming.  So, he

18  wants to get the heat off of him and he points it all to

19  this man.  He never gets charged.  It worked, it worked

20  completely.  Okay?  Because he hasn't been charged.  He

21  didn't get a deal.  He didn't get charged.  He didn't

22  even get charged.  At the very least, reading that

23  charge the law -- the Judge is going to give you, at the

24  very least he's guilty of aggravated kidnapping because

25  when he went there, he had an idea that something was

1    going to go on.  He was behind the wheel.  He may have

2    not driven off, according to his testimony, but he was

3    at least the lookout and the get-away driver.  He wasn't

4    even charged with that.

5                So, this is it.  He wasn't offered

6    anything, he wasn't charged with anything.  He has an

7    incredible motive to lie.  He comes up here and says he

8    just wanted to -- he wants to give -- something about

9    the American justice system and do the right thing.  He

10   wants to go home.  He wants to go back to the Dominican

11   Republic.  And he's going to get his wish soon.

12               Now, what was he charged with?  You

13   remember?  His whole idea, his whole perception of what

14   he said is he was some -- pushed aside by this man.  He

15   was pushed aside.  And he kind of portray himself as

16   this weak character.  Somehow he didn't -- it just

17   didn't make sense.  You remember he said:  Well, what we

18   usually did is we went and took masks.  He described

19   what they usually did.  And that doesn't match his

20   testimony of being pushed to the side.  The idea that he

21   didn't have a gun or weapon that night doesn't make

22   sense.  They went to go do a home invasion robbery.

23               But now, remember why he was in prison.

24   Okay?  Why is he in prison?  It's not like he went away

25   and he didn't know how to do anything.  Within five

1   years, he got a 17-year sentence that included what?

2   Drugs and money.  Okay?  And he wasn't dealing some dime

3   bag.  He is doing 17 years in the federal penitentiary

4   for drugs and money.  Does that sound familiar to

5   anybody?  This case is about drugs and money and the

6   little boy.  And he had all of those elements.  He was

7   asking for this other little boy and whose mother was

8   creeped out by him.  He goes to prison for drugs and

9   money.  And that's what this case is about.

10              The State will tell you, you know, when he

11  changed his story, he didn't have all the same story as

12  the FBI agent.  The time passes.  And you remember they

13  tried to show you a statement -- somehow discredit their

14  own witness and showed you a statement and say:  Well,

15  this is his actual statement.  If you want to admit it,

16  admit it.  There wasn't anybody on this side of the

17  table --

18              MS. TISE:  Objection, Your Honor.  Counsel

19  knows you can't admit the statement into evidence.

20              THE COURT:  Stay within the evidence.

21              MR. MADRID:  You saw what you saw there.

22  And you heard.  The agent had no reason to come up here

23  and make up some story.  One thing that was important

24  about his description was:  Why would Rudy know all

25  these facts?  Rudy would know them because he was there.

1  Why would he know Baytown?  Because he sold drugs there.

2  That's what he told the agent.  He knew that already.

3  He even said during his testimony, although he tried to

4  change it, was that he was neighbors with Diana out

5  there.  So, he had every reason to do this.

6          The other thing that he had is he felt

7  pushed to the edges.  And he felt that Obel Cruz-Garcia

8  had taken over, according to him.  Obel Cruz-Garcia has

9  no reason to do this, but doesn't Rudy?  Doesn't Rudy

10  have a motive to go in there and take the drugs and the

11  money that Obel Cruz-Garcia was supplying?  Doesn't it

12  make a lot more sense that Rudy did this?  He was there.

13  It doesn't make sense that he went out there and this

14  innocent little boy was killed and he somehow went in

15  the other direction.  That's just -- nobody -- you just

16  can't buy that.  Things don't happen like that.  He just

17  said some ridiculous things.

18          Remember they went in there -- his story

19  differs than the two guns, a gun and a knife.  And

20  according to his story -- and this is a ridiculous

21  story.  After the killing, you've got Rogelio in the

22  front seat and Obel, I assume, driving, and Rudy in the

23  back seat.  And somehow he says that Obel told him to

24  throw the knife away.  So, you would have Rogelio, who

25  had the knife, give the knife to Obel, who is driving,

1   to give the knife to Rudy.  That's --

2                MS. TISE:  Objection.  That

3   mischaracterizes the testimony of the witnesses as to

4   where everyone was seated in the vehicle.

5                THE COURT:  Okay.  And I'll remind the

6   jury:  You will recall and rely on the testimony from

7   the witness stand in your deliberations.  I'll remind

8   you that argument of counsel are not evidence.

9                MR. MADRID:  The idea that the -- wherever

10  anybody was seated, it had to go through three hands to

11  be tossed is absurd.  And it just shows you that his

12  story isn't credible.

13               You ask:  Why would Obel just leave?  That

14  makes him guilty, right, because he left?  Well, I will

15  tell you.  You can surmise, you can deduce that when he

16  found out that the police were crawling all over that

17  place and he's selling the drugs there, it's a good idea

18  to get out of there.  Because he is going to go down for

19  something.  Not murder, not kidnapping, not capital

20  murder, but a drug case.  Just like his wife ended up

21  getting and going to prison for.  There is reason he

22  would leave.  There is a reason Rudy would do this.

23               You know, at the end of the day, the

24  evidence is clear the State also not proven their case

25  beyond a reasonable doubt.  And there is plenty of

1   examples that I've explained to you.  I don't think the

2   State is up here trying to do something wrong.  These

3   people work hard and the investigators and detectives

4   work hard, but you have to send them a message to get

5   the right person.  They have the right person in their

6   hands.  The right person is Rudy.  The right person is

7   Rogelio.  Remember, he was one that was out there.  But

8   it would be injustice to find this man guilty based on

9   lies, based on drug dealers, based on self-serving

10  convicts.  That doesn't get you there.  It doesn't get

11  you to guilty of capital murder.

12          So, I'm asking you on behalf of my client,

13  Obel Cruz-Garcia, to find him not guilty.

14          And at this time, I'm going to turn it over

15  to Mr. Skip Cornelius and he'll have a few minutes to

16  talk to you.

17          THE COURT:  Thank you, Mr. Madrid.

18          Mr. Cornelius, you may proceed.

19          MR. CORNELIUS:  Judge, how much time do I

20  have?

21          THE COURT:  He used 27 minutes.  So, you

22  have the remainder of the hour.  So, 33.

23          MR. CORNELIUS:  Okay.  I'm not going to

24  take 33 minutes.  Two lawyers down, two to go.  I'll

25  probably be the shortest.

1                I say that to you because I bet that all of

2      you can predict exactly what the defense lawyers are

3      going to say and what the State's lawyers are going to

4      say.  I've always thought of the jury as an organism in

5      some of its parts.  And I'm also profoundly impressed by

6      the fact that juries catch everything and they remember

7      everything.  It amazing how many times I find out that

8      the jury caught something I didn't catch in the

9      testimony, almost in every trial.  And why wouldn't that

10     be true?  You're twelve times as smart as I am, you have

11     twelve times as much as memory, and twelve times more

12     capacity to figure things out in a case.  So, it's not

13     unusual.

14                I'm not going to go into a bunch of

15     details.  Let me comment for a moment on the mumbo-jumbo

16     comment that is our Court's charge here.  It is

17     complicated.  The reason it's complicated is not to make

18     it mumbo-jumbo, which is not what Mr. Wood meant.  He

19     didn't mean anything offensive by that, but it's not

20     mumbo-jumbo.  It's complicated because it's very

21     complicated what they have to prove.  There are specific

22     things they have to prove.  And if they don't prove them

23     to you beyond a reasonable doubt, your sworn duty is to

24     return a verdict of not guilty.  And I'm sure you will

25     do that.  If they were not proven to you beyond a

1   reasonable doubt, I'm sure you will follow your oath,

2   but it's not mumbo-jumbo.  It's just specifically

3   applying to these facts what they have to prove.

4            And the lessers in there are there because

5   you might have, hypothetically, a reasonable doubt on

6   part of the case and not a reasonable doubt on the other

7   part of the case.  So, I don't know what you are going

8   to decide, you know.  And I have to tell you, I don't

9   know what happened.  I wasn't there.  The State wasn't

10  there.  You weren't there.  It's a tough decision to try

11  to reconstruct beyond a reasonable doubt what happened.

12  It's hard to do.  You-all said you wouldn't give them

13  extra credit because of the time or because of what they

14  don't have.  They either have it or they don't have it.

15           In 1992, something happened.  Back in

16  September of 1992, something happened and it probably

17  involved drugs and money, but I'll bet it's a far cry

18  from the story you have been told.  Police came out to

19  investigate.  U.P. Hernandez was assigned to help

20  because of his language skills.  And at the end of the

21  first part of the investigation, they were looking for

22  two black males.  1992.  The testimony is that they had,

23  as a part of their official police report, a section

24  where they had descriptors.  And Sergeant Elliott said

25  he is the one who filled them out.  White, black,

1  Hispanic, and other, which could include Asian or

2  whatever else they might want to put down.  That's the

3  testimony.  They put down two black males.  One large

4  and tall with an accent.  They put down not Hispanic.

5  Two black males.

6            MS. TISE:  Objection.  Mischaracterizes the

7  testimony of the witness.

8            THE COURT:  Once again, you are going to

9  recall the testimony from the witness stand and rely on

10 that in your deliberations.  This is argument of counsel

11 and not evidence.

12           MR. CORNELIUS:  My recollection of the

13 testimony is that there were boxes and they put -- they

14 checked the box for black males and put an "N" in the

15 box for Hispanics.

16           So, at the end of the day, they are looking

17 for two black males.  Now, the man that they had stand

18 up over there was not tall, he was not large, and he was

19 not a black male.  In 1992, I think everyone knew that

20 referred to people of African descent as black, even

21 though they weren't necessarily the color black.  These

22 descriptors were for race, not for the skin tone.  Black

23 man or black male was the race, not the skin tone

24 because we knew back then and we know now that people of

25 African descent can be very dark-skinned, very

1  light-skinned, and medium.

2            The fact that they're of African descent or

3  a black person doesn't tell you what color their skin

4  is.  Hispanics can be very dark, very light, and

5  everything in between.  This was two black men.  We knew

6  in 1992 that there were people of African descent who

7  spoke Spanish who were from Spanish-speaking Places.

8  U.P. Hernandez said what he was told was the man that

9  had the accent not Mexican, not white, a black man.

10            So, we rock along for 15 years and then

11  they get this DNA, which I will talk about in a moment,

12  and they go and they tell Diana Garcia:  We've got what

13  we believe is a DNA case on Obel Cruz-Garcia.  All of a

14  sudden, it's not a black man anymore.  It's Obel

15  Cruz-Garcia.  And they have -- they're stuck with the

16  problem of how do they explain away this black man box

17  checked on the police report.  So, we have this adoption

18  of the if their color is darker than mine, I call them

19  black.  And Sergeant Elliott is saying he understood

20  that they meant it was somebody with a color darker than

21  theirs.  He never wrote that in the report anywhere. No

22  one has said that that's ever been written down ever

23  anywhere or recorded in any way.

24            MS. TISE:  Objection.  Mischaracterizes the

25  testimony of Sergeant Elliott.

1          THE COURT:  That will be overruled.  Once

2   again, you're reminded that arguments of counsel is not

3   evidence.

4          MR. CORNELIUS:  I will settle for however

5   you remember it.

6          Okay.  That's a first big hurdle that the

7   jury will have to get over.  It jumps from two black

8   men, one large, tall, with an accent, to anybody with

9   darker skin than Diana or Arturo.  And those people are

10  all black.

11         Okay.  Arturo.  Couple of quick things.

12  Never told U.P. Hernandez the truth.  U.P. Hernandez

13  testified emphatically:  He never told me that he was

14  dealing drugs.  The truth.  Never told him.  He told

15  you, Arturo told you he told -- he told he was talking

16  to U.P. Hernandez and he said he told the truth, but he

17  didn't according to U.P. Hernandez.  Who are you going

18  to believe?  I said at the start:  How much credibility

19  are you going to give to two self-admitted drug dealers

20  and liars or U.P. Hernandez?

21         The injuries to his head.  Diana said that

22  while she was being sexually assaulted, he was being

23  beat, beat, beat.  Went on to describe how long the

24  sexual assault was and how he was being beaten the whole

25  time.  This man had an injury, no doubt, but there is

1   not even the breath of testimony to establish that he

2   had even a band-aid put on that injury, much less a

3   suture or a bandage.  And the picture in here of the

4   pillowcase with a little blood on it.  Remember the

5   testimony was:  Oh, he was covered with blood.  He was

6   bleeding everywhere.

7                 I will bet everyone on -- that little

8   amount of blood, sad for anybody to bleed, but that

9   wouldn't even be a good nose bleed.  I'm sure that

10  everybody here, and if you hadn't had it yourself,

11  you've seen a nose bleed that had more blood than that.

12                Diana's testimony.  Two black males.

13  Nothing about a Spanish-speaking black male or a

14  dark-skinned Hispanic.  Two black males, is what they

15  got from her.

16                So, now the issue with Diana.  Was she

17  sexually assaulted or not?  And we have to look to a

18  couple of things.  The first thing is this very

19  specialized skilled and trained RN, who was an expert.

20  Not just a nurse, but an expert nurse on doing rape

21  kits, on looking for things to see if someone has been

22  sexually assaulted.  Not a mark on her to support her

23  statement that she was sexually assaulted.  It doesn't

24  mean she wasn't sexually assaulted.  I understand that.

25  I understand there could be a case where a woman could

1  be sexually assaulted and leave no marks.  I understand

2  that.  And I'm not going to go into why there would be

3  marks and why there could be a situation where there

4  wasn't, but I'm also not going to discuss what their

5  evidence is not either.

6              Her testimony either supports that it's a

7  sexual assault or it doesn't.  And it doesn't.  It

8  doesn't support it.  The medical evidence to establish

9  that she was sexually assaulted is a wash.  There is no

10  physical evidence that she was forcibly sexually

11  assaulted as she told you.

12              The DNA.  That DNA lasted for 15 years.  If

13  you believe the DNA -- and before you believe it -- I

14  will cover this first.  There is a hole in this case for

15  15 years.  The cigar was collected, the rape kit was

16  done, and then what was done with it?  There's not

17  anyone that's come from the HPD Crime Lab to tell you

18  what was done with it.  Was it tested?  Was it not

19  tested?  How was it stored?  Who stored it?  Who checked

20  it out?  What was done with it?

21              We have Sergeant Mehl, who went 15 years

22  later to pick it up, and it looked pretty good, it was

23  packaged pretty good.  That's it.  That's the only

24  explanation.  Not a record, not a document, not a

25  witness, nothing to explain to you what was done with

1   that DNA evidence for 15 years.  The one thing we do

2   know is it lasted 15 years.  We don't know what the

3   quality control was.  We don't know what systems were in

4   place there to make you believe it, that it's a good

5   test.  We just don't know because there is no evidence

6   of it.

7             But we know that those sperm cells lasted

8   15 years.  You think they could last a few hours before

9   that night?  That sometime that day -- I mean, the point

10  is, this DNA evidence doesn't tell you when those sperm

11  cells were deposited or under the circumstances that

12  they were deposited.  It just doesn't -- it just doesn't

13  corroborate her testimony.  It doesn't prove that she

14  was sexually assaulted.  We will get to Rudy.

15            Now I want to talk to you a little more

16  about the charge here for a quick second.  This is not

17  mumbo-jumbo, either.  You are charged and instructed --

18  the Judge has to do it -- that if there is any witness

19  that testifies that has had a conviction within the last

20  ten years that's a felony, the Judge has to instruct you

21  why that's admissible.  It's admissible because the law

22  requires that you know that so that you can decide

23  whether you will believe that witness or not.  Because

24  felons are not honest.

25            Rudy is not a nice guy.  I mean, he got

1 twelve years.  He said he got convicted of a drug case.

2 And if there had been no cross-examination, you would

3 have thought he had a drug case.  He was up in

4 Pennsylvania in federal prison, just a drug case.  It

5 wasn't just a drug case.  He got twelve years and seven

6 months for that drug case.  And because a gun was used

7 in the drug case, got another five years stacked on top

8 of that.  He is not a nice guy.  You are entitled to

9 know that to decide if you are going to believe what

10 Rudy has said to you.  You are going to have to wrestle

11 with, are you willing to base a capital murder

12 conviction on a convicted felon, somebody like Rudy?  I

13 doubt it.

14             So, you've got a charge on that.  It's not

15 mumbo-jumbo.  It's what the law is.  I mean, it took all

16 day to prepare that charge.  I'm sorry, but it's the

17 handiwork of a whole lot of lawyers -- not just these

18 lawyers -- and a whole lot of judges -- not just this

19 judge -- working on the law to put it all out there for

20 you so that you know what you have to believe beyond a

21 reasonable doubt and what you are to consider under the

22 law.

23             Rudy, the great humanitarian.  Another part

24 of that charge is the accomplice witness rule.  It says

25 as it relate it Rudy, since he is, by his own admission

1   an accomplice, you cannot base a conviction on his

2   testimony standing alone.  You can't do it.  Even if you

3   believed him, you can't do it.  The law says you've got

4   to take his evidence, set it aside, whether you

5   believe it or not, look to the other evidence and see if

6   there is other evidence that you believe that tends to

7   connect the defendant to the crime.  You can't base it

8   on Rudy's testimony.  You couldn't base it on two Rudys

9   or five Rudys or ten Rudys.

10            MS. TISE:  Objection.  The jury can base on

11  Rudy's testimony as long as they have anything that

12  tends to corroborate it.

13            MR. CORNELIUS:  Okay.  I will make that

14  clear.

15            You can't base it just on Rudy's testimony.

16  It has to be corroborated.  That's why it's called the

17  accomplice witness rule.  It has to be corroborated.

18  You couldn't base it solely on two Rudys or five Rudys

19  or ten Rudys.  A verdict can't be based solely on the

20  accomplice witness.  That's the law.  It was the law

21  before I was born.  None of this stuff is stuff that

22  I've made up or is especially in this charge for me or

23  for the defendant.  This is the law.  And they knew that

24  going in here.

25            Now, the medical examiner's testimony is

1   very important.  You know, Mario Madrid started his

2   statement to you talking about how sad and tragic this

3   is and the picture of this poor little boy who is dead

4   now and it's horrible and there is no way that any

5   lawyer can ever make that right.  It is horrible.  But

6   just the fact that he's dead is not proof.  It doesn't

7   prove who did it.  And as I said in opening statement,

8   the greatest fear any lawyer has -- with this

9   responsibility would have is that you have this huge,

10  huge sympathy.  This poor little boy is dead and the

11  State is pointing their finger at somebody and there is

12  this huge desire to just convict him.  Don't look at the

13  evidence, don't work through the evidence.  I don't

14  think you will do that, but I think you understand that

15  I'm afraid of that.

16          So, the medical examiner testimony.  It's a

17  crying shame that all that was left were remains of that

18  boy, but I can't change that.  I can't rewrite history

19  and I'm stuck with what the facts are.  And the facts

20  are -- and, you know, I have the most profound respect

21  for Dr. Wolf.  He's a wonderful man, but the facts are

22  he has not one single medical shred of evidence to

23  determine how this child died.  Nothing.  He told you

24  straight out his conclusion that it's a homicide is

25  based on what everybody told him, not on the autopsy.

1  There is nothing in the autopsy to suggest how this

2  child died.  Not even drowning.  I thought he might say:

3  Well, if the lungs are filled up with water, the person

4  drowned.  Then I got to thinking about it, and there

5  could be another explanation for that.  You know, there

6  could be.  So, I understand why he said that.  Not even

7  drowning.  He can't say medically why this child died,

8  whether it was natural causes or how long he had been

9  dead, whether he was dead before he hit the water, died

10  in the water.  He can't say it from a medical

11  standpoint.

12          So, all the hearsay that he's told -- he's

13  told the child was abducted.  He didn't know the child

14  was abducted.  He's told what Rudy said happened.  He

15  doesn't know if that's true or not.  But he's told these

16  things.  Based on these things that he's told, he

17  concludes it's a homicide, but no medical proof.  Here

18  why that is important to you.  He either corroborates

19  Rudy's version or not.  And he does not corroborate

20  Rudy's version.

21          Now, Rudy is pretty crafty, you know.

22  Imagine Rudy.  He's in Pennsylvania.  He is up there

23  about to be released on a 17-years, 17-month pretty

24  major drug conviction and pistol conviction.  And the

25  FBI comes and they start to talk to him about a capital

1  murder case.  Oh, my gosh.  I thought I was getting out.

2  I don't know what's going to happen now.  And he lies to

3  them and he says:  I don't know anything about it.  And

4  they continue with him.  Nice young agent.  Very

5  sincere, I thought.  I don't know him, but I thought.

6  Probably pretty good at talking to people.  But Rudy is

7  smart.  He didn't talk Rudy into being the great

8  humanitarian that he wants you to believe he is.  Rudy

9  was playing that and he saw an opening.  Maybe if I just

10  tell them what I'm going to tell them, and, boy, I had

11  nothing to do with it, it's all this guy's fault.  I

12  didn't do anything, it's all this guy's fault.  And if I

13  can sell that story, maybe I will walk on this thing.

14  It worked so far.

15            But his story is not corroborated by the

16  medical examiner.  It is -- that's why I stood here,

17  that's why I had Dr. Wolf come over here to show you all

18  the bones that are recovered and how unlikely, virtually

19  impossible it would be that this child was stabbed and

20  missed every single bone.

21            MS. TISE:  Objection.  Mischaracterizes the

22  testimony of Dr. Wolf.

23            THE COURT:  I will remind the jury again

24  that the arguments of counsel are not evidence.  And you

25  will recall and rely on the testimony from the witness

1    stand in your deliberations.

2              You may proceed.

3              MR. CORNELIUS:  Well, I will abide by

4    however you remember the testimony.  I believe the

5    testimony was that there was not a mark on any of those

6    bones that would indicate the child was stabbed.  And I

7    did stand here and he did point to you where all the

8    bones were.  And I'm telling you that I think it's

9    virtually impossible to have stabbed that child without

10   hitting one of those bones.  And even if I didn't say

11   one word of that, are you -- you know, they put in their

12   indictment that the child was stabbed.  They put it in

13   there.  There's no evidence that child was stabbed.

14   They are going to change it now and say:  Well, maybe

15   his throat was cut because that could be done without

16   hitting a bone.

17             MS. TISE:  Objection, Your Honor.

18   Mischaracterizing the evidence in the case.

19             THE COURT:  Stay within the evidence,

20   Mr. Cornelius.

21             MR. CORNELIUS:  Yes, Your Honor.  I'm

22   trying to do that.

23             But they haven't made that.  Half of their

24   indictment they haven't made.  I mean, there is no

25   evidence the child was stabbed.  Not even Rudy says the

1  child was stabbed.  He was kind of just leaving and

2  throwing that out there.  Because, you know, he didn't

3  see what happened because he was over there defecating

4  in his pants.  And he must have told Mr. Wood he

5  defecated in his pants.  He didn't keep his story

6  straight from what he told them and what he told you.

7              And one of the most telling things about

8  Rudy is how do you forget that?  He didn't tell the FBI

9  agent that.  He had all this other time, all this other

10 time from 2011 to think about this.  And in his

11 grandiose state, what a great person he is with this

12 great conscience, he's added to his story that he was

13 over defecating in his pants or on the ground while this

14 child was killed.  That's not in his statement.

15             And for him to -- don't you know that the

16 FBI agent is smart enough to ask him about how he would

17 know how to get over there to Baytown?  And he said:

18 Oh, I had friends and people I sold drugs to over there.

19 Did he tell you that?  He told you not only that that's

20 not true, but he never said that to the FBI agent.

21 Remember when he told you that?  If y'all believe Rudy

22 and base your verdict on Rudy, I have lost the case

23 before it ever started.

24             Okay.  That's as far as I'm going to get

25 into the details.  You've heard enough from me.  Couple

1    of three things and I'm going to sit down, just general

2    things.

3              First of all, the State has the right,

4    because they have the burden of proof, to open the

5    arguments, which is very valuable.  The first -- these

6    things are called arguments that we're doing, final

7    summation.  They have the right to be the first voice to

8    speak to you and make that first impression and the last

9    voice to speak to you and make that last impression.

10   They have that very valuable -- those two very valuable

11   rights because they have the burden of proof.  If they

12   don't convince you beyond a reasonable doubt, as you

13   know, your duty is to return a verdict of not guilty.

14   We don't have to convince you one way or the other.

15             Now, I hope you know me well enough to know

16   that if I could get back up after Ms. Tise, if the law

17   allowed me -- because she's going to be able to respond

18   to my argument, but I won't be able to respond to her's.

19   But I hope you know me well enough to know I could if I

20   had the opportunity.  Would love to, but I don't have

21   that opportunity.

22             Now, two suggestions.  And it's not this

23   case, it's not this jury.  It's a suggestion I always

24   make.  Be cognizant of the fact that everybody on this

25   jury has the same rights as everybody else.  Everybody's

1   vote is just as important.   Everybody's opinion is just

2   as important.   Not even the foreman has any more

3   authority than anybody else on the jury.   You are all

4   equal.   Respect each other.   You probably may not have

5   the same opinions on everything.   Hear everybody out,

6   you know.   Don't go back in there with your mind made

7   and I'm not changing my mind, no one could ever change

8   my mind.   Don't do that.   My suggestion is, don't do

9   that.

10          Go back in there and if you have an opinion

11  on things, you have an opinion.   Share it if you want

12  to.   You don't have to, but share it if you want to.

13  Listen to what everybody else's opinion is with an open

14  mind.   But if at the end of the day, you have a

15  reasonable doubt and you've listened to what everybody

16  had to say and you are not convinced in your own heart

17  and in your own mind beyond a reasonable doubt, stick to

18  your verdict, the same as you would want anybody to

19  stick to their verdict for you or somebody you know and

20  love.

21          A lot of reasonable doubt in this case.   We

22  ask you for a verdict of not guilty.   Thank you.

23          THE COURT:   Thank you, Mr. Cornelius.

24          Ms. Tise, you may proceed.

25                    **STATE'S CLOSING STATEMENT**

1          MS. TISE:  Thank you, Judge.

2          Ladies and gentlemen, I came here this

3    morning and I had some things prepared to say to you,

4    and all of that is gone.  Because I want to respond to a

5    lot of things that you have been told here today.  And

6    I'm going to forget some of them, so I want each of you

7    to remember the evidence that you heard.  And when you

8    go back and think about some of the arguments that you

9    just heard, I want you to remember the part of the story

10   that they are leaving out because that's what you heard

11   so far.

12         I have to be, as a prosecutor, responsible

13   for the whole story, Justin and I.  And that's why we go

14   last, because we're responsible for what's been

15   presented to you.  Ladies and gentlemen, I'm not going

16   to stand here and tell you half-truths to try to get you

17   to come to a certain conclusion.  I'm counting on you to

18   listen to the evidence.  I'm counting on you to remind

19   your fellow jurors of everything that was said by the

20   witness, not just this much of it that helps the

21   defendant.  And I'm going to give you a couple of

22   examples of what I'm talking about.

23         Dr. Wolf.  Now, the defense has stood up

24   here this morning and made a big point about the fact

25   that those bones that you see in the autopsy that was

1  done on Angelo Garcia, Jr. don't show any injuries.

2  Wow, that must mean he is not guilty of capital murder.

3  I'm counting on you to remember the rest of what

4  Dr. Wolf said.  Remember?  There is a whole lot of bones

5  that aren't there and there are a whole lot of places

6  that that little boy could have been stabbed or cut that

7  we never know based on the bones that we have.  Wow, why

8  weren't you told that part of the story?  Well, because

9  that part of the story doesn't help the defendant.

10           I'm responsible for the whole story and you

11  hold me accountable.  I will tell you the whole story.

12  And I'm not going to leave out and talk about half of

13  what a witness said and not talk about the whole thing,

14  I promise you that.  That's not my job.

15           Let me give you another example, another

16  example of half the story.  The SANE nurse.  She came

17  here and she said:  Well, there were no injuries.  Wow,

18  that must mean Obel Cruz-Garcia is guilty -- is not

19  guilty of capital murder according to the defense

20  attorneys.  No.  Let's talk about what else the SANE

21  nurse said.  And I want to say she said 95 percent -- it

22  was a very high percentage -- of rape cases that she

23  does SANE nurse examinations on --

24           MR. CORNELIUS:  Objection.  Outside the

25  record.

1              MS. TISE:  -- do not have any injuries.

2              THE COURT:  Overruled.  But I will remind

3    the jury that you recall the testimony from the witness

4    stand and that is -- that will be your guide in your

5    deliberations.  Arguments of counsel is not evidence.

6              MS. TISE:  Let's hear the whole story, not

7    just isolate what parts of a witness said.  Do it all

8    because it's all important.  Those are just two

9    examples, ladies and gentlemen.  And I hope to address

10   some more in the rest of my argument, but I want to talk

11   about a couple of other things that have come up here

12   today, some things that are pretty perplexing to me.

13   And the first one is, now all of sudden today, according

14   to Mr. Madrid, Rudy is the killer.  He is one that has

15   all the motive and all of that stuff.  Wow.

16              Well, let's look at the crime scene.  Okay?

17   Let's think about that.  We know that two masked men

18   went up into Diana Garcia's apartment that night, right?

19   Two.  We know that the first one they saw, to the extent

20   that they could with the mask over his head.  They saw

21   him.  They saw that his skin on his arms was dark.  They

22   could only see his features through the holes in the

23   mask.  Not saying to you that they got to just gaze at

24   him for long periods of time, because they didn't.  It

25   was a dark room, but they saw him.  And he was tall and

1   he was a big man.  That man was not Rudy.  That's why I

2   got him off the stand and put him over here and brought

3   Roger out into the courtroom.  Rudy is not dark-skinned.

4   Rudy is not tall.  Rudy is someone that they know.

5              So, don't you know that when they heard

6   that man talking to them and said his accent was

7   strange, they would have known if it was Rudy.  Rudy had

8   been to their house all the time.  They were like

9   family.  That man was not Rudy.

10             We know that the second man who came into

11   that apartment that night, the second man is the man who

12   raped Diana.  Also, not Rudy, whose DNA was compared to

13   the rape kit and found not to match.  Not Rudy.  That

14   alone, ladies and gentlemen, corroborates what Rudy

15   said.  Rudy didn't come up to the apartment that night.

16   He was down in the car, just like he said he was.

17             Ladies and gentlemen, if Obel Cruz-Garcia

18   was not the one, if his DNA was there from some

19   consensual sexual encounter that they made up out of

20   whole cloth -- and there is no evidence of that -- where

21   is the DNA of the guy who raped Diana?  Where is it?

22   Why don't we have it?  If at some unknown time Obel

23   Cruz-Garcia had a consensual relationship with Diana,

24   again, that there is no evidence of, where is the DNA of

25   the guy who raped her?  She told you he ejaculated.  And

1    I don't mean to be graphic, but she told you she felt it

2    running down her legs.  Where is his DNA?  His DNA is

3    not there because the person who raped Diana that night

4    is that man.  And it's no mistake that his profile is

5    the major profile that was in her panties and it matched

6    the DNA on the cigar.

7                    Ladies and gentlemen, their argument is a

8    straw man.  It's a straw man because there is nothing

9    behind it.  It is just a façade.  There's no evidence of

10   it and it's not supported by the physical evidence at

11   the scene.  And you don't have to believe Rudy.  That's

12   just common sense.  That's all it is.

13                   The other thing that's a straw man is this

14   whole argument about two black men.  I want you to think

15   really hard, because it got complicated about the

16   evidence that night and what Sergeant Elliott said.

17   Okay?  Think about that real hard.  Remember on

18   cross-examination how Mr. Cornelius was asking him and

19   asking him:  You said two black men?  And

20   Mr. -- Sergeant Elliott was saying:  From the very

21   beginning, we knew we were looking for two dark

22   complected males, dark complected black Hispanics.  That

23   was clear.  This is --

24                   MR. CORNELIUS:  Judge, I'm going to object.

25   That's outside the record.

1        THE COURT:  The jury will recall the
2   evidence from the witness stand and rely upon that in
3   your deliberations.
4        MS. TISE:  And I will just remind you of
5   the exact moment in time when this happened.  It was on
6   Mr. Cornelius' cross-examination:  Where, Sergeant
7   Elliott?  Where, where, where, where?  Show me in your
8   report where you said that?  And Sergeant Elliott very
9   calmly said:  Right here in the suspect screen.
10  Remember that?  Right here in the suspect screen.
11  That's where we put it.  The suspects screen that was
12  filled out right after that very first night, is where
13  he documented that.
14       MR. CORNELIUS:  That's outside the record,
15  Judge.
16       THE COURT:  Once again, I'm going to tell
17  the jury that they recall the evidence from the witness
18  stand and they rely upon that in their deliberations.
19  Arguments of counsel are not evidence.
20       MS. TISE:  And the officers were under no
21  misconceptions about that from that very night.
22  Mr. Cornelius' argument tries to suggest to you that
23  they came up with this whole black Hispanic thing in
24  2008 when the DNA came back.  No, that's not what they
25  were doing.  From the very beginning, the officers knew

1  they were looking for two black Hispanics.  And I'm not

2  going to belabor the point that was made to you time and

3  time again from officers and Hispanic civilian

4  witnesses.  That is a reference term that is common in

5  the Hispanic community for individuals from the central

6  American part of the country who have darker skin and

7  speak Spanish in a slightly different accent and much

8  more rapidly than normal Hispanics, Mexican Spanish that

9  we hear here in Texas.

10           You heard that time and time again.  Again,

11  that's a straw man.  Because, honestly, you are trying

12  to impeach witnesses based on their description of

13  someone who saw this much of someone's skin

14  (indicating).  That's not what this is about.  And I

15  hope that you don't spend your time in the jury room

16  trying to make Diana and Arturo look like a bunch of

17  liars because they saw this much of a person's arms and

18  described the person in the way that they know as

19  members of the Texas Hispanic community as black males.

20  I hope that's not what y'all think this case is about.

21  Please tell me that it's not, because it's too

22  important.  That's a straw man, something to distract

23  you from what this case is about.

24           Ladies and gentlemen, this case is about a

25  6-year-old by the name Angelo Garcia, Jr. and the

1  horrible, horrible people who killed him.  On October

2  1st, 1992, citizens in Harris County woke up to hear the

3  news of a shocking story that that 6-year-old boy was

4  asleep in his bed, in a place where 6-year-old boys

5  should be the safest, his home.

6           While he was sleeping, two masked men broke

7  the door down to his house, came in bearing guns, they

8  tied up and gagged and put a pillowcase over the head of

9  his stepfather and proceeded to pistol-whip him.  Then

10  they raped his mother right there in front of him.  And

11  I'm sorry, I know that Arturo may not remember -- he

12  doesn't remember that he passed out, although he told

13  U.P. Hernandez in his statement the very next day.  I

14  think we can take what he said on October 1st, he passed

15  out just like Diana said he did.  And he put that in his

16  statement on October 1st at 4:30 in the morning.

17           And Arturo may not remember Angelo's

18  screams because he was passed out, but I can tell you

19  that Diana Garcia remembers those screams.  And I

20  guarantee you she hears it every day of her life.  And I

21  guarantee you she'll never forget them.  That's what

22  happened in that bedroom that night to that little boy,

23  he was snatched away.  And on October 1st, 1992, we here

24  in Houston were hearing the story and no doubt people

25  were shocked.  Because that doesn't happen every day.

 1              It was about a month later when we turned

 2    on our news channels again and we heard the

 3    heartbreaking news of what had happened.  We heard that

 4    that little boy was found on a desolate, dirty, isolated

 5    beach in Baytown, Texas.  And all that was left of him

 6    were his little bones and the tattered remains of those

 7    Batman pajamas that he wore to bed that night.

 8              You know, we know what happened to Angelo.

 9    We know the story now.  And I hope that after four days

10    of hearing the excruciating details of it, you've not

11    immuned yourself to the horror of it because it was

12    horrible, horrible.

13              Ladies and gentlemen, it goes against our

14    most basic instinct, which is to protect our children.

15    Whether you are a parent or not, we, as a society, have

16    that innate instinct to take care of those who can't

17    take care of themselves.  And when someone will totally

18    throw that out the window and take the life of one our

19    children, we all take it personally.  And you should.

20    Angelo Garcia, Jr. was that sweet little boy with

21    freckles on his nose and sky blue eyes.  He was in the

22    first grade.  He liked Batman, Spiderman, and Ninja

23    Turtles.  He was excited because some neighbors had

24    given him a little picnic table that they had made and

25    he was outside with them.  His mom was making tortillas

1   for the neighbors.  Arturo was out there, hobnobbing

2   with the neighbors.  This is what was going on in the

3   evening hours.

4            Angelo.  Can't you see him?  Rode in on his

5   little bike and dropped it carelessly at the front door,

6   as little boys do.  And he very carefully took that

7   chain and locked it, but he didn't put it around the

8   post.  That's Angelo.  Angelo.  Can't you just see him?

9   Can't you just see him running in the house excited

10  about those tortillas, throwing his shoes in the corner

11  of the closet?

12           Can't you just see him, ladies and

13  gentlemen, carried out of that apartment in the middle

14  of the night in the arms of that man?  Carried like a

15  little lamb.  And don't you know he wasn't quiet because

16  he felt like he was among friends?  Don't you know?

17  Don't you know that he was quiet because he was

18  paralyzed by fear, because of what had just happened in

19  the apartment?  Don't you know that's why Angelo was

20  quiet?  Don't you know when they put him in the back

21  seat of the car and drove away with him, don't you know

22  what must have been going through his mind?

23           Ladies and gentlemen, what happened to

24  Angelo Garcia, Jr. is something that we, as a society,

25  can't fathom and can't tolerate.

1           Lots of officers put a lot of time into

2    this case, investigated it.  You know that the feds were

3    involved.  You know that many media stations were

4    putting out stories and putting it on "America's Most

5    Wanted."  But, ultimately, the case went cold.  And

6    Angelo Garcia became just a name on a list with

7    thousands of other cold cases that are unsolved in the

8    city of Houston.  And that's too bad.

9           And there is a reason why that happened.

10   The reason was, as the officers told you, that Obel

11   Cruz-Garcia was the person that was their primary

12   suspect from absolutely the very beginning of the case

13   and he was gone.  He was gone.  That's why the case went

14   cold.  It's not that they all of a sudden found out that

15   Obel Cruz-Garcia was a suspect in 2008 when they got the

16   DNA.  They were looking for Obel Cruz-Garcia for years.

17   Eric Johnson talked about that.  They had people in

18   Puerto Rico in very dangerous conditions looking

19   specifically for him.  And he was gone.

20           Ladies and gentlemen, if it weren't for

21   Sergeant Eric Mehl and the fact that he reopened this

22   case, the defendant would have never been called into

23   this court to answer for what he did.  And where did

24   Sergeant Mehl start?  He started with the DNA.

25           Let's talk about the DNA evidence in this

 1  case.   There are lots of good reasons why Obel

 2  Cruz-Garcia and his defense team want to discount the

 3  DNA.   Because it says if there is a 1 in quadrillion

 4  chance that it's him -- those are some pretty steep

 5  odds, Mr. Cruz-Garcia -- I think we can safely say it

 6  had to be you.   And I don't care about quality control.

 7  Our expert witnesses told you that that evidence was

 8  stored and it was in pristine condition.   They retrieved

 9  the cigar from the property room.   Nobody had ever

10  thought to look at it until we learned what we can do

11  with epithelial cells years later.   The sexual assault

12  kit was stored in an annex.   It was in great condition

13  when they got it out.   But no matter what, you cannot

14  contaminate evidence to put DNA there that wasn't there

15  before.   That's just not possible.   So, even if it

16  wasn't stored in the best of conditions, it's not going

17  to create a result that wouldn't have been there in the

18  first place.

19            And it's even more specific than that,

20  ladies and gentlemen.   It's not going to put sperm cells

21  on the panties and the vaginal swabs that weren't there

22  to begin with.   It's not going to happen.   Ladies and

23  gentlemen, you can believe a crazy story if you want to.

24  You can believe, if you want, that Diana Garcia left her

25  20-year relationship and moved in with the love of her

1  life, who she is still with today, and her husband was

2  home -- and here is another half the story that you got.

3  She said if Obel Cruz-Garcia came by that day, he may

4  have, but he only dealt with Arturo.  Remember that

5  second half that the defense didn't mention?  She didn't

6  know why he was there.  She didn't see him herself.  He

7  was out there dealing with Arturo.  Arturo was there.

8  Her son was there.  They were out dealing with this

9  picnic table.  She was making tortillas.  And if you

10  think that somewhere in there she had consensual sex

11  with the defendant, who is her drug supplier and 15

12  years her junior, I think you're crazy.  There is no

13  evidence of that.  That didn't happen.  It did not

14  happen.  It comes to you with no evidence to support it.

15  Only because the DNA evidence is so strong, they've got

16  to come up with a way to explain it.  And that's the

17  best they could do.  Ladies and gentlemen, they can't

18  explain it.  And on the DNA alone, you could convict the

19  defendant.

20           The talk about the jury charge being

21  complicated, the defense told you it's complicated

22  because that's how hard our burden is.  No, ladies and

23  gentlemen.  It's complicated because that's how many

24  choices you have of ways that you can convict this

25  defendant.  You have a multitude of different choices

1  under which you can find him guilty.  And you will

2  notice when you read the charge that between every

3  paragraph, that is delineated for you.  Over and over

4  again the charge says:  You can believe this string of

5  occurrences, or you can believe that string of

6  occurrences.  It's all the different ways that you can

7  make him a party, and whether you believe he was stabbed

8  or whether you believe it was some other unknown

9  manner.  Lots of ways.  And that's why it's so long.

10  Those are choices.

11           I submit to you that you see at the very

12  best on Page 6 of the jury charge where the main choices

13  are laid out to you when it goes on into seven, where

14  the first choice is you can basically find that he did

15  it himself like Justin told you.  You knew going in what

16  Rudy was going to say.  We knew that the second choice

17  was really your best one.  We ask you to find him guilty

18  as a party because what we believed happened is the

19  defendant directed and encouraged  --

20           MR. CORNELIUS:  Objection to putting

21  beliefs into the argument, Your Honor.  It's improper.

22           THE COURT:  That will be overruled.

23           MS. TISE:  What the evidence supports is

24  that the defendant directed and encouraged Roger to kill

25  the little boy.  And we also knew that -- well, Rudy

1  couldn't say how it happened.  He didn't see the actual

2  event.  You can use your common sense, like Dr. Wolf

3  does, and you can determine that from what Rudy said,

4  that maybe his throat was sliced, maybe he was stabbed.

5  Or, you can say:  You know, we don't know, it's an

6  unknown manner and means.  And all of that is perfectly

7  fine.  And you-all don't have to agree on which way you

8  think it happened.  Some of you may think one thing,

9  some of you may think another.  And that's fine.  He's

10 still guilty.

11            Ladies and gentlemen, the witnesses who

12 came here to talk to you are very important.  You can

13 convict the defendant on his DNA alone because it ties

14 him to the sexual assault.  And under the co-conspirator

15 option which you are given, if you believe he committed

16 the sexual assault, which is one felony, and another

17 felony, the murder of the child results, he's guilty as

18 a co-conspirator.  So, you could literally stop with the

19 DNA, but you don't have to.  You have all this other

20 evidence that corroborates it.

21            You have Angelita, who is the most

22 compelling of all.  And the defense didn't really have a

23 lot to say about her because what are they going to say

24 about a woman who takes the witness stand and cries and

25 sobs about what is probably her most shameful personal

1    choice of her life, her decision not to tell what she

2    knew.  Those were her friends.  Why didn't she tell?

3    Well, because he told her:  I'm loose in the Dominican

4    Republic months after the murder.  The Dominican

5    Republic, where she was born and raised and where all

6    her family lives.  And he also told her that he would

7    kill her and he threatened her family.  And I'm sorry,

8    but it would take a big person to walk out of a country

9    like the Dominican Republic where your ex-husband, who

10   you know what he's capable of, is living and is loose,

11   and say:  I don't care about my family, I'm going to go

12   rat him out.  So, she made the decision not to do it,

13   but she came here and she told you what she knew.  And

14   she did it through tears.  And her anguish was readily

15   apparent.  And I don't know how you can listen to what

16   she said and not believe every word of it.

17              I also want to ask you about another part

18   of her testimony, something that she did tell the police

19   from the very beginning.  She did tell the police that

20   on the morning after the kidnapping occurred, she

21   confronted her husband and said:  Hey, Angelo, has been

22   kidnapped, let's go see Diana, let's go see if we can

23   help her.  And how did he respond to that?  No, I'm not

24   going over there.  These were their friends.  No, I'm

25   not going over there.  And you need to get out of here

1   because the police are going to be here soon.  She

2   looked at him, this man she was married to, and she

3   said:  Did you have something to do with what happened

4   to Angelo?

5               Ladies and gentlemen, what kind of woman

6   asks that question?  I will tell you.  A woman who knows

7   her husband all too well.  Did you have something to do

8   with it?  And how did he respond?  Silence.  That tells

9   you a lot.  And while Angelita was packing her things to

10  move away, while the defendant -- while Angelita was

11  making arrangements to go visit her friends who had lost

12  their son, the defendant was packing his things to move

13  to Puerto Rico.  While Angelita was pondering what had

14  happened, the defendant was out washing Angelo Garcia,

15  Jr.'s blood out of the back seat of his car so he could

16  sell it.  While she was sitting there trying to figure

17  out where to go and what to do and where to stay, he was

18  buying a one-way ticket home.  And he never intended to

19  come back.  That tells you a lot.  He left.

20              The 28th Chapter of Proverbs says:  The

21  wicked flee so no one pursues them, but the righteous

22  are as bold as lions.  Ladies and gentlemen, there is

23  the wicked right there.  And you can ask yourself why he

24  left and why he forfeited on a bond on a case pending

25  out of this very court to do it the day after Angelo

1    Garcia, Jr. was killed and that tells you a lot.

2              You have lots of other witnesses.  You have

3    Linda Hernandez, who had no dog in this hunt, who came

4    in here and told you that that man and Rudy came to her

5    apartment in the middle of the night.  And then you have

6    Rudy telling the very same thing and telling you why

7    they were looking for a car in the middle of the night.

8    You have Rudy giving you other information time and time

9    again about the case that even Agent Ebersole didn't

10   know corroborating other facts that we've known since

11   1992.  Like the rock that Randy Rhodes told you about on

12   little Angelo Garcia, Jr.'s torso buried in the mud.

13   And Rudy, all of those years later, telling us exactly

14   how it got there.

15             You know, the defense can cast stones at

16   Rudy all day long.  And I'm not here to tell you that

17   he's perfect, because he is not.  But I'm here to tell

18   you that there is only one reason why he's here and

19   that's because he got sick of living with it.  How in

20   the world could the State have offered him anything for

21   his testimony when we didn't know what his testimony was

22   going to be?  We had nothing on Rudy when Sergeant

23   Ebersole went to talk to him.  He was not under threat

24   of any kind of indictment or charges.  We had nothing.

25             Think back to the evidence you heard in the

1    case.  At best, we could put Rudy with the defendant at

2    2:00 to 3:00 in the morning looking for a car.  We have

3    nothing to tie him to the original crime scene.  He

4    didn't match the descriptions of the guys who were in

5    there and his DNA didn't match.  Nothing.  The reason we

6    didn't negotiate with Rudy about a deal on the case is

7    because until Rudy wrote it down in that written

8    statement, we had nothing.  How could we have offered

9    him something for something we didn't know existed or

10   that he had?

11             So, the defense puts the cart before the

12   horse when they make the argument that, oh, the State

13   didn't charge him and that's why he told.  No, he told

14   first.  He told first in 2008 -- I mean 2011 when

15   Sergeant Ebersole talked to him.  That's when he told.

16   And he wrote it down and he is nailed to it.  And that

17   happened before we even knew that there was any

18   connection.  So, that whole argument fails.  It doesn't

19   matter.  It's not what happened here.

20             Ladies and gentlemen, you have a

21   combination of evidence in this case that the defendant

22   just can't get around.  You have DNA.  You have Angelita

23   who told you that the defendant admitted this case to

24   her.  And with great shame, she admitted that she didn't

25   tell anybody.

1              You have Rudy, who filled in all the gaps

2    for you.  And those gaps are corroborated by evidence

3    that we have known for years.  You have Linda Hernandez,

4    who puts him out looking for a car just hours afterwards

5    and tells you that he came from Baytown.  You have all

6    of that evidence, ladies and gentlemen.  There is no

7    reasonable doubt here.  And, basically, I stand here in

8    front of you today on behalf of all of those police

9    officers, all of those police officers who told you that

10   they couldn't put this case behind them.  I stand here

11   on behalf of you today for Diana Garcia, who gave up her

12   son.  I stand here on behalf of Angelo Garcia, Jr., who

13   didn't get the chance to finish the first grade.  And I

14   stand here on behalf of countless citizens of Harris

15   County who heard that story on October 1st, of 1992, and

16   said to themselves:  Put me on that jury, put me on that

17   jury.  I won't stand for someone doing what that man did

18   to little Angelo Garcia, Jr. over money and drugs.

19              Today is the day, ladies and gentlemen.

20   Today is the day.  Today is the day that twelve of you,

21   fourteen, will stand up and I will sit down.  And I will

22   leave it in your hands.  I hope by your verdict you tell

23   this man that you can run and you can hide for a while,

24   but justice is going to catch up with you.  And that's

25   who we are, we're justice, and we're here for you today.

1   And we won't leave and we won't give up and we won't

2   stand for it until you've answered for what you did to

3   Angelo Garcia, Jr.

4              When you stand up, I want you to look

5   across the courtroom at that man with the resolve of

6   fourteen citizens of Harris County who aren't going to

7   put up with that.  And I ask you to find him guilty of

8   capital murder because that's what he's guilty of.

9              THE COURT:  Thank you, Ms. Tise.

10              Ladies and gentlemen of the jury, at this

11  time, all of the evidence, the Court's charge, and the

12  closing arguments of counsel are before you.  I'm going

13  to hand to the bailiff the charge together with the

14  verdict form.  They will be left with you in the jury

15  room.  And once all the members of your jury are present

16  and assembled, you should -- at that point, the case is

17  formally submitted to you and you should select your

18  foreman and begin your deliberations.

19              Please step down from the jury box and

20  accompany the bailiff into the jury room.  We stand in

21  recess until you've reached a verdict.

22              (Jury deliberating)

23              (Open court, defendant present, no jury)

24              THE COURT:  Please be seated.

25              Court is in recess until the jury rings.

1                    (Recess)

2                    (Open court, defendant present, no jury)

3                    THE COURT:  Back on the record in Cause

4   No. 1384794.  We have received a note from the jury.

5   The question asks:  Are we only allowed to consider the

6   interpreter's response of the witness in English and not

7   the Spanish response as heard by Spanish-speaking jury

8   members.  Signed, Foreman of the Grand jury.

9                    And after discussion with both lawyers, the

10  Court's response will be:  The interpreter's response is

11  the official record and evidence in the case.

12                   Do you have any objection, Mr. Cornelius?

13                   MR. CORNELIUS:  No objection, Judge.

14                   THE COURT:  Ms. Tise?

15                   MS. TISE:  No objection.

16                   THE COURT:  Very good.  It will be sent

17  back to the jury.

18                   Deputy Perry.

19                   (Recess)

20                   (Open court, defendant present, no jury)

21                   THE COURT:   Let the record reflect that

22  the attorneys for the State and the attorneys for the

23  defendant are present in the courtroom.

24                   I have received a message from the jury

25  that it has reached a verdict.  And the defendant, Obel

```
 1   Cruz-Garcia, is seated at counsel table as well.
 2              Bailiff, please bring the jury into the
 3   courtroom.
 4              THE BAILIFF:  Yes, ma'am.
 5              (Open court, defendant and jury present)
 6              THE COURT:  Please be seated.
 7              We're back on the record in Cause
 8   No. 1384794, the State of Texas vs. Obel Cruz-Garcia.
 9              Let the record reflect that the attorneys
10   for the State and the attorneys for the defendant are
11   both present.  The defendant is present at counsel
12   table.  And all members of the jury are present and
13   seated in the courtroom.
14              As the foreperson, have you received a
15   verdict in this case?
16              FOREPERSON:  We have, Your Honor.
17              THE COURT:  Would you please hand the
18   verdict form to the bailiff to deliver to me for
19   inspection?
20              (Foreperson complies)
21              THE COURT:  All right.  Mr. Foreperson,
22   is the verdict the unanimous of all members of the
23   jury?
24              FOREPERSON:  It is, Your Honor.
25                        **JURY'S VERDICT**
```

```
 1                    THE COURT:  And Mr. Obel Cruz-Garcia, you
 2   are standing.
 3                    Cause No. 1384794, the State of Texas vs.
 4   Obel Cruz-Garcia.  We, the jury, find the defendant,
 5   Obel Cruz-Garcia, guilty of capital murder as charged in
 6   the indictment.
 7                    And I will ask either side, the State or
 8   the defense, would you like -- wish the jury to be
 9   polled?
10                    MR. CORNELIUS:  Yes, Your Honor.
11                    MS. TISE:  No, Your Honor.
12                    THE COURT:  Okay.  Help me poll the jury.
13   Do you have the names?
14                    THE CLERK:  Juror No. 1, is this your
15   verdict?
16                    JUROR:  Yes.
17                    THE CLERK:  Juror No. 2, is this your
18   verdict?
19                    JUROR:  Yes.
20                    JUROR:  We don't know the numbers.
21                    THE COURT:  Thank you.  We'll --
22                    THE CLERK:  Juror No. 2, is this your
23   verdict.
24                    THE COURT:  I'm going to call their names.
25   Deputy Perry just gave me their names.
```

1                    Let me start with Juror No. 2, Joshua

2    Caluag, is this your verdict?

3                    JUROR:  Yes.

4                    THE COURT:  Thank you.

5                    Juror No. 5, Larry Jordan, is this your

6    verdict?

7                    JUROR:  Yes.

8                    THE COURT:  Juror No. 28, Olga Sanchez, is

9    this your verdict?

10                   JUROR:  Yes.

11                   THE COURT:  Juror No. 40, Wayne Montgomery,

12   is this your verdict?

13                   JUROR:  Yes.

14                   THE COURT:  Juror No. 64, Nancee Pyper, is

15   this your verdict?

16                   JUROR:  Yes.

17                   THE COURT:  Juror No. 76, Angela Bowman, is

18   this your verdict?

19                   JUROR:  Yes.

20                   THE COURT:  Angela Bowman?

21                   JUROR:  Yes.

22                   THE COURT:  Yes.

23                   Juror No. 84, Casey Guillotte -- I'm

24   sorry -- Guillotte, is this your verdict?

25                   JUROR:  Yes.

 1                THE COURT:   Jennifer Sims, No. 93, is this
 2  your verdict?
 3                JUROR:   Yes.
 4                THE COURT:   Virginia Allman, Juror No. 97,
 5  is your verdict?
 6                JUROR:   Yes.
 7                THE COURT:   Matthew Clinger, Juror
 8  No. 10 -- excuse me -- Juror No. 110, is this your
 9  verdict?
10                JUROR:   Yes.
11                THE COURT:   And Leonard Torres, Juror
12  No. 137, is your verdict.
13                JUROR:   Yes.
14                THE COURT:   Karen Sue Bridges, Juror
15  No. 141, is this your verdict?
16                JUROR:   Yes.
17                THE COURT:   The Court finds that the
18  verdict is a unanimous verdict of all members of the
19  jury.
20                At this time, ladies and gentlemen, this
21  phase of the trial is completed and we'll now go on to
22  the second phase of the trial, which will be the
23  punishment phase of the trial.  All of the same
24  admonishments are still in effect.  We're not going to
25  continue the punishment phase of the trial this

1    afternoon, but we'll recess instead and begin arguments

2    and testimony in the punishment phase in the morning.

3    Okay?  And I believe that 10:00 is a good time to begin.

4    We came in early today, at 9:00, so you could proceed

5    with this long day.  And I believe it has been a long

6    day.

7                    So, at this time, you are released.  And we

8    are in recess until the morning when we'll begin the

9    punishment phase of the trial.

10                   I want to remind you that you should not

11   talk amongst yourselves or with anyone on any subject

12   connected with the trial or to form or express any

13   opinion thereon until the end of this trial.

14                   Okay.  At this time, you are released.  You

15   may go with Deputy Perry.

16                   THE BAILIFF:  All rise.

17                   (Open court, defendant present, no jury)

18                   THE COURT:  At this time outside the

19   presence of the jury, let me look at the indictment.

20   There is nothing further to read in the indictment, no

21   enhancement paragraph or anything alleged in the

22   indictment further.  Is that correct?

23                   MS. TISE:  That's correct, Judge.

24                   THE COURT:  Okay.  So, in the morning,

25   we'll be ready to proceed with opening arguments, and

1  directly after that presenting evidence in the

2  punishment phase at 10:00 a.m.

3            MS. TISE:  We'll be ready.

4            THE COURT:  Okay.  And, once again, is

5  there anything further that we need to put on the record

6  this afternoon?

7            MR. CORNELIUS:  I don't think so, Judge.

8            THE COURT:  Very well.  Then we'll be in

9  recess till 10:00 in the morning.

10            (End of guilt-innocence proceedings)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     **REPORTER'S CERTIFICATE**

2   THE STATE OF TEXAS   )
    COUNTY OF HARRIS      )

3

4        I, Mary Ann Rodriguez, Official Court Reporter in

5   and for the 337th District Court of Harris County, State

6   of Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all

8   portions of evidence and other proceedings requested in

9   writing by counsel for the parties to be included in

10  this volume of the Reporter's Record, in the

11  above-styled and numbered cause, all of which occurred

12  in open court or in chambers and were reported by me.

13       I further certify that this Reporter's Record of

14  the proceedings truly and correctly reflects the

15  exhibits, if any, admitted by the respective parties.

16       WITNESS MY OFFICIAL HAND this the 14th day of

17  October, 2013.

18

19

20

21  /s/ Mary Ann Rodriguez
    Mary Ann Rodriguez, Texas CSR 3047
22  Expiration Date:  12/31/2013
    Official Court Reporter
23  337th Court
    1201 Franklin
24  Houston, Texas   77002
    713.755.7746
25

**'**

**'skip'** - 2:11

**/**

**/s** - 107:21

**0**

**00795683** - 2:4
**00797777** - 2:15
**04831500** - 2:12

**1**

**1** - 90:3, 102:14
**10** - 104:8
**101** - 1:7
**102** - 1:8
**107** - 1:9
**10:00** - 105:3, 106:2, 106:9
**11** - 39:16, 39:18
**110** - 104:8
**12/31/2013** - 107:22
**1201** - 2:6, 107:23
**1225** - 2:15
**137** - 104:12
**1384794** - 1:3, 3:3, 4:13, 100:4, 101:8, 102:3
**141** - 104:15
**14th** - 107:16
**15** - 1:3, 45:5, 45:8, 54:14, 65:10, 68:12, 68:15, 68:21, 69:1, 69:2, 69:8, 91:11
**15th** - 1:20, 3:5
**16** - 39:16, 39:18
**17** - 35:17, 58:3
**17-month** - 73:23
**17-year** - 58:1
**17-years** - 73:23
**1892** - 46:19
**1992** - 4:19, 13:22, 14:5, 14:25, 15:11, 15:18, 16:12, 17:3, 17:9, 17:22, 18:6, 18:20, 19:1, 19:12, 19:20, 20:16, 21:3, 21:22, 22:9, 31:5, 36:19, 39:2, 39:24, 42:18, 45:20, 46:18, 46:19, 52:14, 54:2, 54:5, 54:7, 55:12, 63:15, 63:16, 63:22, 64:19, 65:6, 86:2, 86:23, 96:11, 98:15
**1st** - 86:2, 86:14, 86:16, 86:23, 98:15

**2**

**2** - 102:17, 102:22, 103:1
**20** - 40:1, 40:3, 40:5, 40:11, 49:11
**20-year** - 90:25
**2008** - 52:24, 84:24, 89:15, 97:14
**2011** - 76:10, 97:14
**2013** - 1:20, 1:3, 3:5, 107:17
**2028** - 2:12
**23** - 1:2, 1:1, 1:4, 1:5, 1:6, 1:7, 1:8, 1:9
**24039247** - 2:5
**26** - 30:4, 41:4
**27** - 61:21
**28** - 103:8
**28th** - 95:20
**29** - 1:4
**2:00** - 97:2

**3**

**30** - 56:8
**30-plus** - 30:2
**3047** - 107:21
**30th** - 4:19, 13:21, 14:4, 14:24, 15:10, 15:17, 16:11, 17:3, 17:9, 17:21, 18:5, 18:20, 18:25, 19:12, 19:20, 20:15, 21:3, 21:21, 22:9, 31:5, 34:19, 36:19, 39:2, 39:24
**32** - 44:7
**33** - 61:22, 61:24
**337th** - 1:12, 4:14, 107:5, 107:23
**36** - 42:18
**3:00** - 97:2

**4**

**40** - 1:4, 103:11
**42** - 49:14
**440** - 2:15
**4:30** - 86:16

**5**

**5** - 103:5
**5th** - 42:18

**6**

**6** - 33:5, 34:4, 92:12
**6-year-old** - 39:1, 85:25, 86:3, 86:4
**64** - 103:14

**7**

**713.237.8547** - 2:13
**713.755.5800** - 2:7
**713.755.7746** - 107:24
**713.877.9400** - 2:16
**76** - 103:17
**77002** - 2:6, 107:24
**77002-1659** - 2:16
**77019-2408** - 2:13
**78** - 1:5

**8**

**80s** - 55:9, 55:12
**84** - 103:23

**9**

**911** - 45:12
**93** - 104:1
**95** - 80:21
**97** - 104:4
**99** - 1:6
**9:00** - 105:4

**A**

**abandoned** - 41:16
**abduct** - 6:2, 20:18, 21:6, 21:24, 22:12
**abducted** - 73:13, 73:14
**abducts** - 5:19, 5:21
**abide** - 75:3
**ability** - 7:6
**able** - 37:20, 77:17, 77:18
**above-entitled** - 1:21
**above-styled** - 107:11
**absence** - 25:25
**absolutely** - 38:23, 54:24, 89:12

**absurd** - 44:11, 44:13, 46:19, 60:11
**absurdity** - 48:8
**accent** - 47:4, 64:4, 65:9, 66:8, 82:6, 85:7
**accents** - 47:14
**accident** - 25:25
**accommodation** - 7:14
**accompany** - 99:20
**accompanying** - 24:8
**accomplice** - 23:15, 24:10, 24:17, 35:13, 35:14, 35:15, 35:17, 35:19, 35:21, 36:2, 37:12, 70:24, 71:1, 71:17, 71:20
**accomplice's** - 24:11
**accomplished** - 6:11
**accorded** - 25:7
**according** - 57:2, 59:8, 59:20, 66:17, 80:19, 81:13
**accountable** - 80:11
**accurate** - 80:1
**acquit** - 23:13, 27:1, 27:8, 27:16
**act** - 4:25, 5:15, 7:21, 18:2, 18:11, 19:17, 19:25, 23:18, 24:7
**acting** - 6:14, 10:1, 10:7, 24:3
**acts** - 8:20, 9:1, 9:5, 9:13, 9:18, 9:22, 11:1
**actual** - 8:4, 58:15, 93:1
**adapted** - 7:14, 8:7
**added** - 76:12
**address** - 81:9
**admissible** - 69:21
**admission** - 70:25
**admit** - 58:15, 58:16, 58:19
**admitted** - 26:6, 66:19, 97:23, 97:24, 107:15
**admonishments** - 104:24
**adoption** - 65:17
**afraid** - 72:15
**African** - 46:18, 47:8, 47:9, 47:13, 64:20, 64:25, 65:2, 65:6
**African-american** - 47:8
**afternoon** - 105:1, 106:6
**afterwards** - 98:4
**agent** - 58:12, 58:22, 59:2, 74:4, 76:9, 76:16, 76:20
**Agent** - 96:9
**aggravated** - 5:20, 9:11, 20:13, 23:2, 23:5, 23:10, 29:6, 37:19, 37:23, 38:10, 38:13, 38:18, 39:9, 41:6, 41:10, 41:15, 41:18, 56:10, 56:24
**ago** - 42:15
**agree** - 16:24, 20:11, 38:15, 93:7
**agreed** - 27:24
**agreement** - 10:22, 10:25, 11:22, 11:25, 13:4, 13:7, 14:20, 14:22, 16:7, 16:9
**aid** - 10:10, 11:16, 12:23, 14:14, 16:2, 17:18, 18:16, 19:8, 20:5, 21:18, 22:24, 24:6, 26:7, 33:8, 67:2
**aided** - 1:24, 11:16, 12:23, 14:14, 16:1, 17:17, 18:16, 19:8, 20:4, 21:17, 22:23
**aiding** - 26:7, 34:21
**aids** - 10:9, 24:15, 33:2
**Alice** - 51:1
**alleged** - 4:18, 11:8, 12:16, 25:17, 25:18, 26:2, 105:21
**Allman** - 104:4
**allow** - 53:16, 53:22
**allowed** - 77:17, 100:5

**allude** - 25:12
**almost** - 30:3, 62:9
**alone** - 10:11, 23:25, 27:1, 32:3, 38:21, 71:2, 82:14, 91:18, 93:13
**Alphabetical** - 1:11
**amazing** - 62:7
**America's** - 89:4
**american** - 47:8
**American** - 57:9, 85:6
**amount** - 40:2, 67:8
**amounting** - 5:15
**Angela** - 103:17, 103:20
**Angelita** - 37:6, 37:8, 54:1, 93:21, 95:9, 95:10, 95:13, 97:22
**Angelo** - 11:7, 11:9, 11:10, 11:17, 11:19, 12:4, 12:5, 12:7, 12:8, 12:15, 12:17, 12:25, 13:11, 13:13, 13:14, 13:25, 14:1, 14:9, 14:10, 15:2, 15:3, 15:5, 15:6, 15:14, 15:15, 15:22, 15:23, 16:14, 16:16, 16:17, 17:6, 17:13, 17:25, 18:3, 18:9, 18:10, 18:12, 18:23, 19:4, 19:15, 19:23, 19:24, 20:18, 20:20, 20:21, 20:23, 20:25, 21:1, 21:7, 21:8, 21:9, 21:11, 21:13, 21:14, 21:24, 22:1, 22:2, 22:4, 22:6, 22:7, 22:13, 22:14, 22:15, 22:17, 22:19, 22:20, 31:8, 31:9, 32:8, 32:16, 34:14, 34:20, 34:22, 36:19, 36:25, 38:23, 39:1, 39:11, 42:5, 42:18, 43:10, 50:6, 80:1, 85:25, 87:8, 87:20, 88:4, 88:8, 88:19, 88:24, 89:6, 94:21, 95:4, 95:14, 95:25, 96:12, 98:12, 98:18, 99:3
**Angelo's** - 40:5, 86:17
**angry** - 55:17
**anguish** - 94:14
**Ann** - 107:4, 107:21
**annex** - 90:12
**answer** - 48:16, 89:23
**answered** - 48:16, 99:2
**answers** - 51:17
**anticipated** - 10:19, 12:10, 13:16, 15:8, 16:19, 34:1, 35:7
**Ap-77,025** - 1:4
**apartment** - 39:25, 44:9, 49:16, 51:22, 52:3, 52:9, 81:18, 82:11, 82:15, 88:13, 88:19, 96:5
**apparent** - 6:13, 7:20, 94:15
**Appeals** - 1:4
**Appellant** - 1:7
**Appellee** - 1:12
**applicable** - 4:9
**applies** - 33:22, 34:6
**apply** - 34:9, 37:22, 37:23
**applying** - 63:3
**appreciate** - 29:23
**appropriate** - 27:25
**appropriation** - 7:24
**appurtenant** - 7:17
**area** - 37:13
**argue** - 51:12
**arguing** - 51:2, 51:15
**Argument** - 1:4, 1:5
**argument** - 29:8, 47:7, 60:8, 64:10, 77:18, 81:10, 83:7, 83:14, 84:22, 92:21, 97:12, 97:18
**Arguments** - 81:5, 84:19
**arguments** - 3:6, 28:22,

46:1, 66:2, 74:24, 77:5,
77:6, 79:8, 99:12, 105:1,
105:25
**arms** - 81:21, 85:17, 88:14
**arrangements** - 95:11
**arrested** - 26:21
**Arturo** - 46:21, 46:25, 47:2,
48:13, 49:10, 50:12, 52:4,
66:9, 66:11, 66:15, 85:16,
86:11, 86:17, 88:1, 91:4,
91:7
**Arturo's** - 39:25
**ashtray** - 44:19
**Asian** - 45:22, 64:1
**aside** - 57:14, 57:15, 71:4
**asleep** - 86:4
**assault** - 5:25, 6:18, 6:24,
7:10, 8:25, 11:24, 13:6,
14:21, 16:8, 33:18, 35:4,
36:17, 44:23, 45:7, 45:13,
48:20, 56:10, 66:24, 68:7,
90:11, 93:14, 93:16
**assaulted** - 66:22, 67:17,
67:22, 67:23, 67:24, 68:1,
68:9, 68:11, 69:14
**assembled** - 99:16
**assent** - 6:12, 7:19
**assigned** - 63:19
**assist** - 10:8, 11:14, 12:21,
14:13, 15:25, 17:16, 18:15,
19:6, 20:3, 21:16, 22:22,
24:4
**Assistant** - 2:5
**assume** - 59:22
**attached** - 28:1
**attempt** - 5:10, 5:11, 5:23,
10:13, 28:14, 33:15
**Attempt** - 5:13
**attempted** - 11:16, 12:23,
14:14, 16:1, 17:18, 18:16,
19:8, 20:5, 21:18, 22:24
**attempting** - 5:7, 11:6,
12:14, 13:24, 14:8, 15:13,
15:21, 31:8
**attempts** - 10:10, 24:6,
33:7
**attention** - 29:24
**Attorney** - 1:4, 1:5
**attorneys** - 4:3, 4:4, 28:15,
80:20, 100:22, 101:9,
101:10
**Attorneys** - 2:5, 2:7, 2:17,
40:15
**authority** - 28:8, 78:3
**authorized** - 7:21
**autopsy** - 43:16, 72:25,
73:1, 79:25
**Aviles** - 11:16, 11:22, 12:2,
12:23, 13:4, 13:9, 14:5,
14:15, 14:18, 15:1, 15:18,
16:2, 16:5, 16:13, 17:10,
17:18, 18:6, 18:17, 19:1,
19:8, 19:21, 20:5, 21:4,
21:18, 22:10, 22:24
**aware** - 9:6, 9:20, 9:23

## B

**Baby** - 39:1, 40:5, 42:5,
42:18, 43:10
**bad** - 53:12, 89:8
**bag** - 58:3
**bailed** - 55:1, 55:14
**Bailiff** - 101:2, 101:4,
105:16
**bailiff** - 99:13, 99:20,
101:18
**band** - 67:2
**band-aid** - 67:2
**bandage** - 67:3

**base** - 38:3, 70:11, 71:1,
71:7, 71:8, 71:10, 71:15,
71:18, 76:22
**Based** - 73:16
**based** - 32:13, 38:11,
38:24, 39:5, 39:11, 39:23,
42:12, 43:12, 61:8, 61:9,
71:19, 72:25, 80:7, 85:12
**basic** - 87:14
**Batman** - 87:7, 87:22
**Baytown** - 34:19, 37:2,
39:2, 40:1, 40:8, 59:1,
76:17, 87:5, 98:5
**beach** - 87:5
**bearing** - 86:7
**beat** - 66:23
**beaten** - 66:24
**became** - 89:6
**bed** - 86:4, 87:7
**bedroom** - 86:22
**begin** - 4:11, 90:22, 99:18,
105:1, 105:3, 105:8
**beginning** - 83:21, 84:25,
89:12, 94:19
**behalf** - 25:6, 61:12, 98:8,
98:11, 98:12, 98:14
**behind** - 57:1, 83:9, 98:10
**belabor** - 85:2
**beliefs** - 92:21
**believes** - 7:5
**best** - 56:12, 90:16, 91:17,
92:12, 92:17, 97:1
**bet** - 62:1, 63:17, 67:7
**better** - 51:16
**between** - 10:22, 45:4,
47:3, 65:5, 92:2
**Beyond** - 31:19
**beyond** - 11:4, 11:12,
11:20, 12:12, 12:19, 13:2,
13:20, 14:3, 14:17, 15:9,
15:16, 16:4, 16:22, 17:2,
17:8, 17:21, 18:4, 18:19,
18:24, 19:11, 19:19, 20:9,
20:15, 21:2, 21:21, 22:8,
23:3, 25:2, 25:21, 26:20,
27:2, 27:7, 27:10, 30:22,
31:2, 31:16, 60:25, 62:23,
62:25, 63:11, 70:20, 77:12,
78:17
**big** - 49:23, 51:18, 54:5,
66:6, 79:24, 82:1, 94:8
**bike** - 88:5
**bit** - 36:9
**bizarre** - 30:7
**black** - 45:17, 45:18,
45:22, 46:10, 46:11, 46:13,
46:22, 47:18, 48:2, 50:23,
51:3, 51:12, 51:13, 51:15,
63:22, 63:25, 64:3, 64:5,
64:14, 64:17, 64:19, 64:20,
64:21, 64:23, 65:3, 65:5,
65:9, 65:14, 65:16, 65:19,
66:7, 66:10, 67:12, 67:13,
67:14, 83:14, 83:19, 83:22,
84:23, 85:1, 85:19
**Black** - 64:22
**blamed** - 55:11
**bleed** - 67:8, 67:9, 67:11
**bleeding** - 67:6
**blew** - 32:6, 32:7
**blood** - 67:4, 67:5, 67:8,
67:11, 95:15
**blow** - 34:14
**blue** - 87:21
**Bodily** - 8:11
**bodily** - 4:24, 5:24, 6:16,
8:8, 8:10, 8:13, 8:16, 17:24,
18:9, 19:14, 19:23, 20:25,
21:13, 22:6, 22:19
**body** - 7:11, 7:12

**bold** - 95:22
**bond** - 95:24
**bone** - 74:20, 75:16
**bones** - 43:22, 43:23,
74:18, 75:6, 75:8, 75:10,
79:25, 80:4, 80:7, 87:6
**born** - 71:21, 94:5
**bought** - 43:3
**Bowman** - 103:17, 103:20
**box** - 64:14, 64:15, 65:16,
99:19
**boxes** - 64:13
**boy** - 42:7, 42:8, 45:15,
45:16, 51:7, 53:14, 53:15,
53:24, 55:24, 55:25, 56:2,
58:6, 58:7, 59:14, 72:3,
72:10, 72:18, 74:10, 80:6,
86:3, 86:22, 87:4, 87:20,
92:25
**boys** - 86:4, 88:6
**break** - 40:25, 56:7
**breath** - 67:1
**Bridges** - 104:14
**brief** - 29:12
**broke** - 32:2, 41:20, 101:2
**broke** - 51:22, 52:3, 86:6
**brought** - 26:12, 55:9, 84:2
**Buffalo** - 2:12
**bulk** - 39:18
**bunch** - 43:8, 62:14, 85:16
**burden** - 26:15, 27:5, 77:4,
77:11, 91:22
**burglary** - 6:1, 7:7, 9:11,
11:25, 13:7, 14:21, 16:8,
33:17, 35:3
**buried** - 96:12
**buy** - 59:16
**buying** - 95:18

## C

**calmly** - 84:9
**Caluag** - 103:2
**cannot** - 13:18, 24:9,
24:18, 25:8, 25:11, 25:19,
71:1, 90:13
**capable** - 6:16, 8:9, 94:10
**capacity** - 62:12
**capital** - 4:18, 5:3, 8:19,
11:3, 11:15, 12:22, 13:19,
16:21, 23:5, 29:2, 30:24,
31:13, 33:20, 33:22, 33:23,
34:22, 35:4, 37:17, 37:25,
38:7, 38:14, 39:17, 41:19,
43:11, 56:9, 60:19, 61:11,
70:1, 73:25, 80:2, 80:19,
99:8, 102:5
**car** - 32:7, 39:24, 40:7,
82:16, 88:21, 95:15, 96:7,
97:2, 98:4
**care** - 8:4, 87:16, 87:17,
90:6, 94:11
**careful** - 27:3
**carefully** - 4:9, 88:6
**carelessly** - 88:5
**cares** - 32:8
**Carmelo** - 11:16, 11:22,
12:3, 12:23, 13:4, 13:10,
14:6, 14:15, 14:19, 15:1,
15:19, 16:2, 16:6, 16:13,
17:10, 17:18, 18:7, 18:17,
19:2, 19:9, 19:21, 20:5,
21:4, 21:18, 22:10, 22:24,
24:16, 24:20, 48:22
**carried** - 88:13
**Carried** - 88:14
**carry** - 10:13, 12:1, 13:8,
14:23, 16:10, 33:15
**carrying** - 10:20, 12:11,
13:17, 15:8, 16:19

**cart** - 97:11
**case** - 4:2, 4:9, 24:20,
25:10, 25:16, 25:19, 26:5,
27:4, 28:2, 28:6, 29:20,
29:24, 30:8, 30:25, 31:1,
31:2, 31:11, 32:23, 32:24,
33:16, 33:23, 34:7, 34:10,
34:11, 35:9, 35:18, 36:11,
36:14, 37:23, 38:19, 40:22,
41:7, 41:11, 42:4, 42:15,
43:11, 44:2, 45:11, 52:2,
58:5, 58:9, 60:20, 60:24,
62:12, 63:6, 63:7, 65:13,
67:25, 68:14, 70:1, 70:3,
70:5, 70:6, 70:7, 74:1,
75:18, 76:22, 77:23, 78:21,
85:20, 85:23, 85:24, 89:2,
89:5, 89:12, 89:13, 89:22,
90:1, 95:24, 96:9, 97:1,
97:6, 97:21, 97:23, 98:10,
99:16, 100:11, 101:15
**cases** - 26:6, 26:16, 80:22,
89:7
**Casey** - 103:23
**cast** - 96:15
**catch** - 62:6, 62:8, 98:24
**caught** - 62:8
**caused** - 12:4, 13:11, 15:2,
16:14, 31:9
**causes** - 4:23, 5:1, 6:19,
6:21, 8:14, 73:8
**causing** - 6:16, 8:9, 32:16
**cells** - 69:7, 69:11, 90:11,
90:20
**central** - 85:5
**certain** - 9:7, 9:24, 79:17
**Certainly** - 50:10
**Certificate** - 1:9, 107:1
**certify** - 27:25, 107:6,
107:13
**chain** - 88:7
**chair** - 50:18
**chambers** - 107:12
**chance** - 90:4, 98:13
**change** - 59:4, 72:18,
75:14, 78:7
**changed** - 58:11
**changing** - 78:7
**channels** - 87:2
**Chapter** - 95:20
**character** - 43:2, 57:16
**characters** - 42:22
**charge** - 3:5, 3:8, 3:10,
3:11, 3:13, 3:14, 3:19, 4:8,
4:10, 11:8, 12:16, 23:13,
28:9, 28:15, 30:3, 30:13,
33:4, 33:5, 34:4, 34:5,
35:17, 38:7, 39:15, 39:19,
41:2, 41:3, 41:21, 55:18,
56:6, 56:11, 56:23, 62:16,
69:16, 70:14, 70:16, 70:24,
71:22, 91:20, 92:2, 92:4,
92:12, 97:13, 99:11, 99:13
**charged** - 4:17, 16:21,
23:16, 24:13, 25:3, 26:22,
27:7, 29:3, 34:23, 37:24,
38:6, 38:14, 56:19, 56:20,
56:21, 56:22, 57:4, 57:6,
57:12, 69:17, 102:5
**charges** - 96:24
**charging** - 56:16
**checked** - 64:14, 65:17,
68:19
**child** - 48:20, 53:20, 72:23,
73:2, 73:7, 73:13, 74:19,
75:6, 75:9, 75:12, 75:13,
75:25, 76:1, 76:14, 93:17
**children** - 53:19, 54:13,
87:14, 87:19
**choice** - 92:14, 92:16, 94:1

**choices** - 91:24, 91:25, 92:10, 92:12
**cigar** - 44:7, 44:8, 44:12, 44:13, 44:18, 48:9, 68:15, 83:6, 90:9
**cigarette** - 44:20
**circumstance** - 25:9, 25:14
**circumstances** - 9:20, 9:21, 69:11
**citizens** - 86:2, 98:14, 99:6
**city** - 89:8
**civilian** - 85:3
**claims** - 55:4
**clean** - 43:4
**clear** - 60:24, 71:14, 83:23
**clearly** - 4:25, 18:2, 18:11, 19:17, 19:25
**clerk** - 3:10
**Clerk** - 102:14, 102:17, 102:22
**client** - 49:6, 61:12
**Clinger** - 104:7
**close** - 47:11, 55:8
**closet** - 88:11
**Closing** - 1:4, 1:5, 29:14, 40:18, 78:25
**closing** - 29:8, 42:6, 99:12
**cloth** - 82:20
**co** - 32:21, 33:4, 33:11, 33:14, 34:2, 35:2, 35:8, 93:14, 93:18
**co-conspirator** - 93:14, 93:18
**co-conspirators** - 32:21, 33:4, 33:11, 33:14, 34:2, 35:2, 35:8
**coercion** - 7:23
**cognizant** - 77:24
**cold** - 89:5, 89:7, 89:14
**collected** - 68:15
**color** - 64:21, 65:3, 65:18, 65:20
**combination** - 97:21
**combine** - 37:24, 38:13
**coming** - 44:12, 50:17, 56:17
**comment** - 62:15, 62:16
**commission** - 5:11, 5:12, 5:16, 5:22, 5:23, 10:1, 10:8, 11:14, 12:21, 14:13, 15:25, 17:16, 18:15, 19:7, 20:3, 20:24, 21:12, 21:16, 22:5, 22:18, 22:22, 23:20, 23:21, 24:4, 24:14, 24:15, 24:25, 25:1, 33:1, 33:13, 35:2, 36:22, 37:4
**commit** - 5:7, 5:10, 5:13, 5:14, 7:9, 10:10, 10:14, 10:17, 11:6, 11:23, 12:14, 13:5, 13:24, 14:8, 14:16, 14:20, 15:13, 15:21, 16:3, 16:7, 17:19, 18:18, 19:10, 20:6, 21:19, 22:25, 24:6, 31:8, 33:15
**commits** - 4:22, 4:25, 5:3, 5:4, 5:6, 5:18, 5:20, 6:17, 7:7
**committed** - 4:19, 10:3, 10:7, 10:15, 10:16, 10:18, 12:8, 13:14, 15:6, 16:17, 23:23, 24:3, 24:17, 24:22, 24:23, 25:21, 33:20, 33:22, 33:24, 35:5, 36:5, 37:3, 45:6, 93:15
**committing** - 5:7, 5:9, 11:6, 12:2, 12:7, 12:14, 13:9, 13:13, 13:24, 14:8, 14:25, 15:13, 15:21, 16:12, 18:1, 18:11, 19:16, 19:25, 25:17, 31:7, 33:19

**common** - 39:6, 46:12, 83:12, 85:4, 93:2
**communicate** - 28:8, 28:10
**communication** - 28:11
**community** - 85:5, 85:19
**compared** - 82:12
**compelling** - 42:16, 93:22
**compels** - 6:25, 7:2
**completed** - 83:22
**completed** - 104:21
**completely** - 55:1, 56:20
**complicated** - 62:17, 62:20, 62:21, 83:15, 91:21, 91:23
**complies** - 101:20
**computer** - 1:24
**computer-aided** - 1:24
**concede** - 41:7
**conceivable** - 44:15, 45:3, 49:12
**concept** - 32:20, 35:11, 37:13
**concepts** - 30:20, 32:18, 35:8, 39:13
**concerning** - 27:12, 28:16
**concludes** - 73:17
**conclusion** - 72:24, 79:17
**condition** - 8:12, 43:17, 90:8, 90:12
**conditions** - 89:18, 90:16
**conduct** - 5:9, 8:21, 9:2, 9:6, 9:7, 9:14, 9:15, 9:16, 9:19, 9:20, 9:21, 9:23, 9:24, 10:3, 10:4, 10:7, 10:24, 23:24, 24:3, 24:7
**confessed** - 54:4, 54:7
**confined** - 26:21
**confining** - 6:10
**conflict** - 31:22, 32:2, 32:3
**confronted** - 94:21
**confused** - 40:10
**confusing** - 41:3
**connect** - 24:12, 24:15, 24:22, 24:25, 36:4, 36:21, 37:4, 71:7
**connected** - 7:12, 7:17, 23:16, 23:18, 28:6, 105:12
**connection** - 26:1, 97:18
**conscience** - 76:12
**conscious** - 8:21, 9:3, 9:15, 43:3
**consensual** - 82:19, 82:23, 91:10
**consent** - 6:8, 6:11, 6:21, 6:22, 6:24, 7:8, 7:19, 7:20, 8:1, 20:19, 21:7, 21:25, 22:13
**Consent** - 6:12, 7:21
**consider** - 16:25, 20:12, 25:19, 25:23, 26:9, 28:3, 28:4, 28:23, 29:19, 37:21, 38:4, 38:17, 41:8, 41:9, 42:12, 70:21, 100:5
**consideration** - 25:13, 27:4
**considered** - 26:14, 35:19
**considering** - 27:14, 37:12, 38:4
**conspiracy** - 10:14, 10:20, 10:21, 10:25, 12:1, 12:2, 12:9, 12:11, 13:8, 13:9, 13:15, 13:17, 14:23, 14:25, 15:7, 15:9, 16:10, 16:12, 16:18, 16:20, 33:15
**conspirator** - 93:14, 93:18
**conspirators** - 10:15, 32:21, 33:4, 33:11, 33:14, 33:21, 34:2, 35:2, 35:8
**constitute** - 10:11, 10:24,

24:1
**constituting** - 10:25
**consulting** - 49:8
**contact** - 6:22, 39:4
**contains** - 107:7
**contaminate** - 90:14
**continue** - 74:4, 104:25
**control** - 8:4, 69:3, 90:6
**conversation** - 37:8
**convict** - 13:18, 24:18, 72:12, 91:18, 91:24, 93:13
**convicted** - 26:5, 26:19, 70:1, 70:12
**conviction** - 24:9, 43:11, 55:16, 69:19, 70:12, 71:1, 73:24
**convicts** - 61:10
**convince** - 77:12, 77:14
**convinced** - 78:16
**copy** - 3:12, 3:13
**Cornelius** - 2:11, 3:16, 61:15, 61:18, 61:19, 61:23, 64:12, 66:4, 71:13, 75:3, 75:20, 75:21, 78:23, 80:24, 83:18, 83:24, 84:14, 92:20, 100:12, 100:13, 102:10, 106:7
**Cornelius'** - 84:6, 84:22
**corner** - 88:10
**correct** - 105:22, 105:23, 107:7
**correctly** - 107:14
**corroborate** - 69:13, 71:12, 73:19
**corroborated** - 24:11, 71:16, 71:17, 74:15, 98:2
**corroborates** - 73:18, 82:14, 93:20
**corroborating** - 96:10
**corroboration** - 24:13, 24:24, 36:4, 36:7, 36:9, 36:11, 36:12, 36:13, 36:21, 37:5, 37:10, 37:11
**cosigned** - 49:16
**Counsel** - 58:18
**counsel** - 3:6, 28:22, 46:1, 60:8, 64:10, 66:2, 74:24, 81:5, 84:19, 99:12, 101:1, 101:11, 107:9
**counting** - 79:17, 79:18, 80:3
**countless** - 98:14
**country** - 47:5, 85:6, 94:8
**County** - 1:9, 1:23, 4:15, 4:20, 13:22, 14:5, 14:24, 15:11, 15:18, 16:11, 17:3, 17:10, 17:22, 18:6, 18:20, 19:1, 19:12, 19:20, 20:16, 21:4, 21:22, 22:10, 31:6, 86:2, 98:15, 99:6, 107:2, 107:5
**Couple** - 66:11, 76:25
**couple** - 32:18, 54:11, 55:19, 67:18, 79:21, 81:11
**course** - 5:6, 5:9, 11:6, 12:2, 12:6, 12:14, 13:9, 13:12, 13:24, 14:7, 14:25, 15:4, 15:13, 15:20, 16:12, 16:16, 29:17, 31:7, 33:19, 37:22, 38:11, 55:19, 55:20, 56:10
**court** - 3:1, 3:24, 28:14, 35:14, 35:22, 35:23, 89:23, 95:25, 99:23, 100:2, 100:20, 101:5, 105:17, 107:12
**Court** - 1:3, 1:4, 1:6, 3:2, 3:10, 3:17, 3:21, 3:25, 4:8, 4:14, 28:11, 28:16, 29:13, 40:14, 40:17, 45:25, 58:20,

60:5, 61:17, 61:21, 64:8, 66:1, 74:23, 75:19, 78:23, 81:2, 84:1, 84:16, 92:22, 99:9, 99:24, 99:25, 100:3, 100:14, 100:16, 100:21, 101:6, 101:17, 101:21, 102:1, 102:12, 102:21, 102:24, 103:4, 103:8, 103:11, 103:14, 103:17, 103:20, 103:22, 104:1, 104:4, 104:7, 104:11, 104:14, 104:17, 105:18, 105:24, 106:4, 106:8, 107:4, 107:5, 107:22, 107:23
**Court's** - 30:2, 62:16, 99:11, 100:10
**courtroom** - 4:5, 4:6, 4:8, 82:3, 99:5, 100:23, 101:3, 101:13
**cousin** - 55:8, 55:20, 55:21
**cover** - 68:14
**covered** - 67:5
**crafty** - 73:21
**crap** - 43:6
**crawling** - 60:16
**crazy** - 90:23, 91:12
**create** - 90:17
**creates** - 8:13
**credibility** - 26:8, 27:18, 35:24, 51:17, 66:18
**credible** - 36:1, 37:7, 60:12
**credit** - 63:13
**creeped** - 58:8
**cries** - 93:24
**Crime** - 45:8, 68:17
**crime** - 23:16, 23:18, 23:22, 71:7, 81:16, 97:3
**criminal** - 26:15, 30:7, 32:24
**Criminal** - 1:4
**criminally** - 10:2, 10:4, 10:6, 23:22, 23:25, 24:2
**cross** - 43:23, 49:21, 50:25, 53:10, 70:2, 83:18, 84:6
**cross-examination** - 43:23, 49:21, 50:25, 53:10, 70:2, 83:18, 84:6
**Cruz** - 1:6, 3:3, 4:3, 4:14, 4:17, 11:13, 11:21, 12:20, 13:3, 13:23, 14:12, 14:18, 15:12, 15:24, 16:5, 17:9, 17:16, 17:23, 18:14, 18:21, 19:6, 19:13, 20:2, 20:17, 21:15, 21:23, 22:21, 29:1, 29:2, 29:4, 29:5, 31:7, 41:22, 44:8, 48:4, 48:17, 54:2, 56:16, 59:7, 59:8, 59:11, 61:13, 65:13, 65:15, 80:18, 82:17, 82:23, 89:11, 89:15, 89:16, 90:2, 90:5, 91:3, 101:1, 101:8, 102:1, 102:5
**Cruz-garcia** - 1:6, 3:3, 4:3, 4:14, 4:17, 11:13, 11:21, 12:20, 13:3, 13:23, 14:12, 14:18, 15:12, 15:24, 16:5, 17:4, 17:15, 17:23, 18:14, 18:21, 19:6, 19:13, 20:2, 20:17, 21:15, 21:23, 22:21, 29:1, 29:2, 29:4, 29:5, 31:7, 41:22, 44:8, 48:4, 48:17, 54:16, 59:7, 59:8, 59:11, 61:13, 65:13, 65:15, 80:18, 82:17, 82:23, 89:11, 89:15, 89:16, 90:2, 90:5, 91:3, 101:1, 101:8, 102:1, 102:4, 102:5

Cruz-garcia's - 54:2
cry - 63:17
crying - 40:9, 72:17
Csr - 107:21
custody - 8:4
cut - 34:16, 75:15, 80:6

# D

damning - 36:13
dangerous - 5:1, 18:2, 18:11, 19:17, 20:1, 89:18
dark - 64:25, 65:4, 67:14, 81:21, 81:25, 82:3, 83:21, 83:22
dark-skinned - 64:25, 67:14, 82:3
darker - 65:18, 65:20, 66:9, 85:6
Date - 107:22
date - 50:15, 50:17
days - 29:18, 31:14, 42:18, 87:9
dead - 72:3, 72:6, 72:10, 73:9
deadly - 6:6, 11:11, 12:5, 14:2, 14:11, 15:3, 17:7, 17:14, 18:3, 18:13, 20:22, 21:11, 22:3, 22:17, 31:10
Deadly - 6:13, 8:6
deal - 49:23, 56:5, 56:11, 56:12, 56:21, 97:6
dealers - 42:25, 61:9, 66:19
dealing - 47:11, 48:4, 52:8, 55:12, 58:2, 66:14, 91:7, 91:8
dealt - 46:25, 47:1, 47:11, 47:12, 91:4
death - 4:23, 5:1, 6:16, 8:8, 8:10, 8:14, 11:9, 12:4, 12:17, 13:11, 14:1, 14:9, 15:2, 15:15, 15:22, 16:14, 17:5, 17:13, 17:25, 18:10, 18:23, 19:4, 19:15, 19:24, 31:9, 32:16, 36:20, 43:20
deception - 6:12, 7:22
decide - 63:8, 69:22, 70:9
decided - 3:9, 52:24
decision - 63:10, 94:1, 94:12
deduce - 60:15
defecate - 43:7
defecated - 43:5, 76:5
defecating - 76:3, 76:13
Defendant - 2:17
defendant - 3:1, 3:24, 4:4, 4:5, 4:16, 4:20, 6:23, 6:25, 7:2, 7:5, 8:3, 11:3, 11:5, 11:8, 11:13, 11:21, 12:10, 12:13, 12:16, 12:20, 13:3, 13:16, 13:18, 13:22, 14:12, 14:18, 15:8, 15:11, 15:24, 16:5, 16:19, 16:20, 16:25, 17:4, 17:15, 17:23, 18:14, 18:21, 19:5, 19:13, 20:2, 20:7, 20:12, 20:17, 21:15, 21:23, 22:21, 23:1, 23:4, 23:12, 23:13, 24:12, 24:15, 24:18, 24:22, 25:1, 25:3, 25:5, 25:7, 25:10, 25:21, 26:1, 26:12, 26:15, 26:17, 26:24, 27:1, 27:5, 27:8, 28:19, 28:22, 28:25, 29:2, 29:4, 29:5, 31:6, 32:15, 34:10, 34:13, 34:20, 36:4, 36:14, 36:21, 37:2, 37:4, 37:9, 38:6, 38:20, 39:4, 39:24, 71:7, 71:23, 79:21, 80:9, 89:22, 91:11, 91:19,

91:25, 92:19, 92:24, 93:13, 95:10, 95:12, 95:14, 97:1, 97:21, 97:23, 99:23, 100:2, 100:20, 100:23, 100:25, 101:5, 101:10, 101:11, 102:4, 105:17
defendant's - 23:8, 25:17, 27:3, 27:12, 27:14, 36:15, 36:17
defense - 3:14, 30:14, 32:1, 37:20, 39:21, 40:15, 62:2, 79:23, 80:19, 90:2, 91:5, 91:21, 93:22, 96:15, 97:11, 102:8
Defense - 1:4, 40:18
defined - 5:5, 23:12
definition - 8:18
definitions - 8:23, 9:9
deliberate - 41:1, 42:2
deliberating - 99:22
deliberations - 1:6, 4:12, 25:13, 27:23, 28:2, 28:20, 46:3, 60:7, 64:10, 75:1, 81:5, 84:3, 84:18, 99:18
delineated - 92:3
deliver - 101:18
deposited - 69:11, 69:12
deprive - 7:25
Deputy - 3:23, 46:11, 100:18, 102:25, 105:15
descent - 46:18, 47:9, 47:13, 64:20, 64:25, 65:2, 65:6
describe - 66:23
described - 57:18, 85:18
description - 51:13, 58:24, 85:12
descriptions - 97:4
descriptors - 63:24, 64:22
designed - 8:7
desire - 8:22, 9:3, 9:16, 72:12
desolate - 87:4
detail - 35:12
details - 62:15, 76:25, 87:10
detectives - 61:3
determination - 39:17
determine - 28:18, 72:23, 93:3
determining - 25:23
Devereaux - 45:13, 45:14, 46:8, 52:18
Diana - 36:16, 36:18, 39:25, 44:10, 45:1, 46:23, 46:25, 48:13, 48:20, 49:2, 49:7, 49:17, 51:23, 52:21, 54:8, 59:4, 65:12, 66:9, 66:21, 67:16, 81:18, 82:12, 82:21, 82:23, 83:3, 85:16, 86:15, 86:19, 90:24, 94:22, 98:11
Diana's - 67:12
dictate - 34:11
died - 72:23, 73:2, 73:7, 73:9
difference - 45:21, 45:22, 47:3, 47:6, 47:14
different - 85:7, 91:25, 92:6
differs - 59:19
difficult - 29:22
dime - 58:2
diminished - 55:11, 55:14
dire - 30:18
directed - 11:15, 12:22, 14:14, 16:1, 17:17, 18:16, 19:8, 20:4, 21:17, 22:23, 34:20, 92:19, 92:24
directing - 34:21

direction - 59:15
directly - 106:1
directs - 10:9, 24:5, 33:7
dirty - 87:4
disagreement - 38:8
discount - 90:2
discredit - 58:13
discrepancy - 32:9
discuss - 28:3, 41:1, 68:4
discussed - 3:9, 46:6
discussion - 38:16, 100:9
disfigurement - 8:15
dislike - 55:6
dislikes - 55:19
disparage - 49:6
distinction - 45:18, 46:15, 48:6
distract - 85:22
District - 1:6, 1:12, 2:5, 4:14, 107:5
Dna - 36:14, 36:15, 36:17, 43:14, 44:6, 45:2, 45:5, 45:7, 45:9, 53:1, 56:15, 65:11, 65:13, 68:12, 68:13, 69:1, 69:10, 82:12, 82:18, 82:21, 82:24, 83:2, 83:6, 84:24, 89:16, 89:24, 89:25, 90:3, 90:14, 91:15, 91:18, 93:13, 93:19, 97:5, 97:22
document - 68:24
documented - 84:13
dog - 96:3
Dominican - 37:9, 46:17, 47:5, 54:11, 55:4, 57:10, 94:3, 94:4, 94:9
Dominicans - 47:1, 47:12
done - 29:25, 38:7, 51:8, 51:10, 51:19, 51:20, 54:22, 68:16, 68:18, 68:20, 68:25, 75:15, 80:1
door - 86:7, 88:5
doubt - 11:4, 11:12, 11:20, 12:12, 12:19, 13:2, 13:21, 14:4, 14:17, 15:10, 15:17, 16:4, 16:23, 17:2, 17:8, 17:21, 18:5, 18:19, 18:25, 19:11, 19:19, 20:10, 20:15, 21:2, 21:21, 22:8, 23:4, 23:7, 23:8, 23:11, 25:2, 25:21, 26:21, 27:3, 27:7, 27:10, 27:11, 27:13, 30:23, 31:3, 31:17, 31:19, 31:23, 31:24, 32:4, 44:5, 60:25, 62:23, 63:1, 63:5, 63:6, 63:11, 66:25, 70:13, 70:21, 77:12, 78:15, 78:17, 78:21, 86:24, 98:7
down - 30:14, 37:9, 39:1, 39:3, 39:20, 39:22, 39:25, 40:8, 41:1, 51:3, 56:9, 60:18, 61:24, 64:2, 64:3, 64:4, 65:22, 77:1, 82:16, 83:2, 86:7, 97:7, 97:16, 98:21, 99:19
Dr - 72:21, 74:17, 74:22, 79:23, 80:4, 93:2
dramatic - 42:16
driven - 40:7, 40:8, 57:2
driver - 57:3
driving - 59:22, 59:25
drop - 56:9
dropped - 88:5
drove - 39:25, 88:21
drowned - 73:4
drowning - 73:2, 73:7
drug - 42:24, 55:10, 55:15, 55:18, 60:20, 61:9, 66:19, 70:1, 70:3, 70:4, 70:5, 70:6, 70:7, 73:24, 91:11
drugs - 47:1, 47:11, 48:18,

48:19, 51:24, 52:2, 52:4, 52:6, 52:8, 52:11, 55:13, 58:4, 58:5, 58:8, 59:1, 59:10, 60:17, 63:17, 66:14, 76:18, 98:18
Drugs - 58:2
duress - 41:17
During - 28:2
during - 5:10, 23:19, 42:6, 49:21, 50:25, 51:18, 53:10, 59:3
duty - 27:22, 28:18, 62:23, 77:13

# E

early - 105:4
easily - 33:22
Ebersole - 96:9, 96:23, 97:15
edges - 59:7
effect - 5:16, 42:17, 104:24
effective - 7:8, 7:22, 8:1
Effective - 7:19
either - 23:4, 23:9, 23:19, 44:4, 49:22, 55:5, 63:14, 68:5, 68:6, 69:17, 73:18, 102:7
ejaculated - 82:25
elected - 25:10
elects - 25:6, 25:8
element - 26:20, 27:7
elements - 30:22, 30:24, 31:4, 31:13, 31:15, 31:16, 31:19, 31:25, 32:5, 32:10, 43:25, 58:6
Elliott - 45:19, 52:18, 63:24, 65:19, 65:25, 83:16, 83:20, 84:7, 84:8
Elliott's - 45:24
emotion - 42:9, 42:10, 43:10
emphatically - 66:13
encounter - 82:19
encountered - 39:4
encouraged - 11:15, 12:22, 14:14, 16:1, 17:17, 18:16, 19:7, 20:4, 21:17, 22:23, 92:19, 92:24
encourages - 10:9, 24:5, 33:7
End - 106:10
end - 30:8, 31:1, 32:12, 43:9, 60:23, 63:20, 64:16, 78:14, 105:13
ended - 60:20
ends - 55:19
enemies - 51:9
engage - 9:16, 10:24
English - 46:23, 46:24, 47:19, 48:1, 100:6
enhancement - 105:21
Enter - 7:10
entered - 11:21, 13:3, 14:19, 16:7
enters - 7:9
entitled - 1:21, 70:8
epithelial - 90:11
equal - 78:4
Eric - 89:17, 89:21
especially - 71:22
establish - 67:1, 68:8
evening - 88:3
event - 25:8, 27:13, 93:2
everywhere - 67:6
evidence - 11:4, 11:12, 11:20, 12:12, 12:19, 13:2, 13:20, 14:3, 14:17, 15:9, 15:16, 16:4, 16:22, 17:2,

17:8, 17:20, 18:4, 18:19, 18:24, 19:11, 19:19, 20:9, 20:14, 21:2, 21:20, 22:8, 23:3, 24:11, 24:19, 25:2, 25:16, 25:20, 26:5, 26:13, 26:25, 27:4, 27:15, 28:4, 28:7, 29:18, 32:13, 36:10, 36:14, 36:15, 38:3, 38:5, 38:11, 40:22, 41:2, 42:12, 42:14, 43:14, 44:3, 44:4, 46:2, 54:5, 58:19, 58:20, 60:8, 60:24, 64:11, 66:3, 68:5, 68:8, 68:10, 69:1, 69:5, 69:10, 71:4, 71:5, 71:6, 72:13, 72:22, 74:24, 75:13, 75:18, 75:19, 75:25, 79:7, 79:18, 81:5, 82:20, 82:24, 83:9, 83:10, 83:16, 84:2, 84:17, 84:19, 89:25, 90:7, 90:14, 91:13, 91:14, 91:15, 92:23, 93:20, 96:25, 97:21, 98:2, 98:6, 99:11, 100:11, 106:1, 107:8
   **ex** - 54:24, 54:25, 94:9
   **ex-husband** - 54:25, 94:9
   **ex-wives** - 54:24
   **exact** - 40:2, 84:5
   **exactly** - 32:14, 62:2, 96:13
   **examination** - 43:23, 49:21, 50:25, 53:10, 70:2, 83:18, 84:6
   **examinations** - 80:23
   **examiner** - 72:16, 74:16
   **examiner's** - 71:25
   **example** - 33:16, 41:17, 80:15, 80:16
   **examples** - 61:1, 79:22, 81:9
   **except** - 28:9
   **excited** - 87:23, 88:9
   **excludes** - 27:11
   **exclusive** - 27:17
   **excruciating** - 87:10
   **excuse** - 43:19, 104:8
   **execute** - 7:6
   **Exhibit** - 1:13
   **exhibits** - 1:14, 107:15
   **exist** - 9:22
   **existed** - 97:9
   **expert** - 67:19, 67:20, 90:7
   **Expiration** - 107:22
   **explain** - 30:12, 65:16, 68:25, 91:16, 91:18
   **explained** - 61:1
   **explaining** - 35:10
   **explanation** - 68:24, 73:5
   **express** - 6:13, 7:20, 105:12
   **extent** - 81:19
   **extra** - 36:3, 63:13
   **eyes** - 87:21

## F

   **face** - 29:22
   **facilitate** - 5:22, 20:24, 21:12, 22:5, 22:18
   **fact** - 6:13, 7:19, 25:8, 25:12, 26:21, 28:6, 62:6, 65:2, 72:6, 77:24, 79:24, 89:21
   **facts** - 27:17, 29:20, 34:11, 38:24, 39:6, 58:25, 63:3, 72:19, 72:21, 96:10
   **fails** - 5:16, 27:8, 97:18
   **familiar** - 52:1, 53:14, 53:24, 58:4
   **family** - 44:17, 82:9, 94:6, 94:7, 94:11

   **far** - 29:24, 63:17, 74:14, 76:24, 79:11
   **fathom** - 88:25
   **fault** - 74:11, 74:12
   **favor** - 23:8
   **façade** - 83:9
   **Fbi**- 56:14, 58:12, 73:25, 76:8, 76:16, 76:20
   **fear** - 72:8, 88:18
   **features** - 81:22
   **federal** - 56:1, 58:3, 70:4
   **feds** - 89:2
   **fellow** - 79:19
   **felon** - 70:12
   **felonies** - 6:1, 33:19, 35:3
   **felons** - 69:24
   **felony** - 5:8, 5:23, 5:24, 7:9, 7:10, 10:14, 10:16, 11:7, 11:24, 12:15, 13:6, 14:20, 16:7, 20:24, 21:13, 22:5, 22:19, 26:12, 33:16, 33:17, 33:18, 33:20, 33:21, 33:25, 35:4, 35:6, 69:20, 93:16, 93:17
   **felt** - 53:16, 59:6, 59:7, 83:1, 88:16
   **female** - 6:19
   **few** - 30:11, 30:12, 30:19, 61:15, 69:8
   **fighting** - 49:1
   **figure** - 35:25, 62:12, 95:16
   **file** - 3:11, 3:13
   **file-stamped** - 3:11, 3:13
   **filed** - 35:25
   **files** - 82:25, 73:3, 84:12, 98:1
   **final** - 77:6
   **fine** - 31:17, 34:17, 36:1, 93:7, 93:9
   **finger** - 72:11
   **finish** - 30:15, 98:13
   **first** - 38:10, 48:14, 50:13, 51:23, 63:21, 66:6, 67:18, 68:14, 77:5, 77:7, 77:8, 81:13, 81:19, 84:12, 87:22, 90:18, 92:14, 97:14, 98:13
   **First**- 77:3
   **five** - 29:11, 29:18, 31:14, 55:13, 57:25, 70:7, 71:9, 71:18
   **five-minute** - 29:11
   **flash** - 42:21
   **flee** - 95:21
   **flight** - 5:11, 5:23
   **flip** - 39:7, 41:11
   **flip-side** - 39:7
   **Flores**- 2:20
   **follow** - 63:1
   **Following**- 28:22
   **following** - 1:20, 37:15
   **follows** - 8:19, 8:25, 9:12
   **force** - 6:6, 6:11, 6:13, 6:14, 7:1, 7:4, 7:22, 20:22, 21:11, 22:3, 22:17, 44:25
   **forcibly** - 68:10
   **foregoing** - 107:6
   **Foreman**- 100:8
   **foreman** - 27:22, 28:1, 28:13, 78:2, 99:18
   **foreperson** - 101:14
   **Foreperson**- 101:16, 101:20, 101:21, 101:24
   **forfeited** - 95:24
   **forget** - 76:8, 79:6, 86:21
   **form** - 27:25, 99:14, 101:18, 105:12
   **formally** - 99:17
   **forthcoming** - 51:23
   **four** - 29:18, 32:7, 55:13,

87:9
   **fourteen** - 98:21, 99:6
   **Franklin**- 2:6, 107:23
   **freckles** - 87:21
   **Friday**- 3:9, 3:12
   **friends** - 44:10, 47:11, 48:17, 48:25, 49:16, 53:20, 54:8, 54:10, 76:18, 88:16, 94:2, 94:24, 95:11
   **front** - 59:22, 86:10, 88:5, 98:8
   **full** - 43:6
   **function** - 8:16
   **furtherance** - 10:18, 12:9, 13:15, 15:6, 16:17, 33:24, 35:5
   **furthermore** - 33:11

## G

   **gagged** - 86:8
   **gained** - 53:6
   **gaps** - 98:1, 98:2
   **garcia** - 1:6, 3:3, 4:3, 4:14, 4:17, 11:13, 11:21, 12:20, 13:3, 13:23, 14:12, 14:18, 15:12, 15:24, 16:5, 17:4, 17:15, 17:23, 18:14, 18:21, 19:6, 19:13, 20:2, 20:17, 21:15, 21:23, 22:21, 29:1, 29:2, 29:4, 29:5, 31:7, 41:22, 44:8, 48:4, 48:17, 56:16, 59:7, 59:8, 59:11, 61:13, 65:13, 65:15, 80:18, 82:17, 82:23, 89:11, 89:15, 89:16, 90:2, 90:5, 91:3, 101:1, 101:8, 102:1, 102:4, 102:5
   **Garcia**- 11:7, 11:10, 11:18, 11:19, 12:4, 12:5, 12:7, 12:8, 12:15, 12:18, 12:25, 13:11, 13:13, 13:14, 13:25, 14:1, 14:2, 14:9, 14:10, 15:3, 15:5, 15:6, 15:14, 15:15, 15:22, 15:23, 16:15, 16:16, 16:17, 17:6, 17:13, 17:25, 18:1, 18:3, 18:9, 18:10, 18:12, 18:23, 19:4, 19:15, 19:16, 19:23, 19:24, 20:19, 20:20, 20:21, 20:23, 20:25, 21:1, 21:7, 21:9, 21:11, 21:13, 21:14, 21:25, 22:1, 22:2, 22:4, 22:6, 22:7, 22:13, 22:15, 22:17, 22:19, 22:20, 31:8, 31:9, 32:16, 34:15, 34:20, 34:22, 36:18, 36:20, 36:25, 38:23, 39:11, 44:10, 45:1, 46:23, 48:20, 49:2, 49:7, 49:17, 50:6, 52:24, 54:9, 65:12, 80:1, 85:25, 86:19, 87:20, 88:24, 89:6, 90:24, 95:14, 96:1, 96:12, 98:11, 98:12, 98:18, 99:3
   **garcia's** - 54:2
   **Garcia's**- 36:16, 81:18
   **gaze** - 81:23
   **general** - 77:1
   **gentlemen** - 4:7, 29:15, 32:9, 79:2, 79:15, 81:9, 82:14, 82:17, 83:7, 85:24, 87:13, 88:13, 88:23, 89:20, 90:20, 90:23, 91:17, 91:23, 93:11, 95:5, 95:22, 97:20, 98:6, 98:19, 99:10, 104:20
   **get-away** - 57:3
   **given** - 26:8, 27:18, 29:24, 87:24, 93:15
   **Glossary**.............................
   **.end** - 1:10

   **gosh** - 74:1
   **governed** - 27:20
   **grade** - 87:22, 98:13
   **Grand** - 26:11, 100:8
   **grandiose** - 76:11
   **graphic** - 83:1
   **great** - 42:19, 55:6, 70:23, 74:7, 76:11, 76:12, 90:12, 97:24
   **greater** - 8:2
   **greatest** - 72:8
   **grieving** - 42:22, 42:23
   **ground** - 76:13
   **grown** - 54:13
   **guarantee** - 86:20, 86:21
   **guess** - 38:25
   **guide** - 81:4
   **Guillotte** - 103:23, 103:24
   **guilt** - 3:6, 26:13, 26:14, 26:23, 27:3, 27:9, 27:12, 27:14, 28:19, 28:21, 106:10
   **Guilt** - 1:16, 1:2
   **guilt-innocence** - 106:10
   **Guilt-innocence** - 1:16, 1:2
   **guilty** - 4:21, 9:25, 10:16, 11:3, 16:20, 16:25, 20:8, 20:12, 23:2, 23:4, 23:7, 23:9, 23:12, 23:14, 25:3, 27:6, 27:16, 29:1, 29:2, 29:4, 29:5, 33:2, 33:21, 34:23, 35:7, 38:6, 38:12, 38:14, 38:20, 39:8, 39:17, 41:13, 41:14, 41:18, 47:17, 56:24, 60:14, 61:8, 61:11, 62:9, 62:24, 77:13, 78:22, 80:2, 80:18, 80:19, 92:1, 92:17, 93:10, 93:17, 99:7, 99:8, 102:5
   **gun** - 44:12, 57:21, 59:19, 70:6
   **guns** - 59:19, 86:7
   **guy** - 47:24, 55:22, 69:25, 70:8, 82:21, 82:25
   **guys** - 29:16, 97:4

## H

   **Habitation** - 7:13
   **habitation** - 6:1, 7:9, 9:11, 11:25, 13:7, 14:22, 16:9, 33:18
   **half** - 79:16, 80:12, 80:16, 91:2, 91:5
   **Half** - 75:23
   **half-truths** - 79:16
   **Hand** - 107:16
   **hand** - 3:10, 23:5, 23:6, 99:13, 101:17
   **handiwork** - 70:17
   **hands** - 60:10, 61:6, 98:22
   **hard** - 61:3, 61:4, 63:12, 83:15, 83:17, 91:22
   **harm** - 53:19
   **Harris** - 1:9, 1:23, 4:14, 4:20, 13:22, 14:5, 14:23, 15:11, 15:18, 16:10, 17:3, 17:10, 17:22, 18:6, 18:20, 19:1, 19:12, 19:20, 20:16, 21:4, 21:22, 22:10, 31:6, 86:2, 98:14, 99:6, 107:2, 107:5
   **hat** - 52:5, 52:6
   **hates** - 54:24
   **head** - 48:10, 66:21, 81:20, 86:8
   **Hear** - 78:5
   **hear** - 44:24, 81:6, 85:9, 86:2
   **heard** - 1:21, 29:17, 29:21, 30:6, 31:14, 32:2, 32:14,

39:23, 54:20, 54:21, 58:22,
76:25, 79:7, 79:9, 79:10,
82:5, 85:10, 87:2, 87:3,
96:25, 98:15, 100:7
**hearing** - 86:24, 87:10
**hears** - 86:20
**hearsay** - 73:12
**heart** - 78:16
**heartbreaking** - 87:3
**heat** - 56:18
**held** - 1:23
**Help** - 102:12
**help** - 63:19, 80:9, 94:23
**helped** - 48:25
**helps** - 79:20
**her's** - 77:18
**hereby** - 107:6
**hereinbefore** - 5:5
**hereto** - 28:1
**Hernandez** - 2:20, 46:7,
46:22, 46:23, 52:18, 53:8,
63:19, 65:8, 66:12, 66:16,
66:17, 66:20, 86:13, 96:3,
98:3
**Hernandez's** - 36:23, 37:3
**herself** - 91:6
**hide** - 98:23
**high** - 30:12, 30:19, 80:22
**himself** - 32:15, 34:13,
57:15, 92:15
**Hispanic** - 64:1, 64:4,
67:14, 84:23, 85:3, 85:5,
85:19
**Hispanics** - 64:15, 65:4,
83:22, 85:1, 85:8
**history** - 72:18
**hit** - 30:19, 53:1, 73:9
**hitting** - 75:10, 75:16
**hobnobbing** - 88:1
**hold** - 49:5, 80:11
**holding** - 6:4, 20:20, 21:8,
22:1, 22:14
**hole** - 48:11, 68:14
**holes** - 35:25, 81:22
**home** - 40:6, 57:10, 57:22,
86:5, 91:2, 95:18
**homicide** - 72:24, 73:17
**honest** - 69:24
**honestly** - 85:11
**Honor** - 3:16, 40:16, 58:18,
75:17, 75:21, 92:21, 101:16,
101:24, 102:10, 102:11
**Honorable** - 1:22
**hope** - 77:15, 77:19, 81:9,
85:15, 85:20, 87:9, 98:22
**horrible** - 72:4, 72:5, 86:1,
87:12
**horror** - 87:11
**horse** - 97:12
**host** - 52:20
**hour** - 61:22
**hours** - 69:8, 88:3, 98:4
**house** - 44:19, 82:8, 86:7,
88:9
**Houston** - 1:23, 2:6, 2:13,
2:16, 45:7, 45:20, 54:13,
86:24, 89:8, 107:24
**Hpd** - 46:7, 68:17
**huge** - 72:9, 72:10, 72:12
**human** - 5:1, 18:2, 18:11,
19:17, 20:1
**humanitarian** - 70:23,
74:8
**hunt** - 96:3
**hurdle** - 66:6
**husband** - 45:2, 50:2,
50:4, 50:8, 53:3, 54:25,
91:1, 94:9, 94:21, 95:7
**hypothetically** - 63:5

# I

**idea** - 35:13, 37:14, 41:8,
49:3, 56:25, 57:13, 57:20,
60:9, 60:17
**identified** - 45:16, 45:17,
46:10, 47:18
**identifiers** - 46:8
**identify** - 45:15
**identifying** - 48:12
**identity** - 25:25
**illness** - 8:12
**imaginable** - 32:22
**Imagine** - 73:22
**imagine** - 50:16
**immediate** - 5:11
**immuned** - 87:11
**impairment** - 8:12, 8:16
**impartial** - 27:4
**impeach** - 85:12
**importance** - 46:25, 48:12
**important** - 41:21, 41:22,
45:14, 46:6, 46:9, 46:14,
47:16, 49:20, 50:12, 50:24,
52:7, 58:23, 72:1, 73:18,
78:1, 78:2, 81:8, 85:22,
93:12
**impossible** - 74:19, 75:9
**impressed** - 62:5
**impression** - 77:8, 77:9
**improper** - 92:21
**include** - 64:1
**included** - 37:15, 37:19,
37:21, 38:9, 38:17, 39:14,
58:1, 107:9
**includes** - 41:6, 41:22
**includes** - 7:15, 7:20,
23:17
**including** - 6:23
**incredible** - 57:7
**Index** - 1:11, 1:13
**indicate** - 75:6
**indicating** - 85:14
**indicted** - 26:22
**indictment** - 4:17, 16:21,
25:19, 26:2, 26:11, 28:20,
29:3, 75:12, 75:24, 96:24,
102:6, 105:19, 105:20,
105:22
**individual** - 4:24, 5:2,
32:23, 33:1, 33:2
**individually** - 30:19
**individuals** - 85:5
**induced** - 7:22
**inference** - 26:23
**inferred** - 10:25
**inflict** - 5:24, 20:25, 21:13,
22:6, 22:19
**inflicted** - 34:14
**inflicting** - 8:7
**information** - 28:5, 30:4,
96:8
**injuries** - 66:21, 80:1,
80:17, 81:1
**injury** - 4:24, 5:24, 6:16,
8:8, 8:10, 8:11, 8:13, 17:24,
18:9, 19:14, 19:23, 20:25,
21:13, 22:6, 22:19, 66:25,
67:2
**injustice** - 61:8
**innate** - 87:16
**innocence** - 1:16, 1:2,
26:24, 27:1, 28:19, 28:21,
106:10
**innocent** - 26:18, 42:7,
59:14
**inspection** - 101:19
**instead** - 56:8, 105:1
**instinct** - 87:14, 87:16

**instruct** - 69:20
**instructed** - 24:9, 25:11,
25:15, 26:4, 37:21, 69:17
**instruction** - 30:3, 35:16
**instructions** - 10:22,
27:15, 27:20
**instrument** - 11:11, 12:6,
14:3, 14:11, 15:4, 17:7,
17:14, 18:4, 18:13, 20:23,
21:12, 31:11, 43:20
**insulting** - 50:19
**intend** - 17:24, 18:8,
19:14, 19:22
**intended** - 5:17, 6:14,
6:15, 8:9, 11:9, 12:17, 95:18
**intends** - 4:24
**intent** - 5:14, 5:22, 6:3,
7:9, 7:25, 8:20, 9:2, 9:14,
10:8, 10:17, 10:23, 11:13,
12:20, 14:12, 15:24, 17:16,
18:14, 19:6, 20:3, 20:19,
20:24, 21:7, 21:12, 21:16,
21:25, 22:5, 22:13, 22:18,
22:22, 24:4, 25:24
**intention** - 11:18, 12:25
**intentionally** - 4:23, 4:25,
5:4, 5:6, 5:19, 5:21, 6:18,
8:18, 8:20, 8:23, 9:1, 9:9,
9:13, 12:4, 13:11, 13:25,
14:9, 15:2, 15:14, 15:22,
16:14, 17:5, 17:12, 18:1,
18:10, 18:22, 19:3, 19:16,
19:25, 20:18, 21:6, 21:24,
22:12, 31:9, 32:16, 34:14
**interfere** - 6:8
**internally** - 31:22
**interpreter** - 47:3
**interpreter's** - 100:6,
100:10
**Interpreters** - 2:21
**intimidation** - 6:12
**intrude** - 7:11
**intuition** - 53:17
**invasion** - 57:22
**investigate** - 63:19
**investigated** - 89:2
**investigation** - 63:21
**investigators** - 61:3
**Investigators** - 52:18
**involved** - 32:24, 63:17,
89:3
**involvement** - 38:22
**islands** - 47:4
**isolate** - 81:7
**isolated** - 87:4
**issue** - 28:21, 67:16
**items** - 3:18

# J

**Jennifer** - 104:1
**job** - 29:21, 29:25, 80:14
**Johnson** - 89:17
**Jordan** - 103:5
**Joshua** - 103:1
**Jr** - 11:7, 11:10, 11:18,
11:19, 12:4, 12:5, 12:7,
12:8, 12:15, 12:18, 12:25,
13:11, 13:13, 13:14, 13:25,
14:1, 14:2, 14:9, 14:10,
15:3, 15:5, 15:6, 15:14,
15:15, 15:22, 15:23, 16:15,
16:16, 16:17, 17:6, 17:13,
17:14, 17:25, 18:1, 18:3,
18:9, 18:10, 18:12, 18:23,
19:4, 19:15, 19:16, 19:23,
19:24, 20:19, 20:20, 20:21,
20:23, 20:25, 21:1, 21:7,
21:9, 21:11, 21:14, 21:25,
22:1, 22:2, 22:4, 22:6, 22:7,

22:13, 22:15, 22:17, 22:20,
31:9, 31:10, 32:16, 34:20,
34:22, 36:20, 37:1, 38:23,
39:11, 50:6, 80:1, 85:25,
88:8, 88:24, 96:1, 98:12,
98:18, 99:3
**Jr.'s** - 95:15, 96:12
**judge** - 70:19
**Judge** - 1:23, 3:20, 30:1,
30:6, 30:23, 35:12, 35:21,
36:8, 37:16, 41:23, 56:23,
61:19, 69:18, 69:20, 79:1,
83:24, 84:15, 100:13,
105:23, 106:7
**Judge's** - 30:2
**judges** - 27:17, 70:18
**Judicial** - 1:12
**July** - 1:20, 1:3, 3:4
**jumbo** - 30:5, 62:15,
62:18, 62:20, 63:2, 69:17,
70:15
**jumps** - 66:7
**junior** - 91:12
**juries** - 62:6
**Juror** - 102:14, 102:16,
102:17, 102:19, 102:20,
102:22, 103:1, 103:3, 103:5,
103:7, 103:8, 103:10,
103:11, 103:13, 103:14,
103:16, 103:17, 103:19,
103:21, 103:23, 103:25,
104:3, 104:4, 104:6, 104:7,
104:8, 104:10, 104:11,
104:13, 104:14, 104:16
**jurors** - 27:2, 79:19
**jurors** - 40:20
**Jury** - 1:6, 99:2
**jury** - 1:8, 3:1, 3:6, 3:22,
3:24, 4:6, 4:11, 4:16, 26:11,
27:21, 28:25, 29:1, 29:3,
29:5, 30:3, 30:12, 30:18,
31:20, 32:13, 32:19, 33:4,
33:5, 34:4, 34:5, 34:12,
35:12, 35:16, 35:20, 38:1,
38:7, 39:15, 39:18, 45:25,
60:6, 62:4, 62:8, 66:7,
71:10, 74:23, 77:23, 77:25,
78:3, 81:3, 84:1, 84:17,
85:15, 91:20, 92:12, 98:16,
98:17, 99:10, 99:14, 99:15,
99:19, 99:20, 99:23, 99:25,
100:2, 100:4, 100:7, 100:8,
100:17, 100:20, 100:24,
101:2, 101:5, 101:12,
101:23, 102:4, 102:8,
102:12, 104:19, 105:17,
105:19
**Jury's** - 101:25
**justice** - 30:7, 57:9, 98:24,
98:25
**Justin** - 2:4, 79:13, 92:15

# K

**Karen** - 104:14
**keep** - 76:5
**kidnapped** - 32:17, 94:22
**Kidnapping** - 5:8
**kidnapping** - 5:18, 5:20,
9:10, 9:11, 11:7, 11:24,
12:7, 12:15, 13:6, 13:13,
13:25, 14:8, 14:21, 15:5,
15:14, 15:21, 16:8, 16:16,
20:13, 23:2, 23:6, 23:10,
29:6, 31:8, 33:17, 35:3,
36:19, 37:19, 37:23, 38:10,
38:13, 38:18, 38:22, 39:9,
41:6, 41:10, 41:15, 41:18,
53:24, 56:10, 56:24, 60:19,
94:20

**kill** - 34:20, 92:24, 94:7
**killed** - 32:8, 34:14, 34:16, 37:1, 39:4, 59:14, 76:14, 86:1, 96:1
**killer** - 81:14
**killing** - 11:19, 12:25, 59:21
**kind** - 32:10, 34:1, 35:8, 39:13, 43:18, 44:11, 44:25, 57:15, 76:1, 95:5, 96:24
**Kind** - 33:10
**kinds** - 51:17
**kit** - 68:15, 82:13, 90:12
**kits** - 67:21
**knife** - 59:19, 59:24, 59:25, 60:1
**knowingly** - 4:23, 4:25, 5:19, 5:21, 6:18, 8:24, 9:5, 9:10, 9:18, 9:22, 17:5, 17:12, 18:1, 18:11, 18:22, 19:4, 19:16, 19:25, 20:18, 21:6, 21:24, 22:12
**knowledge** - 9:5, 9:18, 9:22, 25:25, 28:5
**known** - 6:14, 11:17, 11:23, 12:3, 12:24, 13:5, 13:10, 14:6, 14:15, 14:19, 15:2, 15:19, 16:3, 16:6, 16:14, 17:11, 17:19, 18:7, 18:17, 19:2, 19:9, 19:22, 20:6, 21:5, 21:19, 22:11, 22:25, 24:16, 24:21, 82:7, 96:10, 98:3
**knows** - 56:17, 58:19, 95:6

**L**

**Lab-** 45:8, 68:17
**Ladies-** 29:15, 79:2, 79:15, 82:17, 83:7, 85:24, 87:13, 88:23, 89:20, 90:22, 91:17, 93:11, 95:5, 95:22, 97:20, 99:10
**ladies** - 4:7, 32:8, 81:9, 82:14, 88:12, 90:20, 91:22, 98:6, 98:19, 104:20
**laid** - 33:3, 92:13
**lamb** - 88:15
**language** - 30:8, 46:15, 63:20
**large** - 64:3, 64:18, 66:8
**Larry-** 103:5
**last** - 3:9, 28:24, 29:16, 30:2, 40:5, 40:11, 40:22, 69:8, 69:19, 77:8, 77:9, 79:14
**lasted** - 68:12, 69:2, 69:7
**late** - 55:9, 55:12
**law** - 4:8, 25:5, 26:24, 27:19, 30:13, 32:20, 32:21, 32:25, 33:3, 33:4, 33:6, 33:10, 33:11, 33:14, 34:1, 34:6, 34:12, 34:24, 35:1, 35:7, 35:9, 35:16, 36:2, 36:8, 37:13, 37:14, 37:20, 56:23, 69:21, 70:15, 70:19, 70:22, 71:3, 71:20, 71:23, 77:16
**lawyer** - 30:9, 54:16, 72:5, 72:8
**lawyers** - 29:7, 61:24, 62:2, 62:3, 70:17, 70:18, 100:9
**learned** - 90:10
**lease** - 49:14
**least** - 56:22, 56:24, 57:3
**leave** - 39:22, 40:4, 60:13, 60:22, 68:1, 80:12, 98:22, 99:1
**leaving** - 76:1, 79:10

**left** - 39:25, 44:15, 44:20, 49:10, 55:2, 60:14, 72:17, 87:5, 90:24, 95:19, 95:24, 99:14
**legal** - 30:5
**legally** - 7:21
**legs** - 83:2
**Lemone-** 51:1
**Leonard-** 104:11
**less** - 67:2
**lessen** - 51:17
**lesser** - 16:25, 20:12, 23:9, 37:15, 37:19, 37:21, 38:9, 38:17, 39:14, 41:6, 41:22
**lesser-included** - 37:15, 37:19, 37:21, 38:9, 38:17, 39:14
**lesser-includeds** - 41:6, 41:22
**lessers** - 63:4
**liar** - 56:2
**liars** - 66:20, 85:17
**liberation** - 6:3, 20:20, 21:8, 22:1, 22:14
**liberty** - 6:9
**lie** - 67:7
**lies** - 43:8, 61:9, 74:2
**life** - 5:1, 18:2, 18:12, 19:17, 20:1, 40:5, 40:12, 86:20, 87:18, 91:1, 94:1
**light** - 65:1, 65:4
**light-skinned** - 65:1
**likely** - 6:5, 20:21, 21:10, 22:2, 22:16, 50:6, 50:7, 52:11, 52:12
**Linda-** 36:23, 36:24, 37:3, 53:8, 96:3, 98:3
**line** - 50:12
**lions** - 95:22
**list** - 89:6
**Listen-** 78:13
**listen** - 4:9, 41:4, 79:18, 94:15
**listened** - 30:1, 78:15
**listening** - 40:22
**literally** - 93:18
**lives** - 94:6
**living** - 54:13, 94:10, 96:19
**locked** - 88:7
**look** - 36:6, 38:3, 39:15, 49:14, 52:9, 67:17, 71:5, 72:12, 81:16, 85:16, 90:10, 99:4, 105:19
**looked** - 47:15, 68:22, 95:2
**looking** - 46:14, 52:10, 52:11, 63:21, 64:16, 67:21, 83:21, 85:1, 89:16, 89:18, 96:7, 97:2, 98:4
**lookout** - 41:14, 41:16, 57:3
**loose** - 94:3, 94:10
**loss** - 8:15
**lost** - 49:20, 76:22, 95:11
**Louisiana-** 2:15
**love** - 77:20, 78:20, 90:25
**lungs** - 73:3

**M**

**ma'am** - 101:4
**mad** - 52:16, 52:22
**Madrid** - 2:14, 40:16, 40:17, 40:19, 40:21, 46:5, 58:21, 60:9, 61:17, 72:1, 81:14
**Magee** - 1:22
**main** - 92:12
**major** - 73:24, 83:5
**male** - 45:18, 46:11, 46:12,

46:13, 48:2, 64:19, 64:23, 67:13
**males** - 45:17, 46:10, 47:8, 47:18, 50:24, 51:3, 51:12, 51:13, 51:15, 63:22, 64:3, 64:5, 64:14, 64:17, 67:12, 67:14, 83:22, 85:19
**man** - 44:12, 45:16, 46:22, 47:17, 47:23, 47:25, 48:24, 49:7, 49:9, 49:10, 50:9, 50:13, 53:15, 54:24, 56:19, 57:14, 61:8, 64:17, 64:23, 65:8, 65:9, 65:14, 65:16, 66:25, 72:21, 82:1, 82:6, 82:9, 82:10, 82:11, 83:4, 83:8, 83:13, 85:11, 85:22, 88:14, 95:2, 96:4, 98:17, 98:23, 99:5
**Management** - 8:5
**manifestly** - 8:6
**manner** - 6:15, 8:9, 12:18, 13:1, 13:12, 15:15, 15:23, 16:15, 18:23, 19:5, 19:18, 20:1, 22:4, 22:17, 31:11, 92:9, 93:6
**Mariiu** - 2:20
**Mario** - 2:14, 72:1
**mark** - 67:22, 75:5
**marks** - 43:23, 68:1, 68:3
**marriages** - 49:9
**married** - 49:9, 54:12, 54:14, 95:2
**Martinez** - 11:17, 11:23, 12:3, 12:24, 13:5, 13:10, 14:6, 14:15, 14:19, 15:1, 15:19, 16:2, 16:6, 16:13, 17:11, 17:19, 18:7, 18:17, 19:2, 19:9, 19:21, 20:6, 21:5, 21:19, 22:11, 22:25, 24:16, 24:21, 48:22
**Martinez-santana** - 11:17, 11:23, 12:3, 12:24, 13:5, 13:10, 14:6, 14:15, 14:19, 15:1, 15:19, 16:2, 16:6, 16:13, 17:11, 17:19, 18:7, 18:17, 19:2, 19:9, 19:21, 20:6, 21:5, 21:19, 22:11, 22:25, 24:16, 24:21
**Mary** - 107:4, 107:21
**mask** - 44:13, 81:20, 81:23
**masked** - 81:17, 86:6
**masks** - 48:6, 48:7, 48:12, 57:18
**match** - 57:19, 82:13, 97:4, 97:5
**matched** - 83:5
**matter** - 90:13, 97:19
**matters** - 28:3
**Matthew** - 104:7
**mean** - 41:10, 41:23, 43:16, 50:8, 62:19, 67:24, 69:9, 69:25, 70:15, 75:24, 80:2, 80:18, 83:1, 97:14
**means** - 5:9, 6:2, 6:7, 6:12, 6:13, 6:20, 7:10, 7:13, 7:19, 8:2, 8:4, 8:6, 8:11, 8:13, 12:18, 13:1, 13:12, 15:16, 15:23, 16:15, 18:24, 19:5, 19:18, 20:2, 22:4, 22:18, 23:16, 24:7, 26:11, 31:12, 93:6
**meant** - 10:22, 62:18, 65:20
**media** - 89:3
**medical** - 43:14, 43:16, 68:8, 71:25, 72:16, 72:22, 73:10, 73:17, 74:16
**medically** - 73:7
**medium** - 65:1
**meet** - 40:25

**Mehl** - 68:21, 89:21, 89:24
**Mel** - 52:25
**member** - 8:16
**members** - 4:5, 27:22, 85:19, 99:15, 100:8, 101:12, 101:22, 104:18
**Members** - 4:16, 45:25
**memory** - 62:11
**men** - 65:5, 66:8, 81:17, 83:14, 83:19, 86:6
**mental** - 24:8
**mention** - 28:5, 91:5
**mere** - 5:15, 33:12
**Mere** - 10:11, 23:25
**merely** - 24:14, 24:24
**message** - 61:4, 100:24
**met** - 54:17
**Mexican** - 65:9, 85:8
**Mexico** - 47:5
**middle** - 40:6, 88:13, 96:5, 96:7
**might** - 31:21, 32:1, 42:6, 43:6, 43:24, 53:19, 54:10, 63:5, 64:2, 73:2
**mind** - 42:23, 78:6, 78:7, 78:8, 78:14, 78:17, 88:22
**mine** - 65:18
**minute** - 29:11
**minutes** - 30:2, 30:11, 40:1, 40:3, 40:5, 40:11, 61:15, 61:21, 61:24
**mischaracterizes** - 45:24, 60:3
**Mischaracterizes** - 64:6, 65:24, 74:21
**Mischaracterizing** - 75:18
**misconceptions** - 84:21
**missed** - 74:20
**missing** - 52:19
**mistake** - 25:25, 83:4
**mix** - 42:19
**mom** - 87:25
**moment** - 62:15, 65:11, 84:5
**Monday** - 3:4
**money** - 48:19, 48:25, 51:25, 52:2, 52:4, 52:6, 52:11, 55:2, 58:2, 58:4, 58:5, 58:9, 59:11, 63:17, 98:18
**Montgomery** - 103:11
**month** - 30:17, 51:21, 52:2, 87:1
**months** - 54:4, 54:11, 70:6, 94:4
**morning** - 3:4, 40:19, 40:20, 79:3, 79:24, 86:16, 94:20, 97:2, 105:2, 105:8, 105:24, 106:9
**Most** - 89:4
**most** - 36:13, 50:7, 72:20, 76:7, 87:14, 93:21, 93:25
**mother** - 40:8, 42:22, 42:23, 53:12, 58:7, 86:10
**mother's** - 53:17
**motive** - 25:24, 48:23, 48:24, 57:7, 59:10, 81:15
**mouth** - 6:23, 48:11
**move** - 95:10, 95:12
**moved** - 90:25
**movements** - 6:8
**movie** - 42:20
**moving** - 6:9
**mud** - 96:12
**multiple** - 54:17
**multitude** - 91:25
**mumbo** - 30:5, 62:15, 62:18, 62:20, 63:2, 69:17, 70:15
**mumbo-jumbo** - 30:5,

62:15, 62:18, 62:20, 63:2,
69:17, 70:15
  **murder** - 4:18, 4:22, 5:4,
5:6, 8:19, 8:24, 11:3, 11:15,
12:8, 12:22, 13:14, 13:19,
15:5, 16:16, 16:21, 17:1,
20:8, 23:5, 23:9, 29:2, 29:4,
30:25, 31:13, 33:20, 33:22,
33:23, 34:22, 34:23, 35:5,
37:17, 37:18, 37:23, 37:25,
38:7, 38:10, 38:12, 38:14,
38:18, 38:21, 39:11, 39:18,
41:6, 41:10, 41:13, 41:19,
43:11, 56:9, 60:19, 60:20,
61:11, 70:11, 74:1, 80:2,
80:19, 93:17, 94:4, 99:8,
102:5
  **must** - 11:3, 11:11, 11:19,
12:11, 12:18, 13:1, 23:8,
24:14, 24:25, 25:2, 25:12,
27:6, 27:8, 27:20, 28:2,
28:12, 52:21, 76:4, 80:2,
80:18, 88:22

# N

  **nailed** - 97:16
  **name** - 85:25, 89:6
  **namely** - 11:11, 12:6, 14:2,
14:11, 15:4, 17:7, 17:14,
18:2, 18:3, 18:12, 18:13,
19:17, 20:1, 20:23, 21:11,
31:10
  **names** - 102:13, 102:24,
102:25
  **Nancee** - 103:14
  **Natalie** - 2:3, 29:23, 30:15,
31:2
  **natural** - 73:8
  **nature** - 9:14, 9:19, 9:21
  **necessarily** - 64:21
  **need** - 94:25, 106:5
  **negotiate** - 97:6
  **neighbor** - 51:2
  **neighbors** - 59:4, 87:23,
88:1, 88:2
  **Never** - 66:12, 66:14
  **never** - 26:17, 47:17,
52:22, 52:23, 53:2, 53:4,
53:5, 56:5, 56:19, 65:21,
66:13, 76:20, 80:7, 86:21,
89:22, 95:18
  **news** - 86:3, 87:2, 87:3
  **next** - 16:24, 20:11, 54:9,
55:2, 86:13
  **nice** - 69:25, 70:8
  **Nice** - 74:4
  **night** - 36:16, 39:2, 40:7,
52:9, 57:21, 69:9, 81:18,
82:11, 82:15, 83:3, 83:16,
84:12, 84:21, 86:22, 87:7,
88:14, 96:5, 96:7
  **Ninja** - 87:22
  **nobody** - 42:8, 45:16,
59:15
  **Nobody** - 45:2, 90:9
  **None** - 71:21
  **normal** - 85:8
  **nose** - 67:9, 67:11, 87:21
  **note** - 41:5, 100:4
  **nothing** - 39:10, 45:4,
45:5, 45:8, 53:6, 56:7,
68:25, 73:1, 74:11, 83:8,
96:22, 96:24, 97:3, 97:8,
105:20
  **Nothing** - 67:13, 72:23,
97:5
  **notice** - 92:2
  **November** - 42:17
  **numbered** - 1:22, 107:11

  **numbers** - 102:20
  **nurse** - 44:24, 67:20,
80:16, 80:21, 80:23

# O

  **oath** - 63:1
  **Obel** - 1:6, 3:3, 4:2, 4:14,
4:16, 11:13, 11:21, 12:20,
13:3, 13:23, 14:12, 14:18,
15:12, 15:24, 16:5, 17:4,
17:15, 17:23, 18:14, 18:21,
19:5, 19:13, 20:2, 20:17,
21:15, 21:23, 22:21, 28:25,
29:2, 29:4, 29:5, 31:6,
41:21, 44:8, 48:4, 48:17,
50:5, 52:13, 52:16, 52:21,
52:24, 53:6, 54:2, 54:4,
54:19, 55:12, 56:15, 59:7,
59:8, 59:11, 59:22, 59:23,
59:25, 60:13, 61:13, 65:13,
65:14, 80:18, 82:17, 82:22,
89:10, 89:15, 89:16, 90:1,
91:3, 100:25, 101:8, 102:1,
102:4, 102:5
  **object** - 7:11, 43:21, 83:24
  **Objection** - 45:23, 58:18,
60:2, 64:6, 65:24, 71:10,
74:21, 75:17, 80:24, 92:20
  **objection** - 100:12,
100:13, 100:15
  **objections** - 3:14, 3:19,
3:20
  **objective** - 8:21, 9:3, 9:16
  **Obviously** - 42:3
  **occasion** - 11:5, 11:20,
12:13, 13:2
  **occupied** - 7:16, 49:17
  **occurred** - 35:4, 94:20,
107:11
  **occurrences** - 92:5, 92:6
  **occurs** - 5:10, 5:13
  **October** - 86:1, 86:14,
86:16, 86:23, 98:15, 107:17
  **odds** - 90:5
  **offense** - 4:18, 4:22, 5:3,
5:7, 5:12, 5:13, 5:14, 5:17,
5:18, 5:20, 6:17, 7:7, 8:19,
9:25, 10:1, 10:3, 10:7, 10:9,
10:10, 10:12, 10:17, 10:24,
11:7, 11:14, 11:24, 12:9,
12:15, 12:21, 13:6, 13:15,
13:19, 14:13, 14:16, 14:20,
15:7, 15:25, 16:3, 16:7,
16:18, 17:1, 17:17, 17:20,
18:15, 18:18, 19:7, 19:10,
20:4, 20:7, 20:13, 21:17,
21:20, 22:23, 23:1, 23:9,
23:12, 23:20, 23:23, 24:1,
24:2, 24:5, 24:6, 24:12,
24:14, 24:17, 24:22, 24:23,
24:25, 25:3, 25:17, 25:18,
25:22, 26:2, 26:19, 26:20,
26:22, 27:7, 30:22, 30:24,
31:4, 33:2, 33:3, 33:9,
33:13, 33:23, 34:24, 36:5,
36:22, 37:3, 37:5, 37:17,
37:22, 37:24, 38:6, 38:14,
38:20, 39:9
  **offenses** - 8:24, 9:10,
23:7, 25:17, 25:22, 37:15,
37:18, 37:20, 37:22, 38:10,
38:18, 39:14
  **offensive** - 62:19
  **offer** - 56:7
  **officer** - 28:9, 28:11,
28:14, 28:15, 54:15
  **officers** - 84:20, 84:25,

85:3, 89:1, 89:10, 98:9
  **Official** - 107:4, 107:16,
107:22
  **official** - 63:23, 100:11
  **old** - 51:21
  **Olga** - 103:8
  **omission** - 23:18, 24:7
  **once** - 99:15, 106:4
  **Once** - 64:8, 66:1, 84:16
  **One** - 37:13, 54:23, 58:23,
64:3
  **one** - 5:5, 5:22, 6:9, 6:19,
6:25, 10:11, 10:14, 10:15,
10:19, 10:23, 23:5, 24:1,
27:21, 28:8, 30:6, 30:21,
31:4, 31:16, 31:18, 31:25,
32:5, 32:9, 32:23, 33:1,
33:15, 33:19, 33:25, 34:13,
34:15, 35:3, 35:6, 39:22,
42:1, 43:16, 46:10, 47:23,
47:25, 48:7, 48:15, 49:24,
49:25, 50:19, 52:20, 53:7,
54:15, 54:17, 54:18, 54:23,
55:1, 61:7, 63:25, 65:22,
66:8, 69:1, 72:22, 75:10,
75:11, 76:7, 77:14, 78:7,
81:13, 81:14, 81:19, 82:18,
87:18, 92:17, 93:8, 93:16,
95:18, 95:21, 96:18
  **one-way** - 95:18
  **Open** - 3:1, 3:24, 99:23,
100:2, 100:20, 101:5,
105:17
  **open** - 77:4, 78:13, 107:12
  **opening** - 42:16, 42:21,
72:7, 74:9, 105:25
  **opinion** - 78:1, 78:10,
78:11, 78:13, 105:13
  **opinions** - 78:5
  **opportunity** - 25:24, 34:8,
77:20, 77:21
  **option** - 93:15
  **organ** - 6:19, 6:21, 8:17
  **organism** - 62:4
  **original** - 4:10, 33:25,
35:6, 51:13, 97:3
  **otherwise** - 26:22
  **Outside** - 80:24
  **outside** - 24:20, 83:25,
84:14, 87:25, 105:18
  **overnight** - 7:14
  **Overruled** - 81:2
  **overruled** - 46:4, 66:1,
92:22
  **own** - 10:3, 23:24, 25:6,
58:14, 70:25, 78:16, 78:17
  **Owner** - 8:2
  **owner** - 7:8, 7:21, 7:25
  **owner's** - 8:1

# P

  **packaged** - 68:23
  **packing** - 95:9, 95:12
  **Page** - 1:3, 33:5, 34:4,
35:17, 92:12
  **page** - 28:24, 43:17
  **pages** - 28:25, 30:4, 34:6,
35:10, 39:15, 39:18, 41:4
  **pain** - 8:11
  **pajamas** - 87:7
  **pant** - 43:7
  **panties** - 36:16, 44:22,
83:5, 90:21
  **pants** - 43:5, 76:4, 76:5,
76:13
  **pantyhose** - 48:8, 48:9,
48:10
  **paragraph** - 5:5, 92:3,
105:21

  **paralyzed** - 88:18
  **parent** - 87:15
  **parents** - 53:18
  **part** - 7:11, 23:19, 42:10,
63:5, 63:7, 63:21, 63:23,
70:23, 79:9, 80:8, 80:9,
85:6, 94:17
  **participate** - 7:1, 7:3
  **participated** - 23:21
  **participates** - 33:1
  **participating** - 34:21
  **parties** - 9:25, 11:1, 32:20,
32:25, 33:3, 33:6, 33:11,
34:12, 34:25, 107:9, 107:15
  **parts** - 62:5, 81:7
  **party** - 3:12, 10:2, 10:11,
23:17, 23:23, 24:1, 33:8,
33:14, 34:22, 45:6, 92:7,
92:18
  **pass** - 44:1
  **passed** - 86:12, 86:14,
86:18
  **passes** - 58:12
  **passing** - 26:7, 26:14
  **pause** - 50:20
  **paused** - 51:4
  **pending** - 95:24
  **penetration** - 6:19
  **penitentiary** - 56:1, 58:3
  **Pennsylvania** - 56:1, 70:4,
73:22
  **people** - 44:9, 44:14, 46:7,
46:14, 46:17, 47:10, 47:13,
48:4, 48:12, 48:14, 48:17,
48:24, 50:1, 52:12, 61:3,
64:20, 64:24, 65:6, 66:9,
74:6, 76:18, 86:1, 86:24,
89:17
  **percent** - 80:21
  **percentage** - 80:22
  **perception** - 57:13
  **perfect** - 96:17
  **perfectly** - 36:1, 93:6
  **periods** - 81:24
  **permanent** - 8:15
  **permit** - 29:7
  **perplexing** - 81:12
  **Perry** - 3:23, 46:11,
100:18, 102:25, 105:15
  **person** - 4:22, 5:3, 5:5,
5:14, 5:18, 5:19, 5:20, 5:21,
5:25, 6:3, 6:14, 6:17, 6:18,
6:20, 6:22, 6:23, 6:25, 7:3,
7:4, 7:5, 7:7, 7:21, 8:2, 8:19,
9:1, 9:5, 9:13, 9:18, 9:22,
10:2, 10:6, 10:10, 21:1,
21:14, 22:7, 22:20, 23:22,
24:2, 24:6, 26:19, 28:6,
33:7, 33:8, 33:13, 47:21,
52:20, 54:18, 61:5, 61:6,
65:3, 73:3, 76:11, 83:3,
85:18, 89:11, 94:8
  **person's** - 6:8, 6:20, 6:22,
85:17
  **personal** - 28:5, 93:25
  **personally** - 34:15, 87:19
  **persons** - 7:15, 9:25,
10:23, 23:17, 26:18
  **phase** - 3:6, 50:18, 104:21,
104:22, 104:23, 104:25,
105:2, 105:9, 106:2
  **Phone** - 2:7, 2:13, 2:16
  **physical** - 7:1, 7:11, 8:11,
8:12, 44:25, 68:10, 83:10
  **pick** - 68:22
  **picnic** - 87:24, 91:9
  **picture** - 42:5, 43:10, 67:3,
72:3
  **pictures** - 52:9
  **piece** - 54:5

**pillowcase** - 67:4, 86:8
**pistol** - 73:24, 86:9
**pistol-whip** - 86:9
**place** - 6:4, 6:10, 20:21, 21:9, 22:2, 22:15, 36:20, 60:17, 69:4, 86:4, 90:18
**placed** - 4:10
**Places** - 65:7
**places** - 80:5
**plan** - 25:24
**play** - 42:10
**playing** - 74:9
**plays** - 32:22, 34:2, 38:19
**pleaded** - 4:20
**pleasure** - 49:4
**plenty** - 34:7, 60:25
**plus** - 30:17
**point** - 40:23, 41:2, 41:25, 51:18, 69:9, 75:7, 79:24, 85:2, 99:16
**pointing** - 72:11
**points** - 30:12, 30:19, 56:18
**Police** - 63:18
**police** - 42:25, 48:15, 51:9, 52:15, 54:17, 60:16, 63:23, 65:17, 94:18, 94:19, 95:1, 98:8, 98:9
**poll** - 102:12
**polled** - 102:9
**Polling** - 1:8
**pondering** - 95:13
**poor** - 72:3, 72:10
**portion** - 7:16
**portions** - 107:8
**portray** - 57:15
**possession** - 8:3
**Possession** - 8:4
**possible** - 27:10, 90:15
**possibly** - 42:25
**post** - 88:8
**predict** - 62:2
**preparation** - 5:15, 25:24
**prepare** - 70:16
**prepared** - 28:12, 79:3
**presence** - 10:11, 23:25, 33:12, 105:19
**present** - 3:1, 3:4, 3:24, 4:5, 4:6, 7:5, 23:21, 99:15, 99:23, 100:2, 100:20, 100:23, 101:5, 101:11, 101:12, 105:17
**presented** - 79:15
**presenting** - 106:1
**preside** - 27:23
**presiding** - 1:23
**pressure** - 42:7
**pressured** - 42:11
**presumed** - 26:18
**presumption** - 26:25
**pretty** - 50:19, 68:22, 68:23, 73:21, 73:23, 74:6, 81:12, 90:4
**prevent** - 6:3, 20:19, 21:8, 21:25, 22:14
**primary** - 89:11
**prison** - 55:15, 57:23, 57:24, 58:8, 60:21, 70:4
**pristine** - 90:8
**problem** - 49:10, 65:16
**proceed** - 3:5, 4:1, 29:9, 40:17, 61:18, 75:2, 78:24, 105:4, 105:25
**proceeded** - 86:9
**Proceedings** - 1:16, 1:24, 1:2
**proceedings** - 1:21, 106:10, 107:8, 107:14
**produce** - 26:25
**profile** - 83:4, 83:5

**profound** - 72:20
**profoundly** - 62:5
**promise** - 80:14
**promote** - 10:8, 11:14, 12:21, 14:12, 15:25, 17:16, 18:14, 19:6, 20:3, 21:16, 22:22, 24:4
**proof** - 26:15, 27:11, 43:24, 55:5, 72:6, 73:17, 77:4, 77:11
**property** - 7:25, 8:1, 8:3, 8:5, 90:9
**prosecution** - 26:13, 27:5, 27:9
**prosecution's** - 27:11
**prosecutor** - 79:12
**protect** - 53:18, 55:20, 87:14
**protracted** - 8:15
**prove** - 26:24, 27:9, 31:3, 43:19, 44:2, 44:6, 44:8, 44:16, 44:20, 44:22, 44:23, 44:24, 45:9, 62:21, 62:22, 63:3, 69:13, 72:7
**proved** - 26:20, 27:17, 31:2
**proven** - 31:16, 60:24, 62:25
**Proverbs** - 95:20
**provides** - 25:5
**proving** - 27:5, 27:6
**Puerto** - 46:17, 47:1, 47:4, 47:12, 89:18, 95:13
**punishment** - 104:23, 104:25, 105:2, 105:9, 106:2
**purpose** - 8:7, 19:18, 25:14, 25:20, 26:3, 26:6, 26:10, 33:24
**pursuant** - 11:25, 13:7, 14:22, 16:9
**pursues** - 95:21
**pushed** - 57:14, 57:15, 57:20, 59:7
**put** - 3:18, 41:23, 42:5, 48:5, 53:7, 64:2, 64:3, 64:4, 64:13, 64:14, 67:2, 70:19, 75:11, 75:12, 82:2, 84:11, 86:8, 86:15, 88:7, 88:20, 89:1, 90:14, 90:20, 97:1, 98:10, 98:16, 99:7, 106:5
**Put** - 98:16
**puts** - 97:11, 98:4
**putting** - 89:4, 92:20
**Pyper** - 103:14

## Q

**quadrillion** - 90:3
**quality** - 69:3, 90:6
**questions** - 28:16
**quick** - 41:2, 41:5, 66:11, 69:16
**quiet** - 88:15, 88:17, 88:20
**quite** - 29:25

## R

**race** - 64:22, 64:23
**raised** - 94:5
**ran** - 55:17, 55:18
**Randy** - 96:11
**ransacked** - 52:8
**rape** - 36:18, 67:20, 68:15, 80:22, 82:13
**raped** - 45:2, 50:13, 82:12, 82:21, 82:25, 83:3, 86:10
**rapes** - 50:16
**rapidly** - 85:8
**rat** - 94:12
**reached** - 99:21, 100:25

**read** - 4:8, 4:10, 30:2, 30:6, 34:8, 41:4, 92:2, 105:20
**readily** - 94:14
**reading** - 3:5, 56:22
**reads** - 28:25, 34:2
**ready** - 3:22, 3:23, 4:1, 105:25, 106:3
**real** - 50:11, 83:17
**realized** - 37:16
**really** - 29:16, 39:15, 40:12, 42:16, 43:15, 43:19, 47:10, 47:22, 48:2, 48:5, 48:15, 48:21, 49:13, 49:14, 83:15, 92:17, 93:22
**reason** - 46:6, 46:9, 47:16, 48:18, 49:18, 52:13, 52:22, 53:5, 54:23, 55:7, 58:22, 59:5, 59:9, 60:21, 60:22, 62:17, 89:9, 89:10, 96:18, 97:5
**reasonable** - 11:4, 11:12, 11:20, 12:12, 12:19, 13:2, 13:21, 14:4, 14:17, 15:10, 15:17, 16:4, 16:23, 17:2, 17:8, 17:21, 18:5, 18:19, 18:25, 19:11, 19:19, 20:10, 20:15, 21:2, 21:21, 22:8, 23:4, 23:6, 23:11, 25:2, 25:21, 26:20, 27:2, 27:7, 27:11, 27:13, 30:22, 31:3, 31:17, 31:19, 31:24, 32:4, 32:5, 44:5, 60:25, 62:23, 63:1, 63:5, 63:6, 63:11, 70:21, 77:12, 78:15, 78:17, 78:21, 98:7
**reasonably** - 9:7, 9:24
**reasons** - 90:1
**receive** - 27:19
**received** - 100:4, 100:24, 101:14
**Received** - 1:7
**recess** - 99:21, 99:25, 105:1, 105:8, 106:9
**Recess** - 100:1, 100:19
**recollection** - 64:12
**reconstruct** - 63:11
**Record** - 1:1, 107:10, 107:13
**record** - 3:2, 3:15, 3:18, 4:3, 68:24, 80:25, 83:25, 84:14, 100:3, 100:11, 100:21, 101:7, 101:9, 106:5
**recorded** - 65:23
**recovered** - 74:18
**refer** - 25:12
**reference** - 85:4
**referred** - 64:20
**reflect** - 4:3, 100:21, 101:9
**reflects** - 107:14
**regarding** - 25:16, 41:5, 50:12
**regular** - 48:11
**relate** - 28:3, 35:9, 70:25
**relates** - 30:25, 32:25, 34:11, 34:24
**relating** - 31:14
**relations** - 44:23, 45:3
**relationship** - 53:2, 82:23, 90:25
**relative** - 8:18, 8:24, 9:10, 28:12
**released** - 73:23, 105:7, 105:14
**relevant** - 39:19, 41:9
**rely** - 46:2, 60:6, 64:9, 74:25, 84:2, 84:18
**remainder** - 61:22
**remains** - 43:18, 72:17, 87:6

**remember** - 30:21, 31:18, 35:20, 37:25, 42:14, 42:19, 43:5, 43:22, 44:7, 44:9, 46:5, 46:21, 48:13, 49:22, 50:5, 50:15, 51:1, 51:5, 51:6, 51:15, 51:16, 51:20, 52:4, 52:5, 53:10, 54:16, 55:10, 55:21, 55:23, 55:24, 57:13, 57:17, 57:23, 58:12, 62:6, 66:5, 75:4, 79:7, 79:9, 80:3, 86:11, 86:12, 86:17
**Remember** - 55:8, 59:18, 61:7, 67:4, 76:21, 80:4, 83:17, 84:10, 91:4
**remembers** - 86:19
**remind** - 60:5, 60:7, 74:23, 79:18, 81:2, 84:4, 105:10
**reminded** - 46:1, 66:2
**Renee** - 1:22
**rent** - 55:2
**reopened** - 89:21
**report** - 43:16, 63:23, 65:17, 65:21, 84:8
**reported** - 1:24, 107:12
**Reporter** - 107:4, 107:22
**Reporter's** - 1:1, 1:9, 107:1, 107:10, 107:13
**Republic** - 37:9, 46:17, 54:11, 55:5, 57:11, 94:4, 94:5, 94:9
**requested** - 107:8
**require** - 26:24
**required** - 27:9, 27:10
**requires** - 69:22
**residents** - 49:17
**resolve** - 23:8, 99:5
**Respect** - 78:4
**respect** - 8:20, 9:2, 9:6, 9:14, 9:19, 9:23, 72:20
**respective** - 107:15
**respond** - 77:17, 77:18, 79:4, 94:23, 95:8
**response** - 100:6, 100:7, 100:10
**responsibility** - 72:9
**responsible** - 10:2, 10:5, 10:6, 23:22, 23:25, 24:2, 32:15, 79:12, 79:14, 80:10
**rest** - 80:3, 81:10
**restrain** - 6:2, 6:7
**Restraint** - 6:10
**restrict** - 6:7, 28:20
**rests** - 26:16
**result** - 8:21, 8:22, 9:2, 9:4, 9:6, 9:8, 9:15, 9:17, 9:23, 9:24, 10:19, 12:11, 13:17, 15:8, 16:19, 90:17
**results** - 93:17
**retire** - 4:11, 27:21, 28:23
**retired** - 1:6, 28:10
**retrieved** - 90:8
**return** - 62:24, 77:13
**returns** - 3:23
**revealed** - 53:2
**review** - 35:24, 36:6, 36:10
**rewrite** - 72:18
**Rhodes** - 96:11
**Ricans** - 47:2, 47:12
**Rico** - 46:17, 47:4, 89:18, 95:13
**ridiculous** - 39:5, 59:17, 59:20
**righteous** - 95:21
**rights** - 77:11, 77:25
**rings** - 99:25
**rise** - 26:23, 105:16
**risk** - 8:14
**Rn** - 67:19
**rob** - 44:14
**robbery** - 57:22

**rock** - 65:10, 96:11
**Rode**- 88:4
**Rodriguez**- 107:4, 107:21
**Rodriguez's**- 37:6
**Rogelio**- 11:16, 11:22, 12:2, 12:23, 13:4, 13:9, 14:5, 14:14, 14:18, 15:1, 15:18, 16:2, 16:5, 16:13, 17:10, 17:18, 18:6, 18:16, 19:1, 19:8, 19:21, 20:5, 21:4, 21:18, 22:10, 22:24, 59:21, 59:24, 61:7
  **Roger**- 34:20, 82:3, 92:24
**Rolando**- 2:20
**role** - 55:11
**room** - 4:11, 27:21, 40:24, 48:5, 81:25, 85:15, 90:9, 99:15, 99:20
**roughly** - 40:2
**Rp**- 2:11
**Rudy**- 11:17, 11:23, 12:3, 12:24, 13:5, 13:10, 14:6, 14:16, 14:19, 15:2, 15:19, 16:3, 16:6, 16:14, 17:11, 17:19, 18:7, 18:18, 19:2, 19:9, 19:22, 20:6, 21:5, 21:19, 22:11, 22:25, 24:17, 24:21, 32:6, 35:18, 35:25, 36:12, 40:9, 41:11, 41:13, 44:17, 48:7, 48:22, 53:9, 53:11, 53:22, 53:23, 53:25, 55:7, 55:8, 55:9, 55:10, 55:15, 55:22, 55:23, 55:24, 55:25, 56:2, 56:3, 56:5, 58:24, 58:25, 59:9, 59:12, 59:22, 60:1, 60:22, 61:6, 69:14, 69:25, 70:10, 70:12, 70:23, 70:25, 73:14, 73:21, 73:22, 74:6, 74:7, 74:8, 75:25, 76:8, 76:21, 76:22, 81:14, 82:1, 82:3, 82:4, 82:7, 82:9, 82:12, 82:13, 82:14, 82:15, 83:11, 92:16, 92:25, 93:3, 96:4, 96:6, 96:8, 96:13, 96:16, 96:22, 97:1, 97:6, 97:7, 98:1
  **Rudy's**- 36:6, 37:11, 71:8, 71:11, 71:15, 73:19, 73:20
  **Rudys**- 71:8, 71:9, 71:18, 71:19
**rule** - 70:24, 71:17
**run** - 98:23
**running** - 83:2, 88:9

**S**

**sad** - 67:8, 72:2
**safely** - 90:5
**safest** - 86:5
**Sanchez** - 103:8
**Sane** - 44:24, 80:16, 80:20, 80:23
  **santana** - 11:17, 11:23, 12:3, 12:24, 13:5, 13:10, 14:6, 14:15, 14:19, 15:1, 15:19, 16:2, 16:6, 16:13, 17:11, 17:19, 18:7, 18:17, 19:2, 19:9, 19:21, 20:6, 21:5, 21:19, 22:11, 22:25, 24:16, 24:21
  **Santana** - 48:22
**sat** - 40:7, 40:21
**satisfied** - 27:2
  **saw** - 42:4, 55:17, 58:21, 74:9, 81:19, 81:20, 81:21, 81:25, 85:13, 85:17
**Sbot** - 2:4, 2:5, 2:12, 2:15
**scared** - 43:4
**scenario** - 47:20, 47:25
**scene** - 33:12, 34:19,

**school** - 50:7
**screams** - 86:18, 86:19
**screen** - 84:9, 84:10, 84:11
  **script** - 41:11
  **seat** - 59:22, 59:23, 88:21, 95:15
  **seated** - 3:25, 4:6, 60:4, 60:10, 99:24, 101:1, 101:6, 101:13
  **second** - 41:25, 47:21, 69:16, 82:10, 82:11, 91:5, 92:16, 104:22
  **secreting** - 6:4, 20:20, 21:8, 22:1, 22:14
  **section** - 63:23
  **secured** - 7:15
  **see** - 34:2, 42:6, 49:23, 55:3, 55:4, 67:21, 71:5, 76:3, 79:25, 81:22, 88:4, 88:8, 88:9, 88:12, 91:6, 92:11, 93:1, 94:22
  **select** - 27:1, 99:17
  **selection** - 30:18, 32:20, 35:12, 35:20, 38:1
  **self** - 56:2, 61:9, 66:19
  **self-admitted** - 66:19
  **self-serving** - 56:2, 61:9
  **sell** - 74:13, 95:16
  **selling** - 60:17
  **send** - 61:4
  **sense** - 38:23, 39:5, 39:6, 39:8, 39:12, 44:18, 47:10, 48:2, 48:21, 49:13, 49:15, 57:17, 57:22, 59:12, 59:13, 83:12, 93:2
  **sent** - 100:16
  **sentence** - 58:1
  **separately** - 7:15
  **September** - 4:19, 13:22, 14:5, 14:24, 15:11, 15:18, 16:11, 17:3, 17:9, 17:22, 18:6, 18:20, 19:1, 19:12, 19:20, 20:16, 21:3, 21:22, 22:9, 31:5, 34:19, 36:18, 39:2, 39:24, 50:7, 63:16
  **Sergeant** - 45:13, 45:14, 45:19, 45:24, 46:7, 52:17, 52:25, 63:24, 65:19, 65:25, 68:21, 83:16, 83:20, 84:6, 84:8, 89:21, 89:24, 96:22, 97:15
  **serious** - 4:24, 6:16, 8:8, 8:10, 8:15, 17:24, 18:8, 19:14, 19:23
  **Serious** - 8:13
  **serving** - 56:2, 61:9
  **set** - 71:4
  **settle** - 66:4
  **seven** - 70:5, 92:13
  **several** - 34:6, 35:10
  **sex** - 91:10
  **sexual** - 6:17, 6:19, 6:21, 6:24, 8:24, 11:24, 13:6, 14:21, 16:8, 33:18, 35:4, 36:17, 44:22, 44:23, 45:3, 45:7, 45:13, 66:24, 68:7, 82:19, 90:11, 93:14, 93:16
  **Sexual** - 5:25, 7:10
  **sexually** - 48:20, 66:22, 67:17, 67:22, 67:23, 67:24, 68:1, 68:9, 68:10, 69:14
  **shall** - 27:19, 28:13
  **shame** - 72:17, 97:24
  **shameful** - 93:25
  **Share** - 78:11
  **share** - 78:12
  **sharp** - 11:11, 12:6, 14:2,

**14:11, 15:4, 17:7, 17:14,** 18:3, 18:13, 20:23, 21:11, 31:11, 43:20
  **shifts** - 26:17
  **shock** - 40:11
  **shocked** - 86:25
  **shocking** - 86:3
  **shoes** - 88:10
  **shortest** - 61:25
  **shorthand** - 1:25
  **shortly** - 36:25, 39:20, 50:14, 53:8
  **show** - 45:4, 45:5, 58:13, 74:17, 80:1
  **Show** - 84:7
  **showed** - 58:14
  **shown** - 28:7
  **shows** - 24:14, 24:24, 60:11
  **shred** - 72:22
  **sick** - 96:19
  **side** - 39:7, 57:20, 58:16, 102:7
  **Signed** - 100:8
  **signed** - 28:13
  **signing** - 28:1
  **Silence** - 95:8
  **similar** - 33:10
  **Sims** - 104:1
  **sincere** - 74:5
  **single** - 72:22, 74:20
  **sit** - 30:14, 39:20, 39:21, 41:1, 41:3, 77:1, 98:21
  **sitting** - 49:23, 55:25, 95:16
  **situation** - 68:3
  **ski** - 44:13
  **skilled** - 67:19
  **skills** - 63:20
  **skin** - 64:22, 64:23, 65:3, 66:9, 81:21, 85:6, 85:13
  **skinned** - 64:25, 65:1, 67:14, 82:3
  **Skip** - 61:15
  **sky** - 87:21
  **sleeping** - 86:6
  **sliced** - 93:4
  **slightly** - 85:7
  **smart** - 62:10, 74:7, 76:16
  **smoker** - 44:19
  **snatched** - 86:23
  **sobs** - 93:25
  **society** - 87:15, 88:24
  **sold** - 59:1, 76:18
  **sole** - 28:18
  **solely** - 28:21, 71:18, 71:19
  **solicited** - 11:15, 12:22, 14:13, 16:1, 17:17, 18:15, 19:7, 20:4, 21:17, 22:23
  **solicits** - 10:9, 24:5, 33:7
  **someone** - 47:9, 67:21, 82:4, 85:13, 87:17, 98:17
  **sometime** - 69:9
  **somewhere** - 34:3, 40:1, 91:10
  **son** - 43:1, 50:8, 53:23, 91:8, 95:12, 98:12
  **soon** - 3:22, 56:13, 57:11, 95:1
  **sorry** - 70:16, 86:11, 94:7, 103:24
  **sort** - 30:10
  **sound** - 52:1, 53:14, 58:4
  **sounds** - 30:9
  **Spanish** - 46:18, 46:24, 47:2, 47:3, 47:13, 65:7, 67:13, 85:7, 85:8, 100:7
  **Spanish-speaking** - 65:7, 67:13, 100:7

**speaking** - 65:7, 67:13, 100:7
  **specialized** - 67:19
  **specific** - 5:14, 62:21, 90:19
  **specifically** - 11:9, 12:17, 63:2, 89:19
  **spend** - 85:15
  **spent** - 40:11
  **sperm** - 69:7, 69:10, 90:20
  **Spiderman** - 87:22
  **stabbed** - 34:15, 74:19, 75:6, 75:9, 75:12, 75:13, 75:25, 76:1, 80:6, 92:7, 93:4
  **stabbing** - 11:10, 11:17, 12:5, 14:1, 14:10, 15:3, 17:6, 17:13, 18:2, 18:12, 31:10
  **stacked** - 70:7
  **stamped** - 3:11, 3:13
  **stand** - 46:3, 60:7, 64:9, 64:17, 75:1, 75:7, 79:16, 81:4, 82:2, 84:2, 84:18, 93:24, 98:7, 98:10, 98:12, 98:14, 98:17, 98:21, 99:2, 99:4, 99:20
  **standing** - 40:3, 71:2, 102:2
  **standpoint** - 73:11
  **stands** - 4:17
  **start** - 51:7, 66:18, 73:25, 89:24, 103:1
  **started** - 37:18, 42:15, 45:11, 72:1, 76:23, 89:24
  **starts** - 35:16, 56:16
  **state** - 24:8, 76:11
  **State** - 1:11, 2:7, 3:3, 3:17, 4:2, 4:4, 4:13, 26:16, 41:12, 43:8, 44:1, 44:21, 45:11, 47:16, 48:15, 54:6, 56:3, 58:10, 60:24, 61:2, 63:9, 72:11, 77:3, 96:20, 97:12, 100:22, 101:8, 101:10, 102:3, 102:7, 107:2, 107:5
  **State's** - 1:4, 1:5, 29:14, 44:7, 49:14, 62:3, 78:25
  **Statement** - 29:14, 40:18, 78:25
  **statement** - 46:19, 58:13, 58:14, 58:15, 58:19, 67:23, 72:2, 72:7, 76:14, 86:13, 86:16, 97:8
  **stations** - 89:3
  **Stay** - 58:20, 75:19
  **stay** - 95:17
  **steal** - 48:19, 52:13
  **steep** - 90:4
  **step** - 38:16, 47:19, 99:19
  **stepfather** - 86:9
  **stick** - 78:17, 78:19
  **still** - 91:1, 93:10, 104:24
  **stones** - 96:15
  **stood** - 74:16, 79:23
  **stop** - 38:15, 93:18
  **store** - 51:4, 53:14, 53:23
  **stored** - 68:19, 90:8, 90:12, 90:16
  **stories** - 89:4
  **story** - 35:25, 41:12, 44:11, 48:10, 58:11, 58:23, 59:18, 59:20, 59:21, 60:12, 63:18, 74:13, 74:15, 76:5, 76:12, 79:9, 79:13, 80:8, 80:9, 80:10, 80:11, 80:16, 81:6, 86:3, 86:24, 87:9, 90:23, 91:2, 98:15
  **straight** - 72:24, 76:6
  **strange** - 82:7
  **straw** - 83:8, 83:13, 85:11, 85:22

**stretch** - 49:3, 50:2
**string** - 92:4, 92:5
**strong** - 91:15
**structure** - 7:13, 7:16, 7:17, 7:18
**stuck** - 55:18, 65:15, 72:19
**stuff** - 71:21, 81:15
**styled** - 107:11
**subject** - 105:11
**submit** - 7:1, 7:3, 38:11, 39:14, 92:11
**submitted** - 28:13, 99:17
**substantial** - 8:14
**substantially** - 6:9
**sudden** - 65:14, 81:13, 89:14
**Sue** - 104:14
**sufficient** - 24:13, 24:24, 27:1
**suggest** - 73:1, 84:22
**suggestion** - 77:23, 78:8
**suggestions** - 77:22
**Suite** - 2:15
**summation** - 77:7
**supplied** - 48:18
**supplier** - 91:11
**supplying** - 59:11
**support** - 67:22, 68:8, 91:14
**supported** - 83:10
**supports** - 68:6, 92:23
**surmise** - 60:15
**surrounding** - 9:20
**suspect** - 32:1, 84:9, 84:10, 89:12, 89:15
**suspects** - 84:11
**suture** - 67:3
**swabs** - 36:18, 44:22, 90:21
**sweet** - 87:20
**sworn** - 62:23
**sympathy** - 72:10
**system** - 30:7, 57:9
**systems** - 69:3

**T**

**table** - 4:11, 58:17, 87:24, 91:9, 101:1, 101:12
**talks** - 35:17
**tall** - 46:11, 46:13, 64:4, 64:18, 66:8, 81:25, 82:4
**tape** - 45:12
**tattered** - 87:6
**team** - 90:2
**tearing** - 45:1
**tears** - 94:14
**technique** - 42:20
**ten** - 69:20, 71:9, 71:19
**tend** - 24:15, 24:25
**tending** - 24:12, 24:21
**tends** - 5:16, 36:4, 36:21, 37:4, 71:6, 71:12
**term** - 6:2, 6:7, 10:21, 23:15, 24:7, 85:4
**Terrace** - 2:12
**terrified** - 40:12
**terrorize** - 5:25, 21:1, 21:14, 22:7, 22:20
**test** - 69:5
**tested** - 68:18, 68:19
**testified** - 54:12, 54:15, 55:22, 66:13
**testifies** - 35:14, 69:19
**testify** - 25:6, 25:8, 25:11, 35:23, 43:6, 52:20
**testimonies** - 51:19
**testimony** - 24:10, 24:11, 24:18, 24:20, 26:9, 27:19, 29:17, 31:14, 32:2, 32:3,

**trade** - 55:10
**tragic** - 72:2
**trained** - 67:19
**transcription** - 107:7
**transcription/stenograph** - 1:25
**transpiring** - 23:19
**treat** - 35:15
**trial** - 3:7, 4:2, 26:12, 26:16, 26:23, 62:9, 104:21, 104:22, 104:23, 104:25, 105:9, 105:12, 105:13
**Trial-** 1:3
**tried** - 45:19, 45:20, 58:13, 59:3
**tries** - 84:22
**true** - 62:10, 73:15, 76:20, 107:7
**truly** - 53:20, 107:14
**trust** - 34:7, 53:11, 53:12
**truth** - 66:12, 66:14, 66:16
**truths** - 79:16
**try** - 63:10, 79:16
**trying** - 49:4, 49:6, 61:2, 75:22, 85:11, 85:16, 95:16
**turn** - 61:14
**turned** - 87:1
**Turtles** - 87:23
**twelve** - 62:10, 62:11, 70:1, 70:5, 98:20
**two** - 5:24, 6:21, 7:2, 10:22, 28:24, 32:6, 35:8, 45:4, 45:17, 46:10, 47:8, 47:18, 48:7, 50:23, 51:2, 51:12, 51:13, 51:15, 54:4, 59:19, 61:24, 63:22, 64:3, 64:17, 65:5, 66:7, 66:19, 71:8, 71:18, 77:10, 77:22, 81:8, 81:17, 83:14, 83:19, 83:21, 85:1, 86:6
**Two-** 47:18, 61:24, 64:5, 67:12, 67:14, 81:19

**U**

**ultimately** - 36:20, 89:5
**unable** - 16:24, 20:11
**unanimous** - 101:22, 104:18
**unanimously** - 27:24
**uncomfortable** - 53:16
**under** - 28:19, 35:7, 41:16, 69:11, 70:21, 84:20, 92:1, 93:14, 96:23
**understood** - 65:19
**unison** - 40:20
**unknown** - 12:18, 13:1, 13:12, 15:15, 15:23, 16:15, 18:23, 19:5, 19:18, 20:1, 22:4, 22:17, 31:11, 43:21, 82:22, 92:8, 93:6
**unlawful** - 7:24, 10:18, 23:18, 33:24
**unlawfully** - 13:23, 14:7, 15:12, 15:20, 17:5, 17:12, 17:24, 18:8, 18:22, 19:3, 19:14, 19:22, 20:18, 21:6, 21:24, 22:12
**unless** - 13:17, 24:10, 24:19, 25:20, 26:19, 27:2
**Unless** - 16:22, 20:9
**unlikely** - 74:18
**unsolved** - 89:7
**unusual** - 62:13
**up** - 30:15, 31:19, 32:1, 32:14, 39:21, 40:3, 41:20, 42:5, 42:15, 43:7, 43:19, 47:2, 49:4, 53:7, 54:2, 54:3, 54:15, 54:18, 55:19, 55:22, 55:25, 56:4, 57:7, 58:22,

58:23, 60:20, 61:2, 64:18, 68:22, 70:3, 71:22, 73:3, 73:22, 77:16, 79:23, 81:11, 81:18, 82:15, 82:19, 84:23, 86:2, 86:8, 91:16, 98:11, 98:21, 98:24, 99:1, 99:4, 99:7
**Up** - 46:7, 46:22, 52:18, 63:19, 65:8, 66:12, 66:16, 66:17, 66:20, 86:13

**V**

**vaginal** - 36:17, 44:21, 90:21
**valuable** - 77:5, 77:10
**vehicle** - 7:13, 7:16, 7:18, 60:4
**verdict** - 23:14, 27:16, 27:24, 27:25, 28:23, 28:24, 42:3, 42:11, 62:24, 71:19, 76:22, 77:13, 78:18, 78:19, 78:22, 98:22, 99:14, 99:21, 100:25, 101:15, 101:18, 102:1, 102:15, 102:18, 102:23, 103:2, 103:6, 103:9, 103:12, 103:15, 103:18, 103:24, 104:2, 104:5, 104:9, 104:12, 104:15, 104:18
**Verdict** - 1:7, 101:25
**version** - 73:19, 73:20
**vibe** - 53:12
**violence** - 7:2, 7:4
**Virginia** - 104:4
**virtually** - 74:18, 75:9
**vision** - 42:23, 42:24
**visit** - 95:11
**visited** - 30:23
**voice** - 77:7, 77:9
**voir** - 30:18
**Vol-** 1:3
**Volume** - 1:2, 1:1, 1:10
**volume** - 1:12, 1:14, 107:10
**Volumes** - 1:2
**vote** - 27:23, 78:1
**vs** - 3:3, 4:2, 4:13, 101:8, 102:3
**Vs** - 1:9

**W**

**walk** - 74:13, 94:8
**wandered** - 39:2
**wants** - 41:12, 47:17, 55:13, 56:18, 57:8, 57:10, 74:8
**warning** - 29:11
**warranted** - 11:2
**wash** - 68:9
**washing** - 95:14
**water** - 73:3, 73:9, 73:10
**Wayne** - 103:11
**ways** - 91:24, 92:6, 92:9
**weak** - 57:16
**weapon** - 8:6, 11:11, 12:5, 14:2, 14:11, 15:4, 17:7, 17:14, 18:3, 18:13, 31:10, 57:21
**week** - 3:9, 29:16, 40:22, 42:15
**weigh** - 35:23
**weighing** - 29:22
**weight** - 26:8, 27:18
**whatsoever** - 25:14
**wheel** - 57:1
**whereby** - 26:12
**whip** - 86:9
**white** - 45:22, 65:9
**White** - 63:25

32:14, 35:15, 35:18, 36:2, 36:6, 36:10, 36:24, 37:3, 37:7, 37:11, 38:5, 45:24, 46:2, 48:3, 49:20, 52:23, 57:2, 57:20, 59:3, 60:3, 60:6, 62:9, 63:22, 64:3, 64:7, 64:9, 64:13, 65:25, 67:1, 67:5, 67:12, 68:6, 69:13, 71:2, 71:8, 71:11, 71:15, 71:25, 72:16, 74:22, 74:25, 75:4, 75:5, 81:3, 94:18, 96:21, 105:2
**Texas-** 1:11, 1:9, 1:23, 2:6, 2:7, 2:13, 2:16, 3:3, 4:2, 4:13, 4:15, 4:20, 13:22, 14:5, 14:24, 15:11, 15:18, 16:11, 17:3, 17:10, 17:22, 18:6, 18:21, 19:1, 19:12, 19:20, 20:16, 21:4, 21:22, 22:10, 31:6, 45:21, 85:9, 85:19, 87:5, 101:8, 102:3, 107:2, 107:6, 107:21, 107:24
**theft** - 7:10
**Theft-** 7:24
**theirs** - 65:21
**themselves** - 87:17, 98:16
**thereby** - 11:18, 12:25, 27:20
**Therefore-** 17:1, 20:14
**thereof** - 16:24, 20:11
**thereon** - 105:13
**thereto** - 23:17
**they've** - 91:15
**thinking** - 49:24, 73:4
**third** - 5:25, 45:6
**thousands** - 89:7
**threat** - 7:6, 96:23
**threatened** - 94:7
**threatening** - 6:5, 7:3, 20:22, 21:10, 22:3, 22:16
**threats** - 7:22
**three** - 5:25, 55:13, 60:10, 77:1
**throat** - 75:15, 93:4
**throughout** - 25:12, 26:16
**throw** - 59:24, 87:18
**throwing** - 76:2, 88:10
**ticket** - 95:18
**tie** - 97:3
**tied** - 86:8
**ties** - 93:13
**tiniest** - 36:8
**tires** - 32:6, 32:7
**Tise-** 2:3, 3:20, 29:9, 45:23, 58:18, 60:2, 64:6, 65:24, 71:10, 74:21, 75:17, 77:16, 78:24, 79:1, 81:1, 81:6, 84:4, 84:20, 92:23, 99:9, 100:14, 100:15, 102:11, 105:23, 106:3
**Today-** 98:19, 98:20
**today** - 79:5, 81:12, 81:13, 91:1, 98:8, 98:11, 98:25, 105:4
**together** - 10:1, 42:3, 42:4, 49:11, 99:13
**tolerate** - 88:25
**tone** - 64:22, 64:23
**took** - 40:1, 45:15, 51:24, 52:2, 52:3, 52:5, 52:6, 55:17, 57:18, 70:15, 88:6
**top** - 70:7
**Torres-** 104:11
**torso** - 96:12
**tortillas** - 87:25, 88:10, 91:9
**tossed** - 60:11
**totally** - 87:17
**tough** - 63:10

**whole** - 47:7, 57:13, 66:24, 70:17, 70:18, 79:13, 80:4, 80:5, 80:10, 80:11, 80:13, 81:6, 82:20, 83:14, 84:23, 97:18

**wicked** - 95:21, 95:23

**wife** - 50:14, 50:16, 54:2, 60:20

**willing** - 70:11

**window** - 87:18

**wish** - 57:11, 102:8

**witness** - 24:16, 26:5, 26:8, 29:17, 35:14, 35:18, 35:19, 35:21, 37:12, 46:3, 53:7, 58:14, 60:7, 64:7, 64:9, 68:25, 69:18, 69:23, 70:24, 71:17, 71:20, 74:25, 79:20, 80:13, 81:3, 81:7, 84:2, 84:17, 93:24, 100:6

**Witness** - 1:11, 107:16

**witness'** - 35:15, 36:2

**witnesses** - 1:12, 27:18, 35:13, 43:15, 56:4, 60:3, 85:4, 85:12, 90:7, 93:11, 96:2

**wives** - 54:24

**woke** - 86:2

**Wolf** - 72:21, 74:17, 74:22, 79:23, 80:4, 93:2

**woman** - 67:25, 93:24, 95:5, 95:6

**wonderful** - 72:21

**Wood** - 2:4, 29:10, 29:12, 29:15, 40:14, 42:5, 42:15, 62:18, 76:4

**Word** - 1:10

**word** - 75:11, 94:16

**wore** - 87:7

**works** - 34:24, 36:5, 38:2

**world** - 96:20

**Wow** - 80:2, 80:7, 80:17, 81:15

**wrestle** - 70:10

**writing** - 28:11, 107:9

**written** - 27:20, 28:12, 65:22, 97:7

**wrote** - 65:21, 97:7, 97:16

# Y

**Y'all** - 40:21, 42:19

**y'all** - 40:24, 42:1, 76:21, 85:20

**years** - 43:3, 45:5, 45:8, 45:19, 49:11, 53:3, 54:14, 54:22, 55:13, 55:19, 56:8, 58:1, 58:3, 65:10, 68:12, 68:15, 68:21, 69:1, 69:2, 69:8, 69:20, 70:1, 70:5, 70:7, 89:16, 90:11, 91:12, 96:13, 98:3

**You-all** - 63:12

**you-all** - 38:5, 38:15, 93:7

**young** - 74:4

**yourself** - 31:21, 31:23, 32:4, 67:10, 87:11, 95:23

**yourselves** - 105:11