IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**OBEL CRUZ-GARCIA,**
     Petitioner,

   *v.*

**BOBBY LUMPKIN, Director,**
Texas Department of
Criminal Justice,
Correctional Institutions Division,
     Respondent.

Case No. 4:17-CV-03621

District Judge Vanessa D. Gilmore

# MOTION FOR DISCOVERY

Jason D. Hawkins
Federal Public Defender

Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
David C. Currie (TX 24084240)
Naomi Fenwick (TX 24107764)
Assistant Federal Public Defenders

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org
david_currie@fd.org
naomi_fenwick@fd.org

**THIS IS A CAPITAL CASE**

TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ...................................................... iii

I.      INTRODUCTION ......................................................... 1

II.     PROCEDURAL BACKGROUND ..................................... 1

III.    LEGAL BACKGROUND .............................................. 2

IV.     ARGUMENT ............................................................... 4

        A.   Mr. Cruz-Garcia was denied any opportunity to conduct discovery in state court. ..................................................................... 4

        B.   Specific Issues on which Mr. Cruz-Garcia seeks discovery. ................................... 5

             1.   Discovery Issue 1: the DNA evidence used to convict Mr. Cruz-Garcia. ........ 5

             2.   Discovery Issue 2: The mental illness suffered by Carmelo "Rudy" Santana, the State's star witness. ................ 6

             3.   Discovery Issue 3: The State's deal with Mr. Santana. ................................. 7

             4.   Discovery Issue 4: Mr. Cruz-Garcia's work as a confidential informant for United States law enforcement agencies. ............................................... 8

             5.   Discovery Issue 5: Grand jury testimony. ................................................... 9

             6.   Discovery Issue 6: The jury foreperson's reading of Bible passages during deliberations, and other juror misconduct. ................................. 10

             7.   Discovery Issue 7: Judge Renee Magee's use of Mr. Cruz-Garcia's case in her partisan judicial campaigns. ......................................................... 12

             8.   Discovery Issue 8: Judge Renee Magee's knowledge of and/or work on Mr. Cruz-Garcia's case while a senior prosecutor at the Harris County District Attorneys' Office. ................................................................. 13

             9.   Discovery Issue 9: The State's assistance to Angelita Rodriguez. ................. 14

             10.  Discovery Issue 10: The State's alternative theories of the crime. .............. 15

             11.  Discovery Issue 11: The murder of Saul Flores. .......................................... 15

        C.   Mr. Cruz-Garcia's specific discovery requests. .................................................. 16

             1.   Document Requests. ......................................................................... 16

        2.    Depositions. ................................................................................ 19

V.      CONCLUSION................................................................................... 21

CERTIFICATE OF CONFERENCE ........................................................... 22

CERTIFICATE OF SERVICE ..................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Blackledge v. Allison,*
    431 U.S. 63 (1977)................................................................................2

*Bracy v. Gramley,*
    520 U.S. 899 (1997)..............................................................................3

*Gaitan-Campanioni v. Thornbaugh,*
    777 F. Supp. 1355 (E.D. Tex. 1991) ...................................................3

*Jackson v. Virginia,*
    443 U.S. 307 (1979)..............................................................................2

*McFarland v. Scott,*
    512 U.S. 849 (1994)..............................................................................2

*Murphy v. Johnson,*
    205 F.3d 809 (5th Cir. 2000) ...............................................................3

*Oliver v. Quarterman,*
    541 F.3d 329 (5th Cir. 2008) .............................................................11

*Payne v. Bell,*
    89 F. Supp. 2d 967 (W.D. Tenn. 2000)..........................................3, 4

*United States ex rel. Pecoraro v. Page,*
    1998 WL 708856 (N.D. Ill. 1998) .......................................................3

*Romero v. Beard,*
    2011 WL 3862317 (E.D. Pa. 2011).....................................................4

*Williams v. Hall,*
    648 F. Supp. 2d 1222 (D. Or. 2009) ...................................................3

*Wilson v. Butler,*
    825 F.2d 879 (5th Cir. 1987) ...............................................................4

*Wingo v. Wedding,*
    418 U.S. 461 (1974)..............................................................................2

*Woodson v. North Carolina,*
    428 U.S. 280 (1976)..............................................................................4

**State Cases**

*Cruz-Garcia v. State,*
    2015 WL 6528727 (Tex. Crim. App. 2005) .............................................................11

**Federal Statutes**

8 U.S.C. § 1227(a)(2)(B)(i) ...............................................................................................14

28 U.S.C. § 2243 ................................................................................................................2

**State Statutes**

Tex. Code Crim. Pro. Art. 11.071 ..............................................................................5

## I.   INTRODUCTION

Petitioner Obel Cruz-Garcia respectfully requests that this Court allow him to conduct discovery relating to numerous factual questions the Court must answer to rule on Mr. Cruz-Garcia's claims, as set forth in his Amended Petition and supporting legal memorandum. ECF No. 18; ECF No. 38. Specifically, Mr. Cruz-Garcia seeks discovery relating to misconduct arising when a juror read from the Bible to sway jurors in favor of a sentence of death. Mr. Cruz-Garcia also seeks discovery regarding his work as a valued asset of the INS, FBI, and DEA—information that Mr. Cruz-Garcia has previously sought to obtain and been denied from accessing. Further, numerous questions of fact about trial counsel's conduct remain unanswered, including why they failed to investigate the serious mental health issues suffered by the State's star witness, likely deals between the State and critical witnesses, and what trial counsel could have uncovered had they conducted a reasonable investigation.

This is Mr. Cruz-Garcia's first opportunity to engage in factual development concerning his claims in federal court. Mr. Cruz-Garcia was denied discovery during his state court post-conviction proceedings, which were tainted by the trial judge losing her reelection bid and her resulting acceleration of the post-conviction proceedings in this case so that she could render judgment before her term expired. For the reasons stated below, Mr. Cruz-Garcia respectfully requests that the Court grant his Motion for Discovery.

## II.   PROCEDURAL BACKGROUND

Mr. Cruz-Garcia timely filed his Amended Petition on July 1, 2019. ECF No. 18. On September 30, 2019, the Director moved for summary judgment. ECF No. 20. The Court denied the Director's motion on April 30, 2020. ECF No. 33. The Court ordered legal briefing from the

parties, *id.*, and Mr. Cruz-Garcia timely submitted his Memorandum of Law in Support of the First Amended Petition ("Legal Memo") on July 13, 2020. ECF Nos. 37, 38. Mr. Cruz-Garcia now submits this Motion for Discovery.

## III.   LEGAL BACKGROUND

The Supreme Court has recognized that because habeas corpus claims often turn on factual questions, "the procedures by which the facts of a case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied." *Wingo v. Wedding*, 418 U.S. 461, 474 (1974); *see also McFarland v. Scott*, 512 U.S. 849, 855 (1994) (purpose of habeas corpus procedures is development of "possible claims and their factual bases"). Both the Supreme Court and Congress have insisted, therefore, that full development of determinative factual questions precede the final adjudication of habeas corpus claims, and both have made a variety of fact-determining procedures available to habeas corpus petitioners, including evidentiary hearings, discovery, and expansion of the record to include documentary evidence. *See, e.g.*, 28 U.S.C. § 2243; Habeas Rules 6, 7, and 8; *Jackson v. Virginia*, 443 U.S. 307, 318 (1979) ("A federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in state court.").

Habeas Rule 6(a) incorporates the Supreme Court's directive that a federal habeas corpus petitioner is "entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts." *Blackledge v. Allison*, 431 U.S. 63, 82–83 (1977) (internal citation and quotation omitted). Under Rule 6(a), a federal court may order discovery upon a showing of "good cause." Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that

2

he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997). The facts of *Bracy* are instructive. The petitioner raised a speculative claim of judicial bias based on the fact that the trial judge was subsequently convicted of receiving bribes in other matters. The Supreme Court unanimously reversed the lower courts' denial of discovery, even though the Court agreed that Bracy's argument that discovery would support his claim was "speculative," *id.* at 909, "only a theory" and "not supported by any solid evidence." *Id.* at 908.

To establish good cause, a petitioner need only show that the discovery "may well uncover favorable, material information that would tend to support the claim." *Williams v. Hall*, 648 F. Supp. 2d 1222, 1225 (D. Or. 2009) (internal quotations omitted); *see also Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) (holding that petitioner "need not show that the additional discovery would definitely lead to relief," but only that it "would lead to relevant evidence regarding his petition"); *United States ex rel. Pecoraro v. Page*, 1998 WL 708856, at *3 (N.D. Ill. 1998) ("Petitioner's burden on this discovery motion is only to convince the court that he might be able to demonstrate a [constitutional] violation if the facts are fully developed."). Therefore, "the court should not hesitate to allow discovery where it will help illuminate the issues underlying the applicant's claim." *Gaitan-Campanioni v. Thornbaugh*, 777 F. Supp. 1355, 1356 (E.D. Tex. 1991). Once a petitioner demonstrates "good cause" for discovery, "it is the duty of the courts to provide the necessary facilities and procedure for an adequate inquiry." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (citation omitted).

The policies favoring discovery are even stronger in capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures.

*Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Hence, "[m]ore liberal discovery is appropriate in capital cases where the stakes for petitioner are so high." *Payne*, 89 F. Supp. 2d at 971; *see also Romero v. Beard*, 2011 WL 3862317, at *11 (E.D. Pa. 2011) ("[A]s this is a capital case, discovery should be granted liberally."); *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987) ("[I]f [the death penalty] is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims."). Because this is a death penalty case, broad discovery is necessary to ensure that extra measure of process which is demanded in capital cases.

## IV.   ARGUMENT

### A.   Mr. Cruz-Garcia was denied any opportunity to conduct discovery in state court.

As set forth in detail in Mr. Cruz-Garcia's Legal Memo, Mr. Cruz-Garcia was deprived of a fair opportunity to obtain discovery during his state habeas proceeding. ECF No. 38 at 35–43. Indeed, Mr. Cruz-Garcia was deprived of a fair state post-conviction process entirely.

To summarize briefly, the same judge, Renee Magee, presided over Mr. Cruz-Garcia's trial and state post-conviction proceedings. During the post-conviction proceedings, Judge Magee was running for reelection and featured Mr. Cruz-Garcia's case prominently in her campaign materials. ECF No. 18 at 220; ECF No. 18-58, -60; ECF No. 38 at 121 & n.21. Although several of Mr. Cruz-Garcia's claims implicated her in potential misconduct—by issuing a coercive instruction to a holdout juror during an *ex parte* meeting and by misrepresenting a report of juror misconduct—she refused to recuse herself. ECF No. 23-40 at 67, 105.

Judge Magee granted the State's request for limited affidavits from trial counsel, while reserving the question of whether to allow the discovery requested by Mr. Cruz-Garcia. ECF No. 24-9 at 8; ECF No. 35 at 36. Before the affidavits were returned, however, Judge Magee lost her reelection bid. ECF No. 24-1 at 160–61. Shortly thereafter, trial counsel filed their affidavits and

4

stated explicitly that Judge Magee's campaign loss influenced their timing because they were eager to have her, and not her successor, decide Mr. Cruz-Garcia's post-conviction application. ECF No. 23-41 at 197.

Determined to dispose of Mr. Cruz-Garcia's case in the few weeks remaining in her term, Judge Magee skipped over steps mandated by Article 11.071 of the Texas Code of Criminal Procedure, denied Mr. Cruz-Garcia any discovery, and refused to allow any further fact-development or hold an evidentiary hearing. Instead, Judge Magee ordered Mr. Cruz-Garcia to produce proposed findings of fact and conclusions of law ("FFCL") in a few short weeks in mid-December, even after his counsel informed Judge Magee that she would be trying a week-long evidentiary hearing and traveling out of state for a memorial service during that time. ECF No. 38 at 36–39; ECF No. 24-1 at 15, 23, 28. After having received the State's proposed FFCL on December 21, 2016, Judge Magee adopted all 50 pages without changing a word on December 29, 2016. ECF No. 24-1 at 86–136. She then ran for a different judgeship—again featuring Mr. Cruz-Garcia's trial in her campaign materials. ECF 18 at 220; ECF No. 18-58, -60.

**B.     Specific Issues on which Mr. Cruz-Garcia seeks discovery.**

    **1.     <u>Discovery Issue 1</u>: the DNA evidence used to convict Mr. Cruz-Garcia.**

DNA evidence introduced at trial by the State is the only physical evidence allegedly linking Mr. Cruz-Garcia to the offense. Yet, less than a week after Mr. Cruz-Garcia's conviction became final on appeal, the State conceded that much of the DNA evidence used to convict him was false. At trial, the State's experts testified that Mr. Cruz-Garcia could not be excluded as a DNA contributor to a vaginal swab taken from the victim's mother, a cutting of the victim's mother's underwear, and

a cigar purportedly left by the assailants.[1] ECF No. 23-2 at 94–95. The State's expert also testified that there were two male DNA contributors to the underwear and that Arturo Rodriguez, the victim's mother's live-in boyfriend, could not be excluded as the other contributor. *Id.* at 57, 59. The State now concedes that Mr. Cruz-Garcia's DNA cannot be linked to the vaginal swab. ECF No. 18-11 at 2. Likewise, the State concedes that Mr. Rodriguez's DNA cannot be linked to the underwear, meaning that there is now an unknown contributor who could have been the assailant. *Id.*

Mr. Cruz-Garcia seeks discovery, in the form of depositions, from defense counsel concerning their failure to retain a DNA expert and their resulting failure to expose the falsity of the DNA evidence. Mr. Cruz-Garcia also seeks documentary discovery from HCDAO and Orchid Cellmark related to the date at which the State knew (or should have known) that the DNA evidence used to convict Mr. Cruz-Garcia was false, and to whether the State's post-conviction DNA analysis is likewise flawed. Mr. Cruz-Garcia seeks this discovery in support of Claim 1 (ineffective assistance of trial counsel); Claim 3 (false testimony); Claim 4 (due process); Claim 5 (denial of right to present a defense and to cross-examine); Claim 6 (Eighth Amendment); and Claim 27 (actual innocence).

2. **Discovery Issue 2: The mental illness suffered by Carmelo "Rudy" Santana, the State's star witness.**

Mr. Santana was the State's star witness at trial and directly implicated Mr. Cruz-Garcia in the facts of the offense. When he implicated Mr. Cruz-Garcia, Mr. Santana was serving a lengthy sentence for a federal drug trafficking conviction. *United States v. Carmelo Martinez*, 4:89-cr-00012 (S.D. Tex. Dec. 17, 1998). Shortly before doing so, Mr. Santana sent a letter to a federal judge asserting that he suffered from severe mental illness. ECF No. 18-12. Mr. Santana's counsel during

---

[1] Although at the 2013 trial the State's witnesses testified that the cigar had been left by the assailants, the police had disregarded that theory during their 1992 investigation—a fact that was never brought to the jury's attention. ECF No. 18-64 at 7.

his federal criminal proceedings, J.C. Castillo, had earlier requested that the court conduct a competency evaluation, which the court granted. ECF No. 18 at 50–51; ECF 18-13, -14.

Mr. Cruz-Garcia requests discovery concerning the extent and duration of Mr. Santana's mental illness, to determine what Mr. Cruz-Garcia's counsel would have learned had they fulfilled their duty to investigate Mr. Santana. Specifically, Mr. Cruz-Garcia seeks Mr. Santana's mental health records from the Bureau of Prisons and the Harris County Sherriff's Office, as well as the psychological evaluation of Mr. Santana that occurred during his federal sentencing. Mr. Cruz-Garcia also requests discovery from the Harris County District Attorney's Office ("HCDAO") relating to whether the State knew or should have known about Mr. Santana's mental illness and failed to disclose it. Mr. Cruz-Garcia seeks this discovery in support of Claim 1 (ineffective assistance of trial counsel); Claim 3 (false testimony); Claim 11 (*Brady*); and Claim 27 (actual innocence).

3.   <u>Discovery Issue 3</u>: The State's deal with Mr. Santana.

In the instant case, Mr. Santana admitted to helping kidnap and murder a six-year old child. He also claimed to have helped Mr. Cruz-Garcia torture Saul Flores to death in 1989. Yet, the State did not charge him for either offense.

The State solicited testimony from Mr. Santana at Mr. Cruz-Garcia's trial that he had no deal with the State and suggested that Mr. Santana was exposing himself to serious criminal liability by testifying. ECF No. 23-6 at 168; ECF No. 23-7 at 15. At the trial of Mr. Cruz-Garcia's co-defendant, Rogelio Aviles-Barasso, the State went even further, and called Mr. Santana's attorney, Ray Castro, as a fact witness to testify concerning his communications with Mr. Santana regarding the implications of testifying without a deal.[2] Exh. A. Yet, once the trials of Mr. Cruz-Garcia and

---

[2] By doing so, Mr. Santana's counsel waived attorney-client privilege with respect to his communications with his counsel, as the trial judge recognized during the proceedings. Exh. A at 98-99.

Mr. Aviles-Barasso concluded, Mr. Santana was not charged with any crime in connection with the kidnapping and murder of Angelo Garcia or the murder of Saul Flores. The State's representations that there was neither an explicit nor an implicit deal with Mr. Santana are simply not credible. Likewise, the State's explanation for why Mr. Santana was not charged, that the Harris County District Attorneys' Office appellate division concluded that Mr. Santana had not committed a crime, is also not credible. ECF No. 18-80. And, even if the State's explanation were plausible (which it is not), it was then deeply misleading and disingenuous of the State to suggest that Mr. Santana was placing himself in serious legal jeopardy by testifying, if the State's position was the he was criminally blameless.

Mr. Cruz-Garcia requests discovery concerning any deal between the State and Mr. Santana, whether explicit or implicit, from both HCDAO and from Mr. Santana's attorney, Ray Castro. Mr. Cruz-Garcia likewise requests the State's legal analysis that purportedly led it to not charge Mr. Santana with a single crime, despite his admitted participation in two murders. Mr. Cruz-Garcia seeks this discovery in support of Claim 3 (false testimony); Claim 11 (*Brady*) and Claim 27 (actual innocence).

4.  **Discovery Issue 4**: **Mr. Cruz-Garcia's work as a confidential informant for United States law enforcement agencies.**

Mr. Cruz-Garcia provided substantial assistance to federal law enforcement agencies including the INS, FBI, and DEA over many years. ECF No. 18-46; ECF No. 18-85 at 15. Because trial counsel did adequately investigate Mr. Cruz-Garcia's work on behalf of U.S. law enforcement, they were left with only a letter from the United States Department of Justice that consists of what appear to be a lengthy, but completely redacted, list of federal prosecutions in which Mr. Cruz-Garcia's assistance played a substantial role. ECF No. 18-46. Trial counsel also failed to speak with

Joel Cruz-Garcia, Mr. Cruz-Garcia's younger brother, about Mr. Cruz-Garcia's assistance to federal law enforcement. Had they done so, Joel could have pointed trial counsel to Wilson Pellot, a now-retired federal agent who frequently worked with Mr. Cruz-Garcia. ECF No. 18-85 at 15. Trial counsel also failed to investigate or present evidence concerning the fact that when Mr. Cruz-Garcia was implicated in a kidnapping that occurred in Puerto Rico, he had entered Puerto Rico on a special visa given only to those who provide a "significant public benefit" to the United States, which suggests that the incident may have been related to his work on behalf of U.S. law enforcement. *See* ECF No. 38 at 71; ECF No. 18 at 97-98; ECF No. 18-111.

Mr. Cruz-Garcia seeks documentary discovery from the federal law enforcement agencies he assisted concerning the full extent to which his work benefitted the United States government, information his trial counsel belatedly sought just prior to trial but were denied access to. Mr. Cruz-Garcia also seeks a deposition of Wilson Pellot, a retired INS agent who worked closely with Mr. Cruz-Garcia. Mr. Pellot has informed the Federal Public Defender's office that his is willing to sit for a deposition, but that agency regulations require that he receive a subpoena first. Mr. Cruz-Garcia seeks this discovery in support of Claim 1 (ineffective assistance of trial counsel).

   5.   <u>Discovery Issue 5</u>: Grand jury testimony.

Mr. Cruz-Garcia's trial counsel were provided with the opportunity to review the grand jury testimony of all the grand jury witnesses who testified at trial. ECF No. 22-9 at127–131. Trial counsel, for unknown reasons, refused the State's offer. Mr. Cruz-Garcia seeks access to the grand jury testimony of each of the witnesses who testified at trial to determine whether trial counsel's failure to review the testimony prejudiced Mr. Cruz-Garcia's defense. Mr. Cruz-Garcia seeks this discovery in support of Claim 1 (ineffective assistance of trial counsel); Claim 3 (false testimony); Claim 11 (*Brady*); and Claim 27 (actual innocence).

6. <u>Discovery Issue 6</u>: **The jury foreperson's reading of Bible passages during deliberations, and other juror misconduct.**

When Juror Bowman contacted defense counsel shortly after the verdict, she revealed that the jury foreperson, Matthew Clinger, had brought his Bible to the deliberations and read several passages to the other jurors. ECF No. 18 at 168–71. An investigator for Mr. Cruz-Garcia's trial counsel subsequently conducted a recorded interview with the foreperson in which he admitted to reading Bible passages, including Genesis 9, which states in part: "Whoever sheds human blood by humans shall their blood be shed." ECF No. 22-10 at 184-97. He also stated that he believed his reading of the Bible convinced at least one other juror, Casey Lynn Guillotte, to change her vote from life to death. *Id.* at 187. He initially agreed to sign an affidavit memorializing his recorded statements. ECF No. 22-10 at 163. However, he later informed the defense investigator that the corporate counsel at his employer had advised him not to sign any affidavits and to instead testify live in the courtroom. *Id.*

Mr. Cruz-Garcia moved for a new trial. ECF No. 22-10 at 120–22. In support of the motion, Mr. Cruz-Garcia submitted an affidavit from trial counsel attesting to his conversation with juror Bowman, an affidavit from juror Bowman, an affidavit from defense investigator J.J. Gradoni attesting to his conversation with juror Clinger in which he admitted to the Bible reading, and a recording and transcript of the conversation between Mr. Gradoni and juror Clinger. ECF No. 22-10 at 153–200.

Before the hearing on the motion, however, the State obtained an affidavit from juror Clinger, who had previously stated that he would not sign an affidavit. ECF No. 23-26 at 7-9. Juror Clinger's affidavit contradicted his recorded interview. He stated that he had never read aloud from the Bible. ECF No. 23-26 at 8. Instead, he stated that on the morning of the second day of

deliberations, he had merely opened his Bible "to a chapter from Romans and laid it on the table." *Id.* He also stated that none of the jurors read from his Bible and, again contrary to his recorded statements, he did not believe the Bible changed any of the jurors' votes. *Id.* Juror Guillotte's affidavit, also introduced by the State, contradicted both juror Clinger's recorded statements and his affidavit. She stated that juror Clinger did not take out his Bible until the jurors had settled on a death verdict (i.e., after juror Bowman's *ex parte* meeting with Judge Magee in the afternoon). ECF No. 23-26 at 4. She further stated that juror Clinger had read a passage of the Bible to himself, but referenced a particular passage from Romans that gave him comfort in the verdict. *Id.* at 4-5.

Judge Magee refused to consider the recording of juror Clinger. She admitted the remaining affidavits into evidence and then denied Mr. Cruz-Garcia's motion, without any explanation as to how or whether she resolved the competing versions of events reflected in the affidavits. She refused to conduct an evidentiary hearing or hear from live witnesses. ECF No. 23-15 at 26–33.

On direct appeal, the CCA held that Judge Magee erred by admitting the affidavits and by considering their contents. *Cruz-Garcia v. State*, 2015 WL 6528727, at *29 (Tex. Crim. App. 2005). The CCA nonetheless affirmed Mr. Cruz-Garcia's sentence on the ground that Texas juries may use the Bible for any purpose during deliberations. *Id.* Since, according to the CCA's decision, it would not have been improper for the jury to base its verdict entirely on Biblical passages, it did not matter when or how the Bible reading had occurred or whether it influenced any of the jurors' decisions. *Id.*

The CCA's holding that juries may consult the Bible for any purpose during deliberations violates clearly established federal law, as the Fifth Circuit held in *Oliver v. Quarterman*, 541 F.3d 329, 339–40 (5th Cir. 2008). Accordingly, this Court will need to make a factual determination as

11

to what actually occurred during the jury deliberations in order to resolve Mr. Cruz-Garcia's claim. Mr. Cruz-Garcia therefore requests depositions of the three jurors who gave conflicting accounts of what occurred during deliberations: juror Bowman, juror Clinger, and juror Guillotte. Mr. Cruz-Garcia seeks this discovery in support of Claim 7 (juror misconduct).

7.   <u>Discovery Issue 7</u>: Judge Renee Magee's use of Mr. Cruz-Garcia's case in her partisan judicial campaigns.

Judge Magee featured Mr. Cruz-Garcia's case prominently on her campaign website—both when she was running for reelection to the court in which she presided over Mr. Cruz-Garcia's trial and state habeas proceedings and when she ran for a different judgeship after losing reelection. ECF Nos. 18-58, -59, -60. The use of Mr. Cruz-Garcia's case as a campaign issue is problematic for a number of reasons. It provided a strong incentive for Judge Magee to preserve Mr. Cruz-Garcia's conviction. It also made it all but impossible for Judge Magee to impartially assess Mr. Cruz-Garcia's claims of judicial misconduct. It certainly created the appearance of a conflict of interest, as any reasonable person would question whether a judge seeking reelection on the basis that she had presided over a high profile capital murder trial would be an unbiased arbiter of whether that trial had complied with constitutional requirements.

Combined with Judge Magee's decision to drastically accelerate and compress Mr. Cruz-Garcia's post-convictions proceedings after she lost reelection, Judge Magee's use of Mr. Cruz-Garcia's case in her campaign materials shows that Mr. Cruz-Garcia did not have a fair opportunity to raise his claims in state court. Mr. Cruz-Garcia seeks discovery as to the extent of Judge Magee's use of his case in her judicial campaign. Mr. Cruz-Garcia seeks this discovery in support of Claim 21 (judicial conflict of interest) and in support of his argument that § 2254(d)'s relitigation bar does

not apply because his state habeas proceeding did not comport with state law or due process. *See* ECF No. 38 at 34–43.

8. <u>Discovery Issue 8</u>: **Judge Renee Magee's knowledge of and/or work on Mr. Cruz-Garcia's case while a senior prosecutor at the Harris County District Attorneys' Office.**

Prior to becoming a judge in January of 2013, Renee Magee spent her entire legal career as a prosecutor in the HCDAO. ECF No. 18 at 231. Much of her time as prosecutor was spent working on death penalty cases. *Id.* By the time Judge Magee took the bench in January of 2013, Mr. Cruz-Garcia's case had been pending for almost five years. He had been under active investigation by the HCDAO for even longer.

There appears not to have been any type of conflict prevention system in the Harris County criminal courts at the time of Mr. Cruz-Garcia's trial. ECF No. 38 at 120 & n.20. In several instances, Judge Magee ended up presiding over and entering judgement in criminal cases she had indicted as a prosecutor. ECF Nos. 18-54, -55, -56, -57. Moreover, when one of the earlier judges who initially presided over Mr. Cruz-Garcia's case retired and the prosecutor who indicted his case was elected as his replacement, Mr. Cruz-Garcia's case was not automatically reassigned. ECF No. 18 at 232; ECF No. 22-8 at 166–76. Rather, Mr. Cruz-Garcia's counsel (who at that time were Mr. Shellist and Mr. Cappitaine) had to file a motion for the judge to recuse herself (which she dutifully granted). *Id.* In short, it is apparent that the HCDAO prosecutors ran for, and won, judgeships of courts in which they practiced and HCDAO lacked an appropriate conflict prevention system.

Mr. Cruz-Garcia's case had a high media profile. Indeed, Judge Magee took the extreme step of sequestering the jury in a hotel during deliberations. Given the importance of Mr. Cruz-Garcia's case and that it had been ongoing for several years while Judge Magee was a senior, capital-experienced prosecutor at HCDAO, there is a strong likelihood that Judge Magee may have had

13

involvement in Mr. Cruz-Garcia's case prior to taking the bench. Mr. Cruz-Garcia seeks documentary discovery from HCDAO to determine whether this was the case. Mr. Cruz-Garcia seeks this discovery in support of Claim 21 (judicial conflict of interest) and in support of his argument that § 2254(d)'s relitigation bar does not apply because his state habeas proceeding did not comport with state law or due process. *See* ECF No. 38 at 34–43.

9.   **Discovery Issue 9: The State's assistance to Angelita Rodriguez.**

Angelita Rodriguez, Mr. Cruz-Garcia's ex-wife, was a State's witness at trial. Despite having repeatedly denied that she knew anything about the victim's disappearance during the original investigation, she testified at trial that Mr. Cruz-Garcia confessed to her. ECF No. 23-6 at 107. Much of Ms. Rodriguez's testimony was contradicted by evidence that trial counsel failed to uncover due to their lack of investigation. ECF No. 38 at 64.

Ms. Rodriguez benefited substantially from her testimony against Mr. Cruz-Garcia.  At the time of trial, Angelita Rodriguez was a deportable alien pursuant to 8 U.S.C. § 1227(a)(2)(B)(i). On October 29, 1993, Ms. Rodriguez was sentenced to 2 years' confinement by the 337th District Court in Harris County after being convicted of possession of cocaine, a felony offense. Exh. B. Nevertheless, Ms. Rodriguez was not deported. Subsequent to her testimony for the prosecution in Mr. Cruz-Garcia's trial, the lead prosecutor sent a letter in support of Ms. Rodriguez to her attorney, J.C. Castillo,[3] so that he could advise the United States immigration authorities of her cooperation. ECF No. 38-2. She was eventually granted her United States citizenship even though she had a substantial criminal record.

---

[3] This is the same J.C. Castillo who represented Mr. Santana in his federal criminal case.

14

Mr. Cruz-Garcia seeks documentary discovery from HCDAO concerning whether the State had a deal with Ms. Rodriguez pursuant to which she would receive immigration, or other, assistance in exchange for her testimony against Mr. Cruz-Garcia. Mr. Cruz-Garcia also seeks documentary discovery from the INS to determine how Mr. Rodriguez, as an otherwise inadmissible alien with a criminal record, was allowed to obtain United States citizenship and what role HCDAO's letter played in that process. Mr. Cruz-Garcia seeks this evidence in support of Claim 1 (ineffective assistance of trial counsel), Claim 11 (*Brady*), and Claim 27 (actual innocence).

   10.   **Discovery Issue 10**: The State's alternative theories of the crime.

Materials obtained from the Houston Police Department repeatedly reference a "second theory" of the crime. ECF No. 18-16, -17, -18. The specifics of the theory, however, are redacted and were never disclosed to defense counsel. *Id*. Mr. Cruz-Garcia seeks documentary discovery from HCDAO and from HPD concerning what the State's undisclosed "second theory" consisted of, why trial counsel did not pursue it, and how it might have impacted Mr. Cruz-Garcia's trial if they had presented evidence that the State had entertained an alternative theory of the crime. Mr. Cruz-Garcia seeks this discovery in support of Claim 1 (ineffective assistance of counsel); Claim 3 (false testimony); Claim 11 (*Brady*); and Claim 27 (actual innocence).

   11.   **Discovery Issue 11**: The murder of Saul Flores.

During the punishment phase, Mr. Santana, as well as a man named Johnny Lopez, implicated Mr. Cruz-Garcia in the 1989 murder of a man named Saul Flores. ECF No. 38 at 70–71, 87; ECF No. 18 at 107–10, 146–47, 157–59. The testimony of both witnesses was contradicted by the physical evidence, as well by the testimony of Mr. Flores' ex-girlfriend, who supposedly sparked the dispute that led to his murder. *Id.*

Only a limited number of police reports concerning the Flores murder were disclosed pre-trial, raising the question of whether other items, including the detectives' notes, remain undisclosed. Mr. Cruz-Garcia, through his counsel, has sought these documents from HPD. HPD, however, has refused to disclose them, due to the fact that Mr. Cruz-Garcia was not actually convicted of murdering Flores. *See* Exhs. C, D, E, F. Mr. Cruz-Garcia seeks these items through documentary discovery from HPD and HCDAO. Mr. Cruz-Garcia seeks this discovery in support of Claim 1 (ineffective assistance of trial counsel); Claim 3 (false testimony); and Claim 11 (*Brady*).

### C.   Mr. Cruz-Garcia's specific discovery requests.

#### 1.   Document Requests.

##### a.   Harris County District Attorney's Office.

Mr. Cruz-Garcia respectfully requests a document subpoena to the Harris County District Attorney's Office for documents relating to:

i.   the storage and testing of the DNA evidence in the case (**Discovery Issue 1 – DNA Evidence**);

ii.   the State's legal analysis concluding that Mr. Santana could not be charged with a crime in connection with the murders of Angelo Garcia and Saul Flores (**Discovery Issue 3 – Undisclosed Deal with Mr. Santana**);

iii.   Mr. Santana and any consideration he received in exchange for his testimony, including any communication to him or his attorney of the appellate division's conclusion that Mr. Santana could not be charged in connection with Angelo's death (**Discovery Issue 3 – Undisclosed Deal with Mr. Santana**);

iv.   Mr. Santana's mental health (**Discovery Issue 2 – Mr. Santana's Mental Health**);

v.   Johnny Lopez and any consideration he received in exchange for his testimony (**Discovery Issue 11 – Murder of Saul Flores**);

vi.   the murder of Saul Flores (**Discovery Issue 11 – Murder of Saul Flores**); and

vii.   the grand jury testimony of any witnesses who testified at trial (**Discovery Issue 5 – Grand Jury Testimony**).

16

      **b.**   **Houston Police Department.**

Mr. Cruz-Garcia respectfully requests a document subpoena to the Houston Police Department for:

      **i.**   all undisclosed documents relating to the murder of Saul Flores **(Discovery Issue 11 – Murder of Saul Flores)**; and

      **ii.**   unredacted copies of all undisclosed documents concerning the murder of Angelo Garcia, including documents concerning alternative theories of the crime **(Discovery Issue 10 – State's Alternative Theories).**

      **c.**   **Federal Bureau of Prisons.**

Mr. Cruz-Garcia respectfully requests a document subpoena to the Federal Bureau of Prisons for the following documents:

      **i.**   Mental health and medical records from Mr. Santana's period of incarceration with the BOP **(Discovery Issue 2 – Mr. Santana's Mental Health)**;

      **ii.**   if Mr. Santana was housed in a non-BOP facility pre-trial, mental health and medical records from that facility **(Discovery Issue 2 – Mr. Santana's Mental Health)**;

      **iii.**   Mr. Santana's BOP disciplinary records **(Discovery Issue 2 – Mr. Santana's Mental Health)**;

      **iv.**   Mr. Santana's BOP classification records and designations **(Discovery Issue 2 – Mr. Santana's Mental Health)**; and

      **v.**   Mr. Santana's BOP educations records **(Discovery Issue 2 – Mr. Santana's Mental Health)**.

      **d.**   **Harris County Sheriff's Office.**

Mr. Cruz-Garcia respectfully requests a document subpoena to the Harris County Sheriff's Office for all mental health and medical records from Mr. Santana's time in state custody pending his testimony in Mr. Cruz-Garcia's and Mr. Aviles-Baroso's cases. **(Discovery Issue 2 – Mr. Santana's Mental Health).**

      **e.**   **Mr. Santana's Attorneys.**

Mr. Cruz-Garcia respectfully requests a document subpoena to Ray Castro for documents relating to his communications with HCDAO concerning Mr. Santana's testimony and documents relating to Mr. Santana's mental health. (**Discovery Issues 2 and 3 – Mr. Santana's Mental Health/Undisclosed Deal with Mr. Santana**).

Mr. Cruz-Garcia also respectfully requests a document subpoena to J.C. Castillo, who represented both Mr. Santana and Angelita Rodriguez, for documents concerning Mr. Santana's mental health, including documents concerning his court-ordered psychological evaluation, as well as documents relating to Angelita Rodriguez's cooperation with the State during Mr. Cruz-Garcia's trial and the immigration assistance she received from the State. (**Discovery Issues 2 – Mr. Santana's Mental Health/Discovery Issue 9 – Undisclosed Deal with Angelita Rodriguez**).

### f.   Orchid Cellmark.

Mr. Cruz-Garcia respectfully requests a document subpoena to Orchid Cellmark, including any corporate successors,[4] for documents relating to the testing of the DNA evidence in this case. (**Discovery Issue 1 – DNA Evidence**).

### g.   United States District Court for the Southern District of Texas.

Mr. Cruz-Garcia respectfully requests a document subpoena to the United States District Court for the Southern District of Texas for access to any sealed filings in Mr. Santana's federal case pertaining to Mr. Santana's attorney's competency motion and the court-ordered mental health examination. (**Discovery Issue 2 – Mr. Santana's Mental Health**).

### h.   Federal Law Enforcement Agencies.

---

[4] In 2011, Orchid Cellmark was acquired by Laboratory Corporation of America Holdings, commonly known as "LabCorp." (https://www.businesswire.com/news/home/20111216005351/en/LabCorp-Successfully-Completes-Acquisition-Orchid-Cellmark)

Mr. Cruz-Garcia respectfully requests document subpoenas to the Department of Justice, the Department of Homeland Security, the Federal Bureau of Investigation, the Drug Enforcement Agency, and the Immigration and Naturalization Service, including any successor agencies thereto, for unredacted documents relating to Mr. Cruz-Garcia and his work in support of federal law enforcement agencies, including the Federal Bureau of Investigation, the Drug Enforcement Administration, and the Immigration and Naturalization Service (**Discovery Issue 4 – Mr. Cruz-Garcia's Assistance to Federal Law Enforcement**). Mr. Cruz-Garcia also requests a document subpoena to the Department of Homeland Security for Angelita Rodriguez's immigration records (**Discovery Issue 9 – Undisclosed Deal with Angelita Rodriguez**).

2.    **Depositions.**

Mr. Cruz-Garcia respectfully requests depositions of the individuals listed below. As discussed above, Mr. Pellot is a retired INS agent who worked closely with Mr. Cruz-Garcia and has indicated he is willing to be deposed but requires a subpoena due to agency regulations. Ms. Bowman, Mr. Clinger, and Ms. Guillotte were the three jurors who provided conflicting accounts of how the Bible was used during jury deliberations. Mr. Castro was Mr. Santana's counsel for purposes of negotiating with HCDAO regarding Mr. Santana's testimony against Mr. Cruz-Garcia. Mr. Castillo was Mr. Santana's attorney when he underwent a psychiatric evaluation in connection with his federal conviction, and was also Ms. Rodriguez's attorney for purposes of negotiating with HCDAO concerning her testimony against Mr. Cruz-Garcia. Ms. Magee, whose state bar profile reflects that she is currently a prosecutor in the Galveston County District Attorney's Office, took the bench directly from HCDAO and used Mr. Cruz-Garcia's case in her campaign materials while she presided over his state post-conviction proceedings.

19

Mr. Cruz-Garcia also requests depositions of trial counsel (Skip Cornelius and Mauro Madrid) and their investigators (J.J. Gradoni and Edna Valez). Because trial counsel worked under an ethically questionable fixed-fee arrangement, they did not keep contemporaneous time entries. Mr. Cruz-Garcia seeks these depositions to learn what steps trial counsel contend they took to prepare for the guilt and punishment phases of Mr. Cruz-Garcia's trial and what, if any, strategic rationale they contend supported those steps. Finally, Mr. Cruz-Garcia requests depositions of Natalie Tise and Justin Wood, the State's prosecutors at Mr. Cruz-Garcia's trial, to learn what they communicated to Mr. Santana and Ms. Rodriguez, and their respective counsel, concerning their testimony against Mr. Cruz-Garcia. Mr. Cruz-Garcia also seeks to depose the prosecutors concerning their purported legal determination that Mr. Santana could not be charged with a crime, despite admitting his participation in the kidnapping and murder of Angelo Garcia and the murder of Saul Flores.

| Person | Role in Case | Discovery Issues |
|---|---|---|
| Skip Cornelius | Lead trial counsel | 1-6, 9-11 |
| Mauro Madrid | Second-chair trial counsel | 1-6, 9-11 |
| J.J. Gradoni | Defense investigator | 2-4, 6, 9-11 |
| Edna Valez | Defense investigator | 2-4, 6, 9-11 |
| Ray Castro | Mr. Santana's counsel | 2 and 3 |
| J.C. Castillo | Ms. Rodriguez's counsel and Mr. Santana's counsel during this federal trial | 2 and 9 |
| Wilson Pellot | Retired INS Agent | 4 |
| Natalie Tise | Lead prosecutor | 1-3, 6, 8-11 |
| Justin Wood | Second-chair prosecutor | 1-3, 6, 8-11 |
| Renee Magee | Trial/state habeas judge | 7-8 |
| Angela Bowman | Juror | 6 |
| Matthew Clinger | Jury foreperson | 6 |
| Casey Guillotte | Juror | 6 |

## V.   CONCLUSION

For the foregoing reasons, Mr. Cruz-Garcia respectfully requests that the Court grant his

Motion for Discovery.


Respectfully submitted,


DATE: October 20, 2020                    JASON D. HAWKINS
                                          Federal Public Defender

                                          /s/  *David C. Currie*
                                          Jeremy Schepers (TX 24084578)
                                          Supervisor, Capital Habeas Unit
                                          David C. Currie (TX 24084240)
                                          Naomi Fenwick (TX 24107764)
                                          Assistant Federal Public Defenders

                                          Office of the Federal Public Defender
                                          Northern District of Texas
                                          525 S. Griffin St., Ste. 629
                                          Dallas, TX 75202
                                          214-767-2746
                                          214-767-2886 (fax)
                                          jeremy_schepers@fd.org
                                          david_currie@fd.org
                                          naomi_fenwick@fd.org

                                          *Counsel for Petitioner*

**CERTIFICATE OF CONFERENCE**

David Currie, counsel for Mr. Cruz-Garcia, has conferred with opposing counsel, Cara Hanna of the Texas State Attorney's General office, and Ms. Hanna indicated that the Director is opposed to the relief sought in this motion.

/s/ *David Currie*
Attorney for Petitioner

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion for Discovery has been served by CM/ECF upon counsel for Respondent on October 20, 2020:

Postconviction Litigation Division
Office of the Attorney General
P.O. Box 12548
Capitol Station
Austin, TX 78711

/s/ *David C. Currie*
Assistant Federal Defender