# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| OBEL CRUZ-GARCIA, <br> Petitioner, <br><br> *v.* <br><br> BOBBY LUMPKIN, Director, <br> Texas Department of <br> Criminal Justice, <br> Correctional Institutions Division, <br> Respondent. | Case No. 4:17-CV-03621 <br><br><br> Chief District Judge Lee H. Rosenthal <br><br><br> CAPITAL CASE |

## OPPOSED MOTION FOR DISCOVERY

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
David C. Currie (TX 24084240)
Naomi Fenwick (TX 24107764)
Assistant Federal Public Defenders

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org
david_currie@fd.org
naomi_fenwick@fd.org

## THIS IS A CAPITAL CASE

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES.............................................................................................. ii

I.      INTRODUCTION ...................................................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................................................ 1

III.    LEGAL BACKGROUND .......................................................................................... 2

IV.     ARGUMENT .............................................................................................................. 4

A.      MR. CRUZ-GARCIA WAS DENIED ANY OPPORTUNITY TO CONDUCT DISCOVERY IN STATE COURT. ............... 4

B.      THE CLAIMS ON WHICH MR. CRUZ-GARCIA SEEKS DISCOVERY CAN BE FACTUALLY DEVELOPED IN   FEDERAL COURT ........................................................................................................... 6

C.      THE COURT SHOULD AUTHORIZE DISCOVERY ON CLAIM ONE (A). ...................................... 8

D.      THE COURT SHOULD AUTHORIZE DISCOVERY ON CLAIMS FIVE AND SIX. ............................... 9

1.      Discovery topics relating to Claims Five and Six. ................................................. 9

a.      The false DNA evidence used to convict Mr. Cruz-Garcia................................. 9

b.      The mental illness suffered by Carmelo "Rudy" Santana, the State's star witness.................................. 10

c.      The State's deal with Mr. Santana. ........................................................... 11

d.      The State's assistance to Angelita Rodriguez................................................ 13

e.      The State's alternative theories of the crime. ............................................. 14

f.      The murder of Saul Flores. ..................................................................... 15

g.      Mr. Cruz-Garcia's assistance to United States law enforcement agencies.............................. 15

h.      Grand jury testimony............................................................................. 16

E.      THE COURT SHOULD AUTHORIZE THE FOLLOWING SPECIFIC DISCOVERY REQUESTS REGARDING CLAIMS FIVE AND SIX. ..................................................................................... 16

1.      DOCUMENT REQUESTS. ....................................................................................... 16

a.      Harris County District Attorney's Office...................................................... 16

b.      Houston Police Department. .................................................................... 17

c.      Federal Bureau of Prisons. ...................................................................... 17

d.      Harris County Sherriff's Office. ................................................................ 18

e.      Mr. Santana's Attorneys. ........................................................................ 18

f.      Orchid Cellmark................................................................................... 18

g.      United States District Court for the Southern District of Texas............................ 18

h.      Federal Law Enforcement Agencies. ........................................................... 19

2.      The Court should authorize the following depositions regarding Claims Five and Six. .......................... 19

V.      CONCLUSION ......................................................................................................... 20

VERIFICATION............................................................................................................... 25

CERTIFICATE OF SERVICE ........................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Banks v. Dretke,*
540 U.S. 668 (2004 .................................................................................................. 13

*Barrientes v. Johnson,*
221 F.3d 741 (5th Cir. 2000) ............................................................................ 12, 13

*Blackledge v. Allison,*
431 U.S. 63 (1977) ..................................................................................................... 8

*Bracy v. Gramley,*
520 U.S. 899 (1997) ................................................................................................... 8

*Busby v. Davis,*
925 F.3d 699 (5th Cir. 2019) .................................................................................. 12

*Canales v. Stephens,*
765 F.3d 551 (5th Cir. 2014) ....................................................... ........................... 12

*Cullen v. Pinholster,*
563 U.S. 170 (2011) ............................................................................................ 11, 12

*Gaitan-Campanioni v. Thornbaugh,*
777 F. Supp. 1355 (E.D. Tex. 1991) ........................................................................ 9

*Jackson v. Virginia,*
443 U.S. 307 (1979) ................................................................................................... 7

*McFarland v. Scott,*
512 U.S. 849 (1994) ................................................................................................... 7

*Murphy v. Johnson,*
205 F.3d 809 (5th Cir. 2000) .................................................................................... 9

*Napue v. Illinois,*
360 U.S. 264 (1959) ................................................................................................. 12

*Payne v. Bell,*
89 F. Supp. 2d 967 (W.D. Tenn. 2000) ................................................................ 8, 9

*United States ex rel. Pecoraro v. Page,*
1998 WL 708856 (N.D. Ill. 1998) ............................................................................. 8

ii

*Rhines v. Weber,*
    544 U.S. 269 (2005) ........................................................................................... 6, 7

*Romero v. Beard,*
    2011 WL 3862317 (E.D. Pa. 2011) ........................................................................ 9

*Smith v. Cain,*
    708 F.3d 628 (5th Cir. 2013) ........................................................................... 11, 12

*Strickler v. Greene,*
    525 U.S. 263 (1999) ............................................................................................. 13

*United States v. Carmelo Martinez,*
    4:89-cr-00012 (S.D. Tex. Dec. 17, 1998) ............................................................. 15

*Williams v. Hall,*
    648 F. Supp. 2d 1222 (D. Or. 2009) ...................................................................... 8

*Wilson v. Butler,*
    825 F.2d 879 (5th Cir. 1987) ................................................................................. 9

*Wingo v. Wedding,*
    418 U.S. 461 (1974) ............................................................................................... 7

*Woodson v. North Carolina,*
    428 U.S. 280 (1976) ............................................................................................... 9

**State Cases**

*Ex Parte Cruz-Garcia,*
    2021 WL 4571730 (Tex. Crim. App. 2021) ....... 7, 11, 13

*Druery v. State,*
    225 S.W.3d 491 (Tex. Crim. App. 2007) .............................................................. 17

**Federal Statutes**

8 U.S.C. § 1227(a)(2)(B)(i) ...................................................................................... 18

28 U.S.C. § 2243 ........................................................................................................ 7

28 U.S.C. § 2254 .......................................................................................... 6, 11, 12

**State Statutes**

TEX. CODE CRIM. PRO. ART. 11.071. ................................................................... 10, 11

## I.   INTRODUCTION

Petitioner Obel Cruz-Garcia respectfully requests that this Court allow him to conduct discovery concerning three claims in his Second Amended Petition. ECF No. 73. Specifically, Mr. Cruz-Garcia seeks discovery relating to misconduct arising when a juror read from the Bible and jurors were thus influenced regarding Mr. Cruz-Garcia's sentence, false testimony presented by the State to secure Mr. Cruz-Garcia's conviction and sentence, and material, exculpatory evidence that the State has failed to disclose. *See* ECF No. 73, Claims One, Five, Six.

This is Mr. Cruz-Garcia's first opportunity to engage in factual development concerning these claims. Mr. Cruz-Garcia was denied discovery during his state court post-conviction proceedings, which were tainted by the trial judge losing her reelection bid and her resulting acceleration of the post-conviction proceedings in this case so that she could render judgment before her term expired. For the reasons stated below, Mr. Cruz-Garcia respectfully requests that the Court grant his Motion for Discovery.

## II.   PROCEDURAL BACKGROUND

Mr. Cruz-Garcia timely filed his Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 on October 30, 2018. ECF No. 12. Mr. Cruz-Garcia filed an Amended Petition on July 1, 2019. ECF No. 18. Mr. Cruz-Garcia subsequently filed a Motion for Discovery. ECF No. 43. On November 6, 2020, the Court denied the motion without prejudice and ordered Mr. Cruz-Garcia to instead file a motion identifying any claims he wished to exhaust in a subsequent state court habeas application. ECF No. 45. Mr. Cruz-Garcia filed that motion on November 30, 2020. ECF No. 46. On January 19, 2021, the Court stayed this case pursuant to *Rhines v. Weber*, 544 U.S. 269

1

(2005) so that Mr. Cruz-Garcia could exhaust certain claims by filing a second[1] successive application for post-conviction relief in Texas state court. ECF No. 59.

Mr. Cruz-Garcia filed his second successive state habeas corpus application on April 9, 2021. ECF No. 73-39. The Texas Court of Criminal Appeals ("CCA") denied Mr. Cruz-Garcia's successive application on October 6, 2021. *Ex Parte Cruz-Garcia*, 2021 WL 4571730 (Tex. Crim. App. 2021). After the CCA's decision, the parties moved to reopen this case. ECF No. 64. Mr. Cruz-Garcia submitted his Second Amended Petition on May 4, 2022. ECF No. 73. Mr. Cruz-Garcia now submits this motion, in which he request discovery in support of three of his claims.

## III.    LEGAL BACKGROUND

The Supreme Court has recognized that because habeas corpus claims often turn on factual questions, "the procedures by which the facts of a case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied." *Wingo v. Wedding*, 418 U.S. 461, 474 (1974); *see also McFarland v. Scott*, 512 U.S. 849, 855 (1994) (purpose of habeas corpus procedures is development of "possible claims and their factual bases"). Both the Supreme Court and Congress have insisted, therefore, that full development of determinative factual questions precede the final adjudication of habeas corpus claims, and both have made a variety of fact-finding procedures available to habeas corpus petitioners, including evidentiary hearings, discovery, and expansion of the record to include documentary evidence. *See, e.g.*, 28 U.S.C. § 2243; Habeas Rules 6, 7, and 8; *see also Jackson v. Virginia*, 443 U.S. 307, 318 (1979) ("A federal court has a duty to assess

---

[1] Mr. Cruz-Garcia's state habeas counsel filed two applications for post-conviction relief. The application filed after the *Rhines* stay was therefore his third, or second successive, application.

2

the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in state court.").

Habeas Rule 6(a) incorporates the Supreme Court's directive that a federal habeas corpus petitioner is "entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts." *Blackledge v. Allison*, 431 U.S. 63, 82–83 (1977) (internal citation and quotation omitted). Under Rule 6(a), a federal court may order discovery upon a showing of "good cause." Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997). The facts of *Bracy* are instructive. The petitioner raised a speculative claim of judicial bias based on the fact that the trial judge was subsequently convicted of receiving bribes in other matters. The Supreme Court unanimously reversed the lower courts' denial of discovery, even though the Court agreed that Bracy's argument that discovery would support his claim was "speculative," *id.* at 909, "only a theory" and "not supported by any solid evidence." *Id.* at 908.

To establish good cause, a petitioner need only show that the discovery "may well uncover favorable, material information that would tend to support the claim." *Williams v. Hall*, 648 F. Supp. 2d 1222, 1225 (D. Or. 2009) (internal quotations omitted); *see also Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) (holding that petitioner "need not show that the additional discovery would definitely lead to relief," but only that it "would lead to relevant evidence regarding his petition"); *United States ex rel. Pecoraro v. Page*, 1998 WL 708856, at *3 (N.D. Ill. 1998) ("Petitioner's burden on this discovery motion is only to convince the court that he might be able to demonstrate a [constitutional] violation if the facts are fully developed."). Therefore, "the court should not hesitate

to allow discovery where it will help illuminate the issues underlying the applicant's claim." *Gaitan-Campanioni v. Thornburgh*, 777 F. Supp. 1355, 1356 (E.D. Tex. 1991). Once a petitioner demonstrates "good cause" for discovery, "it is the duty of the courts to provide the necessary facilities and procedure for an adequate inquiry." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (citation omitted).

The policies favoring discovery are even stronger in capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Hence, "[m]ore liberal discovery is appropriate in capital cases where the stakes for petitioner are so high." *Payne*, 89 F. Supp. 2d at 971; *see also Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987) ("[I]f [the death penalty] is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims."); *Romero v. Beard*, 2011 WL 3862317, at *11 (E.D. Pa. 2011) ("[A]s this is a capital case, discovery should be granted liberally.").

## IV.    ARGUMENT

### A. Mr. Cruz-Garcia was denied any opportunity to conduct discovery in state court.

As set forth in detail in Mr. Cruz-Garcia's Second Amended Petition, Mr. Cruz-Garcia was deprived of a fair opportunity to obtain discovery during his state habeas proceeding. ECF No. 73 at 12-18. Indeed, Mr. Cruz-Garcia was deprived of a fair state post-conviction process entirely.

To summarize briefly, Judge Renee Magee presided over Mr. Cruz-Garcia's trial and state post-conviction proceedings. During the post-conviction proceedings, Judge Magee was running for reelection and featured Mr. Cruz-Garcia's case prominently in her campaign materials. ECF No. 73

4

at 242–43; ECF No. 18-58, -60. Although several of Mr. Cruz-Garcia's claims implicated her in potential misconduct—by issuing a coercive instruction to a holdout juror during an *ex parte* meeting and by misrepresenting a report of juror misconduct—she refused to recuse herself. 3 SHCR 614, 652.

Judge Magee granted the State's request for limited affidavits from trial counsel, while reserving the question of whether to allow the discovery requested by Mr. Cruz-Garcia. 2 SHRR 17–18; ECF No. 73 at 13–14. Before the affidavits were returned, however, Judge Magee lost her reelection bid. 5 SHCR 1109–10. Shortly thereafter, trial counsel filed their affidavits and stated explicitly that Judge Magee's campaign loss influenced their timing because they were eager to have her, and not her successor, decide Mr. Cruz-Garcia's post-conviction application. 4 SHCR 943.

Determined to dispose of Mr. Cruz-Garcia's case in the few weeks remaining in her term, Judge Magee skipped over steps mandated by Article 11.071 of the Texas Code of Criminal Procedure and refused to allow any further fact-development or hold an evidentiary hearing. Instead, Judge Magee ordered Mr. Cruz-Garcia to produce proposed findings of fact and conclusions of law ("FFCL") in a few short weeks in mid-December, even after his counsel informed Judge Magee that she would be trying a week-long evidentiary hearing and traveling out of state for a memorial service during that time. ECF No. 73 at 14–18. After having received the State's proposed FFCL on December 21, 2016, Judge Magee adopted all 50 pages without changing a word on December 29, 2016. 5 SHCR 1035–1085. She then ran for a different judgeship—again featuring Mr. Cruz-Garcia's trial in her campaign materials. ECF No. 18-58, -60.

## B. The claims on which Mr. Cruz-Garcia seeks discovery can be factually developed in federal court.

Mr. Cruz-Garcia seeks discovery relating to Claim One (A) (juror misconduct), Claim Five (false testimony), and Claim Six (*Brady*). In Claim One (A), Mr. Cruz-Garcia asserts that the jury was exposed to an external influence during the punishment phase deliberations when the jury foreperson brough a Bible into the deliberations room and read from it to the jury. ECF No. 73 at 22–32. In Claim Five, Mr. Cruz-Garcia asserts that the State violated his Fourteenth Amendment due process rights by presenting false testimony from numerous witnesses at both the guilt and punishment phases. *Id.* at 224. In Claim Six, Mr. Cruz-Garcia asserts that the State violated *Brady v. Maryland*, when it failed to disclose material, exculpatory, and mitigating evidence. *Id.* at 239.

As discussed in Mr. Cruz-Garcia's contemporaneously-filed Motion for an Evidentiary Hearing, Claim One (A) was raised by Mr. Cruz-Garcia in a motion for a new trial and in his direct appeal. The claim ultimately was not adjudicated on the merits by the CCA and this Court can review the claim *de novo*. Alternatively, to the extent the CCA did resolve the claim, its decision was contrary to clearly established federal law. ECF No. 73 at 29–32. Because Mr. Cruz-Garcia has shown he can meet 2254(d)(1) on this claim, *Cullen v. Pinholster*, 563 U.S. 170 (2011) does not bar additional factual development of this claim. *Smith v. Cain*, 708 F.3d 628, 634–35 (5th Cir. 2013). Section 2254(e)(2) also does not bar factual development of this claim because he is not at fault for failing to develop the records in state court; in his motion for a new trial, Mr. Cruz-Garcia sought the same testimony he seeks in this motion. *See* ECF No. 73 at 27–28; *see also* Motion for an Evidentiary Hearing (filed contemporaneously herewith).

6

Mr. Cruz-Garcia presented Claim Five in his second subsequent application for state habeas relief. ECF No. 73-39 at 047–083.  The CCA dismissed the claim under Texas Code of Criminal Procedure Article 11.071 § 5(a)(2), *Ex parte Cruz-Garcia*, 2021 WL 457130, at *1, which implies a decision on the merits of the claim. ECF No. 73 at 212; *see also Canales v. Stephens*, 765 F.3d 551, 565 (5th Cir. 2014); *Busby v. Davis*, 925 F.3d 699, 710 (5th Cir. 2019). The claim is therefore exhausted and subject to 28 U.S.C. § 2254(d). As set forth in the Second Amended Petition, the CCA's decision denying relief on Claim Five necessarily either involved an unreasonable application of *Napue v. Illinois*, 360 U.S. 264 (1959) and its progeny regarding the presentation of false evidence, or was based on an unreasonable determination of fact. ECF No. 73 at 190–214. Because 2254(d) is satisfied, *Pinholster* does not prevent additional factual development of Claim Five. *Smith*, 708 F.3d at 634–35.

Section 2254(e)(2) also does not prevent factual development of Claim Five in federal court because Mr. Cruz-Garcia has not "failed to develop the factual basis" of the claim in state court. The discovery Mr. Cruz-Garcia seeks concerning Claim Five is in the possession, custody, and control of the State[2] and is not accessible to Mr. Cruz-Garcia absent court-ordered discovery. Because the CCA did not authorize Claim Five, Mr. Cruz-Garcia had no opportunity obtain discovery on this claim in state court. Accordingly, § 2254(e)(2) does not bar fact-development in federal court.[3]

---

[2] Mr. Cruz-Garcia seeks discovery from Ray Castro and J.C. Castillo, who are private attorneys who represented State's witnesses at trial. The information Mr. Cruz-Garcia seeks from these individuals, however, concerns their communications with the State.

[3] Alternatively, if the Court finds that the CCA did not adjudicate Claim Five on the merits and that the claim is therefore procedurally defaulted, Mr. Cruz-Garcia can overcome the procedural default. *See* ECF No. 73 at 213-14. Furthermore, the Court can permit factual development for purposes of establishing procedural default and, once the procedural default is cleared, § 2254(e)(2)

Mr. Cruz-Garcia also presented Claim Six in his second subsequent state habeas application. ECF No. 73-39 at 097–114. The CCA dismissed the claim as procedurally defaulted without considering the merits. *Ex parte Cruz-Garcia*, 2021 WL 4571730, at *1. The claim is therefore exhausted and procedurally defaulted. Mr. Cruz-Garcia can, however, show cause and prejudice to excuse the procedural default based on the State's suppression of exculpatory, impeachment, and mitigating evidence. ECF No. 73 at 224–25; *see also Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 525 U.S. 263, 289 (1999). Indeed, the Court can and should authorize fact development both for purposes of establishing cause and prejudice and in support of the underlying claim. *Barrientes*, 221 F.3d at 741.

## C. The Court Should Authorize Discovery on Claim One (A).

The circumstances giving rise to Claim One (A) are set forth in Mr. Cruz-Garcia's Second Amended Petition, ECF No. 73 at 22–28. In short, immediately after the trial, one of the jurors revealed that the jury foreman read aloud from his Bible during the punishment phase deliberations. In a recorded interview, the foreman confirmed that he had done so and stated that his Bible reading had influenced at least one juror. After Mr. Cruz-Garcia moved for a new trial, the State obtained an affidavit from the foreman, in which he contradicted his recorded statements. The state also produced an affidavit from the juror who the foreman had identified as being influenced by the Bible passages. Mr. Cruz-Garcia requested to take testimony from the jurors at an evidentiary hearing, but the trial court refused. *See* 29 RR 3.

---

is not a barrier to fact development on the underlying claim in federal court. *Barrientes v. Johnson*, 221 F.3d 741, 771 (5th Cir. 2000).

For essentially the same reasons as those set forth in Mr. Cruz-Garcia's Motion for an Evidentiary Hearing, there is good cause to permit him to depose the three jurors at issue: Angela Bowman (who informed defense counsel of the Bible reading), Matthew Clinger (the jury foreman), and Casey Guillote (the juror Mr. Clinger identified as being especially influenced by the Bible).

### D. The Court should authorize discovery on Claims Five and Six.

Mr. Cruz-Garcia seeks documentary discovery and depositions concerning eight topics as they relate to Claims Five and Six of his Second Amended Petition. These eight topics are set forth below in Section D.1. Because the sources of discovery overlap among the topics, Mr. Cruz-Garcia separately sets forth the specific document requests and depositions he seeks in Section E.

    1.  **Discovery topics relating to Claims Five and Six.**

        a.  **The false DNA evidence used to convict Mr. Cruz-Garcia.**

DNA evidence introduced at trial by the State is the only physical evidence linking Mr. Cruz-Garcia to the offense. Yet, less than a week after Mr. Cruz-Garcia's conviction became final on appeal, the State conceded that much of the DNA evidence used to convict him was false. *See* ECF No. 73 at 52–53. At trial, the State's experts testified that Mr. Cruz-Garcia could not be excluded as a DNA contributor to a vaginal swab taken from the victim's mother, a cutting of the victim's mother's underwear, and a cigar purportedly left by the assailants.[4] 16 RR 94–95. The State's expert also testified that there were two male DNA contributors to the vaginal swab and the underwear, and that Arturo Rodriguez, the victim's mother's live-in boyfriend, could not be excluded as the other contributor. 21 RR 112. The State now concedes that Mr. Cruz-Garcia's DNA cannot be

---

[4] Although at the 2013 trial the State's witnesses testified that the cigar had been left by the assailants, the police had disregarded that theory during their 1992 investigation—a fact that was never brought to the jury's attention. ECF No. 18-64 at 7.

linked to the vaginal swab at all. ECF No. 18-11 at 2. Likewise, the State concedes that Mr. Rodriguez's DNA cannot be linked to the underwear or the vaginal swab, meaning that there is now an unknown contributor who could have been the assailant. *Id.*

Mr. Cruz-Garcia seeks documentary discovery from the Harris County District Attorney's Office ("HCDAO") and Orchid Cellmark, the private lab that performed the DNA testing, about the date on which the State knew (or should have known) that the DNA evidence used to convict Mr. Cruz-Garcia was false, and as to whether the State's post-conviction DNA analysis is likewise flawed. There is good cause to permit this discovery because it can elucidate when the State knew or should have known that the DNA evidence was false and whether the State's revised DNA analysis is similarly unreliable.

### b. The mental illness suffered by Carmelo "Rudy" Santana, the State's star witness.

Carmelo "Rudy" Santana was the State's star witness at trial and directly implicated Mr. Cruz-Garcia in the facts of the offense. At the time he implicated Mr. Cruz-Garcia and testified against him for the State, Mr. Santana was serving a lengthy sentence for a federal drug trafficking conviction. *United States v. Carmelo Martinez*, 4:89-cr-00012 (S.D. Tex. Dec. 17, 1998). Shortly before implicating Mr. Cruz-Garcia, Mr. Santana sent a letter to a federal judge asserting that he suffered from severe mental illness. ECF No. 18-12. Mr. Santana told the federal court: "I have a plethora of medical records that illustrate my undeniable incompetence to accept a guilty plea." *Id.* He claimed that he suffered from "continued incompetence" and stated that an "inmate assistant" would file a motion to set aside his guilty plea because "in light of my illness, I would have never been able to file such a motion." *Id.* Mr. Santana's counsel during his federal criminal proceedings, J.C. Castillo,

had earlier requested that the court conduct a competency evaluation, which the court granted. ECF 18-13, -14. The State did not disclose Mr. Santana's history of mental health issues or any of his mental health records.

Mr. Cruz-Garcia requests discovery concerning the extent and duration of Mr. Santana's mental illness, which the State failed to disclose at trial. Specifically, Mr. Cruz-Garcia seeks Mr. Santana's mental health records from the Federal Bureau of Prisons and the Harris County Sherriff's Office, as well as the competency evaluation of Mr. Santana that occurred at the time of his federal sentencing. Mr. Cruz-Garcia also requests discovery from the HCDAO relating to the State failure to disclose Mr. Santana's mental illness. There is good cause to order this discovery. In his letter, Mr. Santana emphasized that records exist which "illustrate" his "undeniable incompetence." ECF No. 18-12. The contents of those records will assist the Court in assessing the full scope of the State's *Brady* violation in failing to disclose Mr. Santana's mental illness.

### c. The State's deal with Mr. Santana.

In the instant case, Mr. Santana admitted to helping kidnap and murder a six-year old child. Mr. Santana also claimed to have helped Mr. Cruz-Garcia torture Saul Flores to death in 1989. The State solicited testimony from Mr. Santana at Mr. Cruz-Garcia's trial that he had no deal with the State and suggested that Mr. Santana was exposing himself to serious criminal liability by testifying. 20 RR 165–66, 173–74; 21 RR 12; 25 RR 95–96. At the trial of Mr. Cruz-Garcia's co-defendant, Rogelio Aviles-Barasso, the State went even further, and called Mr. Santana's attorney, Ray Castro,

11

as a fact witness to testify concerning his communications with Mr. Santana regarding the implications of testifying without a deal.[5] ECF No. 43-1.

Yet, once the trials of Mr. Cruz-Garcia and Mr. Aviles-Barasso concluded, Mr. Santana was not charged with any crime in connection with the kidnapping and murder of Angelo Garcia or the murder of Saul Flores. The State later claimed that the Harris County District Attorneys' Office appellate division concluded that Mr. Santana, despite his self-inculpatory testimony, had not committed a crime. ECF No. 18-80. There are two problems with the State's argument.

First, the trial court in Mr. Cruz-Garcia's case soundly rejected it when it held that Mr. Santana had taken multiple affirmative steps in support of a criminal conspiracy, that he had never attempted to abandon the conspiracy, and that there was no evidence he acted because he was threatened or was under duress. 22 RR 3–5. Instead, over the State's objection, it found that Mr. Santana's testimony established as a matter of law that he acted as an accomplice and instructed the jury accordingly. *Id.* Under Texas law, an "as a matter of law" accomplice instruction means that the "evidence clearly shows what the witness could have been . . . charged" with the same offense as the defendant or with a lesser-included offense. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). According to the trial court, the State absolutely could have charged Mr. Santana with, at least, conspiracy to kidnap. 22 RR 4–5. The State's purported reason for not charging Mr. Santana is not a credible explanation, which in turn strongly suggests that Mr. Santana did have an undisclosed deal with the State.

---

[5] By doing so, Mr. Santana's counsel waived attorney-client privilege with respect to his communications with his counsel, as the trial judge recognized during the proceedings. ECF No. 43-1 at 98–99.

The second problem with the State's argument is that, if it were somehow true that the State concluded Mr. Santana had no criminal liability based on his version of events, then the State solicited false testimony from Mr. Santana when they had him testify that he was putting himself in legal jeopardy by testifying without a deal. Either way, the State violated Mr. Cruz-Garcia's due process rights by soliciting false testimony from Mr. Santana. Mr. Cruz-Garcia therefore requests discovery concerning any deal between the State and Mr. Santana, whether explicit or implicit, from both HCDAO and from Mr. Santana's attorney, Ray Castro. Mr. Cruz-Garcia likewise requests the State's legal analysis that purportedly led it to not charge Mr. Santana with any crime, despite his admitted participation in two murders and the contrary holding from the trial court. There is good cause to order this discovery because it will assist the Court in determining what the State failed to disclose in terms of any understanding the State reached with Mr. Santana concerning his testimony, and whether the State was truthful in its representations as to why Mr. Santana was not charged with any offense concerning his participation in murders of Angelo Garcia and Saul Flores.

### d.  The State's assistance to Angelita Rodriguez.

Angelita Rodriguez, Mr. Cruz-Garcia's ex-wife, was a State witness at trial. Despite having repeatedly denied that she knew anything about the victim's disappearance during the original investigation, she testified at trial that Mr. Cruz-Garcia had confessed to her. 20 RR 107.

Ms. Rodriguez benefited substantially from her testimony against Mr. Cruz-Garcia.  At the time of trial, Angelita Rodriguez was a deportable alien pursuant to 8 U.S. C. § 1227(a)(2)(B)(i). Indeed, on October 29, 1993, Ms. Rodriguez was sentenced to 2 years' confinement by the 337th District Court in Harris County after being convicted of possession of cocaine, a felony offense. ECF No. 43-2. Nevertheless, Ms. Rodriguez was not deported. Subsequent to her testimony for the

prosecution in Mr. Cruz-Garcia's trial, the lead prosecutor sent a letter in support of Ms. Rodriguez's adjustment of her immigration status to her attorney, J.C. Castillo,[6] so that he could advise the United States immigration authorities of her cooperation. ECF No. 38-2. She was eventually granted United States citizenship even though she had a substantial criminal record.

Mr. Cruz-Garcia seeks documentary discovery from HCDAO concerning whether Ms. Rodriguez requested, and whether the State provided, a deal pursuant to which she would receive immigration, or other, assistance in exchange for her testimony against Mr. Cruz-Garcia. Mr. Cruz-Garcia also seeks documentary discovery from the Immigration and Naturalization Services ("INS") to determine how Ms. Rodriguez, as a deportable alien with a criminal record, was allowed to obtain United States citizenship and what role HCDAO's letter played in that process. There is good cause to order this discovery any undisclosed deal, or even a discussion of a possible death, with Ms. Rodriguez would further support Mr. Cruz-Garcia's *Brady* claim.

### e. The State's alternative theories of the crime.

Materials obtained from the Houston Police Department ("HPD") repeatedly reference a "second theory" of the crime. ECF No. 18-16, -17, -18. The specifics of the theory, however, are redacted and were never disclosed by the State. *Id.* The State's witnesses testified that there were not alternative theories of the crime. 19 RR 79. Mr. Cruz-Garcia seeks documentary discovery from HCDAO and from HPD concerning what the State's undisclosed "second theory" consisted of. There is good cause to order this discovery because it is necessary for the Court to assess the full scope of the State's *Brady* violation in failing to disclose the "second theory."

---

[6] This is the same J.C. Castillo who represented Mr. Santana in his federal criminal case.

14

### f.   The murder of Saul Flores.

During the punishment phase, Mr. Santana, as well as another witness named Johnny Lopez,

implicated Mr. Cruz-Garcia in the 1989 murder of a man named Saul Flores. ECF No. 73 at 206–

208. The testimony of both witnesses was contradicted by the physical evidence, as well as by the

testimony of Mr. Flores' ex-girlfriend, who supposedly sparked the dispute that led to his murder.

*Id.*

Only a limited number of police reports concerning the Flores murder were disclosed pre-

trial, raising the question of whether other items, including the detectives' notes, remain

undisclosed. Mr. Cruz-Garcia, through his counsel, has sought these documents from HPD. *See* ECF

Nos. 43-3, 43-4, 34-5, 43-6. HPD, however, has refused to disclose them, on the ground its

investigation of the Flores murder remains ongoing. *Id.* Mr. Cruz-Garcia seeks these items through

documentary discovery from HPD and HCDAO. There is good cause to order this discovery because

Mr. Cruz-Garcia has already put forward substantial evidence that the State's witnesses testified

falsely concerning the Flores murder. *See* ECF No. 73 at 155–57, 206–08. The discovery is necessary

to assess the full scope of the State's knowledge of that falsity and of the State's *Brady* violation in

failing to disclose the withheld documents concerning the Flores murder.

### g.   Mr. Cruz-Garcia's assistance to United States law enforcement agencies.

Mr. Cruz-Garcia provided substantial assistance to federal law enforcement agencies

including the INS, FBI, and DEA over many years. ECF No. 18-46; ECF No. 18-85 at 15. The State,

however, has never disclosed any information concerning that assistance.

Mr. Cruz-Garcia seeks documentary discovery from the federal law enforcement agencies he

assisted concerning the full extent to which his work benefitted the United States government,

information his trial counsel sought just prior to trial but were denied access to. Mr. Cruz-Garcia also seeks the deposition of Wilson Pellot, a retired INS agent who worked closely with Mr. Cruz-Garcia. Mr. Pellot has informed the Federal Public Defender's office that his is willing to sit for a deposition, but that agency regulations require that he receive a subpoena first. The discovery is necessary for the Court to assess the full prejudice resulting from the State's failure to fully disclose Mr. Cruz-Garcia's assistance to federal law enforcement.

### h. Grand jury testimony.

Mr. Cruz-Garcia's trial counsel were provided with the opportunity to review the grand jury testimony of all the grand jury witnesses who testified at trial. 2 CR 350–356. The grand jury testimony, however, has not been provided to Mr. Cruz-Garcia's post-conviction counsel. Mr. Cruz-Garcia respectfully requests an opportunity to review the testimony. There is good cause to order this discovery because the materials were previously made available to trial counsel and may further support Mr. Cruz-Garcia's false testimony and *Brady* claims.

### E. The Court should authorize the following specific discovery requests regarding Claims Five and Six.

#### 1. Document Requests.

Mr. Cruz-Garcia respectfully request that the Court permit Mr. Cruz-Garcia to issue subpoenas with the following document requests to the identified agencies and individuals:

### a. Harris County District Attorney's Office.

Mr. Cruz-Garcia respectfully requests a document subpoena to the Harris County District Attorney's Office for documents relating to:

    i.    the storage and testing of the DNA evidence in the case;

16

      ii.     the State's legal analysis concluding that Mr. Santana could not be charged with a crime in connection with the murders of Angelo Garcia and Saul Flores;

     iii.     Mr. Santana and any consideration he received in exchange for his testimony, including any communication to him or his attorney of or about the appellate division's conclusion that Mr. Santana could not be charged in connection with Angelo's death;

     iv.     Mr. Santana's mental health;

     v.     Johnny Lopez and any consideration he received in exchange for his testimony;

     vi.     the murder of Saul Flores; and

     vii.     the grand jury testimony of any witnesses who testified at trial.

### b. Houston Police Department.

Mr. Cruz-Garcia respectfully requests a document subpoena to the Houston Police Department for:

     i.     all undisclosed documents relating to the murder of Saul Flores; and

     ii.     unredacted copies of all undisclosed documents concerning the murder of Angelo Garcia, including documents concerning alternative theories of the crime.

### c. Federal Bureau of Prisons.

Mr. Cruz-Garcia respectfully requests a document subpoena to the Federal Bureau of Prisons for the following documents:

     i.     Mental health and medical records from Mr. Santana's period of incarceration with the BOP;

     ii.     if Mr. Santana was housed in a non-BOP facility pre-trial, mental health and medical records from that facility;

     iii.     Mr. Santana's BOP disciplinary records;

     iv.     Mr. Santana's BOP classification records and designations; and

     v.     Mr. Santana's BOP educations records.

### d.   Harris County Sheriff's Office.

Mr. Cruz-Garcia respectfully requests a document subpoena to the Harris County Sheriff's Office for all mental health and medical records from Mr. Santana's time in state custody pending his testimony in Mr. Cruz-Garcia's and Mr. Aviles-Baroso's cases.

### e.   Mr. Santana's Attorneys.

Mr. Cruz-Garcia respectfully requests a document subpoena to Ray Castro for documents relating to his communications with HCDAO concerning Mr. Santana's testimony and documents relating to Mr. Santana's mental health.

Mr. Cruz-Garcia also respectfully requests a document subpoena to J.C. Castillo, who represented both Mr. Santana and Angelita Rodriguez, for documents concerning Mr. Santana's mental health, including documents concerning his court-ordered psychological evaluation, as well as documents relating to Angelita Rodriguez's cooperation with the State during Mr. Cruz-Garcia's trial and the immigration assistance she received from the State.

### f.   Orchid Cellmark.

Mr. Cruz-Garcia respectfully requests a document subpoena to Orchid Cellmark, including any corporate successors,[7] for documents relating to the testing of the DNA evidence in this case.

### g.   United States District Court for the Southern District of Texas.

Mr. Cruz-Garcia respectfully requests a document subpoena to the United States District Court for the Southern District of Texas for access to any sealed filings in Mr. Santana's federal case

---

[7] In 2011, Orchid Cellmark was acquired by Laboratory Corporation of America Holdings, commonly                                     known                                     as                                     "LabCorp." (https://www.businesswire.com/news/home/20111216005351/en/LabCorp-Successfully-Completes-Acquisition-Orchid-Cellmark).

18

pertaining to Mr. Santana's attorney's competency motion and the court-ordered mental health examination.

### h.   Federal Law Enforcement Agencies.

Mr. Cruz-Garcia respectfully requests document subpoenas to the Department of Justice, the Department of Homeland Security, the Federal Bureau of Investigation, the Drug Enforcement Agency, and the Immigration and Naturalization Service, including any successor agencies thereto, for unredacted documents relating to Mr. Cruz-Garcia and his work in support of federal law enforcement agencies, including the Federal Bureau of Investigation, the Drug Enforcement Administration, and the Immigration and Naturalization Service. Mr. Cruz-Garcia also requests a document subpoena to the Department of Homeland Security for Angelita Rodriguez's immigration records.

### 2.   The Court should authorize the following depositions regarding Claims Five and Six.

Mr. Cruz-Garcia respectfully requests depositions of the following individuals: Wilson Pellot, Ray Castro, J.C. Castillo, Natalie Tise, and Justin Wood.

As discussed above, Mr. Pellot is a retired INS agent who worked closely with Mr. Cruz-Garcia and has indicated he is willing to be deposed but requires a subpoena due to agency regulations. Mr. Castro was Mr. Santana's counsel for purposes of negotiating with HCDAO regarding Mr. Santana's testimony against Mr. Cruz-Garcia. Mr. Castillo was Mr. Santana's attorney when he underwent a psychiatric evaluation in connection with his federal conviction, and was also Ms. Rodriguez's attorney for purposes of negotiating with HCDAO concerning her testimony against Mr. Cruz-Garcia. Finally, Mr. Cruz-Garcia requests depositions of Natalie Tise and Justin Wood, the State's prosecutors at Mr. Cruz-Garcia's trial, to learn what they communicated to Mr. Santana and Ms. Rodriguez, and their respective counsel, concerning their testimony against Mr.

Cruz-Garcia. Mr. Cruz-Garcia also seeks to depose the prosecutors concerning their purported legal determination that Mr. Santana could not be charged with a crime, despite admitting his participation in the kidnapping and murder of Angelo Garcia and the murder of Saul Flores.

## V.  CONCLUSION

For the foregoing reasons, Mr. Cruz-Garcia respectfully requests that the Court grant his Motion for Discovery.


Respectfully submitted,

DATE: July 12, 2022

JASON D. HAWKINS
Federal Public Defender

*/s/ David C. Currie*
Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
David C. Currie (TX 24084240)
Naomi Fenwick (TX 24107764)
Assistant Federal Public Defenders

The Office of Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org
david_currie@fd.org
naomi_fenwick@fd.org

*Counsel for Petitioner*

20

## CERTIFICATE OF CONFERENCE

David Currie, counsel for Mr. Cruz-Garcia, has conferred with opposing counsel, Cara Hanna of the Texas State Attorney's General office, and Ms. Hanna is opposed to the relief sought in this motion.

/s/ David Currie
Attorney for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opposed Motion for Evidentiary Hearing has been served by CM/ECF upon counsel for Respondent on July 12, 2022:

Cara Hanna
Postconviction Litigation Division
Office of the Attorney General
P.O. Box 12548
Capitol Station
Austin, TX 78711

/s/ David C. Currie
Assistant Federal Defender