IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OBEL CRUZ-GARCIA, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL NO. 4:17-cv-03621 |
| | § | (Death Penalty Case) |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| *Respondent*. | § | |

## RESPONDENT LUMPKIN'S RESPONSE IN OPPOSITION TO MOTIONS FOR DISCOVERY AND EVIDENTIARY HEARING

This is a federal habeas proceeding filed pursuant to 28 U.S.C. § 2254 by Petitioner Obel Cruz-Garcia, a Texas state inmate under a sentence of death. Respondent Director Bobby Lumpkin ("the Director") is Cruz-Garcia's custodian. Cruz-Garcia presently seeks federal habeas relief, and now moves for discovery and an evidentiary hearing. The Director opposes both motions.

## PROCEDURAL HISTORY

Cruz-Garcia was convicted and sentenced to death in the 337th District Court of Harris County, judgment entered on July 22, 2013. 3 CR 50. The Texas Court of Criminal Appeals (CCA) affirmed his conviction on direct appeal, *Cruz-Garcia v. State*, No. AP-77,025, 2015 WL 6528727, at *1–30 (Tex. Crim. App. Oct. 28, 2015); and denied state habeas relief, *Ex parte Cruz-Garcia*, Nos. WR 85,051-02, WR-85,051-03, 2017 WL 4947132, at *1–2 (Tex. Crim. App. Nov. 1, 2017).

Cruz-Garcia filed his initial federal habeas petition on November 1, 2018, ECF No. 12; an amended petition on July 1, 2019, ECF No. 18; and a supporting memorandum on July 13, 2020, ECF No. 38. The Director filed a Motion for Summary Judgment (MSJ) on September 30, 2019, ECF No. 25; and his Answer and MSJ on December 11, 2020, ECF No. 47. On January 29, 2021, the Court granted Cruz-

Garcia's motion to stay and abate federal habeas proceedings while he returned to the state court to file a subsequent habeas application. ECF No. 46, 59. Following dismissal as an abuse of the writ, *Ex parte Cruz-Garcia,* No. WR-85,051-05, 2021 WL 4571730, at *1 (Tex. Crim. App. Oct. 6, 2021), Cruz-Garcia filed his Second Amended Petition and the instant motions for an evidentiary hearing and discovery. ECF No. 73, 74, 75.

### STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Cruz-Garcia seeks discovery and an evidentiary hearing to develop Claim One (A) alleging juror misconduct. *See* ECF No. 73 at 22–32; ECF No. 74; ECF No. 75 at 6, 8–9. He also seeks discovery to develop Claim Five, alleging the State's knowing presentation of false and material testimony, and Claim Six, alleging the State's failure to disclose material evidence, *see* ECF No. 73 at 190–225; ECF No. 75 at 7–20. This Court "may, for good cause, authorize a party to conduct discovery." Rule (6)(a), 28 U.S.C. foll. § 2254. Good cause may be found when a petitioner "establishes a prima facie claim for relief." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (quoting *Harris v. Nelson*, 394 U.S. 286, 290 (1969)). "In order to establish good cause, the petitioner must demonstrate that 'a factual dispute, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing.'" *Lave v. Dretke*, 416 F.3d 372, 381 (5th Cir. 2005) (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)); *accord Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997). But "a petitioner's factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery." *Murphy*, 205 F.3d at 814. "Simply put, Rule 6 does not authorize fishing expeditions." *Id.* at 814.

This Court's discretion to order an evidentiary hearing under 28 U.S.C. § 2254 is constrained by the bars imposed within that section. *See Schriro v. Landrigan*, 550

U.S. 465, 468 (2007). A district court abuses its discretion in ordering an evidentiary hearing that is barred by § 2254(e)(2). *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718, 1738–39 (2022). Likewise, a court errs in ordering an evidentiary hearing to develop evidence that is barred from review under § 2254(d). *Shoop v. Twyford*, 142 S. Ct. 2037, 2046 (2022).

## I.     The Court Should Deny Discovery and an Evidentiary Hearing on Claim One(A).

Cruz-Garcia seeks discovery and an evidentiary hearing to depose three jurors regarding his claim that he was denied a fair and impartial trial, in violation of the Sixth, Eighth, and Fourteenth Amendments, because his jury was exposed to an external influence when the jury foreperson read Bible passages during the penalty phase deliberations. ECF No. 74, at 1; ECF No. 75 at 4–8. But he fails to show good cause for discovery or that he meets an exception under § 2254 (d) or (e). Deference is owed to the state court findings on this issue and additional evidentiary development is barred. *See Cullen v. Pinholster,* 563 U.S. 170 (2011) (holding "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.")

Cruz-Garcia first complains that, although he raised a juror misconduct claim in a motion for new trial, on direct appeal, and on state habeas, the state court failed to adjudicate the merits of his federal constitutional claim. ECF No. 73, at 29–31; ECF No. 75 at 6. Therefore, the Court can review the claim de novo. He is incorrect and AEDPA deference must apply.

In his brief on direct appeal, Cruz-Garcia relied on both state and federal law to support his claim that the trial court erred in denying his motion for a new trial due to alleged jury misconduct. Appellant's Brief at 107–17. The CCA held that the Bible does not constitute an outside influence—"a source outside of the jury room and other than from jurors themselves." *Cruz-Garcia v. State,* 2015 WL 6528727 at *28

(citing *McQuarrie v. State,* 380 S.W.3d 145, 154 (Tex. Crim. App. 2012)). The CCA recognized that "influences or information that are unrelated to trial issues" do not fall within the boundaries of "outside influence." *Id.* (citing *Colyer v. State*, 428 S.W.3d 117, 127 (Tex. Crim. App. 2014)). The CCA acknowledged that, if a jury considers evidence not proffered at trial, "a defendant's *right to a fair and impartial jury* may be compromised", but only when the outside evidence relates directly to a question of fact determined by the jury. *Id.* at *29 (emphasis added). In this case, the Bible did not relate directly to a question of fact before the jury. *Id.* In so concluding, the CCA relied upon Fourth Circuit precedent finding no Sixth Amendment violation from the reading of a Bible verse, *see id.* at *29 n.107 (citing *Robinson v. Polk,* 438 F.3d 350 (4th Cir. 2006)); but acknowledged, without naming, Fifth Circuit precedent holding that the Bible could be an external influence, but on a factual pattern distinguishable from this case, *id.* at *29 n. 108.

The CCA clearly addressed the constitutionality of the Bible reading in concluding the trial court did not abuse its discretion. And in denying relief on state habeas, the CCA adopted findings that the claim was raised and rejected on direct appeal, and, *alternatively*, "as held by the [CCA] on direct appeal, the reference to the Bible during jury deliberations did not constitute an outside influence. . . . The applicant fails to show *that he was denied a fair trial or that his right to due process was violated*." V SHCR 1079 (#9 and 10) (emphasis added). AEDPA thus applies to CCA's denial of the constitutional claim.

Alternatively, Cruz-Garcia argues that, if the CCA did reach the merits of his claim, that decision is contrary to clearly established federal law, *see* § 2254(d)(1), and thus evidentiary development is not *Pinholster* barred. ECF No. 75 at 6. But the CCA's conclusion that the reading of the Bible in this case was not an external influence on the jury was not contrary to any cited Supreme Court precedent. *See*

ECF No. 73 at 31 (citing *Parker v. Gladden,* 385 U.S. 363 (1966), *Turner v. Louisiana,* 379 U.S. 466 (1965), and *Remmer v. United States,* 347 U.S. 227 (1954)). Indeed, none of these cases involved a Bible. And the CCA specifically acknowledged Fifth Circuit precedent holding that "the Bible can be an external influence on the jury, but the facts of that case distinguish it from this one." *Cruz-Garcia,* 2015 WL 6528727 at \*29 n.108.

The court was clearly referring to *Oliver v. Quarterman,* 541 F.3d 329, 340 (5th Cir. 2008), as cited in Cruz-Garcia's Appellant's Brief, at 116-17. The CCA's distinction on facts is consistent with *Oliver,* where the court indicated that it was "part[ing] company with the Fourth Circuit," but noting the Fourth Circuit cases "are distinguishable in that they all involved a juror reading general Biblical statements, as opposed to a command that directly tracked the specific facts of those cases," as occurred in *Oliver.* 541 F.3d at 339; *see also Robinson,* 438 F.3d at 364-66. "This analysis persuades us that when a juror brings a Bible into the deliberations and points out to her fellow jurors specific passages that describe the very facts at issue in the case, the juror has crossed an important line." *Oliver,* 541 F.3d at 339. The court affirmed its holding was limited to the facts of that case when it declined to address "whether a juror must leave his or her moral values at the door or even whether a juror may consult the Bible for his or her own personal inspiration during the deliberation process[, or] whether jurors must forget that, generally, the Bible includes the concept of an 'eye for an eye.'" *Id.* at 340. Thus, the CCA's distinction contravened no clearly established federal precedent, and Cruz-Garcia cannot avoid *Pinholster*'s prohibition against evidentiary development.

Finally, Cruz-Garcia argues that § 2254(e)(2) does not bar factual development because he is not at fault for failing to develop this evidence in state court—he sought similar evidentiary development but was limited to affidavits from two of the jurors

in question. ECF No. 75 at 6, 8; ECF No. 74 at 4–5. He now alleges good cause to permit discovery and depositions of three jurors, ECF No. 75 at 8–9, as well as an evidentiary hearing, ECF No. 74 at 4.

But Cruz-Garcia was not prohibited from developing the record in state court, in satisfaction of § 2254(e)(2); indeed, he received far more evidentiary development than allowed. The authority cited by Cruz-Garcia supports an evidentiary hearing only if a "credible allegation" of external influence exists. ECF 74 at 5 (citing *Barnes v. Joyner,* 751 F.3d 229, 242 (4th Cir. 2014)). But, because the CCA ruled that the Bible was not an outside influence, the court correctly found no abuse of discretion in the trial court's denial of an evidentiary hearing. *Cruz-Garcia,* 2015 WL 6528727 at *29.

Substantial evidentiary development was nevertheless permitted. On state habeas review, the presiding judge from trial, the Honorable Renee McGee, adopted the State's extensive findings of fact and conclusions of law, specifically addressing this issue and recounting the evidence developed at the motion for new trial as well as during the state habeas proceeding. *See* V SHCR 1059–66, 1068–70. The record from the motion for new trial included affidavits from trial counsel and the defense investigator, as well as the three jurors Cruz-Garcia now seeks to question. *See* V SHCR 1059–63; 3 CR 538-649. Trial counsel provided additional affidavits during state habeas proceedings, as did Juror Bowman. II SHCR 355–56; IV SHCR 948; V SHRC 954. Finally, the trial court noted on the record her disagreement with portions of Juror Bowman's 2013 affidavit relating to deliberations and their ex parte conversation, 19 RR 29–30; V SHCR 1062; and also made credibility determinations

on state habeas, finding the affidavit of Juror Clinger more persuasive than Juror Bowman's 2015 habeas affidavit. V SHCR 1065.[1]

This comprehensive record developed on the motion for new trial, as well as during the state habeas proceeding, was more than sufficient to rule on this claim. The factual findings from the state habeas proceeding were adopted by the CCA. *Ex parte Cruz-Garcia*, 2017 WL 4947132, at *2 ("Based upon the trial court's findings and conclusions and our own review, we deny relief.").[2] It is unclear what else remains to be developed nearly ten years after trial.[3]

---

[1]     Deference is owed to the credibility determination of the trial court judge who presided over trial. *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir.2002) ("This Court defers to the trier of fact in resolving conflicts requiring credibility determinations."). Her personal knowledge of this trial and the ex parte hearing with Juror Bowman are invaluable to the resolution of this claim, and are entitled to deference. For this reason, Cruz-Garcia's efforts to discredit Judge Magee because she resolved this case within the remains of her term, fall short. ECF No. 75 at 4–5. Indeed, trial counsel wanted to get his affidavit "before the trial Judge who actually tried this case, before she [left] the bench." IV SHCR 943.

[2]     Cruz-Garcia repeatedly asserts that the trial court and CCA refused to make any findings of fact. *See* ECF No. 74 at 3-4. This is not true, as demonstrated. The trial court accepted affidavits in the hearing on the motion for a new trial, *see* 29 RR 26–33, and made extensive findings of fact and conclusions of law on state habeas which were adopted by the CCA.

[3]     Even if the Court believes the Bible was an outside influence, the Court must still determine whether such error was harmless. *Oliver,* 541 F.3d at 340-44; *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (habeas petitioners are not entitled to relief unless constitutional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." ). In *Oliver,* the Fifth Circuit concluded the state court finding that the Bible did not influence the jury had "fair support in the record" because (1) the record displayed contradictory evidence regarding when the jury consulted the Bible; (2) several jurors testified that the Bible was not the focus of discussions; (3) the jury was instructed not to discuss any matter not in evidence before them and that they are bound to receive the law from the court; and (4) the jurors brought the Bibles into the room by themselves. 541 F.3d at 342-43. Because Oliver could not rebut the state court's finding, he could not prove harm under *Brecht. Id.* at 344. The record demonstrates that these four factors similarly exist in this case. *See* 3 CR 522 (Jury instructions on evidence). Therefore, the record is sufficient for this Court to conclude any alleged error was harmless.

The fact that the trial court did not take live testimony is of no moment. There is no requirement that the court conduct inquiry into this allegation in any particular manner. Indeed, while the CCA concluded that the trial court erred when it admitted affidavits describing jury deliberations, and thus "any live testimony to that effect would have been inadmissible under Rule 606(b)", the court alternatively held that, even if the affidavits were admissible, "it was within the trial court's discretion to rule on a motion for new trial on affidavits without oral testimony." *Cruz-Garcia,* 2015 WL 6528727 at *29 (citing *Holden v. State,* 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)). And Texas Code of Criminal Procedure article 11.071, § 9(a) explicitly permits trial judges to resolve, on state habeas, controverted, previously unresolved material facts through affidavits. *See In re Harris*, 491 S.W.3d 332, 335–36 (Tex. Crim. App. 2016) ("Article 11.071 makes the habeas judge 'the collector of the evidence, the organizer of the materials, the decisionmaker as to what live testimony may be necessary . . . .' Hence, our precedent allots the trial judge a measure of discretion in managing the process of fact-finding in a capital writ proceeding.") (citing *Ex parte Simpson*, 136 S.W.3d 660, 668 (Tex. Crim. App. 2004)). The state courts' rulings are consistent with Fifth Circuit precedent. *Clark v. Johnson,* 202 F.3d 760, 766 (5th Cir. 2000) (recognizing sufficiency of "a paper hearing . . . especially where, as here, the trial court and the state habeas court were one in the same"). Thus, the trial court's refusal to hold a live hearing did not deprive Cruz-Garcia of the ability to develop his claim in state court. He fails to satisfy § 2254(e)(2).

Despite the fact he is at fault for failing to develop additional facts during state court proceedings, Cruz-Garcia's argument ignores entirely § 2254(e)(2)(B) which requires—in addition to proof of diligence—that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant *guilty of the*

*underlying offense.*" (emphasis added). The claim he seeks to develop addresses alleged error in the punishment phase of trial but would not establish his innocence of the underlying offense. Therefore, he cannot escape § 2254(e)(2)'s prohibition against evidentiary development.

This Court should deny Cruz-Garcia's request for both discovery and an evidentiary hearing as they are foreclosed by AEDPA, and not necessary for the resolution of his claims. *See Cole v. Lumpkin,* No. 4:17-cv-940, 2021 WL 4067212, at *35 (S.D. Tex. Sept. 7, 2021) (court able to resolve claims without discovery or evidentiary hearing where record was "voluminous and detailed").

## II.   The Court Should Deny Discovery on Claims Five and Six.

In Claim Five, Cruz-Garcia alleges that the state relied upon false and material testimony, pursuant to *Napue v. Illinois,* 360 U.S. 264 (1959). ECF No. 73 at 190–213. In Claim Six, he alleges the State withheld material exculpatory, impeachment, and mitigating evidence in violation of *Brady v. Maryland,* 37 U.S. 83 (1963). ECF No. 73 at 214–25. These claims were unexhausted in his first state habeas application and the Director asserted this procedural bar in his first Answer and MSJ. ECF No. 47 at 60–67, 87–92. Cruz-Garcia raised them in his second subsequent state habeas application, but the CCA concluded that he "failed to satisfy the requirements of Article 11.071, § 5(a)" and "dismiss[ed] the application as an abuse of the writ *without considering the merits of the claims.*" *Ex parte Cruz-Garcia,* 2021 WL 4571730, at *1 (emphasis added).

Cruz-Garcia seeks discovery on eight topics: 1) Documentary discovery from the Harris County District Attorney's Office (HCDAO) and Orchid Cellmark on the dates the State knew or should have known the DNA evidence from his trial was incorrect; 2) mental health records of Carmelo Santana from the Federal Bureau of Prisons (FBP), the Harris County Sheriff's Office, a competency evaluation ordered

by the United States District Court for the Southern District of Texas, and "discovery from the HCDAO relating to the State's failure to disclose [Santana's] mental illness"; 3) discovery from HCDAO and Santana's attorney, Ray Castro, concerning a purported deal; 4) discovery from HCDAO and Immigration and Naturalization Services (INS) concerning a purported deal between the State and Angelita Rodriguez to avoid deportation; 5) discovery from the Houston Police Department (HPD) and HCDAO regarding a purported "second theory" of the crime; 6) discovery from HPD and HCDAO regarding the murder of Saul Flores; 7) discovery from INS, FBI, and DEA, and a subpoena to depose retired INS agent Wilson Pellot regarding Cruz-Garcia's assistance to these agencies; and 8) grand jury testimony of all witnesses who testified at trial. ECF No. 75 at 9–16.

This Court must deny this overreaching request for discovery. First, the requested Discovery is not in the Director's possession. Second, Cruz-Garcia cannot show good cause. His claims are procedurally defaulted, and he cannot overcome this bar or the prohibition against evidentiary development imposed by § 2254(e)(2). Finally, he fails to demonstrate a prima facie claim for relief. *Murphy*, 205 F.3d at 814. The requested discovery will not prove his innocence or prove he is entitled to relief on any claim. His request should be denied.

### A.   The Director cannot fulfill the requested discovery.

Cruz-Garcia makes specific discovery requests from HCDAO, HPD, FBP, Harris County Sheriff's Office, attorneys Ray Castro and J.C. Castillo, Orchid Cellmark, the U.S. District Court for the Southern District, the FBI, DEA, and INS. ECF No. 75 at 16-19. However, the information he seeks is not in the Director's possession. None of the cited entities are parties to this suit against the Director of TDCJ and are thus independent entities from Respondent and his attorneys. *See Fierro v. Johnson*, 197 F.3d 147, 155–56 (5th Cir. 1999) ("The attorneys for the Texas

Department of Corrections in a federal habeas case do not act as prosecutors of the crime investigated by law enforcement officers[] . . . [and] neither work with the police in a common enterprise, nor are they in the business of prosecuting crime."); *Lave v. Davis,* 655 F. App'x 255, 259 (5th Cir. 2016) (rejecting argument that attorney for Director committed fraud on the court by failing to investigate suppression claim on federal habeas or comb the prosecutor's file for exculpatory evidence).

The Director does not have possession, care, custody, or control of the files for any of the cited entities. Thus, the Director does not have the ability to obtain the requested documents on demand. "[A] party cannot be required to permit inspection of documents or things that it does not have and does not control." 8B Charles Alan Wright et al., *Federal Practice and Procedure* § 2210 (3d ed. 2015). Accordingly, the requested discovery must be denied because it is directed at the wrong entity.

Should the Court find discovery warranted, the Court should interpret Cruz-Garcia's discovery requests for documents as requests for third-party subpoenas under Rule 45 of the Federal Rules of Civil Procedure. That way, should those persons or entities believe that anything requested is privileged, protected, or is unduly burdensome to produce, they will be permitted to make such arguments—which the Director cannot do because he does not have possession, care, custody, or control of such files, nor does he hold the privileges that may apply—in the form of a protective order or motion to quash.

### B. Cruz-Garcia fails to demonstrate good cause for discovery because his claims are procedurally barred.

A petitioner cannot show good cause for discovery if a federal court cannot reach the merits of his claims because they are procedurally defaulted. *See Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009); *Guidry v. Davis,* No. H-13-1885, 2020 WL 9260154, at *43 (S.D. Tex. Apr. 13, 2020) (Citing *Rucker,* "a petitioner cannot show good cause for discovery on a claim in federal court if procedural impediments

11

preclude considering the merits of that claim."). Claims Five and Six are procedurally barred.

Cruz-Garcia admits his claims were previously unexhausted, but now contends that the CCA's dismissal of Claim Five in his subsequent state application amounts to a decision on the merits, subject to de novo review under § 2254(d), because it was dismissed pursuant to 11.071 § 5(a)(2). ECF No. 75 at 7. But the CCA dismissed all claims under Section 5(a) only, and specifically held that it did not consider the merits of any claim. This explicit statement on the merits should be sufficient to rebut the presumption that the claims were adjudicated on the merits. *See Rocha v. Thaler,* 626 F.3d 815, 823-24 (5th Cir. 2010) ("A state court does not undermine the independent state-law character of its procedural-default doctrine by using a federal standard to determine whether an otherwise defaulted successive habeas application should be permitted to bypass a procedural bar."); *id.* at 825-26 (In concluding petitioner did not satisfy § 5(a)(3), "the CCA did not decide the merits of Rocha's *Wiggins* claim when it concluded that Rocha is not actually innocent of the death penalty.") Therefore, this Court may not allow evidentiary development unless Cruz-Garcia can prove cause and prejudice to overcome the default and meets an exception to § 2254(e)(2). *Martinez Ramirez*, 142 S. Ct. at 1738–39. As argued in the Director's Answer and MSJ, ECF No. 47 at 60–67, 87–92, and will be argued again in the Director's supplement to be filed on November 1, 2022, *see* ECF No. 83, Cruz-Garcia fails to make this showing on Claim Five or Six.

Furthermore, where, as here, an applicant fails to develop the factual basis of his claim in state court, he must demonstrate both that he was diligent in his efforts to develop the evidence, *see* § 2254 (e)(2)(A)(ii), *and*, by clear and convincing evidence, no reasonable factfinder would have found him "guilty of the underlying offense." Section 2254(e)(2)(B). This innocence requirement necessarily forecloses discovery on

any punishment phase issue. *See Martinez Ramirez,* 142 S. Ct. at 1728 (In all but the "extraordinary" circumstances allowed by § 2254(e)(2)(A) and (B), including a demonstration that new evidence "will establish his innocence 'by clear and convincing evidence,' . . . AEDPA 'bars evidentiary hearings in federal habeas proceedings[.]'") (citing *McQuiggin v. Perkins,* 569 U.S. 383, 395–96 (2013)).[4] Therefore, the requested discovery related to the murder of Saul Flores and Cruz-Garcia's assistance to any United States law enforcement agencies,[5] ECF No. 75 at 15–19, must be denied. It has no bearing on his guilt for the underlying offense and development is not permitted by § 2254(e)(2)(B).

And, as will be discussed below and in the supplemental filing, or has previously been discussed in the Director's Answer and MSJ, Cruz-Garcia fails to demonstrate that the remaining evidence—if it exists—was not previously available through the exercise of reasonable diligence or that it demonstrates his innocence, as required by § 2544(e)(2).

### C.   Cruz-Garcia fails to demonstrate good cause for discovery.

Procedural bar aside, Cruz-Garcia fails to demonstrate good cause for discovery. Cruz-Garcia's expansive request for discovery to ultimately discredit the testimony of two witnesses and prove the State knew of inaccuracies in DNA testing

---

[4]   Since discovery requests "in habeas proceedings normally follow the granting of an evidentiary hearing" this innocence requirement must necessarily extend to discovery. *Cole v. Lumpkin,* 2021 WL 4067212, at *35 (citing Advisory Committee Notes to Rule 6).

[5]   This evidence was surely known and discoverable to Cruz-Garcia. If he was an informant, he would know the agencies and names of his contacts. And if retired INS agent Pellot is willing to be deposed if subpoenaed, trial or appellate counsel could have taken these steps before now. The State is not imputed with the knowledge of any federal agency not acting as an agent of the State or part of the investigative process for this case. *See Avila v. Quarterman,* 560 F.3d 299, 307–10 (5th Cir. 2009). Thus, aside from the FBI—from whom the State did seek information on Cruz-Garcia's informant status but received none, ECF No. 18-80—the State is not imputed with knowledge of agencies not assisting the investigation.

that nevertheless connects him to the crime, is nothing short of a fishing expedition. Cruz-Garcia cannot show that the State intentionally presented false testimony that was reasonably likely to have affected the jury's verdict, *Giglio v. United States,* 405 U.S. 150, 154 (1972); or that there's a reasonable probability of a different result had the State disclosed favorable evidence. *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Thus, he cannot make a prima facie claim for discovery on these claims.

### 1.    DNA

Cruz-Garcia seeks discovery in the form of *when* did the State know the DNA evidence was flawed, and whether the revised testing is "similarly unreliable." ECF No. 75 at 9–10. There is no good cause for this discovery because he cannot show materiality—even after the 2015 retesting, the results still implicate Cruz-Garcia.

While we now know certain DNA testimony from trial was incorrect, Cruz-Garcia cannot demonstrate that it was intentionally false, or that the State was aware of any falsity. *See In re Raby,* 925 F.3d 749, 756–57 (5th Cir. 2019) (petitioner fails to demonstrate State knowingly sponsored false testimony when it failed to correct serologist's misstatements on exculpatory blood typing results where nothing suggests prosecutors were aware of lab deficiencies). The record from the state habeas proceedings demonstrates that retesting was performed in 2015 response to the August 21, 2015 announcement from the Forensic Sciences Commission (FSC) to "Members of the Texas Criminal Justice Community," indicating "concerns involv[ing] the interpretation of DNA results where multiple contributors may be present, commonly referred to as DNA mixture interpretation." IV SHCR 793–95; *see also id.* at 771–72. The retesting of the evidence from Cruz-Garcia's trial was performed by the Houston Forensic Science Center which generated a report on November 3, 2015; this report was submitted with the State's Original Answer to Cruz-Garcia's state habeas petition, filed on February 23, 2016. *See* III SHCR 660

14

n.3, 741–44.[6] There is no reason to believe the HCDAO doubted the veracity of its DNA evidence prior to the FSC's August 2015 announcement. If Cruz-Garcia truly doubts the reliability of this most-recent testing, he can file a motion for retesting pursuant to Texas Code of Criminal Procedure Chapter 64.01 in the state court. To the Director's knowledge, he has not done so.

Discovery is not warranted as the record does not support his accusation that HCDAO was aware of a discrepancy any earlier. Cruz-Garcia's apparent suggestion that the State knew the DNA testing was inaccurate prior to the 2015 retesting is pure speculation and unsupported by the record. *Strickler,* 527 U.S. at 286 ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); *Hughes v. Johnson,* 191 F.3d 607, 629–30 (5th Cir. 1999) (Speculation does not support a *Brady* claim where allegations reflect "he has no idea whether there even was an internal investigation, much less whether such an investigation revealed exculpatory facts.").

Regardless, Cruz-Garcia cannot make a prima facie claim because the alleged false statements are not material—retesting results still implicate him on key evidence. Upon retesting of DNA samples that initially implicated Cruz-Garcia as a contributor: (1) the vaginal swab was found to contain essentially a mixture of DNA that could not be sufficiently separated to determine specific contributors, unlike the previous finding that Cruz-Garcia could not be excluded as a main contributor; and

---

[6]     Given the timing of this retesting—three months following the FSC announcement—it appears wholly unrelated to the allegations addressed at trial and on appeal regarding the storage and alleged contamination of the evidence by the now-defunct HPD Crime Lab. *See* ECF No. 75 at 201–03; *see also Cruz-Garcia v. State,* 2015 WL 6528727, at *10–13 (finding no abuse of discretion in admitting forensic evidence); V SCHR 1045–51, 1076 (rejecting IATC claims involving DNA evidence).

(2) from the cutting from the panties, no conclusions could be made regarding the minor component of this DNA mixture, but the results specifically relating to Cruz-Garcia did not change: he could not be excluded as a *major* contributor. Also unchanged—Cruz-Garcia's DNA profile could not be excluded as a contributor to the DNA profile found on a cigar left at the crime scene, 16 RR 91–92. *See* III SHCR 743 (probability that a randomly chosen unrelated individual would be included as a possible contributor for the cigar, and possible contributor to the major component on the panties cutting, is approximately 1 in 100 quintillion for Southwest Hispanics). As such, the now-inaccurate testimony regarding the vaginal swab and "minor component" testimony are not material statements.

Because the DNA still connects him to this crime, Cruz-Garcia cannot show materiality and thus fails to make a prima facie claim for relief under *Napue*. His requested discovery should be denied.

### 2.    Carmelo "Rudy" Santana

Cruz-Garcia seeks discovery of evidence proving the existence of a deal between the State and Carmelo Santana. However, the record clearly refutes any speculation that the State withheld evidence of a deal or allowed Santana to testify falsely. Regardless Santana was cross-examined on this fact and was impeached by his criminal record. Thus any evidence, if it existed, was not material. This discovery request should be denied.

The record reflects that Santana agreed to talk to an FBI agent, nearly twenty years after the murder and while in federal prison on another charge. FBI Special Agent Ebersole testified that he asked Santana to talk about the crime, but offered him no promises and told him he had no authority to offer a deal; he read Santana his rights, but he did not request an attorney. 20 RR 176–83. Santana spoke to the HCDAO only after confessing to Agent Ebersole. Santana confirmed that he was

16

made no promises by Agent Ebersole or the HCDAO. 20 RR 173–74; 21 RR 11–12.

Santana testified that he never asked for a deal—he willingly agreed to testify as a way of seeking forgiveness from God, the victim's mother, and to let the truth be known. 21 RR 12–14. Santana's change of heart was confirmed by (1) Agent Ebersole's testimony that Santana finally agreed to talk after discussing his sons and being shown pictures of the victim, 20 RR 176–79; ECF No. ex. 18-101; (2) his attorney Ray Castro's testimony in the trial against Cruz-Garcia's co-defendant Rogelio Aviles-Barroso, ECF No. ex. 43-1, at 101–03; and (3) a 2015 email from state prosecutor Natalie Tise asserting there was never a deal, "Rudy testified because Angelo's death was weighing on him, and he decided that he finally wanted to do the right thing." ECF No. ex. 18-80.

This thoroughly developed record does not support Cruz-Garcia's speculation that a deal had to exist, simply because Santana was never charged. Indeed, Santana confessed to the FBI agent *before* speaking to the HCDAO, and every person involved has denied on the record the existence of a deal. Regardless of what the trial court believed Santana *could* be charged with at the time of trial, *see* ECF No. 75, at 12–13, the HCDAO did not believe, upon further review, that the facts supported charging him as a party. ECF No. ex. 18-80. That the State chose not to prosecute on any lesser charge is also of no moment. The decision not to prosecute a cooperating witness who helped solve a twenty-year old cold-case capital murder that resulted in two convictions is not evidence of a secret deal. "[P]rosecutors have broad discretion in deciding which cases to prosecute." *Neal v. State,* 150 S.W.3d 159, 173 (Tex. Crim. App. 2004); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Cruz-Garcia's incessant speculation about the existence of a deal does not support a claim under either *Brady* or *Napue. Murphy,* 205 F.3d at 814 ("Allegations that are merely 'conclusory' or are purely speculative cannot support a *Brady* claim."); *Hughes,*

191 F.3d at 629–30.

Nor could Cruz-Garcia demonstrate prejudice from his allegation. As discussed, DNA still connected Cruz-Garcia to this crime, as did Angelita Rodriguez's testimony. And Santana was cross-examined on the fact that he was never charged with any crime in connection with this case. 21 RR 15–17. Santana and Agent Ebersole were confronted with inconsistencies between his testimony and his FBI interview. 21 RR 37–39, 45–63, 67–77. Santana's credibility was also challenged by his admissions to being a drug dealer, drug-abuser, and convicted felon currently serving the last year of a seventeen-year-seven-month sentence in the federal penitentiary for trafficking drugs. 20 RR 118–23; 21 RR 30–32. The jury still credited his testimony. Cruz-Garcia fails to demonstrate a prima facie claim that would support his speculative discovery.

Cruz-Garcia also seeks—from the FBP, the Harris County Sherriff's Office, the U.S. District Court for the Southern District, HCDAO, and Santana's attorneys— information on his mental health records from federal prison. ECF No 75 at 10–11. He fails to demonstrate good cause for such speculative discovery. There is no evidence that HCDAO had any more access to or knowledge of the sealed mental health records than did Cruz-Garcia. And neither the FBP nor the Southern District Court had an investigative role in this case thus knowledge of documents retained by them should not be imputed to the State. *See Avila,* 560 F.3d at 307–10.

Cruz-Garcia also fails to demonstrate these sealed records contain favorable evidence. Despite Santana's claim that he was "undeniab[ly] incompetent to accept a guilty plea," ECF No. 75 at 10–11; ECF No. ex. 18-12, and the federal court's agreement to a competency evaluation, ECF No. ex. 18-13, 18-14, Santana remained in federal prison. This result indicates Santana was found competent, and the sealed records would be of little impeachment value. Regardless, as discussed, Santana's

18

credibility was sufficiently impeached. Cruz-Garcia fails to allege a prima facie case for discovery.

### 3.     Angelita Rodriguez

Cruz-Garcia provides no good cause to allow discovery from HCDAO and INS into the existence of an alleged deal with Angelita Rodriguez. Cruz-Garcia asserts Rodriguez was a "deportable alien" at the time of trial and that she "benefitted substantially" from her testimony. As proof, he cites to the fact that in 1993—twenty years *before* the trial—Rodriguez was convicted of a felony drug offense but was not deported. ECF No. 75 at 13–14. Then, in 2019—six years *after* the trial—the State wrote a favorable letter to Rodriguez's attorney, acknowledging that she was as a very important witness in Cruz-Garcia's 2013 capital murder trial and expressing appreciation for her willingness to testify despite threats to her safety. *See* ECF No. ex. 38-2. The letter does not mention her immigration status or whether her cooperation warranted a favorable decision on her status. This baseless accusation does not justify this fishing expedition. *See Murphy*, 205 F.3d at 814.

### 4.     Grand jury testimony and "second theory"

Cruz-Garcia also alleges good cause to order discovery of the grand jury testimony simply "because the materials were previously made available to trial counsel and may further support [his] false testimony and *Brady* claims", with no indication of how it would help their claims. ECF No. 75 at 16. This generic request fails to demonstrate good cause. *Murphy,* 205 F.3d at 816–17.

He also seeks speculative evidence of a "second theory" of the crime based upon three redacted documents from HPD which indicate (1) HPD believed Cruz-Garcia was "behind the kidnapping" and "believed that [Cruz-Garcia] took Angelo," but "*the second theory*, involves a drug rip-off committed by [Cruz-Garcia]", ECF No. ex. 18-16 (emphasis added); (2) HPD received a phone call indicating the caller knew who

kidnapped Angelo and that they wanted $30,000; HPD believed the call was a hoax, and HPD and FBI were attempting to locate "suspect" Cruz-Garcia, ECF No. ex. 18-17; and (3) HPD engaged in a phone call with a caller who denied involvement in the kidnapping but said they could get the boy back for $10,000, ECF No. ex. 18-18. The only suggestion of a "second theory" involves two theories both implicating Cruz-Garcia, with a third reference to him as "suspect." Any additional evidence—should it even exist—is unlikely to be helpful in any capacity. Regardless, Cruz-Garcia does not allege how he intends to use this evidence to support his claims. The Court should not indulge this fishing expedition. *Murphy,* 205 F.3d at 816–17.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that this Court deny these motions for discovery and an evidentiary hearing.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General for
Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

 s/ Cara Hanna
CARA HANNA*
Assistant Attorney General
State Bar No. 24055622
Southern I.D. No. 915870
Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1400
cara.hanna@oag.texas.gov

*Lead Counsel

ATTORNEYS FOR RESPONDENT

20

## CERTIFICATE OF SERVICE

I do hereby certify that on October 17, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Jason D. Hawkins
David C. Currie
Jeremy Don Schepers
Nadia V. Wood
Federal Public Defender Northern District of Texas
525 Griffin Street Suite 629
Dallas, TX 75202.

s/ Cara Hanna
CARA HANNA
Assistant Attorney General