IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **OBEL CRUZ-GARCIA,**<br>    Petitioner,<br><br>v.<br><br>**BOBBY LUMPKIN, Director,**<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>    Respondent. | Case No. 4:17-CV-03621<br><br><br><br><br>District Judge Lee H. Rosenthal<br><br>**CAPITAL CASE** |

**PETITIONER'S REPLY IN SUPPORT OF MOTION FOR DISCOVERY**

Petitioner Obel Cruz-Garcia, by and through his undersigned counsel, respectfully submits the following reply brief in support of his Motion for Discovery. ECF No. 75.

**A.    Mr. Cruz-Garcia responds to the Director's arguments concerning Claim One in his Reply in Support of his Motion for Evidentiary Hearing and his Reply in Support of his Second Amended Petition.**

The Director dedicates much of his response to opposing Mr. Cruz-Garcia's request for an evidentiary hearing on Claim One, which alleges that the jury deliberations were tainted by an outside influence. ECF No. 84 at 3–9. Mr. Cruz-Garcia responds to those arguments in his Reply in Support of his Motion for Evidentiary Hearing and in his discussion of Claim One in his Reply in Support of his Second Amended Petition. For the same reasons that the Court should reject the Director's arguments concerning Mr. Cruz-Garcia's request for an evidentiary hearing on Claim One, it should also reject the Director's arguments concerning Mr. Cruz-Garcia's request to depose jurors Angela Bowman, Matthew Clinger, and Casey Guillote.

1

B.   **The Court should reject the Director's procedural arguments for denying discovery on Claims Five and Six.**

In addition to requesting discovery on Claim One, Mr. Cruz-Garcia also requested discovery on Claim Five (false testimony) and Claim Six (*Brady*). *See* ECF No. 75. The Director argues that the Court should not permit discovery on these claims because they are procedurally defaulted. ECF No. 84 at 11–13. As discussed in Mr. Cruz-Garcia's Second Amended Petition, however, Mr. Cruz-Garcia can show cause and prejudice to overcome the procedural default because the State knowingly presented materially false testimony and it failed to disclose materially exculpatory, impeachment, or mitigating evidence. *See* ECF No. 73 at 213–14; 225; *see also Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 525 U.S. 263, 289 (1999); *Sparks v. Davis*, 756 F. App'x 397, 401 (5th Cir. 2018) ("Because the merits analysis of Spark's false testimony claim largely parallels the 'cause' threshold he must clear, it is permissible to consolidate both issues into a single inquiry." (citing *Banks*, 540 U.S. at 686)).

Cause and prejudice, moreover, is an issue on which a federal district court may permit discovery. *Barrientes v. Johnson*, 221 F.3d 741, 771 (5th Cir. 2000). The Director asserts that 28 U.S.C. § 2254(e)(2) nonetheless bars the Court from permitting factual development, unless Mr. Cruz-Garcia meets §§ 2254(e)(2)(A) and (B). ECF No. 84 at 12–13. The Fifth Circuit rejected this exact argument in *Barrientes*. *See* 221 F.3d at 769. There, the State argued "that even if Barrientes can establish cause and prejudice to prevent his claims from being procedurally barred, the district court still cannot reach the merits of his claims because, as previously stated, an evidentiary hearing is required, and Barrientes cannot establish the so-called 'cause and actual innocence' required by 28 U.S.C. § 2254(e)(2) before a federal habeas court is permitted to hold an evidentiary hearing." *Barrientes*, 221 F.3d at 769. After a detailed analysis, the Fifth Circuit rejected the argument and

2

held that "if Barrientes established cause for overcoming his procedural default, he has certainly shown that he did not 'fail to develop' the record under § 2254(e)(2)." *Id.* at 771.

The Supreme Court's recent decision in *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022) does nothing to alter this conclusion in *Barrientes*. In *Martinez Ramirez*, the issue before the Supreme Court was whether a petitioner whose state habeas counsel was *not* diligent in developing an ineffective-assistance-of-trial-counsel claim may overcome § 2254(e)(2)'s diligence requirement by showing that his state habeas counsel was ineffective. The Supreme Court held that ineffectiveness of state habeas counsel does not excuse § 2254(e)(2)'s diligence requirement. *Martinez Ramirez*, 142 S. Ct. at 1728. In doing so, the *Martinez Ramirez* court expressly declined to address whether "a federal court may hold an evidentiary hearing to determine whether there is cause and prejudice." *Id.* at 1738. Accordingly, *Martinez Ramirez* did not abrogate the Fifth Circuit's existing case law holding that district courts may permit factual development on the issue of cause and prejudice with respect to false evidence and *Brady* claims, and that if the petitioner succeeds in showing cause, "he has certainly shown that he did not 'fail to develop' the record under § 2254(e)(2)." *Barrientes*, 221 F.3d at 771; *see also Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723 (3d Cir. 2022) (holding that *Martinez Ramirez* "does not abrogate our holding that, generally, AEDPA's text does not forbid federal courts from developing the facts needed to excuse a procedural default.").

Accordingly, neither procedural default nor § 2254(e)(2) poses any barrier to this Court permitting discovery on Claim Five and Claim Six.

3

**C.      The Court should allow discovery on issues related to the punishment phase.**

**1.      The Court should permit discovery concerning the murder of Saul Flores, which was the basis for the State's decision to seek the death penalty, but which HPD contends is still an open investigation.**

At the punishment phase of Mr. Cruz-Garcia's trial, the State solicited testimony from several witnesses that Mr. Cruz-Garcia gruesomely tortured and murdered Saul Flores. 25 RR 41–51, 59–86. According to the lead prosecutor, Mr. Cruz-Garcia's purported commission of the Saul Flores murder was the reason the State sought the death penalty against Mr. Cruz-Garcia and the testimony no doubt made a strong impression on the jury. ECF No. 73 at 232 n.56.

In his Second Amended Petition, Mr. Cruz-Garcia presented substantial evidence that the testimony of the State's witnesses tying Mr. Cruz-Garcia to the Saul Flores murder was false. ECF No. 155–57; 206–08. When Mr. Cruz-Garcia sought documents from the Houston Police Department ("HPD") concerning their investigation of the murder, HPD refused on the ground that its investigation of the murder remains open, which casts further doubt on the testimony of the State's witnesses. *See* ECF No. 43-3, 43-4, 43-5, 43-6. Because the State has refused to turn over its files regarding the Saul Flores murder, Mr. Cruz-Garcia cannot obtain them other than by seeking them in discovery.

The Director's *only* argument concerning this discovery request is to assert that Mr. Cruz-Garcia must prove actual innocence under § 2254(e)(2)(B) to obtain any factual development and "[t]his innocence requirement necessarily forecloses discovery on any punishment phase issue." ECF No. 84 at 12–13. As set forth above, however, Mr. Cruz-Garcia does not need to meet § 2254(e)(2)(A) or (B) in order to obtain discovery on Claims Five and Six. The Director does not present any other argument for denying Mr. Cruz-Garcia this discovery.

4

> **2. The Court should permit discovery concerning Mr. Cruz-Garcia's assistance to federal law enforcement.**

The Director relies primarily on his mistaken § 2254(e)(2)(B) argument in response to Mr. Cruz-Garcia's request for discovery concerning Mr. Cruz-Garcia's assistance to federal law enforcement authorities. ECF No. 84 at 13–14. The Director also asserts that for *Brady* purposes, "[t]he State is not imputed with knowledge of any federal agency not acting as an agent of the State or part of the investigative process of this case." *Id.* at 13 n.5 (citing *Avila v. Quarterman*, 560 F.3d 299, 307–10 (5th Cir. 2009)).

The Director concedes, however, that the FBI *was* "part of the investigative process for this case." *Id.* And, it is undisputed that the FBI, including an agent who testified on behalf of the State at the punishment phase, *was* aware of Mr. Cruz-Garcia's assistance to federal law enforcement agencies. 24 RR 71–72. The Director asserts that because the prosecutor spoke with a single FBI agent who was purportedly unaware of Mr. Cruz-Garcia's work with the U.S. government, the FBI's knowledge of that work cannot be imputed to the State. This argument, however, misunderstands the concept for imputation. Because the FBI, including personnel who assisted with the prosecution of Mr. Cruz-Garcia, were aware of Mr. Cruz-Garcia's assistance to U.S. law enforcement, it does not matter whether the Harris County District Attorney's Office learned those facts from the FBI—the knowledge was imputed to the State regardless. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154 (1972) (even where a prosecution team member indisputably failed to inform prosecutor trying the case that he had offered assistance to witness, knowledge was imputed to lead prosecutor); *see also United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979 ("Imposing a rigid distinction between federal and state agencies which have cooperated intimately from the outset of an investigation would artificially contort the determination of what is mandated by due process.").

5

Finally, the Director assets that Mr. Cruz-Garcia's previous counsel could have subpoenaed the deposition of Mr. Pellot. ECF No. 84 at 13 n.5. But that is clearly not the case. Because the state habeas court refused to permit any evidentiary development beyond soliciting affidavits from trial counsel, Mr. Cruz-Garcia's state habeas counsel could not have obtained Mr. Pellot's testimony.

**D.     The Court should permit discovery on the false DNA evidence presented at trial.**

The Director concedes that "we now know certain DNA testimony from trial was incorrect." ECF No. 84 at 14. The Director also acknowledges that "Cruz-Garcia seeks discovery in the form of *when* did the State know the DNA evidence was flawed," so as to establish that the State knew or should have known its witnesses' testimony concerning the DNA evidence was false. *Id.* The Director then argues that the Court should deny discovery on this issue because Mr. Cruz-Garcia purportedly cannot conclusively prove the State's knowledge without the discovery. *See id.* ("Cruz-Garcia cannot demonstrate that it was intentionally false, or that the State was aware of the falsity."). In doing so, the Director completely inverts the concept of discovery. If Mr. Cruz-Garcia could prove the State's knowledge to the Director's satisfaction without discovery, he would not be requesting it from the Court.

In any event, Mr. Cruz-Garcia has already presented sufficient evidence to establish a *prima facie* case that the State knew or should have known that the DNA evidence was false. Specifically, prior to the State's recantation of its original DNA analysis, Mr. Cruz-Garcia submitted an affidavit from a DNA expert who concluded that State's analysis regarding the DNA sample taken from the vaginal swabs had been flawed, and that Arturo Rodriguez should not have been identified as a contributor to the DNA mixture extracted from the panties. ECF No. 18-10. Mr. Cruz-Garcia's claim that the State knew or should have known that its DNA analysis was flawed is therefore not, as the

6

Director contends, "pure speculation and unsupported by the record." ECF No. 84 at 15. Instead, it comes directly from the state court record itself.

The cases cited by the Director do not suggest otherwise. The quotation from *Stickler* concerning "mere speculation" cited by the Director occurs in the context of the Supreme Court's explanation as to why state habeas counsel cannot be expected to raise every conceivable *Brady* claim, particularly where the State has represented during state habeas proceedings that it has disclosed all *Brady* material. ECF No. 84 at 15 (quoting 527 U.S. at 286). The Supreme Court cites that as a reason why suppression by the State provides cause and prejudice to overcome the procedural default of a *Brady* claim. *Id.* The Director also cites *Hughes v. Johnson*, 191 F.3d 607, 629–30 (5th Cir. 1999). ECF No. 85 15. There, the petitioner had been convicted of murdering a state trooper during a traffic stop. One of the key witnesses was another state trooper who witnessed the shooting. The petitioner sought discovery concerning an internal DPS investigation of the shooting, in which he contended the partner described the events differently than he did at trial. The petitioner, however, not only failed to provide any reason to believe the trooper would have described shooting differently during the investigation, he also presented no reason to believe that an internal investigation occurred at all. The Fifth Circuit accurately described the petitioner's *Brady* claim as "conclusory" and "purely speculative." *Id.* at 629.

The Director's only other argument for denying discovery concerning the false DNA evidence is to argue that the falsity was not material. Mr. Cruz-Garcia responds to this argument in his discussion of Claims Two, Three, Four, and Five in his Reply in Support of his Second Amended Petition.

E. **The Court should permit discovery concerning the State's star witness, Carmelo "Rudy" Santana.**

In his Second Amended Petition and in his Motion for Discovery, Mr. Cruz-Garcia explained that the State either failed to disclose a deal with Mr. Santana or it solicited false testimony from him concerning his own criminal liability. ECF No. 73 at 221–24, 240–43. Mr. Cruz-Garcia seeks discovery concerning what kind of understanding the State had with Mr. Santana with regards to whether he would be charged with a crime in connection with any of the offenses he implicated himself in, and what the State's purported basis was for not charging Mr. Santana for *any* crime in connection with Angelo's abduction, particularly after the trial court held as a matter of law that Mr. Santana had been Mr. Cruz-Garcia's accomplice. ECF No. 75 at 15–17, 20–24. In response, the Director asserts that the Court should simply credit the State's representation that it did not have a deal with Mr. Santana and attribute the State's failure to charge him with any crime to a routine exercise of prosecutorial discretion. ECF No. 84 at 16–18. The Court should reject these arguments for the reasons set forth in Mr. Cruz-Garcia's discussion of Claims Five and Six in his Reply in Support of his Second Amended Petition.

The cases cited by the Director are inapposite. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) concerns the prosecution's discretion to refrain from charging a defendant with certain crimes to secure a plea agreement with respect to others. Mr. Santana, however, did not plead to *any* crime in connection with Angelo's kidnapping and murder. *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) concerns allegations of an undisclosed deal. Unlike in this case, however, there was no evidence of any benefit to the witness who purportedly benefited from the secret deal. Here, Mr. Santana was allowed to escape *all* criminal liability after confessing to his participation in a capital

8

murder, in which the trial court held he had been an accomplice as a matter of law, as well as in the murder of Saul Flores.[1] There was simply no credible basis for the State to conclude that it could not charge Santana with *any* crime at all.

With respect to Mr. Santana's mental health records—of which Mr. Santana asserted he maintained a "plethora" that "illustrate my undeniable incompetence"—the Director asserts that they are not material because Mr. Santana was apparently found to be sufficiently competent to enter a guilty plea over a decade earlier. ECF No. 84 at 18. This obviously misconstrues Mr. Cruz-Garcia's argument, which is not that Mr. Santana was legally incompetent to stand trial, but that he suffered from serious, undisclosed mental health problems. The Director also asserts that Mr. Santana was "sufficiently impeached" at trial on other issues. ECF No. 84 at 18–19. Mr. Cruz-Garcia responds to these arguments in his discussion of Claims Four, Five, and Six in this Reply in Support of his Second Amended Petition.

The Director asserts that Mr. Cruz-Garcia seeks discovery from governmental entities that did not have an investigative role in this case. ECF No. 84 at 18. There is no question, however, that the Harris County Sheriff's Office ("HCSO") is part of the prosecution team for *Brady* purposes. Indeed, several of the State's punishment phase witnesses were employees of the HCSO. 25 RR 123–48. At the time of trial, Mr. Santana was detained in the Harris County jail, which is administered by the HCSO. 20 RR 164. The HCSO would have maintained Mr. Santana's mental health records during his confinement there, and that information is imputable to the State.

---

[1] *Murphy* is also distinguishable in that all the evidence of a possible deal came from the trial record itself, 205 F.3d at 815, where as in this case the State's decision not to charge Mr. Santana could not have been known until the conclusion of both Mr. Cruz-Garcia's trial and his co-defendant's later trial. Additionally, the State's purported reasoning for not charging Mr. Santana (allegedly advice from HDCAO appellate attorneys that Mr. Santana could not be charged under the law of the parties) was not disclosed until state habeas. ECF No. 18-80.

**F.      The Court should permit discovery concerning Angelita Rodriguez.**

The Director mistakenly asserts that the letter from the prosecutor to Ms. Rodriguez's attorney was sent "in 2019—six years *after* the trial." ECF No. 84 at 19. In fact, it is clear from the cover email that the letter was sent in October of 2016.[2] Mr. Cruz-Garcia responds to the Director's remaining arguments in his discussion of Claims Five and Six in his Reply in Support of his Second Amended Petition.

**G.      The Court should permit discovery concerning the State's alternative theories.**

The State maintained a second theory of the crime that it has never fully disclosed. ECF No. 18-16. Contrary to the Director's arguments, Mr. Cruz-Garcia's role in the second theory is very different than in the first. A redacted memo, ECF No. 18-16, states that Mr. Cruz-Garcia is either "behind the kidnapping or knows the identities of the individuals who committed the kidnapping." *Id.* The first theory appears to be that Mr. Cruz-Garcia "took Angelo." *Id.* The second theory, however, appears to correspond to the possibility that Mr. Cruz-Garcia merely knew the identities of the assailants. *Id.* The redacted memo states that this "second theory involves a drug rip-off committed by" Mr. Cruz-Garcia, but does not appear to allege that Mr. Cruz-Garcia was directly involved in Angelo's disappearance. *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Cruz-Garcia's Motion for Discovery.

---

[2] The Director concedes this point in his response to Mr. Cruz-Garcia's Second Amended Petition ECF No. 85 at 84 n.14.

Respectfully submitted,

December 16, 2022

/s/ *David Currie*
David Currie (TX 24084240)
Assistant Federal Public Defender

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
Naomi Fenwick (TX 24107764)
Assistant Federal Public Defender


Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org
david_currie@fd.org
naomi_fenwick@fd.org

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply in Support of Motion for Discovery has been served by CM/ECF upon counsel for Respondent on December 16, 2022:

Cara Hanna
Criminal Appeals Division
Office of the Attorney General
P.O. Box 12548
Capitol Station
Austin, TX 78711

>*/s/ David Currie*
> David Currie
> Assistant Federal Defender