IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| OBEL CRUZ-GARCIA,<br>    Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN, **Director,**<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>    Respondent. | Case No. 4:17-CV-03621<br><br><br>District Judge Lee H. Rosenthal<br><br>**CAPITAL CASE** |

**PETITIONER'S OPPOSED MOTION TO ALTER OR AMEND JUDGMENT**

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
David C. Currie (TX 24084240)
Naomi Fenwick (TX 24107764)
Assistant Federal Public Defenders

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org
david_currie@fd.org
naomi_fenwick@fd.org

THIS IS A CAPITAL CASE

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

    I.   Federal Rule of Civil Procedure 59(e) allows courts to correct manifest errors of law or fact. ............................................................................................................................................. 1

    II.   The Court's adjudication of Mr. Cruz-Garcia's claim that the jury's consultation of the Bible during deliberations violated his rights under the Sixth, Fourteenth, and Eighth Amendments is based on manifest errors of law. ........................................................................................ 1

        A.   The Court erred by holding that Mr. Cruz-Garcia had not met 28 U.S.C. § 2254(d) for this claim. ............................................................................................................................ 3

        B.   The Court erred by concluding that it owed deference to the state court's findings of fact pursuant to 28 U.S.C. § 2254(e)(1). ................................................................................... 6

    III.   The Court's rejection of the portions of Mr. Cruz-Garcia's Ineffective Assistance of Trial Counsel claim concerning his time in Puerto Rican prison was based on an erroneous understanding of the record. ................................................................................................... 9

        A.   Mr. Cruz-Garcia repeatedly acknowledged the trial testimony concerning the escape attempt. ........................................................................................................................... 9

        B.   The Court erroneously found that Mr. Cruz-Garcia did not present the affidavit of Lorenzo Villalba-Rolón during his initial state habeas proceedings. ...................................... 10

        C.   The Court also erroneously found that Mr. Cruz-Garcia did not present his allegations concerning the affidavit of Dr. Alejandro Lebrón during his initial state habeas proceedings. .................................................................................................................... 11

        D.   The Court also erroneously found that Mr. Cruz-Garcia did not present testimony from his common-law wife concerning his time in prison during his original state habeas proceedings. .................................................................................................................... 12

    IV.   The Court's rejection of Mr. Cruz-Garcia's arguments concerning Ms. Garcia and Mr. Rodriguez's continued drug dealing was based on an erroneous understanding of the record. ... 13

    V.   Conclusion. ............................................................................................................................ 14

CERTIFICATE OF CONFERENCE ........................................................................................... 16

CERTIFICATE OF SERVICE ..................................................................................................... 16

## TABLE OF AUTHORITIES

**Federal Cases**        Page(s)

*Banister v. Davis*,
  140 S. Ct. 1698 (2020) .................................................................................................. 1

*Barnes v. Joyner*,
  751 F.3d 229 (4th Cir. 2014) ........................................................................................ 5

*Browder v. Director, Dep't of Corrs. of Ill.*,
  434 U.S. 257 (1978) ...................................................................................................... 1

*Giglio v. United States*,
  405 U.S. 150 (1972) .................................................................................................... 14

*Harrington v. Richter*,
  562 U.S. 86 (2011) ........................................................................................................ 3

*Mattox v. United States*,
  146 U.S. 140 (1892) ...................................................................................................... 2

*Murphy v. Davis*,
  901 F.3d 578 (5th Cir. 2018) .................................................................................. 7, 8

*Oliver v. Quarterman*,
  541 F.3d 329 (5th Cir. 2008) .................................................................................. 2, 4

*Panetti v. Quarterman*,
  551 U.S. 930 (2007) .................................................................................................. 3, 5

*Parker v. Gladden*,
  385 U.S. 363 (1966) .................................................................................................. 2, 4

*Remmer v. United States*,
  347 U.S. 227 (1954) ........................................................................................... 2, 4, 5, 8

*Seals v. Vannoy*,
  1 F.4th 362 (5th Cir. 2021) .......................................................................................... 3

*Turner v. Louisiana*,
  379 U.S. 466 (1965) .................................................................................................. 2, 4

*White v. New Hampshire Dep't of Emp't Sec.*,
    455 U.S. 445 (1982) .................................................................................................... 1

*Williams v. Quarterman*,
    551 F.3d 352 (5th Cir. 2008) ...................................................................................... 7

*Williams v. Taylor*,
    529 U.S. 362 (2000) ................................................................................................ 3, 4

**State Cases**

*Cruz-Garcia v. State*,
    2015 WL 6528727 (Tex. Crim. App. Oct. 28, 2015) ........................................... 4, 6, 7

*Ex parte Cruz-Garcia*,
    2017 WL 4947132 (Tex. Crim. App. 2017) ................................................................ 7

**Federal Statutes**

28 U.S.C. § 2254(d) ........................................................................................................ 3, 4

28 U.S.C. § 2254(d)(1) ................................................................................................. 3, 4, 5

28 U.S.C. § 2254(e)(1) ........................................................................................................ 6

**Rules**

FED. R. CIV. P. 59(e) .......................................................................................................... 1

On September 25, 2023, the Court issued a Memorandum and Order dismissing Obel Cruz-Garcia's petition for a writ of habeas corpus. ECF No. 92. Mr. Cruz-Garcia files this Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) and respectfully asks that the Court correct manifest errors of law and fact in the resolution of his claims for relief. For the reasons set forth below, the Court should alter or amend its judgment and grant habeas relief, or grant discovery and hold the evidentiary hearing requested by Mr. Cruz-Garcia.

I. **Federal Rule of Civil Procedure 59(e) allows courts to correct manifest errors of law or fact.**

Rule 59(e) motions are "part and parcel of the first habeas proceeding" and permit "a district court [to] reconsider a just-issued judgment." *Banister v. Davis*, 140 S. Ct. 1698, 1702–03 (2020). This allows "a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Id.* at 1703 (quoting *White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982)). A motion to alter or amend a judgment pursuant to Rule 59(e) must be filed within twenty-eight days of judgment being entered. Fed. R. Civ. P. 59(e). Timely filed Rule 59(e) motions are "thoroughly consistent with the spirit of the habeas corpus statutes." *Browder v. Director, Dep't of Corrs. of Ill.*, 434 U.S. 257, 271 (1978); *see also Banister*, 140 S. Ct. at 1706–07. Mr. Cruz-Garcia's motion is both proper and timely.

II. **The Court's adjudication of Mr. Cruz-Garcia's claim that the jury's consultation of the Bible during deliberations violated his rights under the Sixth, Fourteenth, and Eighth Amendments is based on manifest errors of law.**

Mr. Cruz-Garcia alleged that his right to a fair trial, impartial jury, and due process of law were violated when the jury foreman read Bible passages that influenced the verdict at the penalty phase. ECF No. 73 at 47–57. Shortly after Mr. Cruz-Garcia was sentenced to death, juror Angela Bowman contacted trial counsel Mario Madrid to inform him that the jury foreman, Matthew

1

Clinger, had brought a Bible into the deliberation room and read passages from it to the jury. 3 CR 606–07, 610–11. Juror Bowman further recalled that another juror, Casey Guillotte, had changed her vote after juror Clinger read from the Bible. *Id.* at 610–11. When interviewed by a defense investigator soon after, juror Clinger confirmed that he had brought a Bible into the deliberations room, that he had read from it to the jury, and that his reading from the Bible had "made a difference with Casey [Guillotte]." *Id.* at 633–40. The passages read by juror Clinger directly call for the death penalty for some crimes. ECF No. 73 at 49. While the evidentiary record conflicts on some points, Mr. Cruz-Garcia presented credible evidence of this claim and requested discovery and an evidentiary hearing to resolve those contradictions. ECF No. 74; ECF No. 75.

Under clearly established Supreme Court precedent, "a jury's verdict must be based upon the evidence developed at the trial," and that protection "goes to the fundamental integrity of all that is embraced in the constitutional concept of a trial by jury." *Turner v. Louisiana*, 379 U.S. 466, 472 (1965) (internal quotations omitted); *see Parker v. Gladden*, 385 U.S. 363, 365 (1966); *Remmer v. United States*, 347 U.S. 227, 229 (1954); *Mattox v. United States*, 146 U.S. 140, 149 (1892). In *Oliver v. Quarterman*, the Fifth Circuit held that that "the Supreme Court has clearly established a constitutional rule forbidding a jury from being exposed to external influence" and that the Bible was an external influence. 541 F.3d 329, 336, 339 (5th Cir. 2008). Because the Court's rejection of Mr. Cruz-Garcia's arguments concerning this claim was based on manifest errors of law and fact, Mr. Cruz-Garcia respectfully requests that the Court alter or amend its judgment, grant discovery, and set this claim for an evidentiary hearing as requested by Mr. Cruz-Garcia.

2

### A. The Court erred by holding that Mr. Cruz-Garcia had not met 28 U.S.C. § 2254(d) for this claim.

Mr. Cruz-Garcia argued that the state court failed to adjudicate this claim on the merits. ECF No. 73 at 54–56; ECF No. 86 at 24–25. The Court rejected that argument. ECF No. 92 at 34 n.13. While Mr. Cruz-Garcia disagrees with that ruling and does not concede it was correct, that import of that ruling is that Mr. Cruz-Garcia must meet at least one of the requirements of the relitigation bar of 28 U.S.C. § 2254(d). The Court erred by holding that Mr. Cruz-Garcia had not satisfied § 2254(d) for this claim and did not address multiple arguments Mr. Cruz-Garcia raised.

The relitigation bar of § 2254(d) can be met by showing that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Establishing that the § 2254(d) relitigation bar is met is different from establishing an entitlement to relief on the merits. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). In part, this is because "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (emphasis in original). It is also true because § 2254(d) can be met for reasons unrelated to the merits of the claim raised, such as when the state court applies "a rule that contradicts the governing law set forth" by the Supreme Court, *Williams*, 529 U.S. at 405, or where the state court "fail[]s to provide the procedures mandated" by Supreme Court precedent for resolution of the claim, *Panetti v. Quarterman*, 551 U.S. 930, 948 (2007). As such, even if a petitioner meets § 2254(d), they still must show an entitlement to relief on the merits of the claim raised. *Seals v. Vannoy*, 1 F.4th 362, 371 (5th Cir. 2021).

The initial step in a § 2254(d)(1) analysis is identifying what the relevant clearly established federal law is. Here, the relevant substantive law regarding whether the Bible was an external

3

influence in this Circuit is outlined in *Oliver v. Quarterman*, 541 F.3d 329 (5th Cir. 2008), and the procedural rights to vindicate such claims are found in *Remmer v. United States*, 347 U.S. 227 (1954). Mr. Cruz-Garcia briefed both of these cases in his Second Amended Petition and his Reply. ECF No. 73 at 48–51, 53, 55–57; ECF No. 86 at 26–30. Under both the substantive and procedural law relevant to this claim, Mr. Cruz-Garcia meets § 2254(d)(1) for this claim. Yet, in rejecting Mr. Cruz-Garcia's alternative argument that § 2254(d) was met, the Court did not address at least two of his arguments for why that provision was satisfied.

First, the Court did not address that the Texas Court of Criminal Appeals' (CCA) decision on direct appeal was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court by holding that the Bible cannot be an external influence on jurors. ECF No. 73 at 56–57; ECF No. 86 at 26. As Mr. Cruz-Garcia argued, ECF No. 73 at 57; ECF No. 86 at 26, the CCA held on direct appeal that referring to the Bible during jury deliberations cannot be an external influence. *Cruz-Garcia v. State*, 2015 WL 6528727, *28 (Tex. Crim. App. Oct. 28, 2015). This is "a rule that contradicts the governing law set forth" by the Supreme Court. *See Williams*, 529 U.S. at 405. The CCA's legal ruling is plainly contradicted by the Fifth Circuit's holding in *Oliver* that, as a matter of clearly established Supreme Court precedent, the Bible can constitute an external influence: "Stemming from these clearly established Supreme Court precedents, it is clear that the prohibition of external influences from *Remmer*,[1] *Turner*,[2] and *Parker*[3] applies to this factual scenario." *Oliver*, 541 F.3d at 336. Therefore, independent of any factual

---

[1] *Remmer v. United States*, 347 U.S. 227 (1954).
[2] *Turner v. Louisiana*, 379 U.S. 466 (1965).
[3] *Parker v. Gladden*, 385 U.S. 363 (1966).

4

assessment of the claim at issue, the CCA's decision was both contrary to, and an unreasonable application of, Supreme Court precedent and § 2254(d)(1) is met.[4]

Second, the Court did not address that the state court decision was contrary to, or an unreasonable application of, *Remmer*. ECF No. 73 at 56. *Remmer* contains the procedures mandated by Supreme Court precedent when a credible allegation of an external influence on jurors is made. As explained in Mr. Cruz-Garcia's Second Amended Petition, ECF No. 73 at 48, when a court is confronted with allegations that an external influence was brought to bear on the jury's deliberations, a trial court must afford the defendant an opportunity to test the impact of that influence on the jury. *Remmer*, 347 U.S. at 230 (the trial court "should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate"); *Barnes v. Joyner*, 751 F.3d 229, 242 (4th Cir. 2014) ("*Remmer* clearly established . . . a defendant's entitlement to an evidentiary hearing when the defendant presents a credible allegation" of an external influence on the jury.). The state court's failure to hold a hearing on this claim, despite a credible claim of an outside influence, was contrary to or an unreasonable application of *Remmer*. The failure to provide procedures mandated under federal law allows federal review of this claim to occur "unencumbered by the deference AEDPA normally requires." *Panetti*, 551 U.S. at 948.

The Court should correct this manifest error of law, find that this claim meets § 2254(d)(1), grant discovery, ECF No. 75, and set this claim for an evidentiary hearing as requested by Mr. Cruz-Garcia, ECF No. 74.

---

[4] For this reason, the Court's finding that *Oliver* involved different facts, ECF No. 92 at 38 n.15, did not address Mr. Cruz-Garcia's argument concerning § 2254(d)(1).

### B. The Court erred by concluding that it owed deference to the state court's findings of fact pursuant to 28 U.S.C. § 2254(e)(1).

The Court deferred to the state court's purported findings of fact on direct appeal and in state habeas concerning this claim. *See* ECF No. 92 at 39–40. The Court's decision to do so was based on manifest errors of fact and law that should be corrected.

First, under Texas law the CCA could not have made findings of fact on direct appeal concerning the impact of the Bible on the jury's deliberations.[5] *See* ECF No. 92 at 39. The CCA held that Texas Rule of Evidence 606(b) precluded the admission of the jurors' affidavits. *See Cruz-Garcia*, 2015 WL 6528727, at *29. Under its own holding, the CCA was therefore prohibited from adjudicating the allegations contained in the jurors' affidavits. It could not then have inquired into the jurors' affidavits and have made findings of fact based on those affidavits. To conclude otherwise would require the CCA to have contravened its own holding that Texas evidentiary rules prohibited any fact-inquiry into the jurors' deliberations. Therefore, the CCA could not have made findings of fact on direct appeal to which deference would then be owed pursuant to § 2254(e)(1).

Second, the Court does not owe deference to the findings of fact made by the convicting court in state habeas. *See* ECF No. 92 at 39. Mr. Cruz-Garcia raised this claim again in his initial state habeas proceedings. The convicting court entered several findings of fact and found both that the claim was procedurally defaulted and that Mr. Cruz-Garcia had failed to establish a violation of

---

[5] In a separate paragraph, the Court stated that the CCA "found that the jurors spoke about the Bible only for emotional support after they had returned their verdict, not for guidance or direction in reaching their verdict." ECF No. 92 at 38 (citing *Cruz-Garcia*, 2015 WL 6528727, at *29). This statement of the CCA's discussion is not supported by the CCA's opinion. In its summary of the facts alleged, the CCA stated that the jurors' discussion surrounding the Bible arose "at some point during their discussion." *Cruz-Garcia*, 2015 WL 6528727, at *27. The CCA further emphasized that, while one juror indicated this discussion occurred after deliberations, "[t]he other affidavits received by the trial court are ambiguous as to when her question was posed." *Id.* The Court's recitation of the CCA's statements regarding the timing of these events was based on an incorrect interpretation of the CCA's direct appeal opinion.

6

his right to a fair trial and due process rights. ECF No. 24-1 at 119–20. The CCA then held that the claim was "procedurally barred as it was raised and rejected on direct appeal." *Ex parte Cruz-Garcia*, 2017 WL 4947132, *1 (Tex. Crim. App. 2017). The CCA adopted the convicting court's finding that the claim was procedurally barred, *see* ECF No. 24-1 at 119–20 ¶ 136, and did not explicitly adopt or incorporate any findings of fact regarding the merits of the claim. *Ex parte Cruz-Garcia*, 2017 WL 4947132, at *1. That result is the logical extension of the CCA's opinion on direct appeal which, as explained above, held that Texas state courts cannot consider any evidence relating to the Bible being an external influence, because as a matter of law it is not. It is therefore clear that the CCA rejected the convicting court's further fact-finding on this claim.

The Court relied on *Murphy v. Davis*, 901 F.3d 578, 595 (5th Cir. 2018), for the proposition that the convicting court's factual findings as to what occurred in the jury room survived the CCA's ultimate resolution of Mr. Cruz-Garcia's state habeas application because those findings were "not expressly rejected nor inconsistent" with the CCA decision. ECF No. 92 at 39. However, *Murphy* is distinguishable from Mr. Cruz-Garcia's case. Here, the state trial court's findings of fact were "directly inconsistent," *Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008), with the CCA's decision on direct appeal that Texas evidentiary law prohibited any factual inquiry into the jurors' deliberations. *See Cruz-Garcia*, 2015 WL 6528727, at *29. And, unlike what occurred in *Murphy*, the convicting court's findings of fact have no bearing on the CCA's procedural default of the claim. *Cf. Murphy*, 901 F.3d at 596 (holding that convicting court's findings of fact survived despite procedural default by the CCA where, *inter alia*, "the factual findings on the merits of the *Brady* claim are relevant to whether the claim was an abuse of the writ"). In contrast with *Murphy*, here under state law the convicting court could not consider the merits of the claim.

7

Third, to the extent the Court nevertheless concludes that the convicting court's findings of fact survived the CCA's procedural default of the claim, the Court's summarization of those findings is not accurate. The Court stated that the convicting court had found that "the Bible incident happened after the jurors had concluded their deliberations." ECF No. 92 at 39. In its findings, however, the convicting court made findings that the Bible was read "after the jury reached a unanimous verdict on the special issues" *and* "during the Friday deliberations." *Compare* ECF No. 24-1 at 120 ¶ 144 and ¶ 145. Indeed, the convicting court also credited juror Clinger's affidavits, in which he stated that he took out his Bible "[a]t one point during the discussion Friday morning" and after he consulted the Bible, "[the jury] went back to discussing the facts of the case and deliberating the answers to the Special Issues presented to [the jury]." ECF No. 23-26 at 7–8; *see* ECF No. 24-1 at 120 ¶ 145 ("during the Friday deliberations"). Even if the Court determines these findings survive, their inconsistencies leave these important questions still unresolved. Finally, for the reasons described above, because the trial court did not hold an evidentiary hearing, any alternative merits decision would violate *Remmer* and therefore not be entitled to any deference by this Court. *See supra* Section II.A; *see also Panetti*, 551 U.S. at 948 (holding that because the state court failed to provide the constitutionally required process for resolution of the claim, the federal court's review was "unencumbered by the deference AEDPA normally requires").

The Court should correct these manifest errors of fact and law and set this claim for an evidentiary hearing as required by the procedure set out in *Remmer* to resolve the contradictions in the evidence before the Court.

8

III.   **The Court's rejection of the portions of Mr. Cruz-Garcia's Ineffective Assistance of Trial Counsel claim concerning his time in Puerto Rican prison was based on an erroneous understanding of the record.**

Mr. Cruz-Garcia asserted that his trial counsel was ineffective at the punishment phase by not investigating and presenting evidence relating to Mr. Cruz-Garcia's time as a prison inmate in Puerto Rico. ECF No. 73 at 185–93. In rejecting Mr. Cruz-Garcia's arguments on this point, the Court mistakenly found that Mr. Cruz-Garcia did not acknowledge testimony from his trial concerning what was described as an escape attempt. ECF No. 92 at 80 n.22. The Court also mistakenly found that Mr. Cruz-Garcia did not present testimony from three witnesses concerning his time in Puerto Rican prison during his initial state habeas proceedings. ECF No. 92 at 78 n.21. Because the Court's rejection of Mr. Cruz-Garcia's arguments concerning his period of incarceration in Puerto Rico was based on a factually inaccurate understanding of the record, Mr. Cruz-Garcia respectfully requests that the Court alter or amend its judgment and grant relief on this claim.

A. **Mr. Cruz-Garcia repeatedly acknowledged the trial testimony concerning the escape attempt.**

The Court's order suggests that Mr. Cruz-Garcia failed to address the testimony during Mr. Cruz-Garcia's punishment phase about what was characterized as an escape attempt during the beginning of Mr. Cruz-Garcia's period of incarceration in Puerto Rico. For example, the Court asserts that Mr. Cruz-Garcia "curiously ignores the escape attempt and argues that he 'had no disciplinary infractions during his incarceration in Puerto Rico.'" ECF No. 92 at 80 n.22 (citing ECF No. 73 at 8). Mr. Cruz-Garcia did, however, acknowledge the testimony concerning the purported escape attempt multiple times, including on the very page that the Court cites for the proposition that Mr. Cruz-Garcia ignored the testimony. *See* ECF No. 73 at 8[6] (noting that "the only

---

[6] This page number corresponds to the pagination at the bottom of the page.

9

information the jury learned about [Mr. Cruz-Garcia's] conduct in Puerto Rican prison was a single disciplinary infraction the State presented in its case in aggravation"); *see also id.* at 184–85 (noting that "[o]ne of the State's witnesses was a Puerto Rican correctional official" who "testified that, early in his period of incarceration, Mr. Cruz-Garcia was found to have a cell phone, map and rope made from bedsheets in his cell, suggesting a possible escape attempt"); *id.* at 190–91 (further discussing the incident).

### B. The Court erroneously found that Mr. Cruz-Garcia did not present the affidavit of Lorenzo Villalba-Rolón during his initial state habeas proceedings.

Mr. Cruz-Garcia not only acknowledged the escape attempt, he also discussed why—had trial counsel not performed deficiently—the impact of that testimony would have been substantially diminished. Specifically, Mr. Cruz-Garcia discussed the expert affidavit from Lorenzo Villalba-Rolón. *Id.* at 190–91. Mr. Villalba-Rolón served as Chairman of the Parole Board of Puerto Rico, Administrator of the Corrections Administration of the Commonwealth of Puerto Rico, a professor of criminal justice at several Puerto Rican universities, and as an advisor to the Senate of Puerto Rico and the Secretary of the Puerto Rico Department of Corrections and Rehabilitation. ECF No. 18-40 at 1. Mr. Villalba-Rolón reviewed Mr. Cruz-Garcia's prison records, affidavits from prison chaplains and a prison psychologist who knew Mr. Cruz-Garcia in prison, and the testimony from trial concerning the escape attempt. *Id.* at 2. Mr. Villalba-Rolón specifically addressed the escape attempt and determined that the testimony had been "misleading in several respects." *Id.* at 4. Mr. Cruz-Garcia was not "arrested," there is no record of any charges being filed or that prison officials ever pursued the matter in the Puerto Rican court system, Mr. Cruz-Garcia's sentence was not increased, and he was reclassified back to minimum security in a "remarkabl[y]" short amount of time. *Id.* Finally, "Mr. Cruz-Garcia shared his cell with another inmate, and there was no indication

that it was Mr. Cruz-Garcia, rather than his cellmate, who had broken the window or possessed the contraband that was found in the cell." *Id.*

Even after reviewing the testimony and documents concerning the escape attempt, Mr. Villalba-Rolón nonetheless concluded that "Mr. Cruz-Garcia had exemplary conduct during the nearly eight years he was incarcerated in Puerto Rico," that "[t]here was nothing in the records to indicate that Mr. Cruz-Garcia was a dangerous or violent inmate," and that Mr. Cruz-Garcia "was a model inmate who was trusted and highly regarded by prison staff." ECF No. 18-40 at 2–3. When Mr. Cruz-Garcia asserted that he was a model inmate in Puerto Rico, he was in no way ignoring the testimony concerning the escape attempt. Rather, this assertion was based on testimony from an expert with decades of experience with the Puerto Rican prison system who reviewed Mr. Cruz-Garcia's prison records, the affidavits of people who knew him during his time in prison, and the trial testimony concerning the escape incident.

The Court did not address Mr. Villalba-Rolón's affidavit except to note that Mr. Cruz-Garcia obtained an affidavit from "an expert on the Puerto Rican penal system." ECF No. 92 at 78 n.21. The Court then asserts that Mr. Cruz-Garcia "put these allegations before the state court only in his successive state habeas application." *Id.* But that is not accurate. Mr. Cruz-Garcia submitted Mr. Villalba-Rolón's affidavit in his original state habeas proceeding. *See* ECF No. 23-41 at 2–15. Mr. Cruz-Garcia specifically noted that the affidavit supported Claim Three of his application. *Id.* at 2.

### C. The Court also erroneously found that Mr. Cruz-Garcia did not present his allegations concerning the affidavit of Dr. Alejandro Lebrón during his initial state habeas proceedings.

The court made a similar error with respect to the affidavit of Dr. Alejandro Lebrón, a clinical psychologist who counseled Mr. Cruz-Garcia while he was in prison in Puerto Rico.

11

Although the Court acknowledges that Dr. Lebrón "provided an affidavit on state habeas review," the Court appears to assert that Mr. Cruz-Garcia put the "allegations" concerning the affidavit "before the state court only in his successive state habeas application." ECF No. 92 at 78 n.21. Dr. Lebrón's affidavit was not only included with Mr. Cruz-Garcia's original state habeas application, but Mr. Cruz-Garcia discussed the affidavit in detail in the application itself. ECF No. 23-38 at 79–80.

> **D. The Court also erroneously found that Mr. Cruz-Garcia did not present testimony from his common-law wife concerning his time in prison during his original state habeas proceedings.**

The Court made the same error with the affidavit from Mr. Cruz-Garcia's "common-law wife," María Capellán, "who could describe his life while incarcerated." ECF No. 92 at 78 n.21. Although Mr. Cruz-Garcia included an updated declaration from Ms. Capellán in his federal petition, Mr. Cruz-Garcia also submitted an affidavit from Ms. Capellán with his original state habeas application in which she discussed Mr. Cruz-Garcia's time in prison.[7] ECF No. 23-39 at 57–64. Mr. Cruz-Garcia referenced the affidavit in connection with Claim Three in his original habeas application. ECF No. 23-38 at 80–81.

Because the Court rejected Mr. Cruz-Garcia's arguments concerning his time in Puerto Rican prison based on an erroneous understanding of the record, Mr. Cruz-Garcia respectfully requests that the Court reconsider its decision and grant relief on this claim.

---

[7] In state habeas, Ms. Capellan was identified as María Capellán Romero. ECF No. 23-39 at 57–64.

12

**IV.     The Court's rejection of Mr. Cruz-Garcia's arguments concerning Ms. Garcia and Mr. Rodriguez's continued drug dealing was based on an erroneous understanding of the record.**

Mr. Cruz-Garcia alleged that Diana Garcia and Arturo Rodriguez falsely testified that they had stopped selling drugs over a month before the kidnapping. ECF No. 73 at 229. Mr. Cruz-Garcia also alleged that trial counsel had performed deficiently in not bringing this fact to the jury's attention, as police reports clearly stated that Ms. Garcia and Mr. Rodriguez were selling drugs up until the day of the offense. *Id.* at 151–53. Mr. Cruz-Garcia explained that the question of when Ms. Garcia and Mr. Rodriguez stopped selling drugs was important because the State's alleged motive for the kidnapping was that Mr. Cruz-Garcia was purportedly angry that Ms. Garcia and Mr. Rodriguez had stopped selling drugs for him. *Id.* at 151–53, 236; *see also* ECF No. 18-24 at 1–2.

With respect to Mr. Cruz-Garcia's ineffective assistance of trial counsel claim, the Court found that "[t]here is no basis to show that additional cross-examination would have shown not only that the couple was selling drugs, but that they were still selling drugs for Cruz-Garcia." ECF No. 92 at 74. That, respectfully, is not accurate. Ms. Garcia testified that during the time when she and Mr. Rodriguez sold drugs, they only sold drugs for Mr. Cruz-Garcia. ECF No. 23-4 at 181.

The Court also found that Mr. Cruz-Garcia had not adequately briefed the materiality of this false testimony. ECF No. 92 at 116. That also is not accurate. Mr. Cruz-Garcia argued the materiality of this false testimony in his Second Amended Petition, which states: "Likewise, Diana Garcia and Arturo Rodriguez's false testimony concerning the supposed motive was essential to explaining why Mr. Cruz-Garcia, who was widely known to be a close friend of the couple, would sexually assault Ms. Garcia, physically assault Mr. Rodriguez, and kidnap and order the murder of Angelo Garcia." ECF No. 73 at 236–37. Mr. Cruz-Garcia also addressed it in reply. ECF No. 86 at 80–81. Among other things, the reply states that because "Ms. Garcia and Mr. Rodriguez's supposed

13

decision to stop selling drugs supplied by Mr. Cruz-Garcia was the only theory of his supposed motive for kidnapping and ordering the murder of Angelo," there is "a reasonable likelihood that this false testimony as to motive affected the judgment of the jury." *Id.* at 81 (citing *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)). Mr. Cruz-Garcia therefore adequately briefed this issue with respect to his false testimony claim.[8]

## V.     Conclusion.

In light of these manifest errors of fact and law, the Court should alter or amend its judgment and grant habeas relief, or grant discovery and hold the evidentiary hearing requested by Mr. Cruz-Garcia.

---

[8] The Court also found that Mr. Cruz-Garcia did not adequately brief the materiality of the false testimony of law enforcement because he did not discuss it in the materiality subsection of that claim. Mr. Cruz-Garcia, however, addressed the prejudicial impact of the unrebutted testimony elsewhere in his petition, specifically in connection with the ineffective assistance of counsel claim. ECF No. 73 at 156.

Respectfully submitted,

DATE: October 23, 2023

JASON D. HAWKINS
Federal Public Defender

/s/ *David C. Currie*
Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
David C. Currie (TX 24084240)
Naomi Fenwick (TX 24107764)
Assistant Federal Public Defenders

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org
david_currie@fd.org
naomi_fenwick@fd.org

*Counsel for Petitioner*

## CERTIFICATE OF CONFERENCE

David Currie, counsel for Mr. Cruz-Garcia, has conferred with opposing counsel, Craig W. Cosper of the Texas State Attorney's General office, and Mr. Cosper is opposed to the relief sought in this motion.

/s/ *David Currie*

Assistant Federal Defender

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been served by CM/ECF upon counsel for Respondent on October 23, 2023:

Craig W. Cosper
Postconviction Litigation Division
Office of the Attorney General
P.O. Box 12548
Capitol Station
Austin, TX 78711

/s/ *David C. Currie*

Assistant Federal Defender